# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA
### Civil Division

|  |  |
|---|---|
| **HUMANE SOCIETY OF THE UNITED STATES,** ) ) ) ) | **Case No. 07-0623 (CKK)** |
| **Plaintiff,** ) ) | **MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION** |
| **vs.** ) ) ) | |
| **AMAZON.COM, INC., et al.,** ) ) | **ORAL ARGUMENT REQUESTED** |
| **Defendants** ) ) ) | |

## MOTION

   **COMES NOW** Defendant Dowd Publishing and, in lieu of answering, moves this Court for an Order dismissing the above-entitled action with prejudice pursuant to Federal Rules of Civil Procedure (Fed. R. Civ. Pro.) 12(b)(1), (2) and (6) on the grounds stated in the Memorandum of Points and Authorities below.

I.    INTRODUCTION .................................................................................................... 4

    A.    PARTIES ......................................................................................................... 4

    B.    NATURE OF THE CLAIMS .......................................................................... 5

    C.    GROUNDS FOR MOTION TO DISMISS .................................................... 8

II.    ARGUMENT ........................................................................................................ 10

    A.    STANDARD OF REVIEW ........................................................................... 10

    B.    PLAINTIFF CANNOT UTILIZE THE DISTRICT OF COLUMBIA'S CONSUMER
PROTECTION ACT AS MEANS TO ENFORCE FEDERAL OR DISTRICT CRIMINAL
STATUTES WHICH GIVE IT NO PRIVATE RIGHT OF ACTION .................................... 12

    C.    ASSUMING THE DISTRICT OF COLUMBIA CONSUMER PROTECTION ACT
PROVIDES A PRIVATE RIGHT OF ACTION BASED ON THE AWA, PLAINTIFF
LACKS STANDING ................................................................................................................ 17

    D.    PLAINTIFF'S VIEW OF THE STATUTE AND THE REMEDIES REQUESTED, IF
SUSTAINED, WOULD VIOLATE THE FIRST AMENDMENT RIGHTS OF
DEFENDANTS ....................................................................................................................... 19

    E.    THE ABOVE-CAPTIONED MATTER IS NOT RIPE FOR LITIGATION ................. 22

    F.    PLAINTIFF'S CONSPIRACY CLAIM FAILS AS IT HAS NO PRIVATE CAUSE OF
ACTION OR STANDING TO CHALLENGE AN ALLEGED CONSPIRACY TO VIOLATE
A LAW IT HAS NEITHER STANDING NOR A PRIVATE CAUSE OF ACTION TO
ENFORCE ............................................................................................................................... 24

III.    CONCLUSION ..................................................................................................... 25

## Cases

. *Abbott Laboratories v. Nutrimax Products, Inc.,* 844 F.Supp. 443, 445.D. Ill. 1994); ............. 11

§ 28-3904(x).................................................................................................................. 17

*Abbott Laboratories v. Gardner,* 387 U.S. 136, 148 (1967)........................................... 23

*Abu Ali v. Gonzalez,* 387 F. Supp. 2d 16, 17 (D.D.C 2005) .......................................... 11

*Alexander v. Sandoval,* 532 U.S. 275, 286 (2001)........................................................ 12

*APCC Services, Inc. v. Sprint Communications Co.,* 418 F.3d 1238, 1245 (D.C. Cir. 2005)...... 12

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, (S.Ct. 1984)

*Corrigan v. Methodist Hospital,* 158 FRD 70, 71 (E.D. Pa. 1994................................... 10

*Doron Precision Systems, Inc. v. FAAC,* Inc., 423 F. Supp. 2d 173, 179 n.8 (S.D.N.Y. 2006); .... 7

*International Primate Protection League v. Institute for Behavioral Research* (799 F.2d 934 (4th Cir. 1986), *cert. denied,* 481 U.S. 1004 (1987) ........................................................ 17

*Kaempe v. Myers,* 367 F.3d 958, 965 (D.C. Cir. 2004) ................................................... 6

*Laborers' Pension Fund v. Blackmore Sewer Constr. Inc.,* 298 F.3d 600, 607 (7th Cir. 2002) .... 6

*Lujan v. Defenders of Wildlife,* 504 U.S. 555, 559, 560-61 (1992) ................................ 19

*McCarty v. Madigan,* 503 U.S. 140, 144 (1992) ........................................... 24

*Mullins v. M.G.D. Graphics Systems Group,* 867 F.Supp 1578, 1579 (ND Ga. 1994)............... 11

*New York Times Co., supra,* at 730................................................................................ 22

*New York Times Co., v. United States,* 403 U.S. 713, 714 (1993)................................. 21

*Public Citizen v. Lockheed Aircraft Corp.,* 565 F.2d 708 (D.C.Cir. 1977) ................................. 19

*Revis v. Slocomb Industries, Inc.,* ................................................................... 10, 11

*Schroll v. Plunket,* 760 F.Supp. 1385, 1387 (D. Or. 1991)............................................. 11

*United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.,* 517 U.S. 554, 556-58 (1996)................................................................................................................ 20

*Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 773 (1976) ........................................................................................................................... 22

*Washington Post Co. v. Keogh*, 365 F.2d 965, 968 (D.C. Cir. 1966), *cert. denied*, 385 U.S. 1011 (1967) .............................................................................................................................. 11

*Williams v. Purdue Pharm. Co.*, 297 F. Supp. 2d 171, 177-78 (D.D.C 2003) ............................ 18

## Statutes

28-2-312 to 2-318 ....................................................................................................................... 14

5 U.S.C. § 702, *et seq.*............................................................................................................... 16

Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551, 702....................................................... 8

Clean Water Act ("CWA"), 33 U.S.C. § 1365 ............................................................................ 12

D.C. Code § 28-3904 ................................................................................................................. 14

D.C. Code §§ 28:2-312 to 318 ................................................................................................... 14

D.C. Code 28-3905(k)(1) ............................................................................................................. 7

D.C. Code § 28-3904, subsections (a), (e), (f), (x) ...................................................................... 13

D.C. Code § 28-3905(k)(1)......................................................................................................... 17

*Sierra Club v. Morton*, 405 U.S. 727 (1972). ............................................................................. 16

## Rules

Federal Rule of Civil Procedure 30(a)(2)(C) ................................................................................. 5

Fed. R. Evid. 902 ......................................................................................................................... 7

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

## OF MOTION TO DISMISS

I.    INTRODUCTION

*A.    PARTIES*

Plaintiff herein, Humane Society of the United States ("HSUS"), is an organization whose sole purpose is the promotion of animal rights and the protection of animals from what it views as cruelty, including animal fighting.  HSUS filed the complaint in the above-captioned matter in the Superior Court of the District of Columbia naming as defendants Amazon.Com, Inc. ("Amazon") (an internet-based seller and/or distributor of products and provider of what it refers to as an on-line marketplace in which third parties can offer their own products), two trade magazine publishing companies (Dowd Publishers and Marburger Publishing Co.), a subscription fulfillment company (Magazine Express), and two Doe defendants.  The Complaint demands, *inter alia*, the complete and total suppression of the magazines.  Subsequent to the filing of the Complaint, a motion by all named defendants was made to remove the case to this Court given that a merits determination of the case rests upon the interpretation and application of federal statutes.  As a result, the case was transferred to this Court.

Dowd Publishing ("Dowd"), publisher of a periodical called *The Feathered Warrior,* was named as a defendant in the above-entitled action along with the publisher of another magazine, *Gamecock,* Marburger Publishing Co.  Both *Feathered Warror* and *Gamecock* are trade publications pertaining to the gamefowl industry.  Both magazines publish articles, discussions, and editorial commentary pertaining to a wide variety of gamefowl-related activities including, *inter alia,* animal health and safety issues, breeding and raising of birds, and legal and political

concerns.  Both accept advertising for gamefowl related matters.[1]  *Feathered Warrior* has an

express policy, identified in every issue, of not publishing material which is prohibited by the

Federal Animal Welfare Act, discussed further below.[2]  *See*, e.g., *The Feathered Warrior* (Jan.

2004) at 60, Exhibit 1 to Declaration of Constance M. Pendleton in Support of Amazon.Com,

Inc.'s Motion to Dismiss.   Only one subscriber to the magazines exists with the District of

Columbia where this action was first filed and that person, not a named party to this action, is a

member of the HSUS.[3]

B.    *NATURE OF THE CLAIMS*

The gravamen of the HSUS's Complaint is that the magazines in every respect, including

not only advertisements, but also non-advertising speech such as articles and editorial content

relating to legal, political, and social positions, promote an illegal activity, animal fighting.

Animal fighting, HSUS alleges, is not only cruel to animals but leads to – or is accompanied by –

all manner of other illegal or undesirable activities.  These activities, HSUS speculates, include

gambling, drug use, murder, rape, and other heinous crimes.  HSUS also alleges that animal

---

[1] Dowd Publisher and Marburger Publishing Co. advertise in each other's magazine.  Dowd Publisher does not actively solicit subscriptions from the District of Columbia and makes no effort to advertise in the District.

[2] In the interests of space, to reduce the amount of paper being filed, and for the convenience of the parties, Dowd Publishing will not duplicate exhibits and attachments filed by other defendants in the above-entitled action, but will refer to exhibits attached to Motions to Dismiss filed by other defendants where appropriate and will identify them as such.  Such exhibits are incorporated herein by reference as though appended hereto.

[3] Motion by Specially Appearing Defendant Marburger Publishing Co., Inc., for Leave Under Federal Rule of Civil Procedure 30(a)(2)(C) to Conduct Deposition of Eileen Wisor on Issues Related to Marburger's Intended Motion to Dismiss for Lack of Personal Jurisdiction, at 2; Plaintiff's Opposition to Defendant Marburger's Motion for Leave.

Page **5** of 25

fighting activities present a threat of animal or human disease transmission.[4]  The illegal activity

the magazines (and some videos alleged to be available through a website operated by defendant

Amazon) are alleged to promote is animal fighting, including cockfighting.  However, by

HSUS's own admissions in its Complaint and its websites, neither cockfighting nor all

paraphernalia that can be used for cockfighting is everywhere illegal.  *See* Complaint ¶23;

http://www.hsus.org/hsus_field/animal_fighting_the_final_round/cockfighting_fact_sheet/state_

cockfighting_laws.html.[5]

     For example, at the time of the filing of the Complaint, cockfighting was completely legal

in New Mexico and Louisiana.  New Mexico has recently passed a statute making cockfighting

illegal in New Mexico, though that statute is not yet in effect and may never go into effect.  In

some states, cockfighting is illegal only in some circumstances, such as where gambling is

occurring (*e.g.*, Virginia) or when admission is charged (also, *e.g.*, Virginia).  *Id.*  Only ten states

prohibit the possession of cockfighting implements and the District of Columbia does not.  *Id.*

Virtually every Territory of the United States permits cockfighting (*id.*), and no state or territory

of the United States has an outright ban on the possession or ownership of gamefowl not

possessed for the purposes of fighting the bird(s).  *Id.*  In other words, every state in the United

States and U.S. Territory permits at least some and, in some cases, *every* activity involving game

fowl addressed by the magazines at issue.  Even the Animal Welfare Act ("AWA"), 7 U.S.C. §

---

[4] As noted below, there are a number of activities involving gamefowl which are not illegal *anywhere*, such as breeding gamefowl as a hobby, or for show, or for non-fighting purposes.  Similarly, such activities often involve transporting birds or bird products from place-to-place and involve no greater or lesser danger to animal or human health and safety such activities involving other domestic fowl.

