IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
Civil Division

-------------------------------------------------------x
                            )

**THE HUMANE SOCIETY OF**    )
**THE UNITED STATES,**        )
                            )
            Plaintiff,      )     Case No. 07-0623 (CKK)
                            )
     v.                    )
                            )     **ORAL HEARING REQUESTED**
**AMAZON.COM, INC., ET AL.,**   )
                            )
           Defendants.    )
                            )
-------------------------------------------------------x

## AMAZON'S MOTION TO DISMISS

     Defendant Amazon.com, Inc. ("Amazon") hereby moves to dismiss Plaintiff The Humane Society of the United States' ("HSUS") Complaint pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim upon which relief may be granted.  This Motion is accompanied by a Memorandum of Points and Authorities in Support of Amazon's Motion to Dismiss, and the Declarations of David A. Zapolsky and Constance M. Pendleton in support with exhibits thereto relating to items referenced in the Complaint.  Grounds for dismissal are as follows:

     1.       Counts I-VII must be dismissed because the Animal Welfare Act ("AWA"), 7 U.S.C. § 2156(c), the federal Depiction of Animal Cruelty statute, 18 U.S.C. § 48(a), and the D.C. Cruelty to Animals statute, D.C. Code Ann. § 22-1015(a)(1) do not provide a private right of action and HSUS cannot overcome this requirement by styling its claims as D.C. consumer protection violations.

2.     Counts I-VII must be dismissed because HSUS lacks prudential and Article III standing and therefore there is no case or controversy. HSUS cannot circumvent standing requirement by styling its claims as D.C. consumer protection violations.

3.     Count I must be dismissed because it is moot with regard to the videos since they are not being offered for sale on Amazon and will be taken down upon adequate notice.

4.     Counts I-VII must be dismissed because they are barred by the absolute immunity provided "interactive computer service providers," such as Amazon, under Section 230 of the Communications Decency Act of 1996, 47 U.S.C. § 230.

5.     Counts I-VII must be dismissed because HSUS claims fail to state any claim under the CPPA, a consumer protection statute targeting fraudulent trade practices because (1) the CPPA does not apply to the sale of goods absent fraudulent misrepresentations and Amazon did not mislead any consumer as to the legal status of the magazines and videos, which have never been declared illegal; (2) magazines, much less Amazon, an online conduit for subscriptions, have never been held to "promote" animal fighting in violation of the AWA, to the extent, if any, that violation of the AWA is actionable under the CPPA; and (3) the CPPA does not apply to magazines containing ads for products that are legal in certain jurisdictions just because customers in other jurisdictions may view them.

6.     Counts I-VII must be dismissed because, as a distributor offering an online mechanism for subscribing or selling videos, Amazon has no duty to review the content of the magazines or videos. Even if Amazon's duties were that of a publisher, which it is not, the ads in the magazines do not on their face evidence unlawful activity.

7.     Counts I-VII must be dismissed because the First Amendment bars HSUS' claims against Amazon. The magazines are pure editorial, political speech – not commercial speech – and the content-based ban and treble damages HSUS seeks cannot survive strict scrutiny. Most importantly, the ban HSUS seeks would be an unconstitutional prior restraint on speech.

8.     Counts VI and VII for conspiracy must be dismissed because the D.C. and federal conspiracy statutes confer no private right of action and HSUS has failed to state a claim for any

acts that are themselves actionable.  Because there is no independent unlawful act, HSUS's D.C.

and federal conspiracy claims necessarily fail.

       9.      Counts I-VII should be dismissed because this suit is not ripe and HSUS has

failed to exhaust administrative remedies.  *See* Defendant Dowd Publishing's

contemporaneously filed Motion to Dismiss and Memorandum of Points and Authorities in

Support, incorporated by reference herein.

Dated this 4th day of May, 2007.

                                     Respectfully submitted,
                                     DAVIS WRIGHT TREMAINE LLP

                                            /s/
                                   Laura R. Handman (D.C. Bar No. 444386)
                                   laurahandman@dwt.com
                                   Constance M. Pendleton (D.C. Bar No. 456919)
                                   conniependleton@dwt.com
                                   1919 Pennsylvania Avenue, N.W., Suite 200
                                   Washington, DC 20006-3402
                                   (202) 973-4200

Of Counsel:                          (202) 973-4499 fax

David A. Zapolsky, Esq.          Jennifer Lenga Long (*pro hac vice* pending)
Vice President & Assoc. Gen. Counsel   jenniferlengalong@dwt.com
Litigation & Regulatory           Davis Wright Tremaine LLP
Amazon.com, Inc.                1501 Fourth Avenue
P.O. Box 81226                  Seattle, WA 98101-1688
Seattle, WA 98108-1226          (206) 622-3150
(206) 266-1323                  (206) 628-7699 fax
(206) 266-7010 fax

                                   Attorneys for Defendant Amazon.com, Inc.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
Civil Division

```
-----------------------------------------------x
                                                )
THE HUMANE SOCIETY OF                           )
THE UNITED STATES,                              )
                                                )
                      Plaintiff,                )     Case No. 07-0623 (CKK)
                                                )
        v.                                      )
                                                )     ORAL HEARING REQUESTED
AMAZON.COM, INC., ET AL.,                        )
                                                )
                      Defendants.               )
                                                )
-----------------------------------------------x
```

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
AMAZON'S MOTION TO DISMISS**

Laura R. Handman (D.C. Bar No. 444386)
laurahandman@dwt.com
Constance M. Pendleton (D.C. Bar No. 456919)
conniependleton@dwt.com
Davis Wright Tremaine LLP
1919 Pennsylvania Avenue, N.W., Suite 200
Washington, DC 20006-3402
(202) 973-4200
(202) 973-4499 fax

Of Counsel:

David A. Zapolsky, Esq.
Amazon.com, Inc.
P.O. Box 81226
Seattle, WA 98108-1226
(206) 266-1323
(206) 266-7010 fax

Jennifer Lenga Long (*pro hac vice* pending)
jenniferlengalong@dwt.com
Davis Wright Tremaine LLP
1501 Fourth Avenue
Seattle, WA  98101
(206) 633-3150
(206) 628-7699 fax

May 4, 2007

Attorneys for Defendant Amazon.com, Inc.

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .............................................................................. iii

PRELIMINARY STATEMENT ......................................................................... 1

BACKGROUND .............................................................................................. 3

    A.    Amazon's Online Mechanism for Offering Magazine
            Subscriptions............................................................................... 3

    B.    The Magazines ............................................................................ 4

    C.    Cockfighting ................................................................................ 6

    D.    The Videos .................................................................................. 6

    E.    Prior Proceedings ....................................................................... 7

    F.    This Lawsuit ................................................................................ 9

ARGUMENT ................................................................................................. 10

I.      MOTION TO DISMISS STANDARD ................................................. 10

II.     THE ANIMAL WELFARE STATUTES THAT UNDERLIE HSUS'S
        CLAIMS DO NOT PROVIDE A PRIVATE CAUSE OF ACTION;
        HSUS CANNOT AVOID THIS RESULT BY STYLING ITS CLAIMS
        AS D.C. CONSUMER PROTECTION VIOLATIONS................................. 12

    A.    No Private Right of Action is Provided Under the Federal and
            D.C. Animal Cruelty Laws ........................................................ 12

          1.    HSUS Has No Right to Sue Amazon Under Federal or
               District Animal Cruelty Laws ........................................... 12

          2.    HSUS Cannot Circumvent Its Inability To Bring a Private
               Action Under Animal Welfare Statutes By Styling Its
               Claims As D.C. Consumer Protection Violations.................... 15

III.    THERE IS NO CASE OR CONTROVERSY BECAUSE THE
        HUMANE SOCIETY LACKS STANDING TO BRING THIS
        LAWSUIT AND THE VIDEOS ARE NOT BEING SOLD............................ 17

    A.    HSUS Lacks Prudential Standing ............................................. 18

    B.    HSUS Lacks Article III Standing .............................................. 18

    C.    HSUS Cannot Avoid Its Lack of Standing Under the Animal
            Welfare Statutes by Styling Its Claims as D.C. Consumer
            Protection Violations ................................................................ 24

    D.    HSUS's Claims Are Moot with Regard to the Videos Since They
            Are Not Being Offered for Sale on Amazon's Marketplace.................. 26

IV.    HSUS'S CLAIMS ARE BARRED BY SECTION 230 OF THE
        COMMUNICATIONS DECENCY ACT.............................................. 27

i

V.    HSUS'S COMPLAINT FAILS TO STATE ANY CLAIM UNDER
      THE CPPA...............................................................................................................32

VI.   HSUS'S CLAIMS FAIL BECAUSE, AS A DISTRIBUTOR,
      AMAZON HAS NO DUTY TO REVIEW THE CONTENT OF THE
      MAGAZINES OR VIDEOS.....................................................................................35

      A.    As a Distributor Offering an Online Mechanism For Subscribing
            to Magazines and Selling Videos, Amazon Has No Duty to
            Investigate............................................................................................................35

      B.    Even If Amazon's Duty Were That Of A Publisher – Which It Is
            Not – Ads That On Their Face Are Not Unlawful Do Not
            Require Investigation \............................................................................................37

VII.  THE FIRST AMENDMENT BARS HSUS'S CLAIMS AGAINST
      AMAZON...................................................................................................................39

      A.    HSUS's Claims Pose an Unconstitutional Burden On Core First
            Amendment Rights That Cannot Survive Strict Scrutiny.....................................39

      B.    Amazon's Sale Of Subscriptions To The Magazines Is Not
            Commercial Speech...............................................................................................39

      C.    Even If Amazon's Online Offer Of Subscriptions to the
            Magazines Were Commercial Speech – And It Is Not – HSUS's
            Claims Fail Because the Proposed Ban And Treble Damages
            Would Violate the First Amendment......................................................................42

            1.    Sale Of Subscriptions to Gamefowl Magazines Is Lawful
                  And Not Misleading.....................................................................................42

            2.    Banning The Online Offer of Subscriptions to Magazines
                  or Awarding Treble Damages Would Not Significantly,
                  Directly, and Materially Reduce Illegal Cockfighting...............................44

            3.    HSUS's Claims Fail Because A Wholesale Ban Is Far
                  More Extensive Than Necessary And Ignores Reasonable
                  and Obvious Alternatives to Restrictions on Speech...................................45

      D.    HSUS's Equitable Claims Fail Because The Ban HSUS Proposes
            Constitutes An Unconstitutional Prior Restraint...................................................47

VIII. HSUS'S CONSPIRACY CLAIMS FAIL AS A MATTER OF LAW
      AND BECAUSE THERE IS NO EVIDENCE THAT AMAZON
      COMMITTED AN INDEPENDENT UNDERLYING UNLAWFUL
      ACT...........................................................................................................................49

CONCLUSION.........................................................................................................................50

# TABLE OF AUTHORITIES

## Cases

*44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484 (1996) .......................................... 43, 44, 45, 46

*Abu Ali v. Gonzalez*, 387 F. Supp. 2d 16 (D.D.C. 2005) ...................................................... 10, 26

*Alexander v. Sandoval*, 532 U.S. 275 (2001) ............................................................................ 12

*Alexander v. United States*, 509 U.S. 544 (1993) ...................................................................... 47

*Alicke v. MCI Communications Corp.*, 111 F.3d 909 (D.C. Cir. 1997) ...................................... 11

*American Fed'n of Gov't Employees v. Rumsfeld*, 321 F.3d 139
    (D.C. Cir. 2003) ...................................................................................................................... 18

*American Soc'y for Prevention of Cruelty to Animals v. Ringling Brothers
    & Barnum & Bailey Circus*, 317 F.3d 334 (D.C. Cir. 2003) ............................................. 22, 23

*Animal Legal Defense Fund Boston, Inc. v. Promivi Veal Corp.*,
    626 F. Supp. 278 (D. Mass. 1986), *aff'd*, 802 F.2d 440 (1st Cir. 1986) ............. 15, 16, 17

*Animal Legal Defense Fund, Inc. v. Glickman*, 204 F.3d 229
    (D.C. Cir. 2000) ............................................................................................................ 14, 22, 23

*Animal Lovers Volunteer Ass'n, Inc. v. Weinberger*, 765 F.2d 937
    (9th Cir. 1985) ......................................................................................................................... 22

*Arizona Public Service Co. v. EPA*, 211 F.3d 1280 (D.C. Cir. 2000),
    *cert. denied*, 532 U.S. 970 (2001) ....................................................................................... 27

*Association of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150 (1970) .........................18

*Auvil v. CBS "60 Minutes,"* 800 F. Supp. 928 (E.D. Wash. 1992) ....................................... 36, 37

*Bajalo v. Northwestern Univ.*, 369 Ill. App. 3d 576, 860 N.E.2d 556
    (2006) ....................................................................................................................................... 13

*Barnes v. Yahoo!, Inc.*, No. 05-9262005 WL 3005602
    (D. Or. Nov. 8, 2005) ............................................................................................................. 31

*Barrett v. Rosenthal*, 146 P.3d 510 (Cal. 2006) ....................................................................... 32

*Bartnicki v. Vopper*, 532 U.S. 514 (2001) ............................................................................... 46

*Ben Ezra, Weinstein & Co. v. America Online, Inc.*, 206 F.3d 980
    (10th Cir.), *cert. denied*, 531 U.S. 824 (2000) ............................................................... 28, 31

*Bennett v. Spear*, 520 U.S. 154 (1997) .................................................................................... 17

*Bigelow v. Virginia*, 421 U.S. 809 (1975) ........................................................................... 39, 40

*Blumenthal v. Drudge*, 992 F. Supp. 44 (D.D.C. 1998) ...................................................... 31, 32

*Board of Trustees of S.U.N.Y. v. Fox*, 492 U.S. 469 (1989) ..................................................... 46

*Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60 (1983) .............................................. 40, 42

*Brandenburg v. Ohio*, 395 U.S. 444 (1969) .............................................................................. 43

iii

*Braude & Margulies, P.C. v. Fireman's Fund Ins. Co.*, 468 F. Supp. 2d
190 (D.D.C. 2007) ............................................................................................ 8

*Braun v. Soldier of Fortune Magazine, Inc.*, 968 F.2d 1110
(11th Cir. 1992), *cert. denied*, 506 U.S. 1071 (1993) ................................... 38

*Brinkman v. Barrett Kays & Assocs.*, 155 N.C. App. 738,
575 S.E.2d 40 (2003) ...................................................................................... 16

*Broder v. Cablevision Systems Corp.*, 418 F.3d 187 (2d Cir. 2005) ..................... 16

*Browning v. Clinton*, 292 F.3d 235 (D.C. Cir. 2002) ........................................... 11

*Carey v. Population Servs. Int'l*, 431 U.S. 678 (1977) .......................................... 42

*CCBN.com, Inc. v. C-call.com, Inc.*, 73 F. Supp. 2d 106 (D. Mass. 1999) ............ 27

*Central Hudson Gas & Elec. Corp. v. Public Service Comm'n*,
447 U.S. 557 (1980) ................................................................................. *passim*

*Chicago Lawyers' Committee for Civil Rights Under the Law, Inc. v.
Craigslist, Inc.*, 461 F. Supp. 2d 681 (N.D. Ill. 2006) .............................. 30, 32

*City of Chicago v. Morales*, 527 U.S. 41 (1999) ................................................... 41

*City of Cincinnati v. Discovery Networks, Inc.*, 507 U.S. 410
(1993) .............................................................................................................. 46

*Clarke v. United States*, 915 F.2d 699 (D.C. Cir. 1990) ........................................ 26

*Coles v. Washington Free Weekly*, 881 F. Supp. 26 (D.D.C. 1995),
*aff'd*, 88 F.3d 1278 (D. C. Cir. 1996) .............................................................. 11

*College Sports Council v. Gov't Accountability Office*, 421 F. Supp. 2d 59
(D.D.C. 2006) ................................................................................................. 12

*Com. v. Fricchione*, Crim.No. 0012396-2004 (Pa. Ct. Comm. Pleas,
sentenced March 13, 2006) ............................................................................ 33

*Common Cause v. Federal Election Comm'n*, 108 F.3d 413
(D.C. Cir. 1997) ....................................................................................... 19, 23

*Commonwealth v. Balog*, 672 A.2d 319 (Pa. Super. 1996),
*cert. denied*, 519 U.S. 1129 (1997) ................................................................. 33

*Conboy v. AT&T Corp.*, 241 F.3d 242 (2d Cir. 2001) ............................................ 16

*Conley v. Gibson*, 355 U.S. 41 (1957) ................................................................... 11

*Corbis v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090 (W.D. Wash. 2004) ............... 30

*Cubby, Inc. v. CompuServe, Inc.*, 776 F. Supp. 135 (S.D.N.Y. 1991) ............... 35, 36

*Doe v. American Online, Inc.*, 718 So.2d 385 (Fla. Dist. Ct. App. 1998),
*cert. denied*, 534 U.S. 891 (2001) ............................................................... 4, 29

*Doe v. Bates*, 2006 WL 3813758 (E. D. Tex. 2006) ............................... 28, 29, 30, 32

*Doron Precision Systems, Inc. v. FAAC, Inc.*, 423 F. Supp. 2d 173
(S.D.N.Y. 2006) ................................................................................................. 4

*Dugar v. Coughlin*, 613 F. Supp. 849 (S.D.N.Y. 1985) ...................................... 49

*Dunagin v. City of Oxford*, 718 F.2d 738 (5th Cir. 1983),
*cert. denied*, 467 U.S. 1259 (1984) ..................................................................... 43

*\*Edenfield v. Fane*, 507 U.S. 761 (1993)............................................... 42, 43, 44

*Edmonson v. Pearce*, 91 P.3d 605 (Okla. 2004)................................................. 41