[5] In the context of a Motion to dismiss, this Court may take judicial notice of websites and documents referenced in the Complaint or whose authenticity is not disputed.  *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004); *Laborers' Pension Fund v. Blackmore Sewer Constr. Inc.*, 298 F.3d 600, 607 (7th Cir. 2002); *Doron Precision Systems, Inc. v. FAAC, Inc.*, 423 F. Supp. 2d 173, 179 n.8 (S.D.N.Y. 2006); *see*

2156(c), does not purport to make such activities illegal, but imposes certain limitations on the interstate transport of animals or other items for cockfighting purposes, *inter alia*.

What HSUS seeks in its lawsuit is the complete and total elimination of these magazines and all their content, utilizing a District of Columbia consumer protection statute (the District of Columbia Consumer Protection Procedure Act ("CPPA"), D.C. Code 28-3904(a), (e), (f), (x), D.C. Code 28-3905(k)(1)) as a vehicle for private enforcement. As will be discussed in detail *infra*, not only is this D.C. statute inapplicable to this case, it is being used as a pretext to enforce a federal statute, the AWA, and a District of Columbia statute for neither of which a private right of action exists.

This is not HSUS's first attempt to use other provisions of law as a means to attack activities which it finds repugnant, but which are nevertheless lawful, for the purposes of avoiding limitations on standing or jurisdiction. For example, at the same time it filed the current case[6], HSUS also filed a request for a *quo warranto* proceeding against Amazon in Washington State with the King County prosecuting attorney, an attempt which failed. *See* Memorandum of Points and Authorities in Support of Motion to Dismiss of Amazon.Com, Inc., Background, A., H. Likewise, approximately one year ago, HSUS petitioned the U.S. Postal Service to declare the *Feathered Warrior* and the *Gamecock* magazines unmailable, to revoke the mailing permits of the defendant publishers, and to prohibit further mailings of these magazines. *See* Exhibit 5 to Declaration of Constance M. Pendleton in Support of Defendant

---

also Fed. R. Evid. 902. Plaintiff can certainly not deny its own website.
[6] As noted by Amazon in more detail in its Memorandum of Points and Authorities in support of its Motion to Dismiss

Amazon's Motion to Dismiss of Amazon.Com, Inc. (Petition to Postal Service).[7]  This petition

remains pending.[8]

C.    *GROUNDS FOR MOTION TO DISMISS*

Defendant Dowd first notes that it has had the opportunity to review the motions to

dismiss of other defendants in this action and concurs in the arguments made therein regarding

the grounds for dismissal applicable to all defendants.  In the interests of reducing the amount of

paper filed in this case and for the convenience of the Court and the parties, defendant Dowd will

attempt to avoid too much duplication of those arguments and incorporates by reference those

arguments applicable to, and supportive of, defendant Dowd's position as though fully set forth

herein.  The grounds for dismissal of the Complaint herein are as follows:

(1)    Both this Court and the Superior Court lack subject matter jurisdiction over this

matter in that, *inter alia*, the plaintiff has failed to state claims for relief.  While couched in terms

---

[7] Plaintiff also demanded that all copies of these magazines be collected and destroyed.  How this is to be accomplished is unstated.  The very request emphasizes the unreasonableness of plaintiff's Complaint. Plaintiff not only wants unquestionably lawful material in the magazines banned along with that which it argues is unlawful, it wants lawfully possessed copies of the magazines collected and destroyed despite the fact that no law or regulation it points to, nor any other law, purports to make the magazines themselves unlawful to publish or possess, or even to distribute in intrastate commerce.

[8] Even were dismissal not mandated by the ripeness and exhaustion of administrative remedies doctrines discussed *infra*, the principles of deference first stated in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, (S.Ct. 1984), militate in favor of the Court abstaining from exercising its jurisdiction to determine whether the AWA applies to the magazines in question and to what extent if this Court is inclined to find that it has jurisdiction and the plaintiffs have standing, which defendant Dowd respectfully suggest are not there.  While *Chevron* and its progeny by their terms apply to adjudicative or formal interpretive determinations by agencies of the meaning of the statutes they administer, the same principles should apply to give the agency which first had this matter handed to it by plaintiff the opportunity to rule on HSUS's petition.  As will further be discussed, the provisions of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551, 702, govern to require exhaustion of remedies before a judicial remedy is available. Still further, the proper defendant in such a case would be the Postal Service if HSUS does not like its decision, not defendants in this case.

of the District of Columbia's consumer protection statute, this case is not within the zone of interest protected by consumer protection statute and is, in fact, an attempt to enforce a federal criminal statute (as well as a District criminal statute) for which there are no private rights of action; they contain neither a citizen's suit provision nor does the language of either statute support a private right of action by implication or interpretation;

(2)    Even were there private rights of action involved, plaintiff has no standing to pursue such action in that it (a) has not and cannot reasonably allege that it is in fact harmed, (b) that possibility of such harm is too speculative to confer standing; (c) that such harm, if it were to occur, would not be the result of any action of defendants, but of third parties over whom defendants have no control and are not in any way condoned by, or encouraged by defendants; and (d) no remedy that the Court might issue could prevent such harm from occurring since it cannot not be shown that the complete cessation of defendants' activities alleged by plaintiff to be illegal would have any impact on the activities of third parties not before the Court in either conducting animal fights or engaging in peripheral activities at or near animal fights.