*EEOC v. St. Francis Xavier Parochial School*, 117 F.3d 621
(D.C. Cir. 1997) ................................................................................................. 3

*\*Eimann v. Soldier of Fortune Magazine, Inc.*, 880 F.2d 830 (5th Cir. 1989),
*cert. denied*, 493 U.S. 1024 (1990) ..................................................................... 37

*\*Fair Employment Council of Greater Washington, Inc. v. BMC Marketing
Corp.*, 28 F.3d 1268 (D.C. Cir. 1994) ............................................................... 23

*Federal Sav. & Loan Ins. Corp. v. Reeves*, 816 F.2d 130 (4th Cir. 1987).................. 12

*Fiorino v. Turner*, 476 F. Supp. 962, 963 (D. Mass. 1979) ............................... 49

*\*Friends of Tilden Park, Inc. v. District of Columbia*, 806 A.2d 1201
(D.C. 2002).......................................................................................................... 24

*Fund for Animals v. Mainella*, 335 F. Supp. 2d 19 (D.D.C. 2004)...................... 10

*\*Gentry v. eBay, Inc.*, 99 Cal. App. 4th 816, 121 Cal. Rptr. 2d 703
(Cal. Ct. App. 4th Dist. 2002) ........................................................................... 30

*\*Greater New Orleans Broadcasting Ass'n v. United States*,
527 U.S. 173 (1999) ..................................................................................... 43, 46

*\*Hakki v. Zima Co.*, No. 03-9183, 2006 WL 852126
(D.C. Super. Mar. 28, 2006)............................................................ 25, 32, 34, 35

*\*Hamrick v. Gottlieb*, 416 F. Supp. 2d 1 (D.D.C. 2005) ................................... 12

*Houston v. Hill*, 482 U.S. 451 (1987) ............................................................... 41

*\*Howard v. Riggs Nat'l Bank*, 432 A.2d 701 (D.C. 1981) .......................... 18, 33

*Humane Soc'y of the United States v. Babbit*, 46 F.3d 93 (D.C. Cir. 1995)................ 22

*Humane Society of the United States v. Johanns*, No. 06-265,
slip op. (D.D.C. April 13, 2007) (Kollar-Kotelly, J.),
appeal docketed, No. 07-5120 (D.C. Cir. April 16, 2007)................................. 14, 23

*\*In Defense of Animals v. Cleveland Metroparks Zoo*, 785 F. Supp. 100
(N. D. Ohio 1991) .............................................................................................. 13

*In re: Madison Guar. Sav. & Loan Ass'n*, 173 F.3d 866, 868 (D.C. Cir. 1999)........... 18

*\*International Primate Protection League v. Institute for Behavioral
Research*, 799 F.2d 934 (4th Cir. 1986), *cert. denied*, 481 U.S. 1004
(1987) ................................................................................................................. 13

*Kaempe v. Myers*, 367 F.3d 958 (D.C. Cir. 2004) .................................................... 3

*Kathleen L. v. City of Livermore*, 87 Cal. App. 4th 684 (Ct. App. 2001) ............... 28, 31

*Kowal v. MCI Communications Corp.*, 16 F.3d 1271 (D.C. Cir. 1994) ...................... 11

*Laborers' Pension Fund v. Blackmore Sewer Constr. Inc.*, 298 F.3d 600
    (7th Cir. 2002) .................................................................................................... 4

*\*Lerman v. Flynt Distributing Co.*, 745 F.2d 123 (2d Cir. 1984),
    *cert. denied*, 471 U.S. 1054 (1985) ................................................................... 36

*Lewis v. Time, Inc.*, 83 F.R.D. 455 (E.D. Cal. 1979), *aff'd*, 710 F.2d 549
    (9th Cir. 1983) .................................................................................................. 36

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ...................................... 19, 20, 22

*McCoy v. United States*, 890 A.2d 204 (D.C. 2006) .............................................. 49

*Miami Herald Publishing Co. v. Tornillo*, 418 U.S. 241 (1974) ............................. 48

*\*Moor-Jankowski v. Board of Trustees of New York University*,
    No. 96 Civ. 5997, 1998 WL 474084 (S.D.N.Y. Aug. 10, 1998) ...................... 13

*Mountain States Legal Found. v. Glickman*, 92 F.3d 1228 (D.C. Cir. 1996) ............ 26

*Mutual Pharmaceutical Co. v. Ivax Phar. Inc.*, 459 F. Supp. 2d 925
    (C.D. Cal. 2006) ............................................................................................... 27

*Nani v. Brownell*, 153 F. Supp. 679 (D.D.C. 1957) .............................................. 50

*\*Nat'l Treas. Employees Union v. United States*, 101 F.3d 1423 (1996) ............... 21, 23

*\*Near v. Minnesota ex rel. Olson*, 283 U.S. 697 (1931) ....................................... 47

*\*Nebraska Press Ass'n v. Stuart*, 427 U.S. 539 (1976) ................................... 47, 48

*Neitzke v. Williams*, 490 U.S. 319 (1989) ............................................................ 10

*\*New York Times Co. v. United States*, 403 U.S. 713 (1971) .......................... 47, 48

*Parker v. Google, Inc.*, 422 F. Supp. 2d 492 (E.D. Pa. 2006) ............................... 32

*Paws v. United States Dep't of Agriculture*, No. 95-4719, 1996 WL
    524333 (E.D. Pa. Sept. 9, 1996) ..................................................................... 13

*Pearsall v. United States*, 812 A.2d 953 (D.C. 2002) ........................................... 49

*People v. Fricchione*, 20 A.D.3d 433, 797 N.Y.S.2d 310 (2005)) ......................... 33

*People v. Thomason*, 84 Cal. App. 4th 1064, 101 Cal. Rptr. 2d 247 (2000) .......... 15

*Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*,
    413 U.S. 376 (1973) ......................................................................................... 42

*\*Plotkin v. Ryan*, 239 F.3d 882 (7th Cir. 2001) ..................................................... 19

*Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219 (6th Cir. 1996) .............. 47

*R.A.V. v. City of St. Paul*, 505 U.S. 377 (1992) ................................................... 49

*Rainbow/Push Coalition v. FCC*, 396 F.3d 1235 (D.C. Cir. 2005) ........................ 19

*Riley v. National Federation of Blind, 487 U.S. 781 (1988)............................................ 39, 40, 48

Rockefeller v. United States Court of Appeals, 248 F. Supp. 2d 17 (D.D.C.
    2003) ............................................................................................................................ 49

*Schneider v. Amazon.com, Inc., 108 Wash. App. 454, 31 P.3d 37 (2001).................. 29, 30, 31, 32

Sierra Club v. Morton, 405 U.S. 727 (1972) ........................................................................ 19, 20

Silver v. United States, 726 A.2d 191 (D.C. 1999) ...................................................................... 15

*Simon & Schuster, Inc. v. Members of the New York State Crime Victims
    Board, 502 U.S. 105 (1991) ........................................................................................... 39

Smith v. California, 361 U.S. 147 (1959) .......................................................................... 36, 41

Smith v. Intercosmos Media Group, Inc., No. 02-1964, 2002 WL
    31844907 (E.D. La. Dec. 17, 2002) .............................................................................. 29

State v. Arnold, 557 S.E.2d 119 (N.C. App. 2001),
    aff'd, 569 S.E.2d 648 (N.C. 2002) ................................................................................ 33

*Stoner v. eBay, Inc., No. 305666, 2000 WL 1705637
    (Cal. Super. Nov. 1, 2000) ............................................................................................ 30

Thompson v. District of Columbia, No. 97cv1015, 2007 WL 853126
    (D.D.C. Mar. 20, 2007)................................................................................................... 8

Transwestern Pipeline Co. v. FERC, 897 F.2d 570 (D.C. Cir.),
    cert. denied, 498 U.S. 952 (1990) ................................................................................. 26

United Gamefowl Breeders Ass'n v. Veneman, No. 03-970, slip op. at 25-
    26 (W.D. La. May 27, 2005)........................................................................................... 34

United States v. Eichman, 496 U.S. 310 (1990) ........................................................................ 41

United States v. Thompson, 118 F. Supp. 2d 723 (W.D. Tex. 1998)............................................ 33

United States v. United Foods, 533 U.S. 405 (2001)................................................................... 40

Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,
    455 U.S. 489 (1982).......................................................................................................41

Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council,
    Inc., 425 U.S. 748 (1976)............................................................................................... 40

Voicenet Communications, Inc. v. Corbett, No. 04-1318, 2006 WL
    2506318 (E.D. Pa. 2006)........................................................................................... 30, 31

Walters v. Seventeen Magazine, Inc., 195 Cal. App. 3d 1119,
    241 Cal. Rptr. 101 (1987) .............................................................................................. 38

Washington Post Co. v. Keogh, 365 F.2d 965 (D.C. Cir. 1966),
    cert. denied, 385 U.S. 1011 (1967)................................................................................ 11

Whispering Pines Animal Kingdom, LLC v. Kinde, No.02-cv-70595, 2002
    WL 484649 (E.D. Mich. Mar. 6, 2002) ......................................................................... 13

*Wilderness Soc'y v. Norton, 434 F.3d 584 (D.C. Cir. 2006)............................................ 20, 21, 26

vii

*Williams v. Purdue Pharm. Co., 297 F. Supp. 2d 171 (D.D.C. 2003) ...................... 18, 24, 25, 32

Yuhas v. Mudge, 322 A.2d 824 (N.J. Super. 1974) ........................................................ 38

*Zeran v. America Online, Inc., 129 F.3d 327 (4th Cir. 1997),
    cert. denied, 524 U.S. 937 (1998) .......................................................... passim

**Statutes and Regulations**

7 U.S.C. § 2156(c) .................................................................... 7, 12, 33

7 U.S.C. § 2156(d) ............................................................................ 34

18 U.S.C. § 371 ......................................................................... 10, 49

18 U.S.C. § 48 ................................................................................. 14

18 U.S.C. § 48(a) ........................................................................... 9, 12

18 U.S.C. § 48(b) .............................................................................. 33

28 U.S.C. § 1441 ............................................................................... 9

39 U.S.C. § 3001(a) ............................................................................ 7

47 U.S.C. § 230 ........................................................................ passim

D.C. CODE ANN. § 22-1015(a)(1) ...................................................... 12, 15

D.C. CODE ANN. § 22-1805a ............................................................ 49, 50

D.C. CODE ANN. § 28-3904 ................................................................... 9

D.C. CODE ANN. § 28-3905(k)(1) ........................................................ 9, 24

N.C. Gen. Stat. § 19A-1 (2003) ........................................................... 15

Wash. RCW 16.52.117 (1)(b) .............................................................. 8, 9

**Rules**

Fed. R. Civ. P. 12(b)(1) .................................................................... 1, 10

Fed. R. Civ. P. 12(b)(6) ............................................................... passim

Fed. R. Civ. P. 12(c) .......................................................................... 32

**Other**

135 Cong. Rec. H1932-03 (daily ed. May 16, 1989) .................................. 14

Deawn A. Hewrsini, Can't Get There from Here . . . without Substantive
    Revision:  The Case for Amending the Animal Welfare Act, 70 UNIV.
    OF MISSOURI KAN. C. LAW R. 145 (2001) ...................................... 13

H.R. 137, 110th Cong. (1st Sess. 2007) ................................................. 6

H.R. Conf. Rep. 94-976 (1976), reprinted in 1976 U.S.C.C.A.N, 783 ......... 34

*H.R. Rep. No. 106-397, 1999 WL 959195 ........................................... 14

James W.M. Moore, 15-101 MOORE'S FEDERAL PRACTICE § 101.42 (3d
    ed. 2006) .................................................................................... 20

Katharine M. Swanson, Note, *Carte Blanche for Cruelty: The Non-Enforcement of the Animal Welfare Act*, 35 U. OF MICH. J. L. REFORM 937, 945 (2002)........................................................................................ 14

*Restatement (Second) of Torts* § 581 (1976).......................................... 35

Robert Sack, *Sack on Defamation* § 7.3.1 (3d ed. 2007) ........................ 35

Rodney A. Smolla, *Smolla and Nimmer on Freedom of Speech*, § 15.7 (2005)........................................................................................................ 48

Shagiko Ito, *Beyond Standing: A New Solution for Animal Welfare*, 46 SANTA CLARA L. REV. 377, 393 (2006)........................................... 13

William A. Reppy, Jr., *Citizen Standing to Enforce Anti-Cruelty Laws by Obtaining Injunctions: the North Carolina Experience*, 11 ANIMAL L. 39 (2004) ...................................................................... 15

*Cases chiefly relied upon are marked with an asterisk.

## PRELIMINARY STATEMENT

The Humane Society of the United States ("HSUS" or "Plaintiff") seeks no less than the total suppression of two magazines about gamecocks, not only because, HSUS claims, the magazines contain ads for illegal cockfighting activities, but because the magazines themselves – including their editorial, news, and political content – promote unlawful animal fighting. (HSUS Complaint ("Compl.") ¶¶ 50-67, 97). HSUS does not direct its claims to those who manage or participate in cockfighting. No advertiser of cockfighting is even named in this suit. Instead, HSUS targets the publishers and distributors of speech that, though legal, HSUS finds abhorrent. The named defendants are: two magazine publishers, a magazine subscription fulfillment house, and, most remarkably, Amazon.com ("Amazon"), because it offers an online mechanism for subscribing to two magazines about gamecocks, among some 90,000 titles it offers, and an online marketplace service where third-parties can offer for sale videos which HSUS contends show dogfighting.

In lieu of answering, Amazon moves, pursuant to 12(b)(1) and (6) of the Federal Rules of Civil Procedure, to dismiss the Complaint in its entirety with prejudice, on each of the following grounds:

Point I: As a threshold matter, HSUS, a private plaintiff, cannot enforce criminal statutes through this private civil lawsuit against a private defendant. The District of Columbia Consumer Protection Procedures Act ("CPPA") is the unwieldy procedural vehicle to which HSUS hitches this unprecedented effort to ban speech. Why does HSUS invoke a local law designed to protect consumers from fraudulent retail practices? Because the federal and state animal protection laws which HSUS is seeking to enforce do not provide a private cause of action, but instead vest sole enforcement power in government authorities.

Point II: HSUS cannot show prudential standing or the prerequisites for Article III standing – injury-in-fact, causation and redressability. The alleged harms, everything from rape and murder to avian flu, are speculative at best and are neither traceable to Amazon's business nor remediable by a ban that depends on actions by parties not currently before the Court: those

who organize, attend, and advertise animal fighting.  Like other attempts by animal rights groups to hijack local consumer protection laws to their cause, the CPPA claims should be rejected at the outset for lack of standing, since the CPPA is concerned with consumer, not animal, protection and HSUS has not alleged that one HSUS member was misled by Amazon into buying either the magazines or the videos.  There is also no case or controversy as to the alleged dogfighting videos since these postings have been taken down from Amazon's website and will continue to be removed upon notice.

Point III:  The suit against Amazon is barred under the absolute immunity provided by Section 230 of the Communications Decency Act of 1996, 47 U.S.C. § 230 because Amazon is an online distributor of third-party content, namely, videos posted by third parties for sale through Amazon's Marketplace and magazines published by third parties.

Point IV:  The Complaint fails to state a claim under the CPPA, a consumer protection statute, designed to protect consumers from merchants engaging in fraudulent trade practices.  Amazon cannot be said to have falsely represented to consumers that these publications are legal when these publications have never been declared illegal.  Indeed, the Animal Welfare Act ("AWA") ban on activities "promoting" animal fighting has never been held to include magazines – nor has its D.C. counterpart – negating any CPPA claim for sales in a manner contrary to federal law.  Since cockfighting and related activities are not illegal in every jurisdiction, ads for those activities in jurisdictions where they are legal could not fall afoul of the AWA or the CPPA.

Point V:  As a distributor, even if it did not have Section 230 immunity, Amazon has no duty to review the content of videos or magazines for which it offers a subscription mechanism, absent notice of a specific ruling – not just HSUS's claim – that the publications violate the law.  Even if Amazon could physically review the 90,000 publications for which it offers subscriptions, the ads contained in those publications that on their face do not pose a substantial danger of harm to the public or violate the law would not put a publisher, much less a distributor like Amazon, on notice.

2

Point VI:  Most importantly, any ban or treble damages against Amazon would clearly violate the First Amendment.  Such a total ban on speech does not come close to satisfying even the intermediate scrutiny applicable if only advertising were being banned.  In fact, however, Amazon would be effectively banned from selling the entire magazine – editorial, news and commentary included.  Such a ban constitutes an unconstitutional prior restraint.  Treble damages likewise cannot satisfy the strict scrutiny applicable to any such direct burden on speech.  At bottom, enforcing the laws against those actually engaged in illegal animal fighting rather than Amazon is the more narrowly tailored means of accomplishing the goals, however laudable, HSUS is seeking to promote.

Point VII:  Finally, HSUS fails to state a claim under the federal and D.C. criminal conspiracy statutes, because neither statute confers a private right of action and there are no independent unlawful acts for which Amazon can be held liable.  Depending as they must on the fate of all the other counts, the conspiracy counts must fall with the rest.