(3)    Even if the plaintiff has standing and the court jurisdiction over all parties, the interpretation offered by plaintiff of the underlying federal laws would violate the First Amendment rights of all defendants and would be constitutionally impermissible;

(4)    Similarly, even if plaintiff has standing and no other jurisdictional defect exists, the remedies requested by plaintiff would constitute an overbroad response violative of First Amendment protections;

(5)    Even if the Court has jurisdiction or the plaintiff standing, the action is not ripe because an administrative proceeding is pending before the Postal Service and the plaintiff must

Page **9** of 25

first allow that proceeding to complete and to exhaust their Administrative Procedure Act ("APA") remedies before bringing suit. Even then, the proper defendant would be the Postal Service, whose decision plaintiff might oppose, not defendants herein;

(6)     Even if completion of the administrative process were not mandatory, this Court should abstain from hearing these claims in deference to the agency process, which was initiated by plaintiff, applying the principles underlying *Chevron, supra*;

(7)     HSUS cannot logically or legally prevail on a conspiracy claim for which no private right of action exists.

## II.     ARGUMENT

### A.     *STANDARD OF REVIEW*

As a general rule, motions to dismiss or for judgments on the pleadings should not be granted unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Revis v. Slocomb Industries, Inc.*, 765 F. Supp. 1212, 1213 (D. Del. 1991). Dismissal on the pleadings is proper only if the moving party is *clearly* entitled to prevail. *Kruse v. State of Hawaii*, 857 F.Supp. 741, 749, *aff'd* 68 F.3d 331 (D. Hawaii 1994). It must be apparent that there are no issues of material fact and only questions of law exist. *Corrigan v. Methodist Hospital*, 158 FRD 70, 71 (E.D. Pa. 1994).

In considering whether to dismiss an action, the Court must treat all of the nonmoving parties' *well-pleaded* allegations as true. *Abbott Laboratories v. Nutrimax Products, Inc.*, 844 F.Supp. 443, 445.D. Ill. 1994); *Mullins v. M.G.D. Graphics Systems Group*, 867 F.Supp 1578, 1579 (ND Ga. 1994). The allegations of the non-moving parties must be viewed in the light most favorable to those parties. *Revis, supra*, 765 F.Supp. at 1213; *Schroll v. Plunket*, 760 F.Supp. 1385, 1387 (D. Or. 1991), *aff'd* 932 F.2d 973; *see*, e.g., *Gould, Inc. v. United States*, 67

F.3d 925, 929 (Fed. Cir.1995). However, in applying these standards, the Court must be mindful

that in the case of a Rule 12(b)(1) motion, it has an affirmative obligation to ensure that it is

acting within the scope of its jurisdictional authority, which includes a determination as to

whether there is a defect in the plaintiff's standing. *See Abu Ali v. Gonzalez*, 387 F. Supp. 2d 16,

17 (D.D.C 2005). Even in the case of a Rule 12(b)(6) motion, the Court is not so bound by the

obligation to treat allegations in the Complaint as true and to draw favorable inferences from the

allegations where it is clear that such inferences cannot be reasonably drawn from the facts as

alleged or where the facts are actually allegation of legal conclusions. *Kowal v. MCI*

*Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

    While summary disposition of a case is not always a favored option, there are

circumstances in which courts are encouraged to use it. Some cases, particularly ones in which

First Amendment guarantees may be compromised by lengthy and costly judicial proceedings,

are particularly apt for summary review provided that legal questions are in the forefront. *See,*

*e.g.*, *Washington Post Co. v. Keogh*, 365 F.2d 965, 968 (D.C. Cir. 1966), *cert. denied*, 385 U.S.

1011 (1967).[9] Certainly such is the case here. The publishers of the magazines, which are not

huge and wealthy business enterprises, have as their policy the avoidance of unlawful publishing

activities and publish magazines that discuss, among other things, the very legal and political

issues that are at the heart of First Amendment principles. They have been targeted in this action

by a plaintiff with far more significant resources who clearly does not want countervailing views

to be expressed and who hopes to overbear the publishers' resources. Prolonged litigation in

---

[9] "In the First Amendment area, summary procedures are . . . essential. For the stake here, if harassment succeeds, is free debate. . . . The threat of being put to the defense of a suit . . . may be as chilling to the exercise of First Amendment freedoms as fear of the outcome of the lawsuit itself". *Id.*

Page **11** of 25

such a case may stifle first amendment expression even if the publishers, in the end prevail.

### B.   PLAINTIFF CANNOT UTILIZE THE DISTRICT OF COLUMBIA'S CONSUMER PROTECTION ACT AS MEANS TO ENFORCE FEDERAL OR DISTRICT CRIMINAL STATUTES WHICH GIVE IT NO PRIVATE RIGHT OF ACTION

The Complaint filed by plaintiff HSUS wisely does not expressly allege that it is entitled to relief under AWA or the District of Columbia's own animal cruelty statute (D.C. Code Ann. § 22-1015(a)(1)).  Clearly, it has no ability to directly enforce such statutes.  Congress may, and often does, confer authority on individuals or other entities to bring civil actions to enforce federal laws.  *See, e.g.,* the citizens suit provisions of the Federal Water Pollution Control Act (also known as the Clean Water Act ("CWA"), 33 U.S.C. § 1365.  However, absent express provisions such as that in 33 U.S.C. § 1365, or other clear indications that Congress, or – in the case of a state enactment – the state legislature, intended that a law be open to private enforcement, no such mechanism is available.  This is always true, but it is particularly true of criminal statutes.  *APCC Services, Inc. v. Sprint Communications Co.*, 418 F.3d 1238, 1245 (D.C. Cir. 2005) (citing *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001)).  To determine whether the Act creates a private right of action, courts "interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy."  *Id. See* also the extensive discussion in defendant Amazon's Memorandum of Points and Authorities in Support of Motion to Dismiss regarding the lack of a private right of action under the AWA and the District of Columbia Animal Cruelty statute, with which discussion defendant Dowd concurs and incorporates herein by reference.