## BACKGROUND

**A.     Amazon's Online Mechanism for Offering Magazine Subscriptions:**  *The Feathered Warrior* and *The Gamecock*, the magazines in suit (the "Magazines"), are only two of the over 90,000 magazine and periodical titles for which Amazon offers an online mechanism enabling customers to order subscriptions.  *See* http://www.amazon.com, attached as Ex. A to the Declaration of David A. Zapolsky ("Zapolsky Decl.") ¶ 2.[1]  Amazon does not fulfill customer

---

[1] For the Court's convenience, rather than refer the Court to Amazon's website, Amazon has attached the relevant sections of its website to the Declaration of David A. Zapolsky ("Zapolsky Decl. ¶ __").  The Court can consider the Amazon and HSUS websites, as well as the Magazines, without converting this motion to dismiss to one for summary judgment because both the websites and the Magazines are referenced in the Complaint and are integral to evaluating the claims on a Motion to Dismiss.  *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997) (in deciding a 12(b)(6) motion to dismiss, court will consider facts alleged in the pleadings and documents attached as exhibits or incorporated by reference in the pleadings), *aff'd*, 254 F.3d 315 (D.C. Cir. 2000).  *See also Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004) (documents appended to motion to dismiss whose authenticity are not disputed may be considered where they are referred to in the complaint and are integral to plaintiff's claim).  Websites also are subject to judicial notice.  *See Laborers' Pension Fund v. Blackmore*

orders for the Magazines, but instead refers such order requests to Magazine Express, Inc.

("Magazine Express"), the subscription service provider for the Magazines. *See* Compl. ¶¶ 9,

69-70; *see* Zapolsky Decl. ¶ 3, Exs. B, C.  Amazon contracts with Magazine Express to fulfill

customer subscription orders, not the magazine publishers, and Amazon never receives physical

possession of the Magazines. *See* Compl. ¶¶ 9, 69-70; *see* Zapolsky Decl. ¶ 3, Exs. B, C.  The

Magazines are accompanied by product descriptions displayed on their detail pages.  The product

descriptions are created not by Amazon, but by the publishers. *See* Compl. ¶¶ 69-70, 78-80;

Zapolsky Decl. ¶ 4.  The publishers provide that product description information to the

subscription service provider, who in turn provides the information to Amazon in accord with the

instruction on the webpage to "add a cover image and description to your magazine or

periodical." *See* Compl. ¶¶ 69-70, 78-80; *see* Zapolsky Decl. ¶ 4, Ex. D.

**B.**     **The Magazines:**  *The Feathered Warrior*, published by Dowd Publishing Co., Inc.

("Dowd"), and *The Gamecock*, published by Marburger Publishing Co., Inc. ("Marburger")

(collectively, the "Publishers"), both out of Arkansas, are monthly publications and, like most

magazines, contain editorial content as well as advertisements.[2]  The publisher's product

description for *The Feathered Warrior*, as posted on Amazon.com, states:  "Published since

1903, Feathered Warrior is a trade magazine devoted to those [sic] the breeding, raising, and

fighting of gamefowl." *See* Zapolsky Decl. ¶ 3, Ex. C.  The product description for *The

Gamecock* on Amazon.com says that the magazine contains:  "Articles on gamefowl, poultry

---

*Sewer Constr., Inc.*, 298 F.3d 600, 607 (7th Cir. 2002) (taking judicial notice of performance
regarding a bank's ownership from the bank's Web site); *Doron Precision Systems, Inc. v.
FAAC, Inc.*, 423 F. Supp. 2d 173, 179 n.8 (S.D.N.Y. 2006) (noting that courts may, on a Rule
12(b)(6) motion, take judicial notice of information publicly announced on a website if the
website's authenticity is not in dispute and capable of ready and accurate determination); *Doe v.
America Online, Inc.*, 718 So.2d 385 (Fla. Dist. Ct. App. 1998) (affirming motion to dismiss on
CDA Section 230 grounds and rejecting claim that lower court erred by referring to information
not contained on the face of the complaint).

[2] Copies of two of the Magazines cited in the Complaint, *The Feathered Warrior* (Jan. 2004 ed.)
and *The Gamecock* (Dec. 2006 ed.), as well as relevant excerpts of other editions of the
magazines cited in the Complaint, are attached to the Declaration of Constance M. Pendleton
("Pendleton Decl.") Exs. 1-4.

diseases, sport results, advertising for supplies for proper care of gamefowl and some history of gamefowl." *See id.* The Magazines discuss topics from the care and feeding of cocks, breeding and showing tips, including "beginner basics" in raising cocks and care of hatching eggs, to avian flu and other poultry disease control. *See* Pendleton Decl., Ex. 1 (*The Feathered Warrior* (Feb. 2004) at 40-46, 47-48); Ex. 2 (*The Gamecock* (Dec. 2006) at 51-63); Ex. 3A *(The Feathered Warrior* (Apr. 2004) at 28-29, 29-32, 39-40, 41-43, 44-45); Ex. 3B (*The Feathered Warrior* (Feb. 2004) at 30). They also contain editorial commentary on laws prohibiting cockfighting and encourage readers to petition their state legislatures and Congress to change the laws. *See* Pendleton Decl. Ex. 1 (*The Feathered Warrior* (Jan. 2004) at 21-24); Ex. 2 (*The Gamecock* (Dec. 2006) at 44, 99-100); Ex. 3A (*The Feathered Warrior* (Apr. 2004) at 2, 23-26, 58-59);.

The Magazines include ads that range from ads for knives and spurs, hormones, and game clubs to ads for fowl, deworming aids, and the United Gamefowl Breeders Association. Many of the ads contain disclaimers, such as an ad for several breeds of gamefowl (*e.g.*, Lacy Roundhead, Kelso, Albany), which state: "I am making this shipment with the understanding that the contents of this shipment are not to used in any illegal activity contrary to any state or federal law." *See* Pendleton Decl. Ex. 1 (*The Feathered Warrior* (Jan. 2004) at 8, 17). Other ads state: "For Breeding Purposes Only." *See* Pendleton Decl. Ex. 1 (*The Feathered Warrior* (Jan. 2004) at 61); Ex. 2 (*The Gamecock* (Dec. 2006) at 1, 71). *The Feathered Warrior* contains a blanket disclaimer that states "ATTENTION: Material of any nature in violation [of] the Animal Welfare Act of 1976 will not be published in the Warrior." *See* Pendleton Decl. Ex. 1 (*The Feathered Warrior* (Jan. 2004) at 59, 60). As of the date of the Complaint, there is only one subscriber in Washington, D.C. to the Magazines (to *The Gamecock*) and she is a member of HSUS.[3]

---

[3] *See* May 1, 2007 Memorandum Opinion at n.1 ("Ms. Elinor Wisor is a member of Plaintiff The Humane Society of the United States") (citing Def. Marburger's Mot. at 2, Pl.'s Opp'n at 1 n.1) and ("Ms. Wisor, a District of Columbia resident and member of the Plaintiff Humane Society of

**C.     Cockfighting:**  According to the Complaint and HSUS's website, cockfighting is not illegal in all 50 states and the Territories.  Compl. ¶ 23.  *See* "State Cockfighting Laws," http://www.hsus.org, attached here to as Pendleton Decl. Ex. 4.  As of the date of the Complaint, cockfighting was legal in New Mexico and Louisiana (though illegal in nine parishes in Louisiana and now illegal in New Mexico) and in all the Territories.  *Id.*  In some states, such as Virginia, cockfighting is illegal only when a person wagers money, prizes or anything of value.  *Id.*  As of the date of the Complaint, the AWA prohibits all interstate transportation and export of birds for fighting purposes to states with laws against cockfighting.  *Id.*  Thirty-three states and D.C. have made cockfighting a felony.  *Id.*  Thirty-two states and D.C. prohibit the possession of cocks for fighting.  *Id.*  Forty-one states and D.C. prohibit being a spectator at cockfights, but in some states, such as Virginia, it is illegal only when an admission fee is paid.  *Id.*  As of the date of the Complaint, ten states prohibited the possession of cockfighting implements; D.C. does not.  *Id.*[4]

**D.     The Videos:**  Amazon permits third-party sellers to list and sell items of their own through its "Marketplace" service.  *See* Zapolsky Decl. ¶ 5, Ex. F.  If a third-party seller wishes to offer a product already in Amazon's online catalog, a seller may add its own offer to the same page.  If the product to be sold by the third-party seller is not already offered on Amazon's website, the seller may create a new product detail page for the item, which typically includes a description of the item and the price offered by the seller.  Compl. ¶¶ 74, 78; Zapolsky Decl. ¶ 7, Ex. G.  In order to sell products on the Amazon website, third-party sellers must assent to a

---

the United States, is *the only known District of Columbia subscriber* to Defendant Marburger's publications") (citing Def. Marburger's Mot. at 1).

[4] On May 3, 2007, President Bush signed into law the Animal Fighting Prohibition Enforcement Act of 2007, which amends the AWA, 7 U.S.C. § 2156(c), to include knowingly using any "instrumentality of interstate commerce for commercial speech" for purposes of promoting or in any manner furthering an animal fighting venture except as performed outside the U.S.  *See* H.R. 137, 110th Cong. (1st Sess. 2007).  The Act also amends AWA § 2156(e) with regard to cockfighting implements, making it unlawful for "any person to knowingly sell, buy, transport, or deliver in interstate commerce a knife, a gaff, or any other sharp instrument *attached, or designed or intended to be attached*, to the leg of a bird for use in an animal fighting venture."  *Id.* (emphasis added).

"Participation Agreement" governing the Marketplace service and agree to abide by Amazon's policies for the service. *See* Zapolsky Decl. ¶ 8, Ex. H. One such policy, which governs "Prohibited Content," among other things, advises: "Sellers are expected to conduct proper research to ensure that the items posted to our Web Site are in compliance with all local, state, national, and international laws." *Id.* If a customer purchases an item from a Marketplace seller, Amazon charges the customer's credit card and then remits the customer payment, less commission and fees, to the third-party seller. *See* Compl. ¶ 75; Zapolsky Decl. ¶ 5, Ex. E. Amazon then notifies the third-party seller that the item has been sold and to whom the seller should ship the item. *See* Compl. ¶ 75; Zapolsky Decl. ¶ 5. The third-party seller, not Amazon, then ships the merchandise directly to the consumer. *See* Compl. ¶ 75; Zapolsky Decl. ¶ 5. For Marketplace sales, Amazon never receives the merchandise. Zapolsky Decl. ¶ 5. Amazon reserves the right to remove items from its Marketplace service, or to alter their description, if Amazon determines in its judgment that the content is inappropriate or prohibited under its policies. Zapolsky Decl. ¶ 10, Ex. H.

The Complaint alleges that two videos showing dogfighting were available on Amazon's Marketplace "supplied by third-party merchants," the DVD "Hood Fights Vol. II," beginning in June 2006, and the DVD "Unleashed," beginning October 2006 (collectively, the "Videos"). Compl. ¶ 74. Beginning in June 2006, Amazon removed from its site the product detail page for "Hood Fights Vol. 2, The Art of the Pit." *See* Compl. ¶¶ 74, 77; Zapolsky Decl. ¶ 11. When Amazon learned earlier this year that a product detail page for "Unleashed: The Realest Pitbull Action Caught on Tape" had been posted by a third party for sale on Amazon's website through its Marketplace service, Amazon removed the product detail page for "Unleashed." *See* Compl. ¶¶ 74, 79; Zapolsky Decl. ¶ 12.

**E.    Prior Proceedings:** In April 2006, HSUS petitioned the U.S. Postal Service to declare unmailable, refuse mailing, and revoke the periodical mailing privileges of the Magazines, citing the Animal Welfare Act's prohibition on furthering and promoting animal fighting ventures, 7 U.S.C. § 2156(c), and the U.S. Postal Act and regulations, 39 U.S.C. § 3001(a), DMM

601.12.5.7, 601.12.4.1, 601.1.7, 601.8.11, 707.5.4.2. *See* HSUS's Petition, attached as Pendleton Decl. Ex. 5.[5]  HSUS also seeks to have all copies of the Magazines seized and destroyed.  To date, the Postal Service has not ruled on the Petition.[6]

On February 8, 2007, the same day that HSUS commenced this suit, HSUS announced at a press conference that it was asking the King County Prosecuting Attorney to initiate a parallel action, invoking a provision of law that had not been used in 50 years – *Quo Warranto* proceedings for violation of federal and Washington State criminal statutes – to revoke Amazon's license to do business in Washington State based on Amazon's offer of the Videos and Magazines.  Pendleton Decl. Ex. 6.  On February 21, 2007, the King County Prosecuting Attorney rejected this request, concluding that "the conduct by Amazon of linking customers to the publishers of certain cockfighting magazines does not violate [Wash. RCW 16.52.117 (1)(b)]," Washington State's animal fighting statute.

> Amazon does not organize, conduct, participate in, act as a spectator at, advertise for, or prepare for the exhibit of animal fights.
>
> <div align="center">* * *</div>
>
> The terms "promote" and "further" contemplates one who organizes or sponsors a particular exhibition or event of animal fighting.  It is clear that Amazon is not promoting particular animal fighting exhibitions. . . .  [W]e would note that the

---

[5] While HSUS neglects to reference the Postal Service proceeding in its Complaint, the Court may take judicial notice of this and other public record proceedings without converting this motion to dismiss to one for summary judgment.  "A court may take judicial notice of public records from other court proceedings." *Braude & Margulies, P.C. v. Fireman's Fund Ins. Co.*, 468 F. Supp. 2d 190, 195 (D.D.C. 2007) (taking judicial notice of pleadings and orders in North Carolina bankruptcy case considering a motion to dismiss); *see also Thompson v. District of Columbia*, No. 97cv1015, 2007 WL 853126, at *4, n.2 (D.D.C. Mar. 20, 2007) ("[c]ourts may take judicial notice of public documents, even if they are not included in, or attached to the complaint" and stating that "[c]onsideration of such judicially noticeable documents does not convert this motion to one for summary judgment").  For the Court's convenience, all unpublished opinions, rulings and decisions referenced herein are attached as Pendleton Decl. Ex. 8.

[6] Amazon hereby incorporates by reference and joins in the Motion of Dowd Publishers to Dismiss ("Dowd Mem.") at II.E. on the grounds that the claim is not ripe in view of HSUS's pending Petition to the U.S. Postal Service and that HSUS must first exhaust its administrative remedies.

federal statute prohibiting animal fighting appears to be substantially similar to the Washington statute, and accordingly, the analysis would likely be the same.

*See* Feb. 21, 2007 letter from D. Satterberg to E. Eddy, attached as Pendleton Decl. Ex. 7 at 2. Further, King County noted that "Amazon's actions may indeed be protected by the First Amendment." *Id.* King County limited its response to the Magazines because "Amazon has stopped selling the objected to dog fighting videos." *Id.* at 1.

HSUS threatened legal action in July 2006. Compl. ¶ 82. In response, Amazon set forth many of the substantive constitutional and statutory arguments set forth in this Motion to Dismiss in a nine-page single-spaced letter to HSUS dated July 31, 2006 in an effort to avoid what Amazon views as fundamentally and fatally flawed litigation.

**F.    This Lawsuit:** HSUS, acting in its own capacity and in a representative capacity on behalf of its members, commenced this suit in D.C. Superior Court on February 8, 2007 against Amazon, the Publishers, and Magazine Express, along with the John Does HSUS claims are associated with the Videos, Compl. ¶¶ 5-6, 36-49. Defendants removed the action pursuant to 28 U.S.C. § 1441 on March 30, 2007. HSUS claims that Amazon's offer of an online mechanism to subscribe to the Magazines and the offer by third parties using Amazon's Marketplace service of the two Videos allegedly showing dogfighting violate the federal Animal Welfare Act, the federal Depiction of Animal Cruelty statute, and the D.C. Cruelty to Animals statute. Because these laws provide no private cause of action, HSUS shoehorns all its claims into D.C.'s consumer protection law, the District of Columbia Consumer Protection Procedure Act ("CPPA"), D.C. CODE ANN. §§ 28-3904(a), (e), (f), (x), 28-3905(k)(1), under the rubric that Amazon and the other defendants have misled consumers and offered "consumer goods in a condition or manner not consistent with that warranted by . . . operation or requirement of federal law." Compl. ¶ 12.[7] HSUS also pleads violation of federal and D.C. conspiracy laws. Compl.

---

[7] HSUS's complaint alleges seven counts: (Count I) violation of the federal Depiction of Animal Cruelty statute, 18 U.S.C. § 48(a), by "knowingly creat[ing], sell[ing], or possess[ing] a depiction of animal cruelty with the intention of placing that depiction in interstate or foreign commerce for commercial gain" and "therefore also violating the CPPA [D.C. Consumer Protection Procedures Act]," Compl. ¶ 115; (Count II) violation of the federal Animal Welfare Act, 7 U.S.C. § 2156(c),

¶¶ 137-46. For relief, HSUS seeks a declaratory judgment, an injunction requiring Amazon and the other Defendants to permanently cease and desist from selling the Videos and Magazines, treble damages under the CPPA as well as additional relief to restore consumers the money acquired by the alleged unlawful trade practice, attorneys' fees and costs under the CPPA. Compl. at 39.

<div align="center">

**ARGUMENT**

</div>

## I.      MOTION TO DISMISS STANDARD

The purpose of Fed. R. Civ. P. 12(b)(1) is to permit the Court to determine if there is a case or controversy.  The Court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority," which includes the obligation to consider the possibility of lack of standing and mootness.  *See Abu Ali v. Gonzalez*, 387 F. Supp. 2d 16, 17 (D.D.C. 2005) (internal citation omitted).  A court may consider material other than the allegations of the complaint in determining whether it has jurisdiction to hear the case, as long as it still accepts the factual allegations in the complaint as true.  *Id.; accord Fund for Animals v. Mainella*, 335 F. Supp. 2d 19, 22 (D.D.C. 2004) ("[I]n deciding a Rule 12(b)(1) motion, it is well established in this Circuit that a court is not limited to the allegations in the complaint, but may also consider material outside of the pleadings in its effort to determine whether the court has jurisdiction in the case.")