As noted, however, HSUS is sufficiently clever in its pleading not to suggest that the Federal and District statutes themselves confer a right of action on the HSUS or even, if a right

of action, a personal remedy.[10]  Instead, the HSUS alleges that the District's consumer protection

statute provides an indirect means for HSUS to do indirectly what it cannot do directly.

However, the federal government's right to determine which of its statutes can be enforced by

private parties cannot be avoided by clever pleading.  Leaving aside for the moment the question

of whether the District (or a State, for that matter) *can* use its legislative power to confer a right

on itself or a third party a right to enforce a *federal* statute (and this is, in itself, no small

question), the question to be answered at the moment is whether it *intended* to do so.  It did not.

The District of Columbia statutory provisions on which plaintiffs rely provide as follows.

D.C. Code § 28-3904, subsections (a), (e), (f), (x) provide:

> It shall be a violation of this chapter, whether or not any consumer is in fact
> misled, deceived or damaged thereby, for any person to:
>
>> 1. (a) represent that goods or services have a source, sponsorship, approval,
>> certification, accessories, characteristics, ingredients, uses, benefits, or quantities
>> that they do not have;
>> . . . .
>>
>> (e) misrepresent as to a material fact which has a tendency to mislead;
>>
>> . . . .
>>
>> (f) fail to state a material fact if such failure tends to mislead;
>>
>> . . . .
>>
>> (x) sell consumer goods in a condition or manner not consistent with that
>> warranted by operation of sections 28:2-312 through 318 of the District of

---

[10] Even the most explicit federal provisions allowing private enforcement of statutes, such as the citizen suit provisions of the CWA cited above, or those of other environmental statutes, do not provide for a damages remedy for the plaintiffs, but merely a role in requiring the violator to comply with the law and to pay fines and penalties to the government where the statute authorizes the agency and court to levy such fine and penalties.

Columbia Official Code, or by operation or requirement of federal law;

D.C. Code §§ 28:2-312 to 318, referenced in subsection (x) of D.C. Code § 28-3904 pertain to the creation and disclaimer of implied and express warranties and the rules for dealing with inconsistent or conflicting warranties. Subsections 2-312 to 2-318 address respectively warranties of title (subsection 312); warranties created by descriptions forming the basis of the bargain or by express affirmations of fact or promise (subsection 313); warranties of merchantability (subsection 314); warranties of suitability for a particular purpose (subsection 315); exclusions of warranties (subsection 316); determining what happens when warranties conflict (subsection 317); and determining when warranties extend to third party beneficiaries (subsection 318). The specific and unambiguous language of D.C. §§ 28-2-312 to 2-318 expressly regulate the relationship between sellers and buyers. The remainder of D.C. Code § 28-3904 refers to warranties between buyer and seller that arise from operations or requirements of federal law.

Plaintiff essentially alleges, relying on D.C. Code § 28- 3905,[11] that advertisements and other content contained in the magazines at issue in this case are violative of these provisions of the D.C. Code and that Amazon.com, Inc. and the publisher defendants are "persons" making representations or misrepresentations, or omitting facts within the meaning of the D.C. statutes at issue. That is to say, that Amazon.com, Dowd Publishers, and Marburger Publishing Co. are, by accepting for publication advertisements, engaged in trade practices prohibited by the statute as though they were themselves selling the goods or services to consumers. This interpretation of

---

[11] § 28-3905, in relevant part provides: "A person, whether acting for the interests of itself, its members, or the general public, may bring an action under this chapter in the Superior Court of the District of Columbia seeking relief from the use by any person of a trade practice in violation of a law of the District of Columbia . . .". D.C. Code § 28-3905(k)(1).

the statute cannot be sustained. In reading each of the above statutory provisions relied on by plaintiff in context and together the legislative intent is abundantly clear. The legislature intended to create a mechanism to protect consumers from providers of goods and services from shady practices by the providers and/or sellers of goods and services and to permit persons to bring suit against such sellers and providers. It did *not* intend to require that magazines, newspapers, television, and radio provide a first-line investigatory service to police the trade practices of persons advertising in their media. Indeed, such a scheme would be unworkable. No media outlet of any kind (and the magazines certainly qualify as media on their face) has the resources to investigate every claim in every advertisement offered for publication. It is not difficult to imagine what such a rule would mean to newspapers like *The Washington Post*, *The New York Times*, or magazines on the market, among other publications, to be required to vet every advertisement and want ad it publishes, to determine if its factual representations are true or misleading or complete, or to make legal judgments about advertisement content. The legislature could not have contemplated that media publications would act as guarantors of the accuracy and honesty of the advertisements in its pages.