The purpose of Fed. R. Civ. P. 12(b)(6) is to permit the Court to terminate lawsuits that are fatally flawed in their legal premises and thus to spare the litigants the burdens of unnecessary pretrial and trial activity.  *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).  Dismissal is warranted if it appears beyond doubt, based on the allegations contained in the complaint, that "the

---

by "knowingly using the mail service of the U.S. Postal Service for the purpose of promoting or in any other manner furthering unlawful animal fighting ventures, in violation of the AWA" and "therefore also violating the CPPA," Compl. ¶ 120; (Count III) violations of the District of Columbia Cruelty to Animals Statute and therefore violation of the CPPA, Compl. ¶¶ 125-26; (Count IV) violation of the CPPA based on material misrepresentations, Compl. ¶ 131; (Count V) violation of the CPPA based on failure to state a material fact, Compl. ¶ 135; (Count VI) violation of the CPPA based on District of Columbia conspiracy law, Compl. ¶¶ 139-40; (Count VII) engaging in trade practices in violation of federal conspiracy law, 18 U.S.C. § 371, and "therefore also violati[on of] the CPPA," Compl. ¶¶ 144-45.

plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002); *Alicke v. MCI Communications Corp.*, 111 F.3d 909, 912 (D.C. Cir. 1997). In resolving a Rule 12(b)(6) motion, while treating the complaint's factual allegations as true and drawing all reasonable inferences in plaintiff's favor, the Court should not accept "inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint" or "legal conclusions cast in the form of factual allegations." *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994); *Browning*, 292 F.3d at 242.

Where, as here, significant First Amendment concerns are at stake, the 12(b)(6) standard is applied with particular care. *See, e.g., Coles v. Washington Free Weekly,* 881 F. Supp. 26, 30 (D.D.C. 1995) ("Given the threat to the first amendment posed by nonmeritorious defamation actions, it is particularly appropriate for courts to scrutinize such actions at an early stage of the proceedings to determine whether dismissal is warranted"), *aff'd*, 88 F.3d 1278 (D. C. Cir. 1996), citing *Washington Post Co. v. Keogh*, 365 F.2d 965, 968 (D.C. Cir. 1966) ("In the First Amendment area, summary procedures are . . . essential. For the stake here, if harassment succeeds, is free debate. . . . The threat of being put to the defense of a suit . . . may be as chilling to the exercise of First Amendment freedoms as fear of the outcome of the lawsuit itself"), *cert. denied*, 385 U.S. 1011 (1967).

On its face, the Complaint should be dismissed for the following separate and independent reasons:[8]

---

[8] While this motion does not present matters outside the Complaint and materials subject to judicial notice, if the Court in its discretion under FRCP 12(b)(6) chooses to convert this motion to one for summary judgment and to accept and consider extrinsic materials not subject to judicial notice but central to the claim, Amazon will provide a statement of material facts as to which there is no genuine issue.

II.    **THE ANIMAL WELFARE STATUTES THAT UNDERLIE HSUS'S CLAIMS DO NOT PROVIDE A PRIVATE CAUSE OF ACTION; HSUS CANNOT AVOID THIS RESULT BY STYLING ITS CLAIMS AS D.C. CONSUMER PROTECTION VIOLATIONS**

A.    **No Private Right of Action is Provided Under the Federal and D.C. Animal Cruelty Laws**

HSUS's claims are all rooted in criminal provisions that were never intended to be the basis for private suits:  the animal fighting provision of the federal Animal Welfare Act, 7 U.S.C. § 2156(c); the federal Depiction of Animal Cruelty statute, 18 U.S.C. § 48(a); and the D.C. Cruelty to Animals statute, D.C. CODE ANN. § 22-1015(a)(1).  It is a "bedrock principle" that "private rights of action to enforce federal law must be created by Congress."  *College Sports Council v. Gov't Accountability Office*, 421 F. Supp. 2d 59, 65 (D.D.C. 2006) (citing *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001)).  To determine whether a law creates a private right of action, courts "interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy."  *Alexander*, 532 U.S. at 286.  Where a criminal provision is part of a comprehensive legislative scheme, there is a presumption that absent a specific civil remedy, the legislature did not intend for the courts to imply such a remedy.  *Hamrick v. Gottlieb*, 416 F. Supp. 2d 1, 5 (D.D.C. 2005); *accord Federal Sav. & Loan Ins. Corp. v. Reeves*, 816 F.2d 130, 137-38 (4th Cir. 1987) (unless there is a clear congressional intent to provide a civil remedy, a plaintiff cannot recover civil damages for an alleged violation of a criminal statute).  None of the statutes expressly confers a private right of action on HSUS, and there is no basis to imply one.  Accordingly, the Complaint must be dismissed.

1.    **HSUS Has No Right to Sue Amazon Under Federal or District Animal Cruelty Laws**

Count II of the HSUS complaint alleges that by providing an online subscription service for magazines, including *The Gamecock* and *The Feathered Warrior*, Amazon violates the AWA and therefore D.C.'s CPPA.  Nowhere does the Animal Welfare Act provide for private citizens or organizations to file private causes of action for violations of the Act; the U.S. Department of Agriculture ("USDA") alone is charged with enforcing the AWA.

Courts and commentators have been consistent in concluding that the AWA does not provide a private right of action but, instead, vests exclusive jurisdiction for enforcement of the AWA in the USDA. In *International Primate Protection League v. Institute for Behavioral Research*, 799 F.2d 934 (4th Cir. 1986), *cert. denied*, 481 U.S. 1004 (1987), the Fourth Circuit explained that the "[AWA] does not imply any provision for lawsuits by private individuals as a complement to the authority of the Secretary of Agriculture." Upon review of the statutory text and the legislative history, the court was "convinced that Congress intended the administrative remedy to be the exclusive remedy." *Id.* at 940. *See also* Deawn A. Hewrsini, *Can't Get There from Here . . . without Substantive Revision: The Case for Amending the Animal Welfare Act*, 70 UNIV. OF MISSOURI KAN. C. LAW R. 145, 155 (2001) ("[After *International Primate*,] [e]very jurisdiction to hear subsequent private claims under the AWA has cited and adopted the court's reasoning with respect to this holding").[9]

Subsequent efforts to amend the AWA to provide a private right of action have been unsuccessful. *See* Shagiko Ito, *Beyond Standing: A New Solution for Animal Welfare*, 46 SANTA CLARA L. REV. 377, 393 (2006). In 1989, a bill was introduced that would have amended the AWA to give private individuals the right to sue the USDA to force agency compliance with the enabling statute; the proposed legislation stopped short of providing a cause of action for

---

[9] Courts have consistently applied *International Primate's* holding in a variety of contexts. *See, e.g., Whispering Pines Animal Kingdom, LLC v. Kinde*, No. 02-cv-70595, 2002 WL 484649 (E.D. Mich. Mar. 6, 2002) (no private right of action in action involving licensing under AWA); *Moor-Jankowski v. Board of Trustees of New York Univ.*, No. 96 Civ. 5997, 1998 WL 474084 (S.D.N.Y. Aug. 10, 1998) (holding, after extensive analysis of the legislative history of the AWA, no private cause of action for violation of whistleblower provision promulgated under AWA); *Paws v. United States Dep't of Agriculture*, No. 95-4719, 1996 WL 524333 (E.D. Pa. Sept. 9, 1996) (holding no private right of action exists under AWA and that Congress has given Secretary of Agriculture exclusive authority to administer and enforce the act); *In Defense of Animals v. Cleveland Metroparks Zoo*, 785 F. Supp. 100, 103 (N. D. Ohio 1991) (holding that organization challenging proposed move of lowland gorilla from one zoo to another relying, in part, on AWA provisions governing the transportation of non-human primates "could not state a cause of action under the AWA, since the statute does not provide for private suits to enforce its terms"); *Bajalo v. Northwestern Univ.*, 369 Ill. App. 3d 576, 860 N.E.2d 556 (2006) (holding that no private right of action exists under AWA's whistleblower regulation).

violation of the AWA against private defendants such as HSUS has brought here. 135 Cong. Rec. H1932-03 (daily ed. May 16, 1989). Even that bill failed, however. *Id.*

This suit is not being brought under the Administrative Procedure Act (APA) – a common vehicle for private plaintiffs, including HSUS, who, because the AWA provides no private right of action, have instead sued the USDA under the APA for failure to promulgate and enforce adequate regulations pursuant to the AWA. *E.g., Animal Legal Defense Fund, Inc. v. Glickman*, 204 F.3d 229 (D.C. Cir. 2000) (APA claims brought by HSUS and individual plaintiffs against USDA officials); *see also* Katharine M. Swanson, Note, *Carte Blanche for Cruelty: The Non-Enforcement of the Animal Welfare Act*, 35 U. OF MICH. J. L. REFORM 937, 945 (2002) ("Because litigation must be brought pursuant to the APA rather than the AWA, which has no private cause of action, concerned citizens may only adjudicate for enforcement of the AWA's mandate of humane treatment of animals through procedural attacks on the regulating agency, and cannot directly sue entities violating the AWA."). Here, unlike the case before this Court brought by HSUS against USDA officials, *Humane Society of the United States v. Johanns*, No. 06-265, slip op. (D.D.C. April 13, 2007) (Kollar-Kotelly, J.), *appeal docketed*, No. 07-5120 (D.C. Cir. April 16, 2007), HSUS has not alleged any action under the APA; nor is the USDA or the U.S. Postal Service a defendant in this suit. Rather, this is a private enforcement action brought by a private plaintiff against private defendants, clearly <u>not</u> a suit contemplated by Congress in passing the AWA.

Similarly, HSUS's Count I alleges violation of the CPPA based on violation of the Depiction of Animal Cruelty statute, 18 U.S.C. § 48, another federal statute that provides no private right of action. The legislative history indicates that the federal criminal statute was enacted in 2000 to fill a statutory gap where videos depicting extreme animal cruelty were sold on the Internet. H.R. REP. NO. 106-397, 1999 WL 959195, at *2-3 (1999). Because the identity of the participants, location and date of the activity could not be ascertained, state prosecutors were often unable to establish jurisdiction or that the acts occurred within the statute of limitations. *Id.* Thus, the Depiction of Animal Cruelty statute was enacted solely to aid in criminal prosecution. Not surprisingly, the only published case to apply the statute is an appeal

14

by a criminal defendant convicted under the statute. *People v. Thomason*, 84 Cal. App. 4th 1064, 101 Cal. Rptr. 2d 247 (2000). Consistent with the statutory language and legislative history, there is no published case law supporting a private right of action under the federal Depiction of Animal Cruelty statute.

Count III of the Complaint alleges violation of the CPPA based on the D.C. Cruelty to Animals statute section on animal fighting, D.C. CODE ANN. § 22-1015, another statute which fails to provide a private civil right of action. The D.C. Cruelty to Animals statute is a criminal statute (Division IV, "Criminal Law and Procedure and Prisoners"; Title 22, "Criminal Offenses and Penalties"; Subtitle I, "Criminal Offenses" of the District of Columbia Code); the only published decision involving the animal fighting provision of D.C.'s Cruelty to Animals statute is an appeal from a criminal conviction under the statute. *Silver v. United States*, 726 A.2d 191 (D.C. 1999). There is no indication in the statutory scheme that the criminal statute was intended to confer a private right of action in the civil arena. HSUS does not have enforcement power, criminal or civil, in Washington, D.C. and the Complaint does not allege any. The D.C. statute does not provide any private civil cause of action.[10]

### 2. HSUS Cannot Circumvent Its Inability To Bring a Private Action Under Animal Welfare Statutes By Styling Its Claims As D.C. Consumer Protection Violations

Faced with the very clear legislative intent not to provide a private cause of action under any of the substantive criminal laws plaintiff is seeking to enforce, HSUS is relying on a local D.C. law designed to protect consumers from fraudulent and deceptive retail practices. When an underlying statute does not provide a private right of action, HSUS cannot circumvent that result and thwart legislative intent by couching such a claim in a state consumer protection or deceptive business act claim. *See Animal Legal Defense Fund Boston, Inc. v. Promivi Veal Corp.*, 626 F.

---

[10] When a state wants to provide a private animal welfare group a right of action to enforce animal cruelty, it can and does do so expressly – only North Carolina has so provided, N.C. Gen. Stat. § 19A-1 (2003) (titled "Civil Remedy for Protection of Animals"). *See* William A. Reppy, Jr., *Citizen Standing to Enforce Anti-Cruelty Laws by Obtaining Injunctions: the North Carolina Experience*, 11 ANIMAL L. 39, 40 (2004).

15

Supp. 278, 281 (D. Mass. 1986), *aff'd*, 802 F.2d 440 (1st Cir. 1986). *See also Broder v. Cablevision Systems Corp.*, 418 F.3d 187, 199 (2d Cir. 2005) (holding that plaintiff could not circumvent lack of a private right of action under federal statute by bringing claim under state deceptive businesses law; permitting such claim would "attribut[e] to the New York legislature an intent to thwart Congress's intentions . . . with respect to a federal law that on its face does not address deceptive or misleading behavior at all").[11] This is particularly true where a plaintiff bases a consumer protection claim on a criminal provision.

In *Promivi*, the Animal Legal Defense Fund of Boston ("ALDF") tried to take advantage of broad standing under Massachusetts' consumer protection statute to challenge what it alleged was the false advertising of veal. Concerned that calves raised for veal were treated cruelly, and that antibiotics added to their feed endangered human health, ALDF sought an order obligating the defendant to tell retail consumers how the veal calves were raised. 626 F. Supp. at 278, 280. ALDF members alleged that they had unwittingly bought and eaten defendant's veal because information about how the calves were raised was unfairly and deceptively withheld by the defendants. *Id.* at 278-79. The *Promivi* court rejected ALDF's argument that the Massachusetts consumer protection law created a private remedy for violations of other statutes which themselves do not provide for private enforcement actions. The court explained, in language equally applicable here:

> Cruelty to animals is a crime in Massachusetts. . . . Like nearly all criminal laws, [Massachusetts] anti-cruelty statutes are enforced by public law enforcement officials.

---

[11] *See also Conboy v. AT&T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001) (holding that plaintiffs could not plead violation of New York law prohibiting creditors from harassing debtors, which does not supply  private cause of action, by alleging that violation of that statute necessarily constitutes deceptive act under New York General Business Law provision prohibiting creditors from engaging in "[d]eceptive acts or practices in the conduct of any business, trade or commerce..."); *Brinkman v. Barrett Kays & Assocs.*, 155 N.C. App. 738, 744-45, 575 S.E.2d 40, 45 (2003) (plaintiffs could not use Unfair and Deceptive Trade Practices Act to create private right of action against designers of defective waste removal system for alleged violation of state's Clean Water Act; Clean Water Act provided exclusive remedy for deceptive behavior in permitting process).

. . . ALDF does not, in the strict sense, try to enforce Massachusetts' criminal anti-cruelty statutes. . . . Instead, the ALDF insists that the Massachusetts consumer protection law gives concerned consumers a private right of action when violations of the anti-cruelty statutes affect them as consumers. Consumers have a right to know that veal sold to them comes from cruelly mistreated calves; [defendant's] failure to give consumers that information, not the cruel treatment itself, is the unfair and deceptive trade practice. . . . As adroit and skillful as this argument is, it is misdirected.

What makes Provimi's nondisclosure an unfair and deceptive trade practice is that it keeps consumers from knowing about a criminal violation. . . . An ALDF victory in this action would have an unmistakable effect: to enforce by means of an injunction obtained in a private lawsuit, a criminal statute enforceable only by public prosecutors and, in legislatively-sanctioned circumstances, private groups, among which the ALDF is not numbered.

*Id.* at 280-81.

Because HSUS lacks a private cause of action to bring this suit, the Complaint must be dismissed. Were this and the predictable avalanche of subsequent similar private suits allowed to proceed, the D.C. Superior Court would be inundated with claims purporting to enforce federal criminal laws by self-appointed private attorneys general, even when, as here, the federal laws they are purporting to enforce do <u>not</u> authorize such private causes of action. As explained more fully in Dowd's Motion to Dismiss, Dowd Mem. at II.B., the legislative intent manifest in the very provisions of the CPPA on which HSUS relies (Compl. ¶¶ 11-13), are focused only on garden variety consumer misrepresentations and standard warranties between buyer and seller. The CPPA clearly was not intended to sweep into its purview the entire federal criminal code.

## III.    THERE IS NO CASE OR CONTROVERSY BECAUSE THE HUMANE SOCIETY LACKS STANDING TO BRING THIS LAWSUIT AND THE VIDEOS ARE NOT BEING SOLD

Even assuming HSUS had a private cause of action, which it does not, it would have to establish, as a threshold matter, <u>both</u> prudential standing <u>and</u> Article III constitutional standing in order to maintain this suit. *Bennett v. Spear*, 520 U.S. 154, 162 (1997). It can establish neither. Nor can HSUS avoid these standing requirements by bringing an action under D.C.'s CPPA, which also requires HSUS to meet both prudential and constitutional standing requirements -- requirements that would apply whether the action were pending in D.C. or federal court. *Williams*

*v. Purdue Pharma Co.*, 297 F. Supp. 2d 171, 177-78 (D.D.C. 2003) (dismissing CPPA action for lack of standing). Since the Videos are no longer available on Amazon's website, and it is Amazon's policy to remove them upon notice, there can be no case or controversy as to their sale.

### A.    HSUS Lacks Prudential Standing

Because none of the animal welfare statutes that underlie HSUS's lawsuit confers a private right of action, HSUS brings each claim under D.C.'s CPPA. HSUS lacks prudential standing to bring its consumer protection claims because it cannot show that the interests it seeks to protect are "arguably within the zone of interests to be protected" by the CPPA. *Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 153 (1970). The injuries HSUS alleges with respect to itself and its members are all harms related to animal fighting itself – not consumer deception. "The CPPA was adopted by the D.C. Council to protect local consumers from improper and fraudulent trade practices." *Williams*, 297 F. Supp. 2d at 174. *See Howard v. Riggs Nat'l Bank*, 432 A.2d 701, 708-10 (D.C. 1981) (the CPPA is "an ambitious piece of legislation which seeks to prohibit a long list of 'unlawful trade practices' "). The statute's "zone of interest" is clearly consumer protection from fraudulent business practices, *see* Dowd Mem. at II.B., and not harm to animals or those who care about animals, negating prudential standing with respect to those interests.