Stated differently, the "zone of interest"[12] addressed by the statute is the relationship between buyers and sellers. The consumer protection statute obviously, by its terms, exists to protect buyers from scurrilous, fraudulent, and deceptive practices by sellers, the source of the

---

[12] The term "zone of interest" is found most often in cases dealing with standing. That is, even when a statute authorizes private causes of action, such as under the federal Administrative Procedure Act ("APA"), 5 U.S.C. § 702, *et seq.*, or the AWA's citizen suit provision discussed *supra*, a person lacks standing to bring such a suit unless he or she is within the "zone of interest" intended to be protected by the statute. *See, e.g., generally, Sierra Club v. Morton*, 405 U.S. 727 (1972).

advertisement and the party making the representations.[13]

If, then, as defendant Dowd asserts, the District of Columbia's consumer protection

statute does not envision publications which are not parties to the buyer-seller transaction, then

the D.C. statute cannot serve as a base for bringing suit against Amazon, Dowd, or Marburger.

This conclusion is reinforced by federal jurisprudence which has held that the exclusive private

remedy for violations of the AWA lies with the agency tasked with its enforcement, the

Department of Agriculture.[14]  The Court of Appeals for the Fourth Circuit expressly held, in

*International Primate Protection League v. Institute for Behavioral Research* (799 F.2d 934 (4th

Cir. 1986), *cert. denied*, 481 U.S. 1004 (1987)) that Congress "intended the administrative

remedy to be the exclusive remedy." *Id.* at 940.  *See also*, Amazon's memorandum of Points and

Authorities in Support of Motion to Dismiss at pp. 12, *et seq.*  It is also impossible to see,

therefore, that the District of Columbia has the authority, even if it wanted to do so, to override

Congress's determination to restrict enforcement of the AWA to the Department of Agriculture,

as *Primate Protection League* shows.

That the District did not intend to bring the AWA within its consumer protection statute

───────────────────

[13] The publisher, of course, absent some other kind of relationship with the seller such as being a co-seller of the product (which is not, nor could not be honestly alleged in this case), is not the source of the advertisement and the representations therein.  It is not engaged in the transaction between buyer and seller and makes no representation to the reader as to the truth or falsity of the content of any advertisement.  In fact, all the publisher does is to sell space to the advertiser in which the advertiser's copy is printed.  In fact, if one is to carry plaintiff's assertion to its logical conclusion, any person who told a friend or acquaintance about an advertisement he saw on television or in print media might be held liable for having "published" the advertisement when telling the friend or acquaintance about it.

[14] The plaintiff *might* be able to argue that it had a Federal APA remedy against the *agency* if it had standing under the APA to challenge an adverse determination by the agency provided plaintiff could demonstrate the existence of the requisite elements of standing in the individual case.  As is discussed below, however, the APA would allow challenge only against the agency and not the defendants herein. Even then, its remedies would be highly restricted.

is evident from the fact that it specifically incorporated a reference to federal law with respect to federal law or requirements pertaining to *warranty* availability and enforcement in § 28-3904(x) and made no other reference to federal law. Indeed, § 28-3905(k)(1) specifically limits the ability to bring suit under its provisions to actions alleging "trade practice[s] in violation of a law *of the District of Columbia*." Emphasis added. The only apparent attempt to incorporate federal law in the District statute is federal law pertaining to warranty as shown. It would require a long and crooked path indeed, to find a connection to the AWA.

Still further, the magazines deal with matters which may or may not be illegal in the District of Columbia, but which, by HSUS's own admission, are legal in other jurisdictions and also with matters which are legal everywhere, as already discussed. What plaintiff suggests is that persons everywhere should be deprived of information as to activities which are legal elsewhere because they live in the District. This is analogous to suggesting that organized gaming cannot publish magazines anywhere that may make it into the District because it may entice people in the District to go to places outside the District to engage in behavior of which the District disapproves.

C.    *ASSUMING THE DISTRICT OF COLUMBIA CONSUMER PROTECTION ACT PROVIDES A PRIVATE RIGHT OF ACTION BASED ON THE AWA, PLAINTIFF LACKS STANDING*

Even if one assumes *arguendo* that the District did intend to create a private right of action in its consumer protection law which provides a path to the AWA *and* that it has the constitutional authority to override Congress's determination to limit enforcement of the AWA, the plaintiff lacks standing to bring such a suit.

Authorization of a private right of action does not automatically confer standing on any

Page **17** of 25

person or party having an "interest" in the area for which a private right of action was created. They must still meet the requirements of standing and be within the zone of interest within the meaning of the statute at issue. *Morton, supra*, 405 U.S. at 740-41 and *passim*. Even under the broad language of the District's Consumer Protection Act,[15] HSUS would have to show standing. *Williams v. Purdue Pharm. Co.*, 297 F. Supp. 2d 171, 177-78 (D.D.C 2003) (dismissing CPPA action for lack of standing). This it cannot do, despite its attempt to do so through extensive speculation and supposition.

> As defendant Amazon notes,
>
> The injuries HSUS alleges with respect to itself and its members are all harms related to animal fighting itself - not consumer deception. "The CPPA was adopted by the D.C. Council to protect local consumers from improper and fraudulent trade practices." *Williams*, 297 F. Supp. 2d at 174. The statute's "zone of interest" is clearly consumer protection from fraudulent business practices, and not harm to animals or those who care about animals, negating prudential standing with respect to those interests.