That HSUS lacks prudential standing is "supported and underscored" by the fact that the animal welfare statutes on which the suit is based provide no private cause of action. *See American Fed'n of Gov't Employees v. Rumsfeld*, 321 F.3d 139, 143 (D.C. Cir. 2003); *In re: Madison Guar. Sav. & Loan Ass'n*, 173 F.3d 866, 868 (D.C. Cir. 1999).

### B.    HSUS Lacks Article III Standing

If the Court determines that HSUS does not have prudential standing, the case must be dismissed and the Court need not address whether HSUS has Article III constitutional standing. If the constitutional issue is reached, however, HSUS has clearly failed to meet the requirements for Article III standing:

First, the plaintiff must have suffered an "injury in fact" – an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559, 560-61 (1992) (internal citations, quotations and footnotes omitted). Standing requirements apply with equal force to suits brought by organizational plaintiffs like HSUS. *Common Cause v. Federal Election Comm'n*, 108 F.3d 413, 417 (D.C. Cir. 1997). To establish associational or representational standing based on the injuries of its members, an organization must show, *inter alia*, that at least one of its members possesses standing to sue in his or her own right, satisfying the three requirements of injury, traceability, and redressability. *Rainbow/Push Coalition v. FCC*, 396 F.3d 1235, 1239-40 (D.C. Cir. 2005).

HSUS alleges that Amazon's role in offering an online mechanism to subscribe to the publications puts HSUS members who reside in D.C. at risk of harm to their health and safety, but does not allege any specific members who face imminent risk. Compl. ¶ 112. These alleged harms range from illegal and underage gambling (Compl. ¶¶ 30, 33, 105), to an increase in personal violence and property crimes (Compl. ¶¶ 32, 105), to drug sales and weapons trafficking and increased rates of homicide and rape (Compl. ¶¶ 31, 105), to a "biosecurity threat" in the form of the avian flu (Compl. ¶¶ 34, 106). Such injuries to HSUS's D.C. members can hardly be characterized as "concrete and particularized" and "actual or imminent" as opposed to "conjectural or hypothetical." *Lujan*, 504 U.S. at 560-61. *See, e.g., Plotkin v. Ryan*, 239 F.3d 882, 885-886 (7th Cir. 2001) (rejecting plaintiff's argument that he suffered injury in the form of increased risk of accidents because unqualified drivers have illegally obtained commercial drivers' licenses as too speculative and generalized to constitute injury-in-fact).

"The injury-in-fact test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured." *Sierra Club v. Morton*, 405 U.S.

727, 734-35 (1972). HSUS does not allege – nor can it allege – that any of its members are at imminent personalized risk of such health and safety injuries from animal fighting, much less from Amazon's online services. Indeed, HSUS does not allege that any HSUS member even bought a Video or that the one HSUS D.C. member who recently subscribed to *The Gamecock* or *The Feathered Warrior* faces any imminent risk of any of these harms that affect the general public.

In addition, to establish the requisite causal connection, HSUS must show that these injuries are "fairly traceable" to Amazon's online services "and not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560-61. Similarly, "redressability cannot rest on the assumption that a nonparty to the action will act in a certain way on the basis of a decision in plaintiff's favor, and that such action would ultimately redress plaintiff's injury." James W.M. Moore, 15-101 MOORE'S FEDERAL PRACTICE § 101.42 (3d ed. 2006), citing *Wilderness Soc'y v. Norton*, 434 F.3d 584, 590-94 (D.C. Cir. 2006)).

Causation and redressability under any of HSUS's claims depend on all of the following wholly speculative and remote assumptions:

1. The elimination of the Magazines or Videos would cause non-parties who conduct and attend animal fighting events to disengage from the activity in venues where it is illegal.

2. Those non-parties who participate in and attend animal fighting ventures, and those who advertise cockfighting, would not be able to communicate or obtain the same information by other means, including private mailings, email communications, websites,[12] or other forms of communication.

---

[12] There are several websites that contain similar information as the targeted publications. *See, e.g.*, http://www.gamerooster.com/, *visited* April 12, 2007 ("Uniting the Gamefowl World!") (with links to products for sale, including "a full line of cocking supplies, medications, long and short knifes and gaffs," on online gamecock auction, game farms, a bulletin board, a chat room, links to multiple game farms, and so forth); http://www.sabong.net.ph/, *visited* April 12, 2007 ("Portal that includes a message forum, a magazine, pictures, and details on upcoming events"); http://www.pitmaster.com, *visited* April 24, 2007 ("the most visited Gamefowl site on the Internet!" "for Gamefowl enthusiasts from all over the world to exchange ideas, information and opinions" with "pages featuring game farms, supplies, products and gamefowl merchandise"); www.fowlplaygamefarm.homestead.com, *visited* April 24, 2007 (providing 2006-2007 pit

3.      The publisher/distributor/producer defendants would not find another way to sell the Magazines or Videos, such as through advertising, telemarketing, direct mailings, or by posting for sale the Videos or subscription services online themselves directly rather than through Amazon.

With respect to the allegations of injuries to its D.C. members (and other D.C. citizens) based on criminal activity associated with animal fighting, causation and redressability requires an additional assumption:

4.      Another subset of non-party actors, those who commit crimes connected with animal fighting ventures, would stop engaging in or reduce their criminal behavior.

Although HSUS's factual allegations must be accepted as true at this procedural stage, "[t]here is a difference between accepting a plaintiff's allegations of fact as true and accepting as correct the conclusions plaintiff would draw from such facts." *Nat'l Treas. Employees Union v. United States*, 101 F.3d 1423, 1430 (1996).

It "defies reason" to conclude that, if HSUS secures an order enjoining Amazon from offering an online means of subscribing to two gamecock publications or an online marketplace for third-party sellers of videos, such an order will redress harms such as rape, homicide, and illegal drug trafficking posed to HSUS members and members of the general public living in D.C. – harms sadly all too real in D.C. but obviously <u>not</u> caused by Amazon's online services or likely abated if Amazon cannot offer such services. *Wilderness Soc'y*, 434 F.3d at 590-94 (explaining, "it simply defies reason to think that a court order compelling [the National Park Service] issue . . . maps and legal descriptions of the park will curb off-road vehicle abuses"). HSUS has failed to show that it is "likely, as opposed to merely speculative," that the health and

---

schedules for 12 clubs, Wortham Rules of cockfighting, links to "keeps" and gamefowl farms); http://gamefowl.meetup.com, *visited* April 24, 2007 (to facilitate meeting other people interested in game fowl to discuss breeds, raising, and showing"); http://www.verdugosgamefowl.com, *visited* April 24, 2007 (featuring wormers, vitamins and supplements, medicines and antibiotics, general supplies, and heeling supplies and referencing the Pitfowl Auction); http://www.pitfowl.net *visited* April 24, 2007 (featuring a chat message board, auction, medicines, health information, and news and items of interest for those who enjoy cockfights).

safety risks to its D.C. members (and other D.C. citizens) will be redressed by a favorable

decision against Amazon. *Lujan*, 504 U.S. at 561.

Standing also cannot be based on the mere knowledge that such activity takes place and

resulting psychological distress. *See Humane Soc'y of the United States v. Babbit*, 46 F.3d 93,

98 (D.C. Cir. 1995) (quoting *Animal Lovers Volunteer Ass'n, Inc. v. Weinberger*, 765 F.2d 937,

938-39 (9th Cir. 1985)) (allegation that members of animal rights group would "suffer distress if

goats [were] shot" did not constitute injury-in-fact). Here, HSUS alleges only that its members

seek out and attend animal fighting for the purposes of assisting law enforcement. Compl. ¶¶ 24-

27, 108-09, 111. They are not confronted with an aesthetic injury caused by animal fighting in

the course of their ordinary activities or employment. There is <u>no</u> allegation that HSUS members

– particularly its D.C. members – live in proximity to animal fighting ventures. By contrast, in

*Humane Society of the United States v. Johanns*, No. 06-265, Memorandum Opinion (D.D.C.

March 14, 2006), this Court found "a specific injury to a particularized interest of various

Plaintiffs whose human environment [was] impacted" by the rule at issue. Individual plaintiffs

who lived near slaughter houses had to endure the stench that emanated from these facilities.

Their injury was direct and unavoidable.

There is nothing about HSUS members' aesthetic interest that takes their claim "out of

the category of a generalized interest in ensuring the enforcement of the law, which is

insufficient to establish Article III standing." *American Soc'y for Prevention of Cruelty to*

*Animals v. Ringling Brothers & Barnum & Bailey Circus*, 317 F.3d 334, 336-38 (D.C. Cir. 2003)

(standing based on plaintiff's strong personal attachment to the elephants as a former Ringling

Brothers elephant handler and his ability, based on his prior work, to recognize the effects of

abusive treatment, taking his claim out of category of "generalized interest"); *see Animal Legal*

*Defense Fund, Inc. v. Glickman*, 204 F.3d 229 (D.C. Cir. 2000) (individual and organization

plaintiffs had standing to bring action against USDA to challenge AWA regulations; injury-in-

fact based on injury to plaintiff's aesthetic interest due to witnessing primates' inhumane living

conditions at animal exhibition he frequently visited and had concrete plans to revisit).

A decision favorable to HSUS as against Amazon would not enjoin the bad actors from the harmful behavior, as in *Ringling Brothers*, or provide different guidelines for their treatment of the animals, as in *Glickman*, or require an environmental impact statement or notice for comment, as in *Johanns*. Instead, redressability would require the Court to find that actors not before the Court would stop their behavior simply because Amazon stopped offering an online means to subscribe to two gamecock magazines and an online marketplace for third-party sellers of videos. Causation and redressability again are wholly speculative and patently implausible here.

When an organization sues on its own behalf, the organization must establish "concrete and demonstrable injury to the organization's activities – with a consequent drain on the organization's resources – constituting more than simply a setback to the organization's abstract social interests. Indeed, the organization must allege that discrete programmatic concerns are being directly and adversely affected by the challenged action." *Common Cause*, 108 F.3d at 417. "The presence of a direct conflict between the defendant's conduct and the organization's mission is necessary—though not alone sufficient – to establish standing." *Nat'l Treas. Employees Union*, 101 F.3d at 1429. "If defendant's conduct does not conflict directly with an organization's stated goals, it is entirely speculative whether the defendant's conduct is impeding the organization's activities." *Id*. Amazon is in the business of offering online magazine subscription and marketplace services – not organizing or promoting animal fighting – and thus its conduct is not in "direct conflict" with HSUS's "stated goals."

In alleging that it is required "to divert its limited organizational and programmatic resources to law enforcement actions and the care and handling of fighting animals seized at raids," Compl. ¶ 112, HSUS "cannot convert its ordinary program costs into an injury in fact." *Nat'l Treas. Employees Union*, 101 F.3d at 1434. As the D.C. Circuit explained in *Fair Employment Council of Greater Washington, Inc. v. BMC Marketing Corp.*, 28 F.3d 1268, 1277 (D.C. Cir. 1994):

> [W]e explicitly reject the Council's suggestion that the mere expense of testing BMC constitutes "injury in fact" fairly traceable to [the plaintiff organization's] conduct. The diversion of resources to testing might well harm the Council's other programs, for money spent on testing is money that is not spent on other things. But this particular harm is self-inflicted; it results not from any actions taken by [plaintiff], but rather from the Council's own budgetary choices. . . . One can hardly say that [plaintiff] has injured the Council merely because the Council has decided that its money would be better spent by testing [plaintiff] than by counseling or researching.

The contention that HSUS's spending on combating animal fighting would be significantly decreased if Amazon ceased its online services, *see* Compl. ¶ 112 – services at a far remove from those engaging in animal fighting – suffers from the same causation and redressability problems as its other claims – it rests on the speculative assumption that the elimination of the magazines from Amazon's website would significantly decrease the incidence of cockfighting.

### C.    HSUS Cannot Avoid Its Lack of Standing Under the Animal Welfare Statutes by Styling Its Claims as D.C. Consumer Protection Violations

In bringing claims on behalf of affected consumers and the "general public," Compl. ¶¶ 114, 119, 124, 130, 134, 143, HSUS relies on the CPPA provision that "[a] person, whether acting for the interests of itself, its members, or the general public, may bring an action under this chapter . . . ." D.C. CODE ANN. § 28-3905(k)(1). But case law has cabined this provision, holding that claims brought under the D.C. CPPA must meet both constitutional and prudential standing requirements. Judge Collyer in this district has held that "the amendment of the CPPA in 2000 did not change the requirements for standing under D.C. law, despite its broad language." *Williams*, 297 F. Supp. 2d at 177.

> Congress did not establish [the D.C. courts] under Article III of the Constitution, but we nonetheless apply in every case the constitutional requirement of a "case or controversy" and the prudential prerequisites of standing. In enforcing these requirements, we look to federal standing jurisprudence, constitutional and prudential.

*Id.* (quoting *Friends of Tilden Park, Inc. v. District of Columbia*, 806 A.2d 1201, 1206 (D.C. 2002)) (internal citations and quotation marks omitted).

HSUS alleges that District of Columbia "consumers" rely on misrepresentations on Amazon's website and that "consumers" are misled "by Amazon's representations that the materials for sale on its website adhere to applicable laws to purchase animal fighting products." *See* Compl. ¶¶ 99, 100, 102, 103. These claims must be dismissed because, in addition to lacking prudential standing (*see* discussion *supra* at III.A.), HSUS lacks Article III standing to bring the CPPA claim.

First, HSUS does not allege that anyone, much less a member, much less a D.C. member, purchased a dog fighting video from a third-party seller on Amazon's website. The only D.C. subscriber to *The Gamecock* is a member of HSUS, according to Plaintiff, and thus could not have been "misled" into purchasing the Magazine by Amazon's alleged misrepresentations as to their legal status. The fact that the plaintiffs in *Williams* did not allege that they were "in any way deceived" by any of the allegedly false and misleading advertising meant that they could not establish the requisite standing under D.C.'s CPPA. Similarly, in *Hakki v. Zima Co.*, the D.C. Superior Court last year dismissed a claim under the CPPA for lack of standing where the plaintiff, a private individual, purported to represent a class of parents and minors challenging beer ads allegedly designed to appeal to children. "However much Plaintiff may abhor teenage drinking and the profits Defendant [beer manufacturers] may knowingly and intentionally reap from it, he does not have a private right of action unless he can plead an injury in fact to a legally protected interest that is peculiar to him." *Hakki v. Zima Co.*, No. 03-9183, 2006 WL 852126, at *2 (D.C. Super. Mar. 28, 2006) (dismissing claim because representative individual plaintiff challenging advertising of alcohol to minors failed to allege that he had a child, that the child purchased or consumed any of defendant's alcoholic product, or that any child of his had seen one of defendants' ads or been influenced by it) (appeal pending). "Hypothetical injuries," the Superior Court held, "cannot confer standing where an actual injury is not alleged in the complaint." *Id.* HSUS's CPPA claims here similarly fail to allege – and cannot allege – that the one and only D.C. consumer (a member of HSUS) was "deceived" or injured in fact by any false and misleading advertising.

Second, the harms that HSUS alleges would not be redressed by a successful verdict against Amazon. "The redressability inquiry poses a simple question: '[I]f plaintiffs secured the relief they sought . . . would [it] redress their injury?' " *Wilderness Soc'y*, 434 F.3d at 590, quoting *Mountain States Legal Found. v. Glickman*, 92 F.3d 1228, 1233 (D.C. Cir. 1996). Here, any consumers who purchase the Magazines or Videos with the allegedly mistaken belief they are lawful are <u>not</u> the people who participate in animal fighting. Those purchasers who engage in or attend animal fighting know exactly what they are buying. Thus, alleviating the problem that the CPPA is designed to prevent – the deception or misleading of consumers into buying a product they would not otherwise buy – does absolutely nothing to reduce the incidence of animal fighting or to alleviate the harms to HSUS or its members.

Accordingly, HSUS does not have standing to maintain this suit and the Complaint should be dismissed.

### D.   HSUS's Claims Are Moot with Regard to the Videos Since They Are Not Being Offered for Sale on Amazon's Marketplace

Count I of HSUS's Complaint alleging violation of the CPPA based on alleged violation of the federal Depiction of Animal Cruelty statute arises solely from the offer of alleged dog fighting videos by third-party sellers on Amazon's Marketplace. *See* Compl. ¶¶ 74, 113-117. Since Amazon has removed the Videos, Count I is moot.[13]

"Even where litigation poses a live controversy when filed, the [mootness] doctrine requires a federal court to refrain from deciding it if events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." *Clarke v. United States*, 915 F.2d 699, 701 (D.C. Cir. 1990), quoting *Transwestern Pipeline Co. v. FERC*, 897 F.2d 570, 575 (D.C. Cir.), *cert. denied*, 498 U.S. 952 (1990). Since Amazon has, upon notice, taken down and will take down the postings

---

[13] Mootness issues, including facts outside the complaint, are properly considered upon a motion to dismiss pursuant to Rule 12(b)(1). *See Abu Ali v. Gonzales*, 387 F. Supp. 2d at 17-18; *Fund for Animals v. Mainella*, 335 F. Supp. 2d at 22.

offering the Videos for sale, there is no live case or controversy as to injunctive or declaratory

relief. Zapolsky Decl. ¶¶ 11-13. *See Mutual Pharm. Co. v. Ivax Pharm., Inc.*, 459 F. Supp. 2d

925, 944 (C.D. Cal. 2006) (substance of plaintiffs' false advertising claim rendered moot by

defendants' subsequent act of removing the offending material from their web sites); *CCBN.com,*

*Inc. v. C-call.com, Inc.*, 73 F. Supp. 2d 106, 115 (D. Mass. 1999) (defendant's request for

injunctive relief to prevent plaintiff from making allegedly false and misleading statement was

moot after defendant removed language in question from its website); *see also Arizona Public*

*Service Co. v. EPA*, 211 F.3d 1280, 1295-96 (D.C. Cir. 2000) (where petitioners challenged

limitation of public's opportunity to comment directly to EPA on certain issue and EPA

indicated to court its intent to accept comments and subsequently issued clarification, issue was

moot), *cert. denied*, 532 U.S. 970 (2001). Likewise, since HSUS has not alleged any member

who bought one of the Videos from a third-party seller on Amazon.com, there can be no live

case or controversy as to damages. *See* discussion *supra* at III.C.