Memorandum of Points and Authorities in Support of Motion to Dismiss of Amazon.com at pp. 18. Even more importantly, as already noted, the entire purpose of HSUS is the protection of animal rights and welfare, not consumer rights. This fact reveals as a sham any claim that HSUS is looking out for the rights of consumers, whether its members, itself as a consumer, or the public in general. Standing cannot be based on such a foundation of sand. As noted in *Morton, supra*, and in other cases (*e.g., Public Citizen v. Lockheed Aircraft Corp.*, 565 F.2d 708 (D.C.Cir. 1977); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559, 560-61 (1992)) the plaintiff has to demonstrate that the challenged acts have harmed it personally and that it would benefit from a remedy provided by the Court. It can do none of these things and the allegations of the

---

[15] "A person, whether acting for the interests of itself, its members, or the general public, may bring an action under this chapter . . ." D.C. Code § 28-3905.

Complaint do not do so.

For example, it is not itself a consumer of the products advertised in the magazines and in fact, by its own admission, loathes them. It can claim, therefore, neither *actual* harm to itself or its members, nor a potential harm since neither it, nor its members, could be tempted to purchase or obtain a product advertised in the magazines for whatever virtues they may possess. Similarly, even were the side-effects of the primary activity it and its members as alleged, they have not alleged that it or its members are being involuntarily subjected to such activities associated with animal fighting. Even if HSUS or its members were so subjected, they cannot allege with a straight face that any remedy that it is requesting in this action would affect the existence or prevalence of animal fighting activities and those activities it alleges accompany animal fighting ventures. Indeed, suggesting that eliminating the magazines involved in this case would diminish the existence of such activities is beyond speculative, in fact it is irrational. HSUS is not injured within the meaning of the Consumer Protection Act, any injury that does exist is not traceable to defendants, and no remedy the Court could provide would change the conduct said to injure by HSUS one iota. *United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 554, 556-58 (1996). The alleged injuries, so attenuated from any conduct alleged to have occurred by defendants, and so speculative as to causation, likelihood, or degree, can support neither prudential standing nor Article III standing. *Lujan*, *supra*, 504 U.S. at 560-61; *see* also, Memorandum of Points and Authorities in Support of Motion to Dismiss of Amazon.com, Inc., pp. 19-24, incorporated herein by reference.

### D. PLAINTIFF'S VIEW OF THE STATUTE AND THE REMEDIES REQUESTED WOULD VIOLATE THE FIRST AMENDMENT RIGHTS OF DEFENDANTS

Page **19** of 25

There can be little question that the magazines[16] are engaged in protected speech within the meaning of the First Amendment to the United States Constitution. As already noted, the magazines publish not only advertisements, but also substantive articles and editorial content on legal, political, and public policy matters related to the game fowl industry which do not have as their purpose commercial transactions. Instead, they call for changes in state and federal laws pertaining to gamefowl activities, inform persons regarding legal issues, and disseminate information on animal and human health and safety issues, among other things. Even plaintiff does not attempt, at least so far, to suggest that the publications of such magazines are not speech within the meaning of the First Amendment. Plaintiff may suggest that it is speech unworthy of protection, but cannot argue that it is not speech. Indeed, the only reasonable inference to be drawn from the allegations regarding the HSUS member's subscription to the magazines at issue is that that member's subscription(s) were entered into as a device to invoke the court's jurisdiction under the District's Consumer Protection Act. Certainly, the member(s) did not do so for the purposes of entering into commercial transactions with advertisers.

Quite aside from the issue of whether Amazon can be held liable as a distributor rather than a publisher, the question of whether the magazines can be held liable for the contents of advertisements within its pages or have clearly non-commercial speech barred simply because the magazine also contains advertisements is substantial under the First Amendment.

There is a strong presumption against the validity of prior restraints on speech (*Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976); *New York Times Co., v. United States*, 403 U.S.

---

16 Defendant Dowd will not discuss herein the nature of the videos alleged to have been sold and their connection to the First Amendment as Dowd is not involved with videos and agrees with Amazon that the video question is moot in that Amazon made sure they were removed and would do so again if and when they were set on the site and Amazon became aware if it. Dowd also agrees that Amazon is statutorily protected against liability under 47 U.S.C. § 230 for the reasons it gives.

713, 714 (1993).   Whatever may be true of *commercial* speech, it is clear that what HSUS is

asking this Court to do is *not* simply to prohibit the publication of specifically identified

advertisements which, depending on content, may or may not involve commercial speech (for

example, an advertisement by a political candidate or a public policy advocacy organization

regarding game fowl legality).   It is instead asking this Court to ban the publication of the

magazines, regardless of their content in any given issue, simply because the HSUS finds the

whole concept of the content and the subject matter of the magazines abhorrent.   Indeed, HSUS

wants not only to eliminate future issues, it wishes to gather together and destroy all past copies

of the magazines as well.   In other words, plaintiff wants a total ban on pure speech that is

editorial, non commercial speech, because its view of the subject is that it is despicable.   Such a

prior publication ban has never been upheld, even in times of war when secret governmental

information regarding the war is being published.   *See, e.g., New York Times Co., supra*, at 730.

Nothing plaintiff is concerned about even begins to approach the level of war time secrets such

as troop distributions as to which prior restraints were not permitted.   *Id.*

Further, even were the suit designed only to block the publication and distribution of

advertisements, leaving the editorial and non-commercial content untouched, it could not

succeed.   So-called "purely commercial speech" is also entitled to First Amendment protection,

even if (for the sake of argument) to a somewhat lesser degree.   The consuming public has a

protected First Amendment interest in the free flow of truthful information concerning lawful

activity.   *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425

U.S. 748, 773 (1976).   The government may regulate such speech with regard to time, place and

manner provided the restrictions and are justified without reference to the content of the speech,

Page **21** of 25

serve a significant governmental interest, and leave open other channels of communication. Thus, even were the HSUS to limit itself to the advertisements in these magazines, it has problems. All of the matters to which they object are lawful in some, and sometimes in all, States and Territories of the United States, as discussed *supra*. Their objections are specifically based on the content of the advertisements. They can point to no significant governmental interest (their generalized allegations about the side effects of *some* gamefowl related activities are so speculative, as discussed, that they cannot justify standing much less the total ban they argue for). They would leave *no* other meaningful opportunities for or channels of communication for this content.