## IV.    HSUS'S CLAIMS ARE BARRED BY SECTION 230 OF THE COMMUNICATIONS DECENCY ACT

The Complaint, all Counts, as they relate both to the Videos and the Magazines offered

by third parties are barred as against Amazon by Section 230 of the Communications Decency

Act of 1996, 47 U.S.C. § 230, and should be dismissed. Section 230 provides absolute immunity

for an "interactive computer service," such as Amazon, from claims based on tortious or

unlawful "information provided by another information content provider."[14] This case falls

_____

[14] Section 230(c)(1) provides:

No provider or user of an interactive computer service shall be treated as the
publisher or speaker of any information provided by another information content
provider.

Section 230(c)(2) provides:

No provider or user of an interactive computer service shall be held liable on account
of-

(A)    any action voluntarily taken in good faith to restrict access to or availability of
material that the provider or user considers to be obscene, lewd, lascivious,

squarely within Section 230, because it arises from (1) online offers by third-parties of videos

created by third-parties and posted on Amazon's website through its Marketplace service,

Compl. ¶¶ 74-75, and (2) online offers on Amazon's website of subscriptions fulfilled by third

parties for magazines created by third parties, Compl. ¶¶ 68-70, 78-80.  Section 230's immunity

applies equally to HSUS's claims for damages, declaratory, and injunctive relief.  *See Kathleen

L. v. City of Livermore*, 87 Cal. App. 4th 684, 697-98, 104 Cal. Rptr. 2d 772 (2001) ("claims for

declaratory and injunctive relief are no less causes of action than tort claims for damages and

thus fall squarely within the Section 230(e)(3) prohibitions"); *Ben Ezra, Weinstein & Co. v.

America Online, Inc.*, 206 F.3d 980, 983-84 (10th Cir.) (upholding dismissal under Section 230 of

state law claims for injunctive relief and damages), *cert. denied*, 531 U.S. 824 (2000).

Section 230 was enacted "to maintain the robust nature of Internet communication." *Zeran

v. America Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997), *cert. denied*, 524 U.S. 937 (1998).  To

that end, "Congress made a policy choice . . . not to deter harmful online speech through the

separate route of imposing tort liability on companies that serve as intermediaries for other parties'

potentially injurious messages." *Id.* at 330-31.  Given "the amount of information communicated

via interactive computer services," "[i]t would be impossible for service providers to screen each

of their millions of postings for possible problems." *Id.*  Thus, Section 230 precludes courts from

entertaining claims against websites like Amazon for information originating with any third-party

user of its service.  If it did not, Amazon, eBay, CraigsList, CNET, and the like would not be able

to offer online ways of buying and selling third-party content for fear of liability.[15]

---

> filthy, excessively violent, harassing, or otherwise objectionable, whether or not
> such material is constitutionally protected; or

(B)  any action taken to enable or make available to information content providers or
others the technical means to restrict access to material described in paragraph (1).

Section 230(e)(3) provides:

> No cause of action may be brought and no liability may be imposed under any state or
> local law that is inconsistent with this section.

[15] Not precluded under Section 230, of course, are claims against the original third parties who
create the content.  *See, e.g., Doe v. Bates*, No. 5:05-cv-91-DF-CMC, 2006 WL 3813758, at *1,

Section 230 protects an interactive computer service even after it receives notice of a claim of illegality or falsity, because it may not be in a position to investigate and evaluate the content of speech created and posted on its service by third parties. *Id.* The *Zeran* Court affirmed dismissal of a claim against AOL for posting what turned out to be a hoax, even though, after notice of the hoax, AOL did not immediately take down the posting, allowed similar subsequent postings and refused to post a retraction. *Id.* at 328-30. The Fourth Circuit cited the "impossible burden," given "the sheer number of postings" that liability based on notice would impose:

> Requir[ing] a careful yet rapid investigation of the circumstances surrounding the posted information, a legal judgment concerning the information's defamatory character, and an on-the-spot editorial decision whether to risk liability by allowing the continued publication of the information.

*Id.* at 333. Moreover, notice-based liability "would provide third parties with a no-cost means to create the basis for future lawsuits," if "displeased" with the speech of another, simply by "notifying" the service provider of a claim of unlawful or defamatory material. *Id. Accord Smith v. Intercosmos Media Group, Inc.*, No. 02-1964, 2002 WL 31844907, at *3-4 (E.D. La. Dec. 17, 2002) (rejecting, on Section 230 immunity grounds, defamation claim alleging that ISP was negligent in "allowing defamation to continue" after notice by failing permanently to block websites or revoke registrations for domain names); *Doe v. America Online, Inc.*, 783 So.2d 1010, 1013-17 (Fla.) (immunity under Section 230 despite notice of defamatory third-party posting), *cert. denied*, 534 U.S. 891 (2001).

Amazon has previously been found to qualify for immunity under Section 230, and it should be in this case with regard to videos offered through Marketplace and the subscription offers. In *Schneider v. Amazon.com*, 108 Wash. App. 454, 460-63, 31 P.3d 37, 39-41 (2001), the court expressly held that Amazon was a provider of "interactive computer services" within the

---

*3-5 (E.D. Tex. Dec. 27, 2006) (granting on Section 230 grounds Yahoo!'s motion to dismiss civil claims arising from allegation that Yahoo! knowingly hosted illegal child pornography in its "Candyman" e-mail group; "Congress has decided that the parties to be punished and deterred are not the Internet service providers but rather those who created and posted the illegal material").

meaning of the statute, as an operator of an interactive website, and affirmed dismissal of a claim arising out of Amazon's failure to remove a customer comment from its site. *See also Corbis v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090, 1118 (W.D. Wash. 2004) (same).

Merely providing an online platform for selling videos and subscriptions, Compl. ¶¶ 74-75, 78, does not make Amazon a publisher of that material or an independent abettor of animal fighting ventures sufficient to overcome Section 230 immunity. *See Stoner v. eBay, Inc.*, No. 305666, 2000 WL 1705637 (Cal. Super. Nov. 1, 2000) (unpublished) (eBay's role in providing an interactive computer service by which sellers may auction items "does not extend beyond the scope of the federal immunity"). Section 230 immunity has been applied to preclude a state statutory claim against eBay for negligently misrepresenting sports items as authentically autographed. *See Gentry v. eBay, Inc.*, 99 Cal. App. 4th 816, 121 Cal. Rptr. 2d 703, 833 n.10 (2002) (finding that ISPs are immune under Section 230 for publishing information known to be false, fraudulent, defamatory, obscene, unlawful or otherwise objectionable). Section 230 has been applied to preclude claims eBay violated state unfair competition laws for auctioning bootleg and other "infringing" sound recordings. *See Stoner*, *supra*. Section 230 has also been deemed to provide immunity to the website Craigslist against Fair Housing Act claims alleging that third-party classified ads on its website were discriminatory. *See Chicago Lawyers' Comm. for Civil Rights Under the Law, Inc. v. Craigslist, Inc.*, 461 F. Supp. 2d 681, 698-99 (N.D. Ill. 2006). And so it applies here, to postings on Amazon's Marketplace service that enable third parties to buy and sell merchandise. Like eBay, Craigslist, and other sites providing a platform for selling third party content, Amazon cannot be held liable for Marketplace content that it does not select or create or which third parties buy and sell using its website.

Even assuming *arguendo* that, at the time of the Complaint, the Magazines or Videos were illegal, as HSUS contends, Section 230 immunity has been deemed to preempt civil and state law claims predicated on federal criminal statutes. *See, e.g., Doe v. Bates*, 2006 WL 3813758, at *20-23 (Section 230 preempts civil claims predicated on federal criminal statutes penalizing knowing distribution of child pornography); *Voicenet Communications, Inc. v.*

*Corbett*, No. 04-1318, 2006 WL 2506318 (E.D. Pa. Aug. 30, 2006) ("CDA confers a § 1983-enforceable right upon internet service providers and users not to be 'treated' under state criminal laws as the publisher or speaker of information provided by someone else…"). *Cf. Kathleen L. v. City of Livermore*, 87 Cal. App. 4th 684, 692, 104 Cal. Rptr. 2d 772 (2001) (affirming dismissal on Section 230 grounds of claim against library for providing computers that allowed minor to download obscene pornography from Internet).

Similarly, the fact that Amazon could, consistent with its Guidelines, and in fact did, remove the offer for sale of Videos does not take it outside of Section 230 or make Amazon a content provider. Indeed, Section 230 is designed to protect interactive service providers who choose to exercise such control as well as those who do not. *Ben Ezra*, 206 F.3d at 986 (cited in *Schneider*, 31 P.3d at 42) ("[b]y deleting the allegedly inaccurate stock quotation information, Defendant was simply engaging in the editorial functions Congress sought to protect"). The *Schneider* Court reasoned that, "if actual editing does not create liability, the mere right to edit can hardly do so." 31 P.3d at 43. Whether Amazon had or had not removed the Videos upon notice, Amazon is squarely within Section 230's protection. *Zeran*, 129 F.3d at 327 (although AOL knew that posting was a hoax and delayed in taking it down, AOL still was protected by Section 230); *Schneider*, 31 P.3d at 43; *Barnes v. Yahoo!, Inc.*, No. 05-926, 2005 WL 3005602 (D. Or. Nov. 8, 2005) (12(b)(6) dismissal of tort claim based on Section 230; Yahoo! held not liable even though it failed to fulfill its promise to remove unauthorized profiles).

Further, the fact that Amazon has a contract with Magazine Express, which has an agreement with the magazine publishers that permits Amazon to offer subscriptions online, does not make Amazon a content provider. *Blumenthal v. Drudge*, 992 F. Supp. 44, 47 (D.D.C. 1998) (license agreement with content provider did not make AOL a provider of information). In *Blumenthal*, Judge Friedman barred defamation claims against AOL for statements made in an online gossip column despite the fact that AOL had contracted for the reports, retained certain editorial rights as to their content, and aggressively promoted them. *Id.* at 51-52. The court concluded that Congress had chosen to provide immunity "even where the [ISP] has an active,

even aggressive role in making available content prepared by others." *Id.* at 52; *see also Barrett v. Rosenthal*, 146 P.3d 510, 528 (Cal. 2006) ("A user who actively selects and posts material based on its content fits well within the traditional role of 'publisher.' Congress has exempted that role from liability"). Thus, any alleged active marketing by Amazon of either the Marketplace Videos or Magazines, Compl. ¶¶ 84-86, is protected. Counts I-VII arising from both the Videos and the Magazines should be dismissed as against Amazon under Section 230.[16]

## V.    HSUS'S COMPLAINT FAILS TO STATE ANY CLAIM UNDER THE CPPA

To the extent they rely on D.C.'s CPPA, Counts I-VII fail to state a claim for at least five reasons: <u>One</u>, the CPPA was designed to target fraudulent trade practices arising out of consumer-merchant relationships absent here. *Williams*, 297 F. Supp. 2d at 174 ("The CPPA was adopted . . . to protect local consumers from improper and fraudulent trade practices"). There is nothing fraudulent about Amazon's online subscription mechanism or online Marketplace. The Magazines and Videos here have never been declared illegal or "unmailable." Thus, Amazon's statements in its Conditions of Use that products Amazon sells "comply with all applicable laws, statutes and regulations," Compl. ¶ 99, cannot, as a matter of law, have been false or deceptive. Absent any advertisement by Amazon "that was materially misleading under an objective standard," no claim is stated under D.C.'s CPPA. *Hakki*, No. 03-9183, 2006 WL 852126, at *3 (D.C. Super. Mar. 28, 2006).[17]

---

[16] Whether a claim is barred by Section 230 is a question of law, properly decided on a motion to dismiss. Courts routinely review the websites in issue and grant such motions. *See, e.g., Doe v. Bates*, 2006 WL 3813758, at *9-10 (Rule 12(b)(6) dismissal procedurally appropriate where Yahoo! immune under Section 230); *Parker v. Google, Inc.*, 422 F. Supp. 2d 492, 494 (E.D. Pa. 2006) (granting 12(b)(6) motion to dismiss claim based on Section 230); *Schneider v. Amazon.com, Inc.*, 108 Wash. App. 454, 31 P.3d 37 (2001) (affirming trial court's 12(b)(6) dismissal where Amazon immune under Section 230); *see also Zeran v. America Online, Inc.*, 129 F.3d 327 (4th Cir. 1997) (affirming 12(c) dismissal); *Chicago Lawyers' Committee*, 461 F. Supp. 2d at 699 (granting 12(c) motion).

[17] As an HSUS member, the one D.C. subscriber to the Magazines, as of the date of the Complaint, cannot reasonably have been deceived as to the Magazines' legal status. *See* May 4, 2007 Declaration of Ali A. Beydoun in Support of Defendant Marburger Publishing Company, Inc.'s Motion to Dismiss at 1. Thus, no actionable "consumer-merchant" relationship exists

Two, for items sold by third-party sellers using Amazon's Marketplace service, the seller is instructed to ensure that all items the seller is offering comply with the law. Zapolsky Decl. ¶ 8, Ex. H. Amazon makes no representations as to items offered by third parties. Zapolsky Decl. ¶ 9, Ex. I.

Three, the CPPA, D.C. Code § 28-3904(x), prohibits merchants from offering warranties (in such typical matters as title, suitability for a specific purpose and other contractual issues) in a manner contrary to the requirements of federal law. It is not intended to apply to every sale of every product regulated under federal law. *See* Dowd Mem. at II.B.[18]

Four, even if the CPPA did include every violation of federal law, the "promoting" language in the AWA has not been held to apply to publishers of magazines containing third-party ads, much less to a distributor such as Amazon.[19] Indeed, courts have applied the AWA only to those engaged in actual cockfighting or dogfighting and/or who own animals for cockfighting (*see Commonwealth v. Balog*, 672 A.2d 319 (Pa. Super. 1996), *cert. denied*, 519 U.S. 1129 (1997)) or dogfighting (*see People v. Fricchione*, 20 A.D.3d 433, 797 N.Y.S.2d 310 (2005),[20] a referee of a dogfight (*see United States v. Thompson*, 118 F. Supp. 2d 723, 725 (W.D. Tex. 1998)), or a spectator at a dogfight (*see State v. Arnold*, 557 S.E.2d 119 (N.C. App. 2001), *aff'd*, 569 S.E.2d 648 (N.C. 2002)). The same holds true for its D.C. counterpart.

---

between HSUS and Amazon, as required to state a claim under the CPPA. *Howard v. Riggs Nat'l Bank*, 432 A.2d 701, 709 (D.C. 1981).

[18] HSUS did not attach the Videos to the Complaint and Amazon has not seen the Videos that are the subject of the Complaint. Accordingly, Amazon does not address in this Motion whether the federal Depiction of Animal Cruelty statute, which does not apply to any depiction that has serious journalistic value, 18 U.S.C. § 48(b), would apply to these Videos.

[19] Under the AWA, it is "unlawful for any person to knowingly use the mail service of the United States Postal Service or any interstate instrumentality for purposes of promoting or in any other manner furthering an animal fighting venture except as performed outside the limits of the United States." 7 U.S.C. § 2156(c). The recent amendment to the AWA is the best evidence that HSUS does not think the law reached the activities it is seeking to ban. *See* n.4, *supra*.

[20] *Com. v. Fricchione*, Crim.No. 0012396-2004 (Pa. Ct. Comm. Pleas, sentenced March 13, 2006), Compl. ¶ 63, which involved an arrest and conviction under Pennsylvania animal cruelty laws, is also distinguishable in that Fricchione owned or possessed dogs for fighting and was an active dogfighter, convicted for dogfighting-related offenses in New York.

Five, even if the AWA applied to ads in magazines, section 2156(c) of the AWA does not prohibit promotion of animal fighting ventures in every jurisdiction. Subsection (d) states that "the activities prohibited by such subsections shall be unlawful with respect to fighting ventures involving live birds only if the fight is to take place in a State where it would be in violation of the laws thereof." 7 U.S.C. § 2156(d); *see United Gamefowl Breeders Ass'n v. Veneman*, No. 03-970, slip op. at 25-26 (W.D. La. May 27, 2005) ("Congress has openly declared its intent not to displace state law – or otherwise interfere inside state boundaries – unnecessarily"). The legislative history states that "Game fowl publications would be unaffected except that advertising of fights involving live birds would be prohibited except in those instances where such fights are to be held in a State or territory where they are not unlawful." H.R. Conf. Rep. 94-976 (1976), *reprinted in* 1976 U.S.C.C.A.N, 783, 797. According to the Complaint, ¶ 23, and HSUS's website, *see* Pendleton Decl. Ex. 4, cockfighting itself is not illegal in all fifty states and the Territories. Thus, even if Amazon's online subscription mechanism were somehow deemed to be using the mails to promote or further an animal fighting venture, if the activity or product advertised takes place in a state or country where that is legal, it would not violate the AWA.