E.    *THE ABOVE-CAPTIONED MATTER IS NOT RIPE FOR LITIGATION*

The doctrine of "ripeness" is based on the notion that Courts should not issue premature judgments based on abstract disagreements in the context of administrative determinations. *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148 (1967).[17] Ripeness typically arises when pre-enforcement review of a statute is sought, at which point two considerations are examined, and both must be present in order for an issue to be ripe. *Id.* at 149. First, the plaintiff must show that a hardship is likely to be suffered in the absence of a judgment. *Id.* This hardship could be caused by the law as it will eventually be applied, by collateral injuries, or because compliance with the law causes the hardship, and the only other choice is to break the law with the resulting consequences of being prosecuted. The second consideration is whether the issues are fit for a judicial decision. An issue that specific facts would assist in the judicial consideration will be

---

[17] Akin to this doctrine is the doctrine of exhaustion of administrative remedies which requires that before litigation is resorted to, a disputed administrative determination must be resolved in the agency's process. *McCarty v. Madigan*, 503 U.S. 140, 144 (1992).

found not ripe, while an issue is ripe when it is mostly a question of law, one which does not depend on context. *Id.* In the current case, neither prerequisite for ripeness is found.

As previously discussed, plaintiff herein initiated an administrative process when, in April 2006, it filed a petition with the Postal Service asking it to declare the magazines at issue herein to be unmailable and to revoke the mailing permits for both Marburger and Dowd, the same relief it is requesting here. Although it is asking for other remedies provided for by the District's Consumer Protection Act, which Act is shown above to be unavailable to plaintiff, the heart of plaintiff's requested remedy, suppression of the magazines, is the same in the agency proceeding as in this action.

Whether plaintiff is unsatisfied with the length of time taken by the Postal Service in considering its case or is fearful that it will not achieve the result it wishes in the Postal Service proceeding, defendant Dowd respectfully submits that Ripeness and the doctrine and the requirement of exhaustion of administrative remedies apply to require this Court to dismiss this action for lack of ripeness and for failure to exhaust administrative remedies.

First, plaintiff can point to no hardship that accompanies a requirement that the administrative proceeding *it* initiated be completed before coming to any court. As has already been shown in this Memorandum and that of defendant Amazon, all of the allegations of harm that HSUS sets out in its complaint are speculative at best, to be charitable. Indeed, going forward with the HSUS-initiated proceeding will likely yield a result faster than a whole *new* proceeding in this Court. The HSUS might not like the eventual result, but it still has an opportunity in the event of an adverse decision to bring an action under the Administrative Procedure Act, 5 U.S.C. § 702 to vindicate its interest. As noted before, however, such an action

would be against the agency, not the defendants in this case.[18]

Second, ripeness applies here because the issues are not yet fit for judicial review. A decision by the Postal Service that supports HSUS's position will obviate the need for this action. The ball would then be in defendants Dowd's and Marburger's courts to challenge a decision adverse to them and the completed administrative proceeding would narrow the issues to those decided in the administrative proceeding. This would certainly conserve judicial resources.

Finally, as already discussed *supra* n. 16, having commenced an administrative proceeding, the plaintiff must exhaust its administrative remedies before proceeding to Court. Since the administrative proceeding is admittedly still pending, the plaintiff by definition has not exhausted its remedies. Therefore, this case should be dismissed.

F.    *PLAINTIFF'S CONSPIRACY CLAIM FAILS BECAUSE IT HAS NO PRIVATE CAUSE OF ACTION OR STANDING TO CHALLENGE AN ALLEGED CONSPIRACY TO VIOLATE A LAW AND IT HAS NEITHER STANDING NOR A PRIVATE CAUSE OF ACTION TO ENFORCE.*

As demonstrated herein and in Defendant Amazon's Memorandum of Points and Authorities in Support of its Motion to Dismiss, plaintiff HSUS has neither a legislatively created private right of action to enforce either the District's criminal or consumer protection statutes nor the Federal Animal Welfare Act. By necessary extension, if it cannot enforce these statutes, it cannot bring an action alleging a conspiracy to violate these statutes. It has shown no authority for the proposition that it can do so. Defendant Dowd joins completely in defendant Amazon's arguments with respect to the conspiracy claims (*see* Amazon's Memorandum of

---

[18] In raising this point, defendant Dowd is not waiving any legitimate argument it might make as an intervenor to, or other participation in, such an APA challenge, if any.

Points and Authorities in Support of Motion to Dismiss at 52-53) and sees no reason to expand still further thereon.

III.    CONCLUSION

For the reasons stated herein, and in the Motions and Memoranda of Points and Authorities in Support thereof filed by defendant Dowd's codefendants, defendant Dowd respectfully requests that this Court dismiss with prejudice all claims brought, or which could have been brought, by plaintiff HSUS in the above-entitled action.

Respectfully submitted this 4th day of May, 2007

_____/s/_____

ROBIN W. GROVER, ESQ.
Law Office of Robin W. Grover
1747 Pennsylvania Avenue, N.W.
Suite 1000
Washington, D.C.    20006
Tel. No. (202) 302-1653
Email: RGrover716@aol.com
District of Columbia Bar No.  366865

Attorney for Defendant
Dowd Publishers