The CPPA does not apply to ads that are legal in certain jurisdictions just because customers in other jurisdictions may view the ads. Recently, the D.C. Superior Court in *Hakki* dismissed for failure to state a claim a CPPA claim similar to HSUS's against alcoholic beverage manufacturers and importers for ads that allegedly appealed to minors. 2006 WL 852126, at *3. Ads contained in a national publication that may be viewed by individuals in other jurisdictions in which the activity is unlawful do not violate the CPPA:

> Neither the CPPA nor any other District of Columbia law makes it an unlawful trade practice to place advertisements that are intended to appeal to persons over 21 because the same advertisements may also appeal to persons under 21, who are prohibited from purchasing the product. The legislature may wish to consider such a law if it could be shown that a particular form of advertising appeals, disproportionately or exclusively, to underage drinkers, but the statute under which Plaintiff brings suit does not permit the court to make such a law (or to declare policy in the area) where none exists.

34

*Id.* The imposition of CPPA liability as against Amazon is even more inappropriate here because, unlike the beer manufacturers defendants in *Hakki*, Amazon is not the advertiser, but an online conduit for obtaining subscriptions to the Magazines containing ads. Therefore, the Complaint (Counts I – VII) should be dismissed in its entirety.

## VI.    HSUS'S CLAIMS FAIL BECAUSE, AS A DISTRIBUTOR, AMAZON HAS NO DUTY TO REVIEW THE CONTENT OF THE MAGAZINES OR VIDEOS

It is a well-established rule at common law and compelled by the First Amendment that distributors are not liable for the alleged wrongful or negligent publication of third-party ads and have no duty to investigate those ads, absent knowledge of illegality.[21]

### A.    As a Distributor Offering an Online Mechanism For Subscribing to Magazines and Selling Videos, Amazon Has No Duty to Investigate

Even if Section 230 did not provide absolute immunity, which it does, HSUS' claim fails as to Amazon because, as a distributor of books, videos, and periodicals, Amazon enjoys heightened immunity.  As a distributor, Amazon would only be liable if there were fault – that is, if Amazon knew or had reason to know that the offer of subscriptions for the Magazines and the Videos were indeed illegal.  *See Zeran*, 129 F.3d at 331 (distributors cannot be held liable for defamatory statements contained in the materials they distribute unless it is proven at a minimum that they have actual knowledge of the defamatory statements upon which liability is predicated); *Cubby, Inc. v. CompuServe, Inc.*, 776 F. Supp. 135, 139 (S.D.N.Y. 1991) ("[w]ith respect to entities such as news vendors, book stores, and libraries, however, 'New York courts have long held that vendors and distributors of defamatory publications are not liable if they neither knew nor have

---

[21] *See Restatement (Second) of Torts* § 581 (1976) ("One who only delivers or transmits defamatory matter published by a third person is subject to liability if, but only if, he knows or has reason to know of its defamatory character"); Robert Sack, *Sack on Defamation* § 7.3.1 (3d ed. 2007) ("those who merely deliver or transmit defamatory material . . . by another will be considered to have published the material [and be liable for such publication] only if they knew or had reason to know that the material was *false and defamatory . . . This principle is universally acknowledged*") (emphasis added).

reason to know of the defamation' ") (citation omitted); *Lewis v. Time, Inc.*, 83 F.R.D. 455, 463-64 (E.D. Cal. 1979) (similar), *aff'd*, 710 F.2d 549 (9th Cir. 1983).

   The fundamental requirement that a distributor must have actual knowledge or a sufficient reason to know before liability can be imposed on the mere act of distribution is "deeply rooted in the First Amendment." *Cubby*, 776 F. Supp. at 139 (applying principle in civil defamation suit). *See Smith v. California*, 361 U.S. 147 (1959) (ordinance violated First Amendment because it imposed criminal sanctions on booksellers without any requirement of knowledge of the obscene contents of the book on the part of seller); *Lerman v. Flynt Distributing Co.*, 745 F.2d 123, 139, 140-41 (2d Cir. 1984) ("First Amendment guarantees have long been recognized as protecting distributors of publications"), *cert. denied*, 471 U.S. 1054 (1985).

   Absent knowledge of illegality, Amazon, as a distributor, has no duty to investigate the publications to which it offers subscriptions or videos posted on its website. *See Lerman*, 745 F.2d at 139 ("national distributor of hundreds of periodicals has no duty to monitor each issue of every periodical it distributes" absent requisite knowledge; "such a rule would be an impermissible burden on the First Amendment"); *Auvil v. CBS "60 Minutes,"* 800 F. Supp. 928, 931-32 (E.D. Wash. 1992) (absent knowledge or reason to know of the falsity of the information, distributor has no duty to investigate). The practical implications of imposing that duty on third-party disseminators of information would be stunning. Amazon cannot be expected to absorb the inordinate cost of analyzing each of the millions of publications offered through its website to determine whether ads or other content contained in them on their face reflect a "substantial harm to the public." And the law does not require Amazon to do so. *See Smith v. California*, 361 U.S. at 153 ("If the contents of bookshops and periodical stands were restricted to material of which their proprietors had made an inspection, they might be depleted indeed.").

   What is more, mere notice of a claim of illegal content, even if a claim is filed in a court of law, would not be sufficient to constitute knowledge, rendering Amazon liable for its online services. Otherwise, a plaintiff could always achieve the relief it is seeking <u>before</u> any court had

ruled.  Magazine subscription or video providers, fearful of liability, would remove magazines or videos <u>before</u> any legal finding.  "More than unrealistic in economic terms, it is difficult to imagine a scenario more chilling on the media's right of expression and the publisher's right to know."  *Auvil*, 800 F. Supp. at 932.

### B.    Even If Amazon's Duty Were That Of A Publisher – Which It Is Not – Ads That <u>On</u> <u>Their</u> <u>Face</u> Are Not Unlawful Do Not Require Investigation

Even if Amazon's duty were that of the publishers – which it clearly is not – HSUS's claims fail because the ads do not on their face evidence unlawful activity.  A magazine "owe[s] no duty to refrain from publishing a facially innocuous classified advertisement when the ad's context – at most – made its message ambiguous."  *Eimann v. Soldier of Fortune Magazine, Inc.*, 880 F.2d 830, 834 (5th Cir. 1989), *cert. denied*, 493 U.S. 1024 (1990) (rejecting liability for publishing classified ad for "weapons specialist" "seeking high risk assignments" after advertiser shot wife of man who responded to the ad).  "[T]he possibility of illegal results" stemming from an ad "does not necessarily strip an ad of its commercial speech protection" or deprive a publisher of constitutional protection "whenever the advertised product could be interpreted as an offer to engage in illegal activity or might relate to criminal conduct."  *Id.* at 837.  In *Eimann*, taking into account the important role and ubiquity of advertising, the court "decline[d] to impose on publishers the obligation to reject all ambiguous advertisements for products or services that might pose a threat of harm."  *Id.* at 838.  "The publication's editorial content would surely feel the economic crunch from loss of revenue that would result if publishers were required to reject all ambiguous advertisements."  *Id.* at 837.

So too here.  Where the AWA up to now has never been held to apply to ads, much less magazines, the activities advertised here are not illegal in every jurisdiction, *see* discussion *supra* at V, the Magazines and ads have disclaimers rejecting any illegal use, generalized ads not directed at any specific jurisdiction can never be deemed to relate to criminal conduct <u>on</u> <u>their</u>

37

face.[22]  Given the lack of uniformity of animal fighting laws, the ads are not ones in which the

publisher "could recognize the offer of criminal activity" as in *Braun v. Soldier of Fortune*

*Magazine, Inc.*, 968 F.2d 1110 (11th Cir. 1992) (finding the "Gun For Hire" ad "clearly

convey[ed]" that advertiser was willing to use his gun to commit crimes), *cert. denied*, 506 U.S.

1071 (1993).  The mere possibility that a third-party ad could lead to animal fighting activities in

a jurisdiction or under circumstances where they are illegal is insufficient to hold a publisher,

much less a distributor like Amazon, liable for the content of the ad.  Publishers of magazines

containing commercial speech are not well "situated to evaluate the accuracy of [the] messages

and the lawfulness of the underlying activity." *Central Hudson Gas & Elec. Corp. v. Public

Service Comm'n,* 447 U.S. 557, 564 n.6 (1980).  And, as a distributor, Amazon is even less well

situated to review the advertisements contained in the 90,000 magazine titles to which it offers

subscriptions.[23]

---

[22] The third-party advertisements contained in *The Gamecock* and *The Feathered Warrior* are, at
worst, ambiguous (*see, e.g.*, ad for "The Gamest Cocks Alive" referencing a "2-time winner at
Sunset at same meet" and stating "These cocks are very powerful and extremely game," *see*
Pendleton Decl. Ex. 3C (*The Feathered Warrior* (July 2006) at 3)) or, more often, facially
innocuous, replete with express disclaimers (*see, e.g.*, ad for "Albanys and Roundheads – We
show our birds at Texoma," which expressly states "I am making this shipment with the
understanding that the contents of this shipment are not to be used in any illegal activity contrary
to any state or federal law," *see* Pendleton Decl. Ex. 3A (*The Feathered Warrior* (Apr. 2004 at
15)).  Other ads relate to activities or items in jurisdictions where those activities or items *are*
indeed legal at the time the ad was placed.  Just because an ad offers gamecocks for sale does not
*a priori* mean those birds will be used for fighting, as opposed to simply for showing or
breeding; gaffs and spurs offered in an ad could be for lawful purposes – like collecting guns and
knives – and not for use in "animal fighting ventures," now outlawed for the first time under
federal law signed May 3, 2007.  *See* n.4 *supra*.  A pit and bleachers offered for sale in the
December 2006 edition of *The Gamecock* at 37 (Compl. ¶ 54; Pendleton Decl. Ex. 2), could be
used for activities other than cockfighting, such as showing animals.

[23] *See, e.g., Yuhas v. Mudge*, 322 A.2d 824 (N.J. Super. 1974) (plaintiff, injured by fireworks
purchased after reading advertisements for them in a magazine, could not state a cause of action
against magazine publisher).  *See also Walters v. Seventeen Magazine, Inc.*, 195 Cal. App. 3d
1119, 241 Cal. Rptr. 101 (1987) (magazine aware of danger of tampon it advertised was not
liable to reader who purchased tampons and suffered toxic shock syndrome).

## VII.    THE FIRST AMENDMENT BARS HSUS'S CLAIMS AGAINST AMAZON

### A.    HSUS's Claims Pose an Unconstitutional Burden On Core First Amendment Rights That Cannot Survive Strict Scrutiny

HSUS's claims fail because the speech HSUS seeks to suppress is squarely protected by the First Amendment.  HSUS seeks treble damages and the total suppression of magazines containing both editorial content and ads for cockfighting, not because the ads mislead or deceive consumers, but because, in advertising and promoting gamecock activities in jurisdictions even where the activities are legal, the ads might reach jurisdictions where the activities are illegal.  Even more troubling, HSUS seeks to ban sale and distribution of the Magazines themselves – which HSUS dismisses as "catalog-type" publications despite their editorial and political content – because, according to HSUS, possessing, distributing, marketing, and selling the Magazines themselves promotes illegal cockfighting activities.  Compl. ¶¶ 50-67.

The Supreme Court has ruled that "a direct restriction on protected First Amendment activity," such as HSUS seeks here, requires "exacting First Amendment scrutiny."  *Riley v. National Fed'n of the Blind*, 487 U.S. 781, 788-89 (1988).  The restriction on pure speech must be necessary to advance a compelling state interest and be narrowly tailored to achieve that end.  *Simon & Schuster, Inc. v. Members of New York State Crime Victims Bd.*, 502 U.S. 105, 118 (1991).  HSUS's interests do not rise to the level of compelling state interests and the extraordinary relief – a ban on the sale of magazines – that HSUS seeks is not narrowly tailored to achieve that goal.

### B.    Amazon's Sale Of Subscriptions To The Magazines Is Not Commercial Speech

There is no federal authority for applying the commercial speech analysis to distributors of subscriptions to magazines, such as Amazon.  Indeed, the Supreme Court has taken pains to avoid that sort of extension.  In *Bigelow v. Virginia*, 421 U.S. 809, 829 (1975), for example, the Supreme Court emphasized the constitutional significance of the distinction between publisher and advertiser when it reversed the criminal conviction of a Virginia newspaper editor and publisher

who disseminated an advertisement for abortion services.  When governmental regulation purports

to operate, not against an "advertiser or referral agency or a practitioner," but against the

"publisher and editor of a newspaper," it implicates "more serious First Amendment" interests and

enhances the "strength" of the constitutional right at stake.  *Id.* at 828 n.14.

Publication or sale of the Magazines themselves, which contain editorial and political

speech, does not constitute commercial speech simply because they allegedly also contain

"hundreds of advertisements."  Compl. ¶ 50.  "Commercial speech" cannot be expanded beyond

statements that do "no more than propose a commercial transaction."  *Virginia State Bd. of*

*Pharmacy v. Virginia Citizens Consumer Council, Inc.,* 425 U.S. 748, 762 (1976); *United States*

*v. United Foods,* 533 U.S. 405, 409 (2001) (same).  The Magazines discuss topics from breeding

and showing tips, including "beginner basics" in raising cocks and care of hatching eggs, to

avian flu and other poultry disease control.  The Magazines also contain editorial commentary on

laws prohibiting cockfighting.  The excerpt from the January 2006 *The Feathered Warrior,*

Pendleton Decl. Ex. 3D, is an example of just such classic political speech, exhorting readers to

"become more politically aware," "help [in] letter writing and calling campaigns" and "find out

how your elected representatives, state and federal, stand on issues affecting our sport."[24]

Commercial speech that is "inextricably intertwined with otherwise fully protected speech," as

here, must be treated the same as other public discourse.  *Riley v. National Fed'n of the Blind,*

487 U.S. 781, 796 (1988) (holding that speech by professional charity solicitors was fully

protected under the First Amendment because the commercial aspects of the solicitation,

although of lesser magnitude, were "inextricably intertwined" with the fully protected content of

the presentations regarding charitable programs).  To conclude otherwise would turn every

newspaper, magazine, trade journal, and broadcast into commercial speech, subject to

intermediate scrutiny rather than the strict scrutiny afforded pure political/editorial speech.

---

[24] The Magazines are entirely different than the information pamphlet, distributed together with
other advertisements for products, mailed by a drug company in *Bolger v. Youngs Drug Products
Corp.*, 463 U.S. 60 (1983) (striking down ban on unsolicited contraceptive advertising).

Treble damages and a total ban on the Magazines cannot withstand the strict scrutiny that is required of any restriction that singles out pure speech on one subject because of its content, imposing burdens on defendants not borne by others. *United States v. Eichman*, 496 U.S. 310, 319 (1990) ("If there is a bedrock principle underlying the First Amendment, it is that the Government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable").

These remedies are not narrowly drawn to advance the governmental interest; indeed they are significantly over-inclusive because they penalize defendants for the pure editorial and political content contained in the Magazines. To the extent the AWA and the D.C. Cruelty to Animals statute – and the new law just enacted – are interpreted to prohibit Amazon's conduct as promoting animal fighting – an unprecedented expansion – the statutes would be subject to challenges as unconstitutionally overbroad and unconstitutionally vague. Indeed, to avoid such constitutional infirmities, an Oklahoma statute that made it a crime to "encourage" cockfighting, was interpreted "as prohibiting only speech and/or conduct which encourages the imminent lawless action of cockfighting as distinguished from mere advocacy of the use of force of violence, which constitutes protected speech under the First Amendment." *Edmonson v. Pearce*, 91 P.3d 605, 632-33 (Okla. 2004). To criminally punish magazine publishers and distributors would be unconstitutionally overbroad because clearly protected editorial speech would be included. *See Houston v. Hill*, 482 U.S. 451, 455 (1987) (striking down as overbroad ordinance making it unlawful to "interrupt" a police officer because it would apply to constitutionally protected speech). It would also be unconstitutionally vague, "fail[ing] to provide the kind of notice that will enable ordinary people to understand what conduct [they] prohibit[]." *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999). The Supreme Court has routinely invalidated vague laws imposing criminal penalties on these grounds, often in response to facial challenges – particularly where, as here, First Amendment rights are implicated. A "more stringent vagueness test" applies if "the law interferes with the right of free speech or of association." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 1193-94 (1982). *See also Smith v. California*, 361 U.S. at

41

157 ("stricter standards of permissible statutory vagueness may be applied to a statute having a potentially inhibiting effect on speech). The appropriate narrowly tailored solution would be to enforce laws against those actually engaged in animal fighting, not Amazon, the mere conduit for First Amendment protected speech.

### C.    Even If Amazon's Online Offer Of Subscriptions to the Magazines Were Commercial Speech – And It Is Not – HSUS's Claims Fail Because the Proposed Ban And Treble Damages Would Violate the First Amendment

HSUS's proposed ban and damage award are unconstitutional even if the Magazines (and the online sale of subscriptions) are considered commercial speech. "[E]ven a communication that does no more than propose a commercial transaction is entitled to the coverage of the First Amendment." *Edenfield v. Fane*, 507 U.S. 761, 767 (1993). As the party seeking to uphold a restriction on commercial speech, HSUS bears the burden of justifying it. *Id.* at 770 (*quoting Bolger*, 463 U.S. at 71 n.20). HSUS's Complaint fails to allege – and HSUS cannot prove – that removing from Amazon's website the postings for subscriptions to the Magazines would directly and materially advance the government interest in preventing illegal cockfighting. Nor does HSUS allege – and it cannot prove – that the ban and treble damages are not more extensive than necessary to serve that interest. Accordingly, HSUS's claim cannot survive the Supreme Court's four-part *Central Hudson* test for determining whether restrictions on commercial speech are constitutional, much less the strict scrutiny applicable here.

### 1.    Sale Of Subscriptions to Gamefowl Magazines Is Lawful And Not Misleading

The speech at issue concerns lawful activity and is not misleading. While the Supreme Court has recognized that commercial advertising that, on its face, proposes an illegal transaction may be prohibited, *see, e.g., Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*, 413 U.S. 376, 389 (1973), it affords First Amendment protection to advertisements for products and services that could be, but are not necessarily, employed for an unlawful purpose. *See, e.g., Carey v. Population Servs. Int'l*, 431 U.S. 678, 701 (1977). Lawful advertising is anything that

does not directly incite illicit activity.  *Id.* (rejecting the argument that a total ban on contraceptive advertisements is needed because such advertisements "directly incite[] illicit sexual activity among the young") (citing *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969)).  Unless the speech is misleading or relates to unlawful activity, the power to suppress commercial speech is severely circumscribed.  *See, e.g., Central Hudson,* 447 U.S. at 564; *Edenfield*, 507 U.S. at 761.

If, in advertising legal activities, Compl. ¶ 23, the ads also appeal to people engaged in cockfighting in jurisdictions or under circumstances where such activities would be illegal, that appeal is nonetheless constitutionally protected.  To hold otherwise would be the equivalent of saying The Mirage Hotel cannot advertise gambling in national newspapers because gambling is illegal in jurisdictions other than Nevada, where The Mirage is located, or that alcohol or cigarettes may not be advertised because the ads might be seen by minors.  "The commercial speech doctrine would disappear if its protection ceased whenever the advertised product might be used illegally."  *Dunagin v. City of Oxford*, 718 F.2d 738, 743 (5th Cir. 1983), *cert. denied*, 467 U.S. 1259 (1984).

The fact that, in some jurisdictions, some of the activities being advertised may be illegal, does not strip the advertising, much less the Magazines, of First Amendment protection.  In *Greater New Orleans Broadcasting Ass'n v. United States*, 527 U.S. 173, 194 (1999), the Supreme Court struck down a federal law banning broadcast advertising of private casino advertising, citing exceptions where such gambling was legal, saying the ban "sacrifice[d] an intolerable amount of truthful speech about lawful conduct."  Justice Stevens emphasized that the Court had "rejected the argument that the power to restrict speech of certain socially harmful activities was as broad as the power to prohibit such conduct."  *Id.* at 182.  Justice Thomas, concurring, called for strict scrutiny of any governmental regulation of advertising designed "to keep legal users of a product or service ignorant in order to manipulate their choices in the marketplace."  *Id.* at 197.

Similarly, in *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484 (1996), the Supreme Court held unconstitutional Rhode Island's ban on advertising the price of alcoholic beverages intended to promote temperance and protect minors, citing "the unbroken line of prior cases striking down

43

similarly broad regulations on truthful, nonmisleading advertising when non-speech-related alternatives were available." *Id.* at 509-10. Moreover, the fact that the ban pertained to a "vice" activity did not except the ban from the First Amendment protections for commercial speech. *Id.* at 513-14; *see also id.* at 531-32 (O'Connor, J.).

Since the Magazines contain truthful and non-misleading expression and do not directly solicit or incite illegal activity, HSUS must satisfy each of the remaining prongs of the commercial speech test. *Edenfield*, 507 U.S. at 768-69.

### 2.    Banning The Online Offer of Subscriptions to Magazines or Awarding Treble Damages Would Not Significantly, Directly, and Materially Reduce Illegal Cockfighting

Even assuming *arguendo* that HSUS could satisfy the second prong – that the asserted governmental interest is substantial – HSUS's claim fails the third *Central Hudson* prong because a ban on Amazon's online offer of subscriptions to these Magazines, or a damage award, would not significantly, directly, and materially alleviate illegal cockfighting activities and the sale of illegal cockfighting paraphernalia. *Central Hudson*, 447 U.S. at 566 (a restriction "may not be sustained if it provides only ineffective or remote support for the government's purpose"; it must "directly advance[] the governmental interest asserted"); *Edenfield*, 507 U.S. at 770-71 (the party seeking a restriction on commercial speech "must demonstrate that the harms it recites are real and that its restrictions will in fact alleviate them to a material degree."); *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484 (1996) (ban on price advertising must significantly reduce alcohol consumption). "This burden is not satisfied by mere speculation or conjecture." *Edenfield*, 507 U.S. at 771.

For a ban to be viable, HSUS must show that Amazon's online offer of subscriptions to the Magazines causes illegal cockfighting and therefore that the ban would *significantly, materially* and *directly* reduce illegal cockfighting. The need for this showing is particularly great given the drastic remedy sought – a wholesale ban on truthful, non-misleading editorial and commercial speech. *See 44 Liquormart,* 517 U.S. at 505. Cockfighting existed long before the

44

dawn of the Internet.  HSUS's allegations that the Magazines are found at a majority of law enforcement raids of illegal animal fights and that the possession of the Magazines has been deemed circumstantial evidence of cockfighting, Compl. ¶ 62, is <u>not</u> evidence, circumstantial or otherwise, that, but for the Magazines, the cockfights would not have occurred.  *See also* Compl. ¶¶ 96-97.  Rather, it is precisely the type of rank speculation and conjecture that the Supreme Court has deemed unacceptable in attempting to demonstrate that a ban on commercial speech directly advances the desired ends.  *See 44 Liquormart*, 517 U.S. at 510.

With the current proliferation of websites on the Internet that list cockfight schedules and similar content, *see* note 12 *supra*, HSUS's assumption that, "but for the real-time commercial cockfighting infrastructure provided by the Publications," "hundreds if not thousands of specific unlawful animal fighting ventures"... "would not exist," Compl. ¶ 67, is outdated and without foundation.  HSUS blames the sale of the Magazines for alleged cockfighting not even named in the ads or editorial content of the Magazines.  Compl. ¶ 67.  HSUS has not pled, and cannot demonstrate, a <u>direct</u> causal connection between Amazon's offer of online subscriptions and illegal cockfighting – because there is none.  Any contrary conclusion ignores the constellation of alternate factors – cultural, economic, and geographic – that may encourage animal fighting.  It also ignores the real possibility that advertising may simply channel existing gamefowl aficionados from one advertised activity to another, possibly in a jurisdiction where the activity is legal.  And it ignores that any causal connection between Amazon's online offer of subscriptions to the Magazines containing such ads is that much more attenuated.  *See* discussion *supra* at III.B. (discussing absence of causation and redressability for Article III standing).

### 3. HSUS's Claims Fail Because A Wholesale Ban Is Far More Extensive Than Necessary And Ignores Reasonable and Obvious Alternatives to Restrictions on Speech

Under the fourth "reasonable fit" prong, the total ban HSUS seeks is clearly far "more extensive than necessary to serve the asserted interest." *Central Hudson*, 447 U.S. at 569-72 (state regulation banning advertisements promoting the use of electricity failed the fourth prong because

it was more extensive than necessary, banning the advertising of anything related to electricity, including the promotion of energy conservation). If a regulation is substantially excessive and disregards less restrictive and more precise means, it is invalid. *Board of Trustees of S.U.N.Y. v. Fox*, 492 U.S. 469, 479 (1989). There is little question that a ban on, or treble damages for, the online offer of subscriptions to the entire Magazines – which would reach legitimate commercial speech (such as ads for the United Gamefowl Breeders Association and a documentary on the history of cockfighting) as well as core editorial and political speech (including tips and commentary on cock breeding, shows, disease and legislation) – would not be narrowly drawn. Indeed, that remedy strikes at the very heart of the First Amendment's protection of speech. HSUS cannot "completely suppress information when narrower restrictions on expression would serve its interest as well." *Central Hudson*, 447 U.S. at 565.

HSUS's claim ignores more reasonable and less restrictive, non-speech-burdening alternatives for advancing its interest in eliminating illegal cockfighting, such as stricter enforcement of laws against those conducting illegal fights and counter-speech. *City of Cincinnati v. Discovery Networks, Inc.*, 507 U.S. 410, 418 n.13 (1993) (regulation on commercial speech may be no more extensive than necessary to achieve substantial government goals; "if there are numerous and obvious less-burdensome alternatives to the restriction on commercial speech, that is certainly a relevant consideration in determining whether the 'fit' between the ends and means is reasonable").

The Supreme Court has repeatedly recognized that regulation of speech is far more dangerous than regulation of conduct. *44 Liquormart*, 517 U.S. at 512. "The normal method of deterring unlawful conduct is to impose an appropriate punishment on the person who engages in it . . . . But it would be quite remarkable to hold that speech by a law-abiding possessor of information can be suppressed in order to deter conduct by a non-law-abiding third party." *Bartnicki v. Vopper*, 532 U.S. 514, 529-30 (2001); *Greater New Orleans Broadcasting Ass'n*, 527 U.S. at 192 (in striking down ban on gambling advertisements, Court noted: "There surely

are practical and non-speech related forms of regulation . . . that could more directly and effectively alleviate some of the social costs of casino gambling.").

Because, on its face, the Complaint does not meet at least three of the four prongs of the *Central Hudson* test, HSUS's proposed ban on, and treble damages for, Amazon's online offer of the subscriptions to the Magazines cannot survive even intermediate constitutional scrutiny, let alone the heightened strict scrutiny warranted here. Accordingly, all of HSUS's claims should be dismissed as barred by the First Amendment.

### D.    HSUS's Equitable Claims Fail Because The Ban HSUS Proposes Constitutes An Unconstitutional Prior Restraint

An injunction is an extraordinary remedy under any circumstances, but a prior restraint on speech is "the most serious and least tolerable infringement" of First Amendment rights, *Nebraska Press Ass'n  v. Stuart*, 427 U.S. 539, 559 (1976), and is presumptively unconstitutional. *New York Times Co. v. United States*, 403 U.S. 713, 714 (1971) (any request for a prior restraint on expression "comes to this Court bearing a heavy presumption against its constitutional validity"); *Alexander v. United States*, 509 U.S. 544, 550, 554 (1993) (holding that any judicial order restricting speech that is issued in advance of publication is a prior restraint; "We have interpreted the First Amendment as providing greater protection from prior restraints than from subsequent punishments"). HSUS seeks a prior restraint on what is editorial – not purely commercial – speech. Where, as here, the prior restraint involves expression in the form of pure speech, the presumption of unconstitutionality is "virtually insurmountable." *Nebraska Press Ass'n*, 427 U.S. at 558 (White, J., concurring).

In its more than two hundred years of existence, the Supreme Court has never upheld a prior restraint on pure speech. *Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 226-27 (6th Cir. 1996). *See, e.g.*, *Near v. Minnesota ex rel. Olson*, 283 U.S. 697, 719 (1931) (striking down statute allowing injunctions against any publisher of defamatory periodicals, emphasizing that the primary purpose of the First Amendment is to prevent prior restraints, except involving publication of troop movements in war time, and then only with "proof that the publication would

47

inevitably, directly and immediately cause the occurrence"); *New York Times Co.*, 403 U.S. at 730
(the Pentagon Papers case) (Stewart, J., concurring) (holding that newspapers could not be
enjoined even during wartime from publishing top secret documents obtained without
authorization; must show that publication would "surely result in direct, immediate, and
irreparable damage to our Nation or its people"); *Nebraska Press Ass'n*, 427 U.S. at 561 (explicitly
declining to subordinate the First Amendment right of free expression to a criminal defendant's
Sixth Amendment right to a fair trial; "[I]t is nonetheless clear that the barriers to prior restraint
remain high unless we are to abandon what the Court has said for nearly a quarter of our national
existence and implied throughout all of it"). "The Court has tended to recognize only a narrow
number of situations in which prior restraints might be permissible, such as restraints against
obscenity, or to protect against imminent threats to national security, or as a last resort to protect a
defendant's right to a fair trial, and has suggested that outside these narrow 'exceptions,' no prior
restraints at all should be permitted." *Smolla and Nimmer on Freedom of Speech*, §15.7 at 15-
10.1-15-10.2.

The interest at stake here, however valid, is not "exceptional" and cannot be found to be
on the order of jeopardizing troops in wartime, particularly where less intrusive measures can be
used. While the ads are clearly separate from the editorial content, Amazon offers a mechanism
for obtaining subscriptions to magazines it does not even physically possess, so clearly it cannot
excise or refuse any offending ads but must refrain from offering online subscriptions to the
entire magazine, editorial content included. *See Riley*, 487 U.S. at 796.

Of course, Amazon has a right to decide what publications to sell or not to sell – a right
itself protected by the First Amendment. *Cf. Miami Herald Publishing Co. v. Tornillo*, 418 U.S.
241, 254, 256 (1974) ("The choice of material to go into a newspaper. . . constitute[s] the exercise
of editorial control and judgment. It has yet to be demonstrated how governmental regulation can
be exercised consistent with First Amendment guarantees of a free press as they have evolved to
this time"). Amazon's voluntary exercise of choice to remove the dog fighting videos does not
provide any basis for overriding that First Amendment right by court order banning the sale under

48

threat of criminal prosecution.  Today it is animal fighting, but tomorrow it could be abortion, guns, marijuana, or any other topic that is controversial.  "The First Amendment generally prevents government from proscribing speech, . . . or even expressive conduct, . . . because of disapproval of the ideas expressed."  *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382 (1992).

## VIII.   HSUS'S CONSPIRACY CLAIMS FAIL AS A MATTER OF LAW AND BECAUSE THERE IS NO EVIDENCE THAT AMAZON COMMITTED AN INDEPENDENT UNDERLYING UNLAWFUL ACT

Counts VI and VII fail to state claims for violation of D.C. or federal conspiracy laws and should be dismissed.  As a threshold matter, HSUS is precluded from asserting any claim for federal conspiracy pursuant to 18 U.S.C. § 371 because, as a criminal statute, it do not convey a private right of action.  *Rockefeller v. United States Court of Appeals*, 248 F. Supp. 2d 17, 23 (D.D.C. 2003).  *See Dugar v. Coughlin*, 613 F. Supp. 849, 852 n. 1 (S.D.N.Y. 1985) (holding that a private individual could not bring a cause of action under 18 U.S.C. § 371 because there is no private right of action under the federal criminal statute); *Fiorino v. Turner*, 476 F. Supp. 962, 963 (D. Mass. 1979) ("With regard to the alleged violation[] of 18 U.S.C. § 371, . . . [the] plaintiff has failed to cite, and the court has been unable to locate, any authority which would support implying a civil cause of action for violations of [this] provision[].").

Moreover, because there are no independent unlawful acts for which Amazon can be held liable, HSUS's conspiracy claims – both D.C. and federal – necessarily fail.  To state a claim of conspiracy under D.C. CODE ANN. §§ 22-1805a or 18 U.S.C. § 371, HSUS must plead the essential elements:  (1) an agreement between two or more persons to commit an unlawful act; (2) knowing, intentional participation in the conspiracy with intent to commit the unlawful act; and (3) an overt unlawful act.  *McCoy v. United States*, 890 A.2d 204, 210 (D.C. 2006); *Pearsall v. United States,* 812 A.2d 953, 960 (D.C. 2002).  "Mere presence or awareness is insufficient to make out a conviction for either aiding or abetting or conspiracy."  *McCoy,* 890 A.2d at 211.

No independent liability for conspiracy lies here because HSUS has failed to state a claim for any acts that are themselves actionable.  A necessary requirement of a conspiracy claim is that

some act must be committed, which, if done alone, would give rise to a cause of action. D.C. CODE ANN. § 22-1805a (b) ("No person may be convicted of conspiracy unless an overt act is alleged and proved to have been committed by 1 of the conspirators pursuant to the conspiracy and to effect its purpose."). While the crime of conspiracy "is separate and distinct from the substantive offense," "conspiracy cannot exist in a vacuum." *Nani v. Brownell*, 153 F. Supp. 679, 680 (D.D.C. 1957). In this case, HSUS has failed to state a claim for any independent underlying unlawful act on the part of each defendant. To the contrary, as discussed, in offering an online mechanism for selling subscriptions to magazines and for third parties to sell videos, Amazon acted entirely lawfully. The conspiracy claims, Counts VI and VII – based, as they are, on the same facts as HSUS's other claims – are barred for all the reasons stated for the underlying claims and should be dismissed.

## CONCLUSION

For the foregoing reasons, defendants Amazon respectfully urges that the motion to dismiss be granted and that the Complaint be dismissed in its entirety with prejudice.

Dated this 4th day of May, 2007.

<div style="margin-left: 40%;">

Respectfully submitted,
DAVIS WRIGHT TREMAINE LLP
               /s/
_____
Laura R. Handman (D.C. Bar No. 444386)
laurahandman@dwt.com
Constance M. Pendleton (D.C. Bar No. 456919)
conniependleton@dwt.com
1919 Pennsylvania Avenue, N.W., Suite 200
Washington, DC 20006-3402
(202) 973-4200; fax: (202) 973-4499

</div>

Of Counsel:

David A. Zapolsky, Esq.
Vice President & Assoc. Gen. Counsel
Litigation & Regulatory
Amazon.com, Inc.
P.O. Box 81226
Seattle, WA 98108-1226
(206) 266-1323, fax: (206) 266-7010

Jennifer Lenga Long (*pro hac vice* pending)
jenniferlengalong@dwt.com
Davis Wright Tremaine LLP
1501 Fourth Avenue
Seattle, WA 98101-1688
(206) 622-3150; fax: (206) 628-7699

Attorneys for Defendant Amazon.com, Inc.