UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

THE HUMANE SOCIETY OF THE     :
UNITED STATES     :
    :
        Plaintiff     :
    :
      vs.     :     Civil No. 07-0623 (CKK)
    :
AMAZON.COM., INC., *ET AL.*,     :     **ORAL HEARING REQUESTED**
    :
        Defendants     :

**DEFENDANT MARBURGER PUBLISHING
COMPANY, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT
AND SUPPORTING
MEMORANDUM OF POINTS AND AUTHORITIES**

Barry A. Fisher #D00208
Fleishman & Fisher
1875 Century Park East suite 2130
Los Angeles, California 90067
310-557-1077
310-612-8003 – fax
bfisher557@aol.com

Ali A. Beydoun #475413
Carr Maloney, P.C.
1615 L Street, N.W.
Suite 500
Washington, D.C.  20036
202-310-5500
202-310-5555 - fax
aab@carrmaloney.com

Attorneys for Defendant
Marburger Publishing Co., Inc.

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................ii

TABLE OF AUTHORITIES .........................................................................v

PRELIMINARY STATEMENT ....................................................................4

STATEMENT OF FACTS ............................................................................7

ARGUMENT.................................................................................................11

I.    THE ACTION SHOULD BE DISMISSED UNDER FRCP
      12(B) (2) FOR LACK OF PERSONAL JURISDICTION........................11

      A.  MOTION TO DISMISS UNDER FRCP 12(b)(2) STANDARD...........11

      B.  THERE IS NEITHER GENERAL NOR SPECIFIC JURISDICTION
          OVER MARBURGER IN D.C.................................................................12

      C.  PLAINTIFF DOES NOT PROVIFE SUFFICIENT SUPPORT TO
          ESTABLISH GENERAL JURISDICTION OVER MARBURGER......14

            1.  Marburger is not subject to this Court's general
                jurisdiction under Section 13-334(a) because
                Marburger does not have "systematic and continuous"
                business contacts in this forum .................................................14

            2.  The unilateral actions of a single member of Plaintiff's
                Organization cannot be used as the sole support for its
                Assertion of general jurisdiction over Marburger.....................17

            3.  Marburger does not maintain or oversee a business
                Related website or conduct systematic and continuous
                Internet transactions within this forum so as to confer
                general jurisdiction...................................................................18

            4.  Marburger has not violated the CPPA by making false
                Representations or by misleading anyone so as to confer
                general jurisdiction...................................................................20

      D.  PLAINTIFF DOES NOT PROVIDE SUFFICIENT SUPPORT TO
          ESTABLISH SPECIFIC JURISDICTION UNDER SECTION
          13-423(a) (1)..................................................................................21

1.  Marburger has not "transacted business" in the District
    of Columbia to satisfy the requirements of 13-423(a)(1)
    regarding specific jurisdiction...................................................21

2.  Plaintiff's Claims do not "Arise From" the Single
    Subscription of Marburger's Magazine......................................22

E.  THE EXERCISE OF JURISDICTION OVER MARBURGER WOULD
    VIOLATE DUE PROCESS....................................................23

    1.  Purposeful Availment and Foreseeability of Suit
        In the District .............................................................25

    2.  Fair Play and Substantial Justice............................................26

II.  THE FIRST AMENDMENT BARS PLAINTIFF'S CLAIMS AGAINST
     MARBURGER...............................................................................27

     A.  MARBURGER CANNOT BE LIABLE FOR PUBLISHING, AS
         PART OF ITS MAGAZINE WITH SUBSTANTIAL EDITORIAL
         CONTENT, ADVERTISEMENTS THAT ARE NOT FACIALLY
         UNLAWFUL..............................................................................27

     B.  PLAINTIFF'S CLAIMS FAIL BECAUSE IT REQUESTS THIS
         COURT TO IMPOSE AN UNCONSITUTIONAL PRIOR
         RESTRAINT ON SPEECH.................................................................27

     C.  THE CAUSES OF ACTION ALLEGED AGAINST
         MARBURGER ARE BARRED BECAUSE ANY ALLEGED
         "PROMOTION" OF ILLEGAL CONDUCT IS NOT AN
         IMMEDIATE INCITEMENT..............................................................29

     D.  MARBURGER'S MAGAZINE IS NOT COMMERCIAL SPEECH.....32

III. PLAINTIFF'S CONSPIRACY CLAIMS FAIL BECAUSE THERE IS NO
     SUFFICIENT ALLEGATION THAT MARBURGER COMITTED AN
     INDEPENDENT UNDERLYING UNLAWFUL ACT..........................32

IV.  THE COMPLAINT FAILS TO STATE A CLAIM UNDER THE ANIMAL
     WELFARE STATUTES, BEFORE OR AFTER THE 2007 AMENDMENTS,
     THAT UNDERLIE THE FIRST AMENDED COMPLAINT...............32

V.   THERE IS NO CASE OR CONTROVERSY BECAUSE THE HUMANE
     SOCIETY LACKS STANDING TO BRING THIS LAWSUIT...............36

VI.  THE COMPLAINT FAILS TO STATE A CLAIM UNDER THE CPPA......37

VII.    THE RECENT FILING OF A CONCEDEDLY PARALLEL CASE BY THE SAME PLAINTIFF COUNSELS THAT, IF THIS ACTION IS NOT DISMISSED OUTRIGHT, IT SHOULD BE STAYED OR DISMISSED BY THE INHERENT POWER OF THE COURT............37

CONCLUSION...................................................................................39

## TABLE OF AUTHORITIES

### *Cases*

*Abood v. Detroit Bd. of Educ.*, 431 U.S. 209, 97 S. Ct. 1782 (1977) ............................................32

*Accord Richter v. Analex Corp.*, 940 F. Supp. 353 (D.D.C. 1996)..............................................18

*Accord Sol Salins, Inc. v. Sure Way Refrigerated Truck Transp. Brokers, Inc.*,
510 A.2d 1032 (D.C. 1986) ..........................................................................................22

*Acker v. Royal Merchant Bank & Fin. Co.*, 1999 WL 1273476 (D.D.C. 1999) .........................22

*Air Line Pilots Ass'n v. Miller*, 523 U.S. 866, 879 n.6 (1998) .................................................38

*AMAF Int'l Corp. v. Ralston Purina Co.*, 428 A.2d 849, 851 (D.C. 1981) ..........................14

*Arista Records, Inc. v. Sakfield Holding Co.*, 314 F.Supp.2d 27 (D.D.C. 2004) ........................11

*Asahi Metal Indus. Co. v. Superior Court (Cheng Shin Rubber Indus. Co.)*, 480 U.S. 102,
107 S. Ct. 1026 (1987).....................................................................................................24

*Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 122 S. Ct. 1389 (2002). .................................30

*Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d 34 (D.D.C. 2003). .....................14, 15, 18, 19

*Bledsoe v. Crowley*, 849 F.2d 639, 645 (D.C. Cir. 1988) ..........................................................38

*Brandenburg v. Ohio*, 395 U.S. 444, 89 S. Ct. 1827 (1969) ........................................................30

*Brunson v. Kalil & Co., Inc.* 404 F.Supp.2d 221 (D.D.C. 2005) ...........................................12, 22

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) ..........................................................18, 22

*Carroll v. President of Princess Anne*, 393 U.S. 175, 89 S. Ct. 347 (1968). ...............................28

*Chaiken v. VV Pub. Corp.*, 119 F.3d 1018 (2d Cir. 1997) *cert. denied*, 522
U.S. 1149 (1998); ............................................................................................................16

*City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 420 n.16 (1993) .....................35

*City of Moundridge, KS v. Exxon Mobil Corp,* 471 F.Supp.2d 20 (D.D.C. 2007) ......................11

*COMSAT Corp. v. Finshipyards S.A.M.,* 900 F.Supp. 515 (D.D.C. 1995) ................................22

*Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992)........................................................34

*Crane v. N.Y. Zoological Soc'y*, 282 U.S. App. D.C. 295, 894 F.2d 454 (D.C. Cir. 1990)..................................................................................................................13

*Doe I v. Israel*, 400 F.Supp.2d 86 (D.D.C. 2005).........................................................25

*Dooley v. United Techs. Corp.*, 786 F. Supp. 65 (D.D.C. 1992) ............................21, 22

*Edmond v. United States Postal Serv. Gen. Counsel*, 292 U.S. App. D.C. 240, 949 F.2d 415 (D.C. Cir. 1991) ...............................................................13

*Eimann v. Soldier of Fortune Magazine, Inc.*, 880 F.2d 830 (5th Cir. 1989), *cert. denied*, 493 U.S. 1024, 110 S. Ct. 729 (1990), .......................................27

*El-Fadl v. Cent. Bank of Jordan*, 316 U.S.App.D.C. 86, 75 F.3d 669 (D.C. Cir. 1996).........14, 15

*Envtl. Research Int'l, Inc. v. Lockwood Greene Eng'rs, Inc.*, 355 A.2d 808 (D.C. 1976) .............24

*Estate of Klieman v. Palestinian Auth.*, 467 F.Supp.2d 107 (D.D.C. 2006) ...............24

*Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419 (5th Cir. 2005) ..........................16

*First Chicago Int'l v. United Exch. Co.*, 836 F.2d 1375, 1378 (D.C. Cir. 1988) ..........11

*Foretich v. United States*, 351 F.3d 1198, 1217 (D.C. Cir. 2003)...................................36

*FTC Line of Business Report Litig., 626 F.2d 1022, 1027 n.29 (D.C. Cir. 2003)*.................39

*Garcia v. United States*, 496 U.S. 70, 76 n.3 (1984) ....................................................35

*GTE New Media Servs., Inc. v. Ameritech Corp.*, 21 F.Supp.2d 27, 36 (D.D.C. 1998)..........11, 19

*Gibbons & Co. Inc. v. Roskamp Inst.*, 2006 WL 2506646 (D.D.C. 2006). ...................18

*González v. Internacional de Elevadores, S.A.*, 891 A.2d 227 (D.C. 2006) ..........................12, 14

*Guevara v. Reed,* 598 A.2d 1157 (D.C.1991)). ............................................................13

*Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228 (1958); ........................................24, 25

*Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408 (1984) *Appeal dismissed*, 2003 WL 22971974 (D.C. Cir. 2003), ...................................14, 15, 17

*Helmer v. Doletskaya*, 290 F.Supp.2d 61 (D.D.C. 2003), *rev'd on other grounds* 393 F.3d 201 (D.C. Cir. 2004). .........................................................................11

*Hess v. Indiana*, 414 U.S. 105, 94 S. Ct. 326 (1973) ..................................................30

*Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 S. Ct. 140 (1945) .............................................. passim

*Int'l Soc'y for Krishna Consciousness v. Eaves*, 601 F.2d 809 (5th Cir. 1979) ...........................29

*Jacobson v. Oliver*, 201 F.Supp.2d 93 (D.D.C. 2002)...........................................................11

*Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 501-02 (1952) ...............................................35

*Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 104 S. Ct. 1473 (1984). ..................................16

*Kingsley Int'l Pictures Corp. v. Regents of Univ. of N.Y.*, 360 U.S. 684, 79
S. Ct. 1362 (1959) ...................................................................................................31

*Kulko v. California Superior Court*, 436 U.S. 84 (1978) ...............................................17

*Land v. Dollar*, 330 U.S. 731, 67 S.Ct. 1009 (1947) ........................................................12

*Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) ...............................................................38

*Liberty Lobby, Inc. v. Pearson*, 129 U.S. App. D.C. 74, 390 F.2d 489, (D.C. Cir. 1968) ...........28

*Marsh v. Johnson*, 263 F. Supp. 2d 49, 52 (D.D.C. 2003) ..................................................38

*McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 78 S.Ct. 199 (1957), ...................................25

*Mwani v. bin Laden*, 368 U.S. App. D.C. 1, 417 F.3d 1, 8 (D.C. Cir. 2005) .......................24

*NAACP v. Button*, 371 U.S. 415, 83 S. Ct. 328 (1963). ....................................................30

*N.Y. Times Co. v. United States*, 403 U.S. 713 (1971) ......................................................29

*Near v. Minnesota ex rel. Olson*, 283 U.S. 697 (1931)......................................................28

*Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 96 S. Ct. 2791 (1976)....................................28, 29

*Ning Ye v. Hong Bao Zhang*, 2006 WL 1102832 (D.D.C. 2006).......................................26

*Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 108 S.Ct. 404 (1987). ......................24

*Org. for a Better Austin v. Keefe*, 402 U.S. 415, 419, 91 S.Ct. 1575 (1971) ...........................4

*Quazzani-Chahdi v. Greensboro News & Record, Inc.*, 2005 WL 2372178 (S.D.Tex. 2005) .....16

*Rodriguez Salgado v. Les Nouvelles Esthetiques*, 218 F. Supp. 2d 203 (D.P.R. 2002)................16

*Reiman v. First Union Real Estate Equity & Mortgage Invs.*, 614 F. Supp. 255 (D.D.C. 1985). ...............................................................................................................18

*Savage v. Bioport, Inc.*, 460 F. Supp. 2d 55 (D.D.C. 2006); ...........................................15

*Schwegmann Bros. v. Calvert Distillers Corp.*, 341 U.S. 384, 395-96 (1951)...................…..…35

*Smith v. Daily Mail Publ'g Co.*, 443 U.S. 97, 99 S. Ct. 2667 (1979) ......................................4, 29

*Thomas v. Collins*, 323 U.S. 516, 65 S. Ct. 315 (1945). ................................................30

*Travelers Health Ass'n v. Va. ex rel. State Corp. Comm'n,* 339 U.S. 643, 647, 70 S.Ct. 927 (1950) .............................................................................25

*Tory v. Cochran*, 544 U.S. 734, 125 S. Ct. 2108 (2005). .............................................28

*Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275 (Fed. Cir. 2005) ...........18

*United States Olympic Comm. V. Am. Media, Inc.*, 156 F. Supp. 2d 1200, 1207-08 (D.Colo.2001) …………………………………………………………………..……35

*United States v. Smithfield Foods, Inc.*, 332 F.Supp.2d 55 (D.D.C. 2004) ...........................11, 12

*Whitney v. Cal.*, 274 U.S. 357, 47 S. Ct. 641 (1927) ................................................31

*Winters v. New York*, 333 U.S. 507, 68 S. Ct. 665 (1948) .............................................31

*Willis v. Willis,* 655 F.2d 1333 (D.C.Cir. 1981). ....................................................21

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559 (1980); ................................................................................... passim

*Zuber v. Allen*, 396 U.S. 168, 169 (1969) …………………………………………34

## Statutes

D. C. Code Ann. § 13-334(a)…………………………………………………passim

D.C. Code Ann. § 13-423(a) (1)…………………………………………………passim

D.C. Code Ann. § 22-1015(a) (1)…………………………………………….…29, 30

D.C. Code Ann. § 22-1805a(a)…………………………………………………….6

D.C. Code Ann. § 28-3904, subsections (a), (e), (f), (x)……………………….…6

D.C. Code Ann. § 28-3905(k) (1)...............................................................................6

18 U.S.C. § 371......................................................................................................6

7 U.S.C. § 2156(c)..........................................................................................passim

**Rules**

Fed. R. Civ. P. 12(b)(2)....................................................................................10, 11

Fed. R. Civ. P. 12(b)(6)...................................................................................10, 11

**Other Authorities**

4 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1067.5
(West, Westlaw through 2007 update)...............................................................16

Graham C. Lilly, *Jurisdiction Over Domestic and Alien Defendants*, 69 Va. L. Rev. 85,
99 (1983) (emphasis in the original), *cited in Helicopteros*, 466 U.S. at
417............................................................................................................17

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

THE HUMANE SOCIETY OF THE          :
UNITED STATES                      :
                                   :
     Plaintiff                  :
                                   :
vs.                                :          Civil No. 07-0623 (CKK)
                                   :
AMAZON.COM., INC., *ET AL.*,       :
                                   :
     Defendants                 :

## <u>DEFENDANT MARBURGER PUBLISHING<br>COMPANY, INC.'S MOTION TO DISMISS</u>

Defendant Marburger Publishing Company, Inc. ("Marburger") by counsel CARR MALONEY, P.C., and pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure, respectfully moves this Court to dismiss Plaintiff's First Amended Complaint, on the grounds of lack of jurisdiction over the subject matter, lack of jurisdiction over the person, and failure to state a claim on which relief can be granted.

Marburger incorporates by reference and joins in the Motion of Defendant Amazon to Dismiss filed in this Court on July 18, 2007. Marburger also incorporates by reference and joins in the Motion of Defendants Dowd Publishers d/b/a The Feathered Warrior to Dismiss also filed in this Court on July 18, 2007. Marburger also incorporates by reference and joins in the Motion of Defendant Magazine Express to Dismiss also filed in this Court on July 18, 2007. This motion is based on the foregoing documents, all matters subject to judicial notice, the attached Memorandum of Points and Authorities and the Declarations of J.C. Griffiths (Exhibit A) and Ali A. Beydoun (Exhibit B), all papers on file in this action and such other and further matters as may be presented to the Court prior to the determination of the motion.

Respectfully submitted,

/s/ Barry A. Fisher
Barry A. Fisher #D00208
Fleishman & Fisher
1875 Century Park East suite 2130
Los Angeles, California 90067
310-557-1077
310-612-8003 – fax
bfisher557@aol.com

Ali A. Beydoun #475413
Carr Maloney PC
1615 L Street, N.W.
Suite 500
Washington, D.C.  20036
202-310-5500
202-310-5555 - fax
aab@carrmaloney.com

Attorneys for Defendant
Marburger Publishing Co., Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served electronically, this 18th day of July, 2007 to:

Ethan Carson Eddy
Jonathan R. Lovvorn
The Humane Society of the United States
2100 L Street, N.W.
Washington, D.C.  20037

Stuart Philip Ross
Alexei M. Silverman
Ross, Dixon & Bell, LLP
2001 K Street, N.W.
Washington, D.C.  20006

Donna M. Crowe
Bradley Arant Rose & White LLP
1133 Connecticut Avenue, N.W., 12th Floor
Washington, D.C. 20036

Michael S. Denniston
Bradley Arant Rose & White LLP
1819 Fifth Avenue North
Birmingham, Alabama 35213

Constance M. Pendleton
1500 K Street, N.W., Suite 450
Washington, D.C.  20005

Dowd Publishers d/b/a
The Feathered Warrior
1812 Hwy 7-71 East
DeQueen, AR  71832

Mark Pollot
mpollot@cableone.net

John Doe d/b/a Underground Pitbull
Breeders Association

John Doe d/b/a StreetheatDVD.com

/s/ Ali A. Beydoun
Ali A. Beydoun

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| THE HUMANE SOCIETY OF THE UNITED STATES | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| vs. | : | Civil No. 07-0623 (CKK) |
| | : | |
| AMAZON.COM., INC., *ET AL.*, | : | |
| | : | |
| Defendants | : | |

**MEMORANDUM OF POINTS & AUTHORITIES
IN SUPPORT OF DEFENDANT MARBURGER PUBLISHING
COMPANY, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

**PRELIMINARY STATEMENT**

Defendant Marburger Publishing Co., Inc. respectfully moves to dismiss this action on the grounds of lack of subject matter jurisdiction, lack of personal jurisdiction, and failure to state a claim on which relief can be granted.

This action seeks a singularly extreme result - the permanent shutdown of magazines - by a singularly inapt means - a local consumer protection statute meant to guard D.C. consumers against breach of warranty. The result sought is in "the classic mold of prior restraint," a "prior injunction against publication." See *Smith v. Daily Mail Publ'g Co.*, 443 U.S. 97, 101, 99 S. Ct. 2667, 2670 (1979). Any such restraint "bears a 'heavy presumption' against its constitutional validity," *Org. for a Better Austin v. Keefe,* 402 U.S. 415, 419, 91 S. Ct. 1575, 1578 (1971), which the Plaintiff does not even approach satisfying. If any publication that could be imagined to encourage someone to commit a crime could be banned by a court anywhere in the country, there would be little left to read. Despite Plaintiff's procrustean efforts, moreover, the D.C. warranty statute, for many reasons, cannot be made to fit the case. Plaintiff - an animal advocacy

4

group - also fails to meet any element of standing. It has not alleged any cognizable injury in fact. The near-cosmic harms alleged by Plaintiff - everything from reducing gambling to preventing bird flu - are as about as far removed from the sale of a magazine in D.C. as can be imagined. Moreover, the Plaintiff impermissibly seeks to use the consumer law as an end run around the fact that the underlying statutes Plaintiff claims are violated are criminal statutes that cannot be enforced by a private civil action.

The First Amendment also bars the claims because they assert that Marburger's magazine "promotes" unlawful acts. Such a claim cannot be stated unless the speech is likely to incite imminent lawless action. No such assertion is or could be made with regard to Marburger's magazine.

Four companies are sued in this case - two magazines, a subscription service, and a sales web site. As to this moving Defendant, Marburger Publishing Co., Inc., there is in any event no personal jurisdiction. At the time the action was filed, Marburger had no contacts with D.C. other than *a single subscription taken out by a member of Plaintiff itself.*

There is no general jurisdiction over Marburger because it does not engage in continuous and systematic business in D.C. - anything but. Marburger's business in D.C. could only charitably be characterized even as sporadic - itself insufficient to call down general jurisdiction. Nor is there specific jurisdiction because, among other things, the claim does not arise from any business transacted in D.C. It would be one thing if Marburger's lone D.C. subscriber was not getting her magazines and sued for a refund. This case is the polar opposite. The action is not even brought by a subscriber and has no relation at all to any D.C. "transaction." Rather, as noted, it seeks to use the D.C. consumer statute as a roving commission to eradicate what the Plaintiff sees as generalized evils.

To exercise personal jurisdiction over Marburger would also violate basic due process standards. There are no notable D.C. interests at stake here except that D.C. is a convenient forum for the Plaintiff, which is headquartered there. But Marburger has essentially no contacts with D.C., and it would offend "traditional notions of fair play and substantial justice," *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945), for a D.C. court to assume jurisdiction over it.

The Plaintiff's First Amended Complaint ("FAC") relies on an amendment to the Animal Welfare Act (AWA), 7 U.S.C. § 2156(c), enacted after the original complaint was filed. The statutory amendment does not, however, advance the Plaintiff's cause. Like the statute as it existed when the action was originally filed, the amended law is a purely criminal statute with no express or implied private enforcement mechanism. The amendment does nothing to aid the Plaintiff in overleaping that fact through the ill-adapted artifice of using a local D.C. consumer protection law, nor does it cure any of the several other fatal defects in the Plaintiff's case.

Also since the original complaint was filed, the United States Postal Service has denied a petition filed by Plaintiff that requested that the agency ban the mailing of Defendants Marburger's and Dowd's magazines named in the Complaint. The Postal Service having declined to suppress the magazines, the Plaintiff, in another case just filed challenging the USPS' action denying the petition, now asks this Court to do the deed.

The First Amended Complaint states a total of seven causes of action. Only four of these, however, are brought against Marburger: Count II, violation of the D.C. Consumer Protection Procedures Act (CPPA), D.C. Code §§ 28-3904(x), 28-3905(k)(1), based on the Federal Animal Welfare Act, 7 U.S.C. § 2156(c); Count III, violation of the CPPA based on the D.C. cruelty to animals statute, D.C. Code § 22-1015(a)(1); Count VI, violation of the CPPA based on the D.C.

conspiracy law, D.C. Code § 22-1805a(a); and Count VII, violation of the CPPA based on the Federal conspiracy law, 18 U.S.C. § 371. The other three counts (Counts I, IV, and V) are not asserted against Marburger.

The action should be dismissed with prejudice.

## STATEMENT OF FACTS

The sole business of Defendant Marburger Publishing Co., Inc. (Marburger) is the publication and distribution of the magazine entitled *The Gamecock*. *The Gamecock* magazine has been published since 1935. (Griffiths Decl. ¶ 1.)

Marburger is a corporation organized and existing under the laws of the state of Arkansas. Its principal and only place of business is located in Hartford, Arkansas. Hartford is a small, rural town in west central Arkansas, near the Oklahoma border. The president of Marburger, J.C. Griffiths, is its only full-time employee. Marburger has four part-time employees, two who come in three times a week, and two others who come in a couple of days a month. All of the employees work at the office in Hartford, Arkansas. (Griffiths Decl. ¶ 2.) Marburger has no fax machine, answering machine, or internet connection. (Griffiths Decl. ¶ 3.)

Marburger maintains no office, mailing address, telephone, employee or registered agent for service of process in the District of Columbia, maintains no bank accounts or any other accounts in the District of Columbia, maintains no business records in the District of Columbia, does not own, lease, use or otherwise have any interest in any real or personal property of any kind in the District of Columbia, has no employees in the District of Columbia, and is not registered to do business in the District of Columbia or anywhere else other than Arkansas. Marburger has not paid taxes in the District of Columbia. Marburger has not been party to any litigation, other than the instant case, in the District of Columbia, or anywhere else. Marburger

has not retained counsel in the District of Columbia, except in connection with this action against it, and has never retained any other professional in the District of Columbia. (Griffiths Decl. ¶ 4.)

Marburger maintains no internet web site. Marburger has not offered *The Gamecock* for sale at newsstands or any other retail outlet in the District of Columbia. *The Gamecock* is not offered for sale at any newsstands or newsracks, and its only non-subscription circulation is from sales at some feed stores. Marburger has not advertised *The Gamecock* in the District of Columbia. (Griffiths Decl. ¶ 5.)

A subscription to *The Gamecock* costs $28 per year. Marburger has an oral, informal arrangement with a company called EBSCO, a magazine subscription service, by which Marburger obtains $25 for each subscription obtained by EBSCO, with the other $3 going to EBSCO. Marburger has no written contract with EBSCO. Marburger is not in contact with EBSCO about what it does to obtain subscriptions or how it does so. Marburger does not advise EBSCO in any way, and has no control over how EBSCO operates. Marburger and EBSCO are entirely independent of each other. (Griffiths Decl. ¶ 6.)

Marburger's president estimates that, when this action was filed, *The Gamecock* had a total monthly circulation of about 6,000, and that about 300 of these were from EBSCO. Until the present litigation, Marburger had never heard of any company called Magazine Express. To Marburger's knowledge, Marburger has had no dealings with a company by that name. (Griffiths Decl. ¶ 7.)

Until the present litigation, Marburger was not aware that *The Gamecock* was being advertised on Amazon. Any such advertising has been without Marburger's knowledge. Marburger has no contract or other arrangement, written or oral, with Amazon. Marburger has

never been in contact with Amazon, either in writing or orally, regarding any sales or subscriptions. Marburger has had no input into, let alone any type of control over, the contents of anything on Amazon. (Griffiths Decl. ¶ 8.)

Marburger's subscription records go back approximately three years. (Griffiths Decl. ¶ 9.) At the time this action was filed, *The Gamecock* had exactly one subscriber in the District of Columbia. This subscriber is Eileen Escudero Wisor. Ms. Wisor's subscription came in from EBSCO. According to Marburger's records, Ms. Wisor's subscription began on July 31, 2006, and is due to expire in June 2007. (Griffiths Decl. ¶ 10.) As Plaintiff has acknowledged, Ms. Wisor is a member of Plaintiff HSUS and is represented by HSUS's counsel. See Plaintiff Opp'n. at 1 n.1. ("Ms. Wisor is a member of Plaintiff, The Humane Society of the United States.")

*The Gamecock* has, in its history, obtained one other subscriber in the District of Columbia from EBSCO. This subscriber is Jeff Leitner. According to Marburger's records, Mr. Leitner's subscription began on July 31, 2006, and was cancelled on December 29, 2006. (Griffiths Decl. ¶ 11.) It appears that Mr. Leitner is the Public Policy Coordinator and the Program Coordinator of the Fund for Animals, a D.C. advocacy organization that is in a partnership with Plaintiff for litigation and legislative purposes. (Beydoun Decl. ¶¶ 3-4.) Thus, Marburger believes that Mr. Leitner is either a member of HSUS or is closely connected to it.

The records of Marburger reflect a total of two other subscribers to *The Gamecock* in the District of Columbia during the period for which records exist. One of these expired in January 2005 and the other expired in March 2005. Neither of these was obtained through EBSCO. In addition, Marburger believes that it used to send a complimentary copy of *The Gamecock* to the library of the United States Department of Agriculture. Marburger has no records of this.

9

Marburger ceased sending the copies of the magazine about six years ago.    (Griffiths Decl. ¶ 12.)

Apart form the foregoing, Marburger is aware of no other sales or other distribution of *The Gamecock* to residents of the District of Columbia.  (Griffiths Decl. ¶ 13.)  If this motion is not granted outright, Marburger request leave to engage in discovery as to Ms. Wisor, Mr. Leitner, and other matters related to personal jurisdiction.

To be compelled to defend this action in the District of Columbia would be a severe burden on Marburger.  The resources required to defend this case through a trial and possible appeals are enormous.  The action appears to seek to put Marburger out of business and, by Court order, end the publication of its seventy-two year old magazine.  Marburger is a tiny company with only a single full-time employee, located in rural Arkansas, nearly one thousand miles from D.C.  It operates at a minimal level of expenses.  Its magazine has a few thousand subscribers, and just one in D.C.  Marburger has no regular attorney.  Marburger has, as noted above, only one active subscriber in D.C., who is a member of the Plaintiff in this case. Marburger has not conducted its business in such a way as to reasonably expect to be sued in D.C. under a local consumer protection act. (Griffiths Decl. ¶ 14.)

*The Gamecock* is a magazine whose motto is "The Quality Magazine Devoted to Game Fowl." *The Gamecock* is a magazine, not a catalogue.  The December 2006 issue, for example, contains 160 pages, 49 of which (30.63%) are devoted to editorial content, articles, editorial, and obituaries.  The magazine also carries advertisements for a wide variety of products and services. The Gamecock does not carry advertisements for live events.  (Griffiths Decl. ¶ 15.)

## ARGUMENT

## I.  THE ACTION SHOULD BE DISMISSED UNDER FRCP 12(B)(2) FOR LACK OF PERSONAL JURISDICTION

### A.    MOTION TO DISMISS UNDER FRCP 12(b)(2) STANDARD

Under Fed.R.Civ.P. 12(b)(2), "[t]he plaintiff bears the burden of proof" that Defendants are subject to the court's jurisdiction. *United States v. Smithfield Foods, Inc.,* 332 F.Supp.2d 55, 60 (D.D.C.2004) (citing *Jacobsen v. Oliver,* 201 F.Supp.2d 93, 104 (D.D.C. 2002)).  To meet this burden, "[a] plaintiff must establish a factual basis for the court's exercise of personal jurisdiction ... [by] alleg[ing] specific facts connecting the defendant with the forum." *City of Moundridge, KS v. Exxon Mobil Corp,* 471 F.Supp.2d 20, 32 -33 (D.D.C. 2007)(citing *Arista Records, Inc. v. Sakfield Holding Co.,* 314 F.Supp.2d 27, 30 (D.D.C. 2004).)  When personal jurisdiction is challenged, the Plaintiff "cannot rest on bare allegations or conclusory statements and must allege specific facts connecting each defendant with the forum." *Smithfield Foods, Inc., supra*, 332 F.Supp.2d at 60 (quoting *GTE New Media Servs., Inc. v. Ameritech Corp.,* 21 F.Supp.2d 27, 36 (D.D.C. 1998)).  When a Defendant timely objects to a Court's personal jurisdiction, the "general rule is that a plaintiff must make a *prima facie* showing of the pertinent jurisdictional facts." *First Chicago Int'l v. United Exch. Co.,* 836 F.2d 1375, 1378 (D.C. Cir. 1988).  Requiring more than bare allegations, the D.C. Circuit has held that a Plaintiff must allege "specific facts that demonstrate purposeful activity by the defendant in the District of Columbia invoking the benefits and protections of its laws." *Helmer v. Doletskaya,* 290 F.Supp.2d 61, 66 (D.D.C. 2003), *rev'd on other grounds,* 364 U.S.App.D.C. 178, 393 F.3d 201 (D.C. Cir. 2004).

When evaluating a motion to dismiss under Rule 12(b)(2), a Court is generally permitted to look outside the pleadings to determine if a Plaintiff has established a *prima facie* showing of

personal jurisdiction. *Brunson v. Kalil & Co.*, 404 F.Supp.2d 221, 223 n. 1 (D.D.C. 2005);

*Smithfield Foods, Inc., supra,* 332 F.Supp.2d at 59-60 (citing *Land v. Dollar,* 330 U.S. 731, 735

n. 4, 67 S. Ct. 1009, 1011 (1947)).  Moreover, in Rule 12(b)(2) motions, unlike rule 12(b)(6)

motions, "courts are free to consider relevant materials outside the pleadings." *United States v.*

*Smithfield Foods, Inc., supra,* 332 F. Supp. 2d at 59-60 (D.D.C. 2004).

### B. THERE IS NEITHER GENERAL NOR SPECIFIC JURISDICTION OVER MARBURGER IN D.C.

Plaintiff's First Amended Complaint alleges that there is personal jurisdiction over the

Defendants, including Marburger, pursuant to D.C. Code §§ 13-334 and 13-423(a)(1):

> Because the allegations and claims for relief herein arise from Defendants'
> transaction of business in the District of Columbia, through which
> Defendants, whether by maintenance of a website or by direct mailing of
> materials including the unlawful dog fighting videos and cockfighting
> magazines into the District of Columbia, purposefully directed their
> business activities to the District of Columbia and its resident consumers.

(FAC at 3, ¶ 2.)

The D.C. Court of Appeals has explained:

> Personal jurisdiction over foreign corporations is authorized by statute in
> the District of Columbia in two ways. Under the District's long-arm
> statute, a foreign corporation, acting directly or through an agent, is
> subject to personal jurisdiction in the District if, among other things, it has
> "transact[ed] any business" here.  D.C. Code § 13-423(a)(1) (2001).
> When jurisdiction is based on this section, the claim for relief must
> "arise[] from" the acts conferring jurisdiction over the defendant.  D.C.
> Code § 13-423(b).  This is sometimes referred to as specific jurisdiction.
> In the alternative, D.C. Code § 13-334(a) may confer general jurisdiction
> over corporations "doing business" in the District of Columbia.

*Gonzalez v. Internacional de Elevadores, S.A.*, 891 A.2d 227, 232 (D.C. 2006) (footnote omitted)

Plaintiff fails to allege any supportable basis to substantiate a claim of personal

jurisdiction over Marburger either under D. C. Code § 13-334(a) or § 13-423(a)(1).  Under any

analysis with regard to the review of personal jurisdiction under the D.C. long arm statutes, a

plaintiff bears the burden of establishing personal jurisdiction by alleging factual underpinnings for the exercise of such jurisdiction over the defendant. These allegations must include specific facts demonstrating purposeful attempts by the Defendant to avail itself of the benefits and protections of the District's laws. *Edmond v. United States Postal Serv. Gen. Counsel*, 292 U.S. App. D.C. 240, 253, 949 F.2d 415, 428 (D.C. Cir. 1991); *Crane v. N.Y. Zoological Soc'y*, 282 U.S. App. D.C. 295, 297, 894 F.2d 454, 456 (D.C. Cir. 1990). For several reasons which are discussed in this Memorandum, Plaintiff fails to successfully carry that burden.

Marburger is an Arkansas corporation doing business in Arkansas. The only contact that Marburger had with the District, is that a member of Plaintiff's organization, who is a District of Columbia resident, subscribed to the magazine through a distributor. Marburger maintains no office, mailing address, telephone, employee, or registered agent for service of process in the District of Columbia, maintains no bank accounts or any other accounts in the District of Columbia, maintains no business records in the District of Columbia, does not own, lease, or use, or otherwise have any interest in any real or personal property of any kind in the District of Columbia, has no employees in the District of Columbia, and is not registered to do business in the District of Columbia or anywhere else other than Arkansas. Marburger has not paid taxes in the District of Columbia. Marburger has not been party to any litigation, other than the instant case, in the District of Columbia, or anywhere else. Marburger has not retained counsel in the District of Columbia, except in connection with this action against it, and has never retained any other professional in the District of Columbia.

Because there exists virtually no contacts between Marburger and the District of Columbia, for the United States District Court for the District of Columbia to exercise such jurisdiction would be a violation of the Due Process Clause of the U.S. Constitution.

13

**C.    PLAINTIFF DOES NOT PROVIDE SUFFICIENT SUPPORT TO ESTABLISH GENERAL JURISDICTION OVER MARBURGER**

**1.    Marburger is not subject to this Court's general jurisdiction under section 13-334(a) because Marburger does not have "systematic and continuous" business contacts in this forum.**

"On its face, D.C. Code § 13-334(a) appears to relate only to service of process on foreign corporations. This Court, however, has long used section 13-334(a) as a means of 'conferr[ing] jurisdiction upon trial courts here over foreign corporations doing substantial business in the District of Columbia ...." *Gonzalez, supra,* 891 A.2d at 233 (D.C. 2006) (quoting *Guevara v. Reed,* 598 A.2d 1157, 1159 (D.C.1991)). Section 13-334(a) provides:

> In an action against a foreign corporation doing business in the District, process may be served on the agent of the corporation or person conducting its business, or, when he is absent and can not be found, by leaving a copy at the principal place of business in the District, or, where there is no such place of business, by leaving a copy at the place of business or residence of the agent in the District, and that service is effectual to bring the corporation before the court.

D.C. Code § 13-334(a).

General jurisdiction under section 13-334(a) requires that a "non-resident defendant has engaged in 'continuous and systematic general business contacts' in the forum,'" *Atlantigas Corp. v. Nisource, Inc.,* 290 F. Supp. 2d 34, 50 (D.D.C. 2003) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 416, 104 S. Ct. 1868, 1873 (1984)), *appeal dismissed,* 2003 WL 22971974 (D.C. Cir. 2003), and that "such systematic contacts demonstrate 'a "continuing corporate presence in the forum ... directed at advancing the corporation's objectives."'" *Id.* (quoting *El-Fadl v. Cent. Bank of Jordan,* 316 U.S.App.D.C. 86, 93, 75 F.3d 669, 675 (1996) (quoting *AMAF Int'l Corp. v. Ralston Purina Co.,* 428 A.2d 849, 851 (D.C. 1981))); *see, e.g., Gonzalez, supra,* 891 A.2d at 233 ("the defendant corporation must purposely avail itself of the privilege of conducting activities within the forum state, and its continuing

14

contacts with the District of Columbia must provide it with clear notice that it is subject to suit here").

The requirement that a defendant's contacts with the forum be "continuous and systematic" means, among other things, that defendants with merely "sporadic" contacts are *not* subject to the general jurisdiction of the forum. *E.g., El-Fadl, supra,* 75 F.3d at 675; *Savage v. Bioport, Inc.,* 460 F. Supp. 2d 55, 59 (D.D.C. 2006); *Atlantigas, supra,* 290 F. Supp. 2d at 53 (D.D.C. 2003).

Moreover, it is not simply the *quantity* of contacts that matter, but also the *quality* of those contacts which are analyzed by the reviewing court. The Supreme Court's decision in *Helicopteros,* explicates the quality of contacts necessary for general jurisdiction. *Helicopteros* was a wrongful death action brought in a Texas state court against a Colombian corporation and others for an accident that took place in Peru when one of the defendant's helicopters crashed. Four Texas contacts were identified: (1) the defendant's chief executive officer flew, at the request of the consortium, to Houston to negotiate the transportation contract; (2) the defendant purchased most of its helicopters over a period of years from the Bell Helicopter Company in Fort Worth; (3) it sent prospective pilots and management personnel for training to Bell in Texas; and (4) the checks paying for its transportation services were drawn on a Texas bank and paid into a New York account. *Helicopteros, supra,* 466 U.S. at 416, 104 S. Ct. at 1873.

The *Helicopteros* Court concluded that the defendant's contacts with Texas did not constitute continuous and systematic activity, and that it was inconsistent with the Due Process Clause for the Texas court to assert general jurisdiction. 466 U.S. at 418-19, 104 S. Ct. at 1874. "[T]he Court's rejection of each of Helicopteros' contacts with the forum state as not significant, as well as its failure to consider the effect of the aggregate of those contacts, suggests very

strongly that the threshold contacts required for a constitutional assertion of general jurisdiction over a nonresident defendant are very substantial, indeed." 4 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1067.5 (West, Westlaw through 2007 update).

The leading case on personal jurisdiction with respect to the distribution of magazines is *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 104 S. Ct. 1473 (1984). There, the defendant's "contacts with New Hampshire consist of the sale of some 10 to 15,000 copies of *Hustler* magazine in that State each month," and the Court held that "[s]uch regular monthly sales of thousands of magazines cannot by any stretch of the imagination be characterized as random, isolated, or fortuitous." 465 U.S. at 772, 104 S. Ct. 1477. Even then, however, jurisdiction was upheld only because the cause of action for defamation arose directly out of the magazine distribution. 465 U.S. at 779-80, 104 S. Ct. at 1480.

By contrast, courts refuse personal jurisdiction where it was not the case that "a substantial number of copies are regularly sold and distributed" in the forum. 465 U.S. at 781; *see, e.g., Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 425 (5th Cir. 2005) (magazines with distribution of 60 and 70 copies a week in the forum lacked the "substantial circulation" that "*Keeton* . . . demands"); *Chaiken v. VV Pub. Corp.*, 119 F.3d 1018, 1029 (2d Cir. 1997) ("We doubt that four copies per day, or even the 183 copies of the Sunday edition, constitute the 'substantial number of copies' that makes it fair to exercise jurisdiction over a non-resident publisher."), *cert. denied*, 522 U.S. 1149, 118 S. Ct. 1169 (1998); *Quazzani-Chahdi v. Greensboro News & Record, Inc.*, 2005 WL 2372178, *2 (S.D.Tex. 2005) ("mailing of three subscriptions . . . is not a substantial contact with Texas and is insufficient to establish general jurisdiction"); *see also Rodriguez Salgado v. Les Nouvelles Esthetiques*, 218 F. Supp. 2d 203, 205-06 (D.P.R. 2002) (plaintiff conceded that 2 copies of a video distributed through a monthly

magazine and 20 subscriptions to the magazine in the forum did not establish general jurisdiction; "sparse contacts" also precluded specific jurisdiction).

Here, there are no continuous or systemic contacts with the forum. Illustratively, the circulation of Marburger's magazine falls far short of the standard at which jurisdiction may be satisfied.

> **2.    The unilateral actions of a single member of Plaintiff's organization cannot be used as the sole support for its assertion of general jurisdiction over Marburger.**

At the time this action was filed, *The Gamecock* had exactly one subscriber in the District of Columbia. This subscriber is Eileen Escudero Wisor. According to Marburger's records, Ms. Wisor's subscription began on July 31, 2006, and is due to expire in June 2007. (Griffiths Decl. ¶ 2.) In *Helicopteros* the Supreme Court held that:

> unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction. See *Kulko v. California Superior Court*, 436 U.S. 84, 93 (1978) (arbitrary to subject one parent to suit in any State where other parent chooses to spend time while having custody of child pursuant to separation agreement); *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State") . . . .

466 U.S. at 417, 104 S. Ct. 1873. Thus in an article cited by the Court, Professor Lilly noted that "the constitutional right to exercise jurisdiction over the person apparently hinges upon a sufficient contact *initiated by the defendant*. Affiliations with the forum that involve the defendant but are instituted by another person do not meet the constitutional minimum." Graham C. Lilly, *Jurisdiction Over Domestic and Alien Defendants*, 69 Va. L. Rev. 85, 99 (1983) (emphasis in the original), cited in *Helicopteros, supra,* 466 U.S. at 417, 104 S. Ct. at 1873.

As Judge Sullivan of this Court has put it, "A plaintiff may not depend on its own activity to establish the existence of defendant's minimum contacts with the forum." *Gibbons & Co. Inc. v. Roskamp Inst.*, 2006 WL 2506646, *2 (D.D.C. 2006). *Accord Richter v. Analex Corp.*, 940 F. Supp. 353 (D.D.C. 1996); *Reiman v. First Union Real Estate Equity & Mortgage Invs.*, 614 F. Supp. 255, 257 (D.D.C. 1985).

Here, only two people in the District have received from EBSCO a subscription to Marburger's magazine. (Griffiths Decl. ¶¶10-11.)  On its face, that is insufficient.  And when it is considered that one of these two is concededly a member of Plaintiff, and the other appears also to be affiliated with an animal advocacy group, which is itself a partner of Plaintiff, even those subliminal contacts lose any significance (Beydoun Decl. ¶¶3-4).

### 3. Marburger does not maintain or oversee a business related website or conduct systematic and continuous internet transactions within this forum so as to confer general jurisdiction.

The amended complaint also alleges that the "maintenance of a website" by Defendants confers general jurisdiction.  (FAC at 3, ¶ 2)  First, it is of course true, as Plaintiff concedes (FAC at 24, ¶ 85), that Marburger does not maintain a website.  Plaintiff alleges that Marburger's magazine is sold only through *someone else's*—namely Amazon's—website (*id.*).

Marburger, however, has no direct agreement or relationship with Amazon, and indeed was unaware that Amazon was advertising its magazine. A website of someone other than the moving defendant lends support to personal jurisdiction over that defendant only when the party exercises some type of control over the contents of the site.  See *Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1281 (Fed. Cir. 2005) (applying D.C. law).  *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S. Ct. 2174, 2183 (1985) ("the foreseeability that is critical to due process analysis ... is that the *defendant's* conduct and connection with the

forum State are such that he should reasonably anticipate being haled into court there.")
(emphasis added). Marburger was unaware of any advertising on Amazon, nor does it have any
control at all over the Amazon site. (Griffiths Decl. ¶ 8.)

In any event, even for a defendant's own website, and even if the website is "interactive,"
"[m]ere access by forum residents to a non-resident defendant's website is not enough, by itself,
to establish minimum contacts with the forum." *Atlantigas, supra,* 290 F. Supp. 2d at 51-52.
Rather,

> [t]he question is not whether District of Columbia residents "can" transact
> business in the District with the non-resident defendant through the
> defendant's website, but if they actually "do" engage in sustained business
> activities in a continuous and systematic way.

290 F. Supp. 2d at 52. As in *Atlantigas,* the answer to that question here is no. In *Atlantigas,*
Judge Friedman held that "Columbia Gas's contracting on the Navigator site for transportation
and storage services with one District of Columbia company over an eight-month period together
with vague claims that two other District residents also contracted with Columbia Gas over its
website at some point simply do not demonstrate a systematic and continuous contact with the
forum." *Id.*

The court in *Atlantigas* noted that "[i]f the Court concluded in this case that the sporadic
contacts related to the alleged use of the Navigator website by three District residents justified
the exercise of jurisdiction over Columbia Gas under Section 13-334(a), the Court would stretch
the concept of general jurisdiction beyond what either the statute or due process permits." 290 F.
Supp. 2d at 53. *See generally GTE New Media Servs. Inc. v. BellSouth Corp.* 199 F.3d 1343,
135 (D.C. Cir. 2000) (warning that without clear limits, "personal jurisdiction in Internet-related
cases would almost always be found in any forum in the country"). The same is true in this case.

Plaintiff cannot demonstrate to this Court that Marburger engages in sustained business activities in a continuous and systematic way in the District of Columbia. Because Plaintiff is unable to establish this requisite showing, Marburger cannot be found to be subject to personal jurisdiction in this forum, and consequently, as to Marburger, should be dismissed.

### 4. Marburger has not violated the CPPA by making false representations or by misleading anyone so as to confer general jurisdiction.

Under the heading "Harm to District of Columbia Consumers" the complaint alleges that "[c]onsumers in the District of Columbia have purchased each of the Publications . . . from Defendant Amazon." (FAC ¶ 115) The amended complaint further alleges that, "[o]n information and belief, many consumers are misled by Defendant Amazon's express representations . . . and would not complete the transactions if they knew that the products did not comport" with various provisions of law." (*Id.* ¶ 117) In particular, according to Plaintiff, "[i]f Defendants had not engaged in violations of the CPPA . . ., District of Columbia residents would not have suffered pecuniary loss, *i.e.*, they would not have expended funds to . . . subscribe to the Publications." (*Id.* ¶ 120)

These allegations are either wrong or seriously misleading. In fact, at the time this action was filed, the *only* subscription to Marburger's publication was held by a member of the Plaintiff advocacy organization, and thus the only point of contact between Marburger and the District. That subscriber was obviously not deceived within the meaning of the CPPA. Nor was her "expend[iture] [of] funds," if any, caused by any violation of law. As a member of an organization with bitter ideological opposition to Marburger's publication, it can only be inferred that she knew what she was doing.

**D.    PLAINTIFF DOES NOT PROVIDE SUFFICIENT SUPPORT TO ESTABLISH SPECIFIC JURISDICTION UNDER SECTION 13-423(A)(1)**

As noted above, the Plaintiff also asserts specific personal jurisdiction under D.C. Code § 13-423(a)(1).    Section 423(a)(1) extends personal jurisdiction to persons "transacting any business in the District of Columbia."    It is limited, however, by section 423(b), which states that "only a claim for relief arising from the acts enumerated in this section may be asserted against him." Thus "section 423(b) ... bar[s] ... claims unrelated to the acts forming the basis for personal jurisdiction." *Willis v. Willis,* 211 U.S.App.D.C. 103, 106, 655 F.2d 1333, 1336 (D.C. Cir. 1981).

Thus, to establish personal jurisdiction under section 13-423(a)(1), the plaintiff must prove "first, that the defendant transacted business in the District of Columbia; second, that the claim arose from the business transacted in D.C.; and third, that the defendant had minimum contacts with the District of Columbia such that the Court's exercise of personal jurisdiction would not offend 'traditional notions of fair play and substantial justice.' " *Dooley v. United Techs. Corp.,* 786 F. Supp. 65, 71 (D.D.C. 1992) (quoting *Int'l Shoe Co. v. Wash.,* 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945)).

**1.    Marburger has not "transacted business" in the District of Columbia to satisfy the requirements of 13-423(a)(1) regarding specific jurisdiction.**

Plaintiff's claim does not arise from business transactions conducted in the District of Columbia, and therefore this Court does not have specific personal jurisdiction pursuant to § 13-423(a)(1).    Whatever harms the complaint alleges are unrelated to distribution of Marburger's magazine with the District.    Indeed, as noted, the only subscriber to Marburger's magazine in the District at the time the action was initiated is a member of the Plaintiff itself.    Nothing in the litany intoned by the Plaintiff of the alleged harms of cockfighting could possibly have arisen as

a result of this subscription. That fact by itself excludes the possibility of specific jurisdiction here.

Moreover, the facts of this case indicate that Marburger is not transacting business at all within the meaning of the statute. "While, of course, every 'transaction of business' will require some sort of 'purposeful' conduct, not every purposeful act will necessarily amount to transacting business." *Acker v. Royal Merchant Bank & Fin. Co.*, 1999 WL 1273476, *3 (D.D.C. 1999) The "purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts ... or of the unilateral activity of another party or a third person." *Burger King, supra,* 471 U.S. at 475, 105 S. Ct. 2174, 2183. "Jurisdiction is proper [only] where the contacts [between the defendant and the forum] proximately result from actions by the defendant *himself* that create a substantial connection with the forum State." *Id.* (emphasis in the original) (citations and quotation marks omitted). *Accord Sol Salins, Inc. v. Sure Way Refrigerated Truck Transp. Brokers, Inc.,* 510 A.2d 1032, 1035 (D.C. 1986) (rejecting the idea that personal jurisdiction under section 13-423(a)(1) may be based on "the unilateral activity of another party or a third person"). Here, the "transaction" was one initiated not by Defendant Marburger, but by the unilateral act of Plaintiff's own member. That is not a purposeful availment by this Defendant, and thus, the assertion of personal jurisdiction over Marburger does not comport with the guarantees of due process.

## 2.    Plaintiff's Claims do not "Arise From" the Single Subscription of Marburger's Magazine.

In order for this Court to have personal jurisdiction over Marburger, the actions giving rise to the claim must have occurred in the District. *Brunson, supra,* 404 F.Supp.2d at 228 (D.D.C. 2005) (citing *Dooley v. United Techs. Corp.*, 786 F.Supp. 65, 71 (D.D.C. 1992)); *see also COMSAT Corp. v. Finshipyards S.A.M.,* 900 F.Supp. 515, 521 (D.D.C. 1995) (stating

that part of what a plaintiff needs to show is that "the claim arose from the business transacted in the District (so-called specific jurisdiction)").

HSUS alleges the same harms giving rise to Plaintiff's claims for relief with respect to Marburger and the other Defendants as it does with respect to Amazon. (See FAC ¶ 129). These alleged harms range from illegal and underage gambling (FAC ¶¶ 42, 43, 122) to an increase in personal violence and property crimes (FAC ¶¶ 44, 122), to drug sales and weapons trafficking and increased rates of homicide and rape (FAC ¶¶ 43, 122); to a "biosecurity threat" in the form of the avian flu (FAC ¶¶ 46, 123).

Plaintiff was unable to show that her claim *actually* arose from business transactions conducted in the District of Columbia, and therefore this Court does not have specific personal jurisdiction pursuant to § 13-423(a)(1). The complaint does not explain how Plaintiff's alleged injuries "arise from" the delivery of a subscription of Marburger's magazine into the District of Columbia. Because Plaintiff cannot show the requisite nexus between the wide range of illegal conduct and imminent insecurity threats which it freely associates with the subscription of Marburger's magazine into the District, Plaintiff fails to satisfy this prong of the analysis. Plaintiff's claim of risk of harm are patently remote and insufficient to justify its assertion of personal jurisdiction over Marburger as to satisfy due process requirements.

E.    **THE EXERCISE OF JURISDICTION OVER MARBURGER WOULD VIOLATE DUE PROCESS**

Under the due process requirement of *International Shoe, supra*, the exercise of jurisdiction may not offend "traditional notions of fair play and substantial justice." On this point,

> the determination of the reasonableness of the exercise of jurisdiction in each case will depend on an evaluation of several factors. A court must consider the burden on the defendant, the interests of the forum State, and

> the plaintiff's interest in obtaining relief. It must also weigh in its determination "the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies."

*Asahi Metal Indus. Co. v. Superior Court (Cheng Shin Rubber Indus. Co.)*, 480 U.S. 102, 113, 107 S. Ct. 1026, 1034 (1987) (plurality opinion). There must be a constitutionally sufficient relationship between the defendant and the forum, and a basis for the defendant's amenability to service of summons. *See Estate of Klieman v. Palestinian Auth.*, 467 F.Supp.2d 107, 112 (D.D.C. 2006); *Mwani v. bin Laden,* 368 U.S.App.D.C. 1, 417 F.3d 1, 8 (D.C. Cir. 2005). These requirements stem from the Due Process Clause of the Constitution and are a restriction on judicial power as a matter of individual liberty. *See Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 108 S. Ct. 404 (1987).

The due process analysis consists of three parts; the defendant must (1) "purposefully avail itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 1239 (1958); and (2) "reasonably anticipate being haled into court" in the forum state, *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 567 (1980); finally (3) the "suit cannot offend traditional notions of fair play and substantial justice," *Int'l Shoe Co., supra*, 326 U.S. at 316, 66 S. Ct. at 158. In addition, the minimum contacts must come about by an action of the defendant purposefully directed toward the forum state." *Asahi*, 480 U.S. at 112, 107 S. Ct. at 1032 (emphasis in original). Therefore, it is vital that due process considerations be reviewed on a case by case basis before personal jurisdictions can be found to exist over a defendant. *Envtl. Research Int'l, Inc. v. Lockwood Greene Eng'rs, Inc.*, 355 A.2d 808, 811 (D.C. 1976) ("the jurisdictional issue must be resolved on a case-by-case basis, noting in each the particular activities relied upon by the resident plaintiff as providing the supposed basis for

jurisdiction.); *Doe I v. Israel*, 400 F.Supp.2d 86, 109 (D.D.C. 2005) ("the D.C. long-arm statute only goes as far as the Due Process Clause will permit." )

### 1.    Purposeful Availment and Foreseeability of Suit in the District.

In order to satisfy the foreseeability component of the due process analysis, the Court held that "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla, supra,* 357 U.S. at 253, 78 S. Ct. 1239 (1958).    Applying this test, the Court has found that a number of situations satisfy the "purposeful availment" requirement so as to allow a court to exercise specific personal jurisdiction over a foreign defendant. In *McGee v. Int'l Life Ins. Co.,* 355 U.S. 220, 223, 78 S. Ct. 199, 201 (1957), the Court held that specific personal jurisdiction is proper in a case where "the suit was based on a contract which had substantial connection with [the forum]." Additionally, the Court held that a court may exercise specific personal jurisdiction over a foreign defendant where the defendant has engaged in "continuing relationships and obligations" with citizens of the forum. *Travelers Health Ass'n v. Va. ex rel. State Corp. Comm'n,* 339 U.S. 643, 647, 70 S. Ct. 927, 929 (1950).  Not only did Marburger not maintain an internet site, it has not offered the magazine for sale at newsstands or any other retail outlet in the District of Columbia. (Griffiths Decl. ¶ 5.)    Similarly, Marburger has not advertised the magazine in the District of Columbia. *Id.*  Under these facts, because Plaintiff cannot establish a substantial and continuing relationship between Marburger and the District of Columbia and has failed to demonstrate how jurisdiction in that forum would otherwise be fundamentally fair, it must be concluded that the District Court's exercise of jurisdiction over Marburger pursuant to the D.C. long arm statutes would offend the requirements of the Due Process Clause.

## 2.    Fair Play and Substantial Justice

Beyond showing that the terms of the long-arm statute are satisfied, plaintiff must also make a *prima facie* showing that the exercise of personal jurisdiction in this case does not exceed the permissible bounds of the Due Process Clause. Under this standard, "the defendant's conduct and connection with the forum state [must be] such that he should reasonably anticipate being haled into court there." *Ning Ye v. Hong Bao Zhang,* 2006 WL 1102832, 3-4 (D.D.C. 2006) (citing *World-Wide Volkswagen, supra,* 444 U.S. at 297; 100 S. Ct. at 567).

The burden on Marburger to defend this action—an action designed to put it out of business—in the District of Columbia would be severe. (Griffiths Decl. ¶ 14.) Marburger is a tiny company located in a small town in Arkansas that has no real and continuing connection with the District. (Griffiths Decl. ¶ 2, 4.) It has never before retained counsel in the District. (Griffiths Decl. ¶ 4.)

The interests of the forum—the District—in this matter are nil. The action is bought here for two reasons. First, the institutional Plaintiff—a party whose very name, Humane Society of the United States, points to a national rather than a local scope—is headquartered here, and thus the District is a very convenient forum *for the Plaintiff*. This consideration does not weigh in the determination of whether this action constitutes fair play with regard *to the Defendant*. And second, the Plaintiff believes the terms of the D.C. consumer protection statute are malleable enough to provide a basis for this action which has little or nothing to do with protecting consumers in the District, and everything to do with the Plaintiff's generalized campaign to take down any business that is associated with practices the Plaintiff does not like. There is no inherent reason why District of Columbia law should be applied in this case, and certainly none why Marburger should be haled into court in D.C.

By the same token, the weakness of any interest specifically promoted by the District's consumer protection statute implies that there is no reason to believe that interstate interests would be served by adjudicating the case against Marburger here. The Due Process Clause "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit," *World-Wide Volkswagen, supra,* 444 U.S. at 297, 100 S. Ct. at 567. Marburger had no reason to foresee that it would be sued on such a tenuous basis in the District of Columbia.

## II. THE FIRST AMENDMENT BARS PLAINTIFF'S CLAIMS AGAINST MARBURGER

### A. MARBURGER CANNOT BE LIABLE FOR PUBLISHING, AS PART OF IT'S MAGAZINE WITH SUBSTANTIAL EDITORIAL CONTENT, ADVERTISEMENTS THAT ARE NOT FACIALLY UNLAWFUL

For the reasons stated by Amazon with respect to suit against it (Amazon Mem. of P. & A. § V (B)), a magazine such as Marburger's cannot be liable for publishing advertisements that are at worst ambiguous.

### B. PLAINTIFF'S CLAIMS FAIL BECAUSE IT REQUESTS THIS COURT TO IMPOSE AN UNCONSTITUTIONAL PRIOR RESTRAINT ON SPEECH

Beyond cases such as *Eimann v. Soldier of Fortune Magazine, Inc.*, 880 F.2d 830 (5th Cir. 1989), *cert. denied*, 493 U.S. 1024, 110 S. Ct. 729 (1990), and others cited by Amazon, this is not a tort action for compensation for actual harm done to an identifiable plaintiff, but an action that seeks an injunction prohibiting publication and distribution of an entire magazine, including all of its editorial content and all of its advertisements of whatever kind, in other words, a prior restraint of an extreme kind, invoking "the constitutional abhorrence particularly

to prior restraints on the press, such as by injunction." *Liberty Lobby, Inc. v. Pearson*, 129

U.S.App.D.C. 74, 77, 390 F.2d 489, 492 (D.C. Cir. 1968) (Burger, J.).

"[P]rior restraints on speech and publication are the most serious and the least tolerable

infringement on First Amendment rights" *Nebraska Press Ass'n v. Stuart,* 427 U.S. 539, 559, 96

S. Ct. 2791, 2803 (1976). At the least, an "order" issued in "the area of First Amendment rights"

must be "precis[e]" and narrowly "tailored" to achieve the "pin-pointed objective" of the "needs

of the case." *Carroll v. President of Princess Anne,* 393 U.S. 175, 183-184, 89 S. Ct. 347, 353

(1968); *see also Tory v. Cochran*, 544 U.S. 734, 738, 125 S. Ct. 2108, 2111 (2005).

The classic exposition of the prior restraint doctrine is *Near v. Minnesota ex rel. Olson,*

283 U.S. 697, 51 S. Ct. 625 (1931). There, a statute that provided for abatement as a public

nuisance of a newspaper that had already published nine "malicious, scandalous, and

defamatory" editions, *Id.* 283 U.S. at 703, 51 S. Ct. at 626 was held unconstitutional. Even

though outrageous publications could well be expected in the future, the Court declared that

> [t]he fact that the liberty of the press may be abused by miscreant
> purveyors of scandal does not make any the less necessary the
> immunity of the press from previous restraint in dealing with
> official misconduct.

*Id.* at 720, 283 U.S. at 720, 51 S. Ct. at 632.

As Judge Goldberg has observed,

> A plausible but broad generalization can support some kinds of
> regulation, . . . but no government may impose a prior restraint
> unless it has shown, at the very least, that the particular speech it
> is attempting to suppress is overwhelmingly likely to fall outside
> the protection of the First Amendment. A person may not be
> prevented from speaking unless what he or she will say--or the
> time, place, and manner in which he or she will say it--*will
> "surely result in direct, immediate, and irreparable damage."*

*Int'l Soc'y for Krishna Consciousness v. Eaves*, 601 F.2d 809, 832-33 (5th Cir. 1979) (emphasis added) (quoting *N.Y. Times Co. v. United States*, 403 U.S. 713, 730, 91 S. Ct. 2140, 2149 (1971) (Stewart, J., joined by White, J., concurring)) (citation and footnote omitted).

> The crux of the matter
>
> > is that prior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights . . . . [¶]   A prior restraint . . . has an immediate and irreversible sanction.  If it can be said that a threat of criminal or civil sanctions after publication "chills" speech, prior restraint "freezes" it at least for the time.

*Nebraska Press, supra,* 427 U.S. at 559, 96 S. Ct. at 2803 (footnote omitted).  The broad and sweeping freeze that Plaintiff seeks here is permanent.  It does not come close to satisfying the exacting requirements for a prior restraint on the press.

The action also seeks penal sanctions, but such a sanction for "publishing lawfully obtained, truthful information" also "requires the highest form of state interest to sustain its validity."   *Smith v. Daily Mail Publ'g Co.*, 443 U.S. 97, 101-02, 99 S. Ct. 2667, 2670 (1979). Indeed, "state action to punish the publication of truthful information seldom can satisfy constitutional standards." *Id.* at 102.  The Draconian punishment sought here for the remote and speculative, at best, harms alleged "cannot satisfy the constitutional standards." *See id.*

C.    **THE CAUSES OF ACTION ALLEGED AGAINST MARBURGER ARE BARRED BECAUSE ANY ALLEGED "PROMOTION" OF ILLEGAL CONDUCT IS NOT AN IMMEDIATE INCITEMENT**

Both substantive statues Marburger is alleged to have violated, the federal Animal Welfare Act, 7 U.S.C. § 2156(c), as amended by the Animal Fighting Prohibition Enforcement Act, and the D.C. cruelty to animals statute, D.C. Code § 22-1015(a) (1), are based on the idea of "promotion" of unlawful conduct. Apart from the facts that the statutes do not reach the

publication of magazines in the first place, and that "promotion" in this context is in any event both vague and overbroad, this premise is at odds with fundamental First Amendment principles.

Plaintiff does not find Marburger's magazine edifying, true, but "the rights of free speech and a free press are not confined to any field of human interest." *Thomas v. Collins*, 323 U.S. 516, 531, 65 S. Ct. 315, 323 (1945). First Amendment protection is not dependent on "the truth, popularity, or social utility of the ideas and beliefs which are offered." *NAACP v. Button*, 371 U.S. 415, 445, 83 S. Ct. 328, 344 (1963). "The very purpose of the First Amendment is to foreclose public authority from assuming a guardianship of the public mind. . . . In this field every person must be his own watchman for truth, because the forefathers did not trust any government to separate the true from the false for us." *Thomas*, 323 U.S. at 545, 65 S. Ct. at 329 (1945) (Jackson, J., concurring).

Plaintiff's claim that the magazine might encourage illegal activity falls far short of justifying censorship.

> To preserve these freedoms, and to protect speech for its own sake, the Court's First Amendment cases draw vital distinctions between words and deeds, between ideas and conduct. . . . The government may not prohibit speech because it increases the chance an unlawful act will be committed "at some indefinite future time." *Hess v. Indiana*, 414 U.S. 105, 108 [,94 S. Ct. 326, 38 L. Ed. 2d 303] (1973) *(per curiam)*. The government may suppress speech for advocating the use of force or a violation of law only if "such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." *Brandenburg v. Ohio*, 395 U.S. 444, 447[, 89 S. Ct. 1827, 23 L. Ed. 2d 430] (1969) *(per curiam)*.

*Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 253, 122 S. Ct. 1389, 1403 (2002).

The Plaintiff says that the magazine "promot[es] . . . or in . . . other manner further[s] unlawful an animal fighting venture," Animal Welfare Act, 7 U.S.C. § 2156(c), *quoted in* FAC at 7, ¶ 17; *see also* D.C. Code § 22-1015(a)(1), *quoted in* FAC at 39, ¶ 142, but the statutes were

neither intended to proscribe publication of magazines such as Marburger's nor may constitutionally be used to do so. Even "[a]dvocacy of conduct proscribed by law is not, as Mr. Justice Brandeis long ago pointed out, 'a justification for denying free speech where the advocacy falls short of incitement and there is nothing to indicate that the advocacy would be immediately acted on.'" *Kingsley Int'l Pictures Corp. v. Regents of Univ. of N.Y.*, 360 U.S. 684, 689, 79 S. Ct. 1362, 1365-1366 (1959) (quoting *Whitney v. Cal.*, 274 U.S. 357, 376, 47 S. Ct. 641, 648 (1927) (Brandeis, J., concurring)).

These are the only two substantive statutes involved against Marburger; the other claims against it are derivative conspiracy claims. Plaintiff makes no effort to meet this exceedingly high standard. Thus, apart form all the other reasons the action against Marburger cannot go forward, the action is directly interdicted by the First Amendment.

Moreover, while Plaintiff sees some type of illegality everywhere it looks in Marburger's magazine - and, as noted, this view is insufficient to overcome First Amendment protections - it fails to recognize the many other roles the magazine can play. It can inform, entertain, satisfy curiosity or fantasy, allow people to seek changes in the law, and allow people to express themselves. All of these are well within the purview of the First Amendment.

For example, in *Winters v. New York*, 333 U.S. 507, 68 S. Ct. 665 (1948), the Court struck down a statute that prohibited the distribution of publications "'principally made up of criminal news, police reports, or accounts of criminal deeds, or pictures, or stories of deeds of bloodshed, lust or crime.'" 333 U.S. at 508, 68 S. Ct. at 666. The Court held:

> We do not accede to appellee's suggestion that the constitutional protection for a free press applies only to the exposition of ideas. The line between the informing and the entertaining is too elusive for the protection of that basic right. Everyone is familiar with instances of propaganda through fiction. What is one man's amusement, teaches another's doctrine. Though we can see nothing of any possible value to society in these

> magazines, they are as much entitled to the protection of free speech as the
> best of literature.

333 U.S. at 510, 68 S. Ct. at 667. *See also, e.g., Abood v. Detroit Bd. of Educ.*, 431 U.S. 209,

231, 97 S. Ct. 1782, 1797 (1977) ("It is no doubt true that a central purpose of the First

Amendment '"was to protect the free discussion of governmental affairs."' . . . . But our cases

have never suggested that expression about philosophical, social, artistic, economic, literary, or

ethical matters to take a nonexhaustive list of labels is not entitled to full First Amendment

protection.") (citations and footnote omitted).

### D.  MARBURGER'S MAGAZINE IS NOT COMMERCIAL SPEECH

For the reasons stated by Amazon with respect to suit against it (Amazon Mem. of P. &

A. § VI (C) and (D)), the First Amendment bars Plaintiff's claims against Marburger.  For the

reasons stated, the magazine is not commercial speech, and, even if it were, the proposed ban and

treble damages would violate the First Amendment.

### III.  PLAINTIFF'S CONSPIRACY CLAIMS FAIL BECAUSE THERE IS NO SUFFICIENT ALLEGATION THAT MARBURGER COMMITTED AN INDEPENDENT UNDERLYING UNLAWFUL ACT

For the reasons stated by Amazon with respect to suit against it (Amazon Mem. of P. &

A. § VIII), and the reasons stated above, Plaintiff's conspiracy claims fail as a matter of law ands

because there is no sufficient allegation that Marburger committed an independent underlying

unlawful act.

### IV.  THE COMPLAINT FAILS TO STATE A CLAIM UNDER THE ANIMAL WELFARE STATUTES, BEFORE OR AFTER THE 2007 AMENDMENTS, THAT UNDERLIE THE FIRST AMENDED COMPLAINT.

The centerpiece of the Plaintiff's First Amended Complaint is the 2007 amendments to

the Animal Welfare Act (AWA), 7 U.S.C. § 2156. (*See* FAC at 7-10, ¶¶ 16-28.)  The amended

statute, however, fails to save the Plaintiff's case.  Indeed, the Plaintiff alleges no action of

Marburger, or any other Defendant, that occurred after the effective date of the amendment and that is said to violate it.

The AWA remains, in any event, a purely criminal statute, providing no civil remedies. Moreover, the amended statute does nothing even arguably to grant standing to the Plaintiff (or any other civil plaintiff) or somehow create a justiciable case or controversy. Nor does the 2007 AWA amendment do anything to establish a claim under the D.C. Consumer Protection Procedures Act, D.C. Code §§ 28-3905 to -05, on which the Plaintiff's entire case is founded. And of course the statute has nothing to say to give this Court *personal* jurisdiction over Defendant Marburger Publishing Co., an Arkansas corporation with no relationship to the forum other than a subscription to its publication taken out by one of the Plaintiff's own members shortly before the Plaintiff filed the action. On the merits - although the case should be dismissed long before they are reached - the amended statute, if anything, makes even clearer that this action cannot proceed consistent with the First Amendment.

As described in the House report for the legislation, the overriding purpose of the 2007 amendments was to make the crime of shipping animals in interstate commerce for fighting purposes a felony rather than a misdemeanor, and correspondingly increase the *criminal* penalties for such activities. The "Purpose and Summary" section of the report states, in its entirety:

> H.R. 137, the `Animal Fighting Prohibition Enforcement Act of 2007,' strengthens the Federal prohibitions against animal fighting ventures. Under current law, animal fighting violations are misdemeanors under title 7 of the U.S. Code. H.R. 137 makes the buying, selling, or transporting of animals in interstate commerce for participation in animal fighting ventures felonies to be charged under title 18, with maximum prison sentences of 3 years, increased from 1 year under current law.

H.R. Rep. No. 110-027, pt. 1, at 2 (2007).

Thus the recent amendments simply underscore the fact that the AWA is a criminal statute only. It never has had, nor does it have now, any civil enforcement provisions.

The First Amended Complaint seeks to make much of another change in the statutory language. As written before the amendment, section 2156(c) provided:

> It shall be unlawful for any person to knowingly use the mail service of the United States Postal Service or any interstate instrumentality for purposes of promoting or in any other manner furthering an animal fighting venture except as performed outside the limits of the States of the United States.

The amendment to this section changed the words "interstate instrumentality" to read "instrumentality of interstate commerce for commercial speech."

This rewriting does more to refine or clarify the statute than to make a substantive change. The phrase "*any* interstate instrumentality" logically includes "any instrumentality of interstate commerce *for commercial speech*." Emphases added. An instrumentality "for commercial speech" is still an "instrumentality."

Plaintiff seeks to rely on the comments of a member of Congress who stated that the amended section 2156(c) "prohibits the websites and the magazines where fighting animals are advertised for sale. These publications are commercial speech, and also clearly promote animal fighting." (FAC at 8, ¶ 19 (quoting statement of Rep. Gallegly).)

First, the Supreme Court has "stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. . . . When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992). In particular, "[f]loor debates reflect at best the understanding of individual Congressmen." *Zuber v. Allen*, 396 U.S. 168, 186 (1969). As Justice Jackson stated, "[T]o select casual statements from floor debates,

not always distinguished for candor or accuracy, as a basis for making up our minds what law Congress intended to enact is to substitute ourselves for the Congress in one of its important functions." *Schwegmann Bros. v. Calvert Distillers Corp.,* 341 U.S. 384, 395-96 (1951) (Jackson, J., concurring), *quoted in Garcia v. United States,* 469 U.S. 70, 76 n.3 (1984).

Justice Jackson's insight that floor statements are "not always distinguished for candor or accuracy" is perfectly embodied by the statement here. The Congressman takes it upon himself to reach a conclusion of constitutional law as applied to supposed particular facts: "These publications are commercial speech." Thus, to accept the statement at face value would not only substitute the Court for Congress, but would allow individual Congress members to perform quintessential *judicial* functions.

As Marburger and the other Defendants explain, the magazines themselves are not, *pace* Congressman Gallegly, commercial speech. The Supreme Court has recognized that "[s]ome ordinary newspapers try to maintain a ratio of 70% advertising to 30% editorial content," *City of Cincinnati v. Discovery Network, Inc.,* 507 U.S. 410, 420 n.16 (1993), and so to credit the Congressman's legal viewpoint "would convert virtually all . . . newspapers . . . and magazines into commercial speech, and call into question the traditional protections afforded these types of publications." *See United States Olympic Comm. v. Am. Media, Inc.,* 156 F. Supp. 2d 1200, 1207-08 (D. Colo. 2001). *See generally Joseph Burstyn, Inc. v. Wilson,* 343 U.S. 495, 501-02 (1952) ("That books, newspapers, and magazines are published and sold for profit does not prevent them from being a form of expression whose liberty is safeguarded by the First Amendment.").

The statement relied upon by the HSUS goes even further to suggest that the statutory amendment "prohibits . . . the two main cockfighting magazines." Since this is a criminal statute

with severe penalties, to credit this assertion (which does not appear in the enacted law) would translate the section into a bill of attainder prohibited by article II, section 9, clause 3, of the Constitution.  "Under the now prevailing case law, a law is prohibited under the bill of attainder clause 'if it (1) applies with specificity, and (2) imposes punishment.' . . . The element of specificity may be satisfied if the statute singles out a person or class by name *or* applies to 'easily ascertainable members of a group.' " *Foretich v. United States*, 351 F.3d 1198, 1217 (D.C. Cir. 2003)(emphasis in the original)(citations omitted).  That unconstitutional result would obtain if the Congressman's statement were clothed with the force of law. The statement is, to say the least, unreliable.

Likewise, for the reasons stated by Amazon with respect to suit against it (Amazon Mem. of P. & A.  § II), the Plaintiff's First Amended Complaint fails to state a claim under the Animal Welfare Act, 7 U.S.C.  § 2156(c) or its amendment, the AFPEA.  The AWA no more reaches Marburger's publication of a magazine than it does Amazon's circulation of the same magazine. Moreover, no specific "animal fighting venture" is alleged that was "promoted" by Marburger, and certainly none "promoted knowingly."

## V.    THERE IS NO CASE OR CONTROVERSY BECAUSE THE HUMANE SOCIETY LACKS STANDING TO BRING THIS LAWSUIT.

For the reasons stated by Amazon with respect to suit against it (Amazon Mem. of P. & A.  § III), there is no case or controversy because the Plaintiff lacks standing to bring this lawsuit. (Marburger notes that it does not sell, and has never sold, the videos, nor, apparently, is it alleged to have done so.)  Plaintiff alleges the same harms with respect to Marburger and the other Defendants as it does with respect to Amazon.  (*See* FAC ¶ 129.)  The supposed risks of harm are equally remote and non-cognizable as to Marburger as they are as to Amazon. Similarly, the alleged injuries are no more "fairly traceable" to Marburger as they are to Amazon.

Moreover, with respect to the D.C. Consumer Protection statute, there is no allegation that Marburger has deceived any consumers.

For the reasons stated by Dowd Publishing with respect to suit against it (Dowd Mem. of P. & A. § II.C), this Court should dismiss this case because Plaintiff does not have standing and is not within the zone of interest within the meaning of the statute.

## VI.    THE FIRST AMENDED COMPLAINT FAILS TO STATE A CLAIM UNDER THE CPPA

For the reasons stated by Amazon with respect to suit against it (Amazon Mem. of P. & A.  § II), the animal welfare statutes that underlie Plaintiff's claims do not provide a private cause of action against Marburger; Plaintiff cannot avoid this result by styling its claims as D.C. consumer protection violations.

For the reasons stated by Amazon with respect to suit against it (Amazon Mem. of P. & A.  § VII), the complaint fails to state a claim under the CPPA.  There is nothing fraudulent about Marburger's publication, nor is it materially misleading.  The CPPA does not reach Marburger's publication of a magazine that contains a wide variety of articles and other editorial content as well as advertisements.

For the reasons stated by Dowd Publishing with respect to suit against it (Dowd Mem. of P. & A.  § II.B), this Court should dismiss this case because Plaintiff does not have a private right of action under AWA as it originally existed or later amended, nor under the CPPA.

## VII.    THE RECENT FILING OF A CONCEDEDLY PARALLEL CASE BY THE SAME PLAINTIFF COUNSELS THAT, IF THIS ACTION IS NOT DISMISSED OUTRIGHT, IT SHOULD BE STAYED OR DISMISSED BY THE INHERENT POWER OF THE COURT.

At the time the action was filed, the HSUS had pending before the United States Postal Service a petition requesting, in essence, that the Postal Service suppress the magazines.

37

According to a new complaint filed on or about July 10, 2007, the HSUS assets that its petition was rejected, and now asks this Court to order suppression of the magazines itself. *Humane Soc'y of the United States v. United States Postal Serv.*, No 07-CV-1233 (D.D.C. filed July 10, 2007)(CKK).

Although the Court should dismiss this action *ab initio* on personal and subject matter jurisdiction grounds, if it does not do so, it should consider a stay in light of the new *USPS* case.[1] Indeed, the HSUS itself asserts in the new complaint that it "may request that the Court adjudicate this matter first" since it says that "the resolution" of the USPS case (which the HSUS seems to assume *a priori* would be in its favor) "would, as a practical matter, most likely moot further proceedings" in the present case. (Compl., *HSUS v. USPS*, at 2.)

"The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.,* 299 U.S. 248, 254 (1936); *accord Air Line Pilots Ass'n v. Miller,* 523 U.S. 866, 879 n.6 (1998); *Bledsoe v. Crowley,* 849 F.2d 639, 645 (D.C. Cir. 1988); *Marsh v. Johnson,* 263 F. Supp. 2d 49, 52 (D.D.C. 2003). As the Supreme Court observed in *Landis,* there is "power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." 299 U.S. at 254-55; *accord FTC Line of Business Report Litig.,* 626 F.2d 1022, 1027 n. 29 (D.C. Cir. 1980).

Here, the plaintiffs are the same, and the relief sought, by the Plaintiff's own statement, is essentially the same. A stay would thus work no hardship on the Plaintiff and would economize time and effort.

---

[1] Defendant Marburger does not concede that there is any merit to the Plaintiff's new action.

## CONCLUSION

For the reasons stated, it is respectfully requested that this Court enter an Order granting Defendant Marburger Publishing Co., Inc.'s Motion to Dismiss.

Respectfully submitted,


/s/ Ali A. Beydoun
Barry Fisher #D00208
Ali A. Beydoun #475413
1615 L Street, N.W.
Suite 500
Washington, D.C.  20036
202-310-5500
202-310-5555 - fax
aab@carrmaloney.com
Attorneys for Defendant
Marburger Publishing Co., Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served electronically, this 18th day of July, 2007 to:

> Ethan Carson Eddy
> Jonathan R. Lovvorn
> The Humane Society of the United States
> 2100 L Street, N.W.
> Washington, D.C. 20037
>
> Stuart Philip Ross
> Alexei M. Silverman
> Ross, Dixon & Bell, LLP
> 2001 K Street, N.W.
> Washington, D.C. 20006
>
> Donna M. Crowe
> Bradley Arant Rose & White LLP
> 1133 Connecticut Avenue, N.W., 12th Floor
> Washington, D.C. 20036
>
> Michael S. Denniston
> Bradley Arant Rose & White LLP
> 1819 Fifth Avenue North
> Birmingham, Alabama 35213
>
> Constance M. Pendleton
> 1500 K Street, N.W., Suite 450
> Washington, D.C. 20005
>
> Dowd Publishers d/b/a
> The Feathered Warrior
> 1812 Hwy 7-71 East
> DeQueen, AR 71832
>
> Mark Pollot
> mpollot@cableone.net
>
> John Doe d/b/a Underground Pitbull
> Breeders Association
> John Doe d/b/a StreetheatDVD.com

/s/ Ali A. Beydoun
Ali A. Beydoun

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| THE HUMANE SOCIETY OF THE UNITED STATES | : | |
| | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| vs. | : | Civil No. 07-0623 (CKK) |
| | : | |
| AMAZON.COM., INC., *ET AL.*, | : | |
| | : | |
| Defendants | : | |

**ORDER**

UPON CONSIDERATION of Defendant Marburger's Motion to Dismiss, it is this

_____ day of _____, 2007,

ORDERED, that Defendant Marburger's Motion to Dismiss be, and hereby is

GRANTED; it is further

ORDERED, that Defendant Marburger Publishing Co., Inc. is hereby DISMISSED from

this action with prejudice.

_____
Judge

41

Copies to:

Ethan Carson Eddy
Jonathan R. Lovvorn
The Humane Society of the United States
2100 L Street, N.W.
Washington, D.C. 20037

Stuart Philip Ross
Alexei M. Silverman
Ross, Dixon & Bell, LLP
2001 K Street, N.W.
Washington, D.C. 20006

Donna M. Crowe
Bradley Arant Rose & White LLP
1133 Connecticut Avenue, N.W., 12th Floor
Washington, D.C. 20036

Michael S. Denniston
Bradley Arant Rose & White LLP
1819 Fifth Avenue North
Birmingham, Alabama 35213

Constance M. Pendleton
1500 K Street, N.W., Suite 450
Washington, D.C. 20005

Dowd Publishers d/b/a
The Feathered Warrior
1812 Hwy 7-71 East
DeQueen, AR 71832

Mark Pollot
mpollot@cableone.net

John Doe d/b/a Underground Pitbull
Breeders Association

John Doe d/b/a StreetheatDVD.com

## CONCLUSION

For the reasons stated, it is respectfully requested that this Court enter an Order granting Defendant Marburger Publishing Co., Inc.'s Motion to Dismiss.

Respectfully submitted,


/s/ Ali A. Beydoun
Barry Fisher #D00208
Ali A. Beydoun #475413
1615 L Street, N.W.
Suite 500
Washington, D.C.  20036
202-310-5500
202-310-5555 - fax
aab@carrmaloney.com
Attorneys for Defendant
Marburger Publishing Co., Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served electronically, this 18th day of July, 2007 to:

Ethan Carson Eddy
Jonathan R. Lovvorn
The Humane Society of the United States
2100 L Street, N.W.
Washington, D.C. 20037

Stuart Philip Ross
Alexei M. Silverman
Ross, Dixon & Bell, LLP
2001 K Street, N.W.
Washington, D.C. 20006

Donna M. Crowe
Bradley Arant Rose & White LLP
1133 Connecticut Avenue, N.W., 12th Floor
Washington, D.C. 20036

Michael S. Denniston
Bradley Arant Rose & White LLP
1819 Fifth Avenue North
Birmingham, Alabama 35213

Constance M. Pendleton
1500 K Street, N.W., Suite 450
Washington, D.C. 20005

Dowd Publishers d/b/a
The Feathered Warrior
1812 Hwy 7-71 East
DeQueen, AR 71832

Mark Pollot
mpollot@cableone.net

John Doe d/b/a Underground Pitbull
Breeders Association
John Doe d/b/a StreetheatDVD.com

/s/ Ali A. Beydoun
Ali A. Beydoun

40

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

THE HUMANE SOCIETY OF THE            :
UNITED STATES                        :
                                     :
            Plaintiff                :
                                     :
    vs.                              :        Civil No. 07-0623 (CKK)
                                     :
AMAZON.COM., INC., *ET AL.,*         :
                                     :
            Defendants               :

## ORDER

UPON CONSIDERATION of Defendant Marburger's Motion to Dismiss, it is this

_____ day of _____, 2007,

ORDERED, that Defendant Marburger's Motion to Dismiss be, and hereby is

GRANTED; it is further

ORDERED, that Defendant Marburger Publishing Co., Inc. is hereby DISMISSED from

this action with prejudice.

                              _____
                              Judge

Copies to:

Ethan Carson Eddy
Jonathan R. Lovvorn
The Humane Society of the United States
2100 L Street, N.W.
Washington, D.C.  20037

Stuart Philip Ross
Alexei M. Silverman
Ross, Dixon & Bell, LLP
2001 K Street, N.W.
Washington, D.C.  20006

Donna M. Crowe
Bradley Arant Rose & White LLP
1133 Connecticut Avenue, N.W., 12th Floor
Washington, D.C. 20036

Michael S. Denniston
Bradley Arant Rose & White LLP
1819 Fifth Avenue North
Birmingham, Alabama 35213

Constance M. Pendleton
1500 K Street, N.W., Suite 450
Washington, D.C.  20005

Dowd Publishers d/b/a
The Feathered Warrior
1812 Hwy 7-71 East
DeQueen, AR  71832

Mark Pollot
mpollot@cableone.net

John Doe d/b/a Underground Pitbull
Breeders Association

John Doe d/b/a StreetheatDVD.com

## DECLARATION OF J.C. GRIFFITHS

J.C. Griffiths declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

1. I am the President of Marburger Publishing Co., Inc. (Marburger), a Defendant in this action. I am a resident of Hartford, Arkansas. The sole business of Marburger is the publication and distribution of the magazine entitled The Gamecock. The Gamecock magazine has been published since 1935, and I have been associated with it since 1947. I am fully familiar with the business of Marburger, and I am its custodian of records.

2. Marburger is a corporation organized and existing under the laws of the state of Arkansas. Its principal and only place of business is located at Hartford, Arkansas. Hartford is a small, rural town in west central Arkansas, near the Oklahoma border. I understand that it has a population of around 700 or 800. I am Marburger's only full-time employee. Marburger has 4 part-time employees, 2 who come in three times a week, and 2 others who come in a couple of days a month. All of the employees work at the office in Hartford.

3. Marburger has no fax machine, answering machine, or internet connection. It does have a computer that is used for the mailing list.

4. Marburger maintains no office, mailing address, telephone, employee, or registered agent for service of process in the District of Columbia, maintains no bank accounts or any other accounts in the District of Columbia, maintains no business records in the District of Columbia, does not own, lease, or use, or otherwise have any interest in any real or personal property of any kind in the District of Columbia, has no employees in the District of Columbia, and is not registered to do business in the District of



DEFENDANT'S
EXHIBIT
A

Columbia or anywhere else other than Arkansas. Marburger has not paid taxes in the District of Columbia. Marburger has not been party to any litigation, other than the instant case, in the District of Columbia, or anywhere else. Marburger has not retained counsel in the District of Columbia, except in connection with this action against it, and has never retained any other professional in the District of Columbia.

5. Marburger maintains no internet web site. Marburger has not offered The Gamecock for sale at newsstands or any other retail outlet in the District of Columbia. To my knowledge, The Gamecock is not offered for sale at any newsstands or newsracks, and its only non-subscription circulation is from sales at some feed stores. Marburger has not advertised The Gamecock in the District of Columbia.

6. A subscription to The Gamecock costs $28 per year. Marburger has an oral, informal arrangement with a company called EBSCO, a magazine subscription service, by which Marburger obtains $25 for each subscription obtained by EBSCO, with the other $3 going to EBSCO. Marburger has no written contract with EBSCO. Marburger is not in contact with EBSCO about what it does to obtain subscriptions or how it does so. Marburger does not advise EBSCO in any way, and has no control over how EBSCO operates. Marburger and EBSCO are entirely independent of each other.

7. I estimate that, when this action was filed, The Gamecock had a total monthly circulation of about 6,000, and that about 300 of these were from EBSCO. Until the present litigation, I had never heard of any company called Magazine Express. To my knowledge, Marburger has had no dealings with a company by that name.

8. Until the present litigation, I was not aware that The Gamecock was being advertised on Amazon. Any such advertising has been without my knowledge.

Marburger has no contract or other arrangement, written or oral, with Amazon. Marburger has never been in contact with Amazon, either in writing or orally, regarding any sales or subscriptions. Marburger has had no input into, let alone any type of control over, the contents of anything on Amazon.

9. I have diligently searched Marburger's subscription records, which are kept in the ordinary course of business, for subscribers in the District of Columbia. Marburger has subscription records going back approximately 3 years.

10. At the time this action was filed, The Gamecock had exactly 1 subscriber in the District of Columbia. This subscriber is Eileen Escudero Wisor. Ms. Wisor's subscription came in from EBSCO. According to Marburger's records, Ms. Wisor's subscription began on July 31, 2006, and is due to expire in June 2007.

11. To my knowledge, The Gamecock has, in its history, obtained 1 other subscriber in the District of Columbia from EBSCO. This subscriber is Jeff Leitner. According to Marburger's records, Mr. Leitner's subscription began on July 31, 2006, and was cancelled on December 29, 2006.

12. The records of Marburger reflect a total of 2 other subscribers to The Gamecock in the District of Columbia during the period for which records exist. One of these expired in January 2005 and the other expired in March 2005. Neither of these was obtained through EBSCO. In addition, I believe Marburger used to send a complimentary copy of The Gamecock to the library of the United States Department of Agriculture. Marburger has no records of this. Marburger ceased doing so about six (6) years ago.

13. Apart form the foregoing, I am aware of no other sales or other distribution of The Gamecock to residents of the District of Columbia.

14. To be compelled to defend this action in the District of Columbia would be a severe burden on Marburger. The resources required to defend this case through a trial and possible appeals are enormous. The action appears to seek to put Marburger out of business and, by Court order, end the publication of its 72-year-old magazine. Marburger is a tiny company with only a single full-time employee, located in rural Arkansas, thousands of miles from D.C. It operates at a minimal level of expenses. Its magazine has a few thousand subscribers. Marburger has no regular attorney. Marburger has, as noted above, only 1 active subscriber in D.C., and I understand that she is a member of the Plaintiff in this case. Marburger has not conducted its business in such a way as to reasonably expect to be sued in D.C. under a local consumer protection act.

15. The Gamecock is a magazine whose motto is "The Quality Magazine Devoted to Game Fowl," and I endeavor to make it that. Attached hereto is an analysis of the contents of one sample issue, the issue of December 2006. (I understand that a copy of that issue will be attached as an exhibit to Amazon.com's motion to dismiss.) The first page of the attachment is a summary of the contents of the issue and the other 2 pages give more detail. The Gamecock is a magazine, not a catalogue. The December 2006 issue has contains 160 pages, 49 of which (30.63%) are devoted to editorial content, articles, editorial, and obituaries. The magazine also carries advertisements for a wide

ariety of products and services of interest to its readers.    The Gamecock does not carry

dvertisements for live events.

I declare under penalty of perjury that the foregoing is true and correct.  Executed

n May 5 , 2007, at Hartford, Arkansas.


J.C. Griffiths
J.C. Griffiths

GAMECOCK 12/06    - TOTAL PAGES 160
"The Quality Magazine Devoted To Game Fowl"

|  | Pges | % |
|---|---|---|
| A.  ARTICLES, EDITORIAL, OBITUARIES | 49 | 30.63% |
| B.   ADVERTISING |  |  |
| .   1. Sales eggs chickens |  |  |
| a. Eggs | 3 |  |
| b. Chickens | 52 |  |
| | ------ | ----------- |
| Subtotal | 55 | 34.37% |
| 2. Medicine | 8 |  |
| 3. Vitamins | 5 |  |
| 4. Care products | 3 |  |
| 5. Supplements | 15 |  |
| 6 Education-books, videos | 7 |  |
| 7. Hatchery equipment | 2 |  |
| 8. Classified Advertising-personal service, trophy, membership | 6 |  |
| 9. Paraphernalia | 10 |  |
| Subtotal | 56 | 35% |
| Total | 160 | 100% |

1

## A.   ARTICLES,EDITORIAL, OBITUARIES--DETAIL

| No. of Pages | | | Adjustments for multiple ads on page |
|---|---|---|---|
| 1 | Editor's Column | Page 5 | 1 |
| 5 | The Black Cock and His Associates | Pages 46 to 50 | 5 |
| 1 | Pure What | Page 51 | 1 |
| 2 | Water...An Essential Nutrient | Pages 52 to 53 | 2 |
| 3 | Use A Little Common Sense | Pages 54 to 56 | 3 |
| 5 | The Principles of Breeding American Game Fowl | Pages 57 to 61 | 5 |
| 2 | Inbreeding | Pages 62 to 63 | 2 |
| 2 | Texas News, December Cover Story | Pages 80 to 81 | 2 |
| 4 | A Roundhead Keep | Pages 82 to 85 | 4 |
| 2 | Salted? | Pages 86 to 87 | 2 |
| 1 | Eddy Roger, A Legend | Page 88 | 1 |
| 1 | One Cocker's Formula for Success | Page 89 | 1 |
| 4 | Gameness and Technogenetics | Pages 90 to 93 | 4 |
| 1 | Tennessee GBA News Report | Page 94 | 1 |
| 1 | Once Again | Page 95 | 1 |
| 1 | AAHC-PAC Newsletter | Page 96 | 1 |
| 2 | Chicken Crap | Page 97 to 98 | 2 |
| 2 | March on Washington, Just A Reminder | Page 99 to 100 | 2 |
| 2 | Partnership In Cocking | Pages 101 to 102 | 2 |
| 2 | Another Game Fowl Farm Story | Pages 103 to 104 | 2 |
| 1 | Dear Gamecock | Page 118 | 1 |
| 1 | How It Used To Be | Page 121 | 1 |
| 3 | Obituaries | Pages 122 to 124 | 3 |

Total Pages

49

49

B.  ADVERTISING--DETAIL

# pages 1. Medicine
12     Pages 17, 18, 19, 22, 26, 29, 32, 65, 67, 115, J, & P       -4       8
      2. Vitamins
11     Pages 7, 16, 18, 26, 28, 29, 32, 74, J, P, & S       -6       5
      3. Supplements
16     Page 15, 16, 24, 35, 75, A, B,C, D, E,F,G,H,I,T, & U       -1       15
      4. Care Products
      Rooster Supplies
7     Page 4, 7,26,44,69,72, & 109       -4       3
      5. Education-Books, Video
15     Pages 13,19,32,33,34,39,42,64,66,67,116,117,M,P, & W       -8       7
      6. Hatchery Equipment
5     Pages 4, 7,L,N, & Q       -3       2

      7. Sales-eggs chickens
      a. Eggs
6     Pages 2, 37, 68, X,Z, & AA       -3       3
      b. Chickens
56     Pages 1,2, 3,6,9,10,11,12,13,14,21,23,25,30,31,34,36,37,38,39       -1       52
      Pages 40,41,42,43,44,45,66,68,70,71,73,74,76,77,78,79,105,106
      Pages 107,108,109,110,111,112,113,114,115,117,119,120,       -1
      Pages R,W,Y,AA,AB, & AC       -2

      8. --paraphernalia
17     Pages 8,15,18,27,35,41,43,108,113,116,129,130,K,L,O,V, & Y       -7       10

      9. Classified Advertising-personal services, trophy, membership
8     Pages 20,69,118,125,126,127,128, & AD       -2       6
      ------------------       ------------------       ------------------
202     Total Pages       -42       160

## DECLARATION OF ALI A. BEYDOUN

Ali A. Beydoun declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

1. To my knowledge, at the time this action was filed, The Gamecock had exactly 1 subscriber in the District of Columbia. This subscriber is Eileen Escudero Wisor. According to Marburger's records, Ms. Wisor's subscription began on July 31, 2006, and is due to expire in June 2007.

2. According to the information I received from Marburger, *The Gamecock* has, in its history, obtained 1 other subscriber in the District of Columbia from EBSCO. This subscriber is Jeff Leitner. According to Marburger's records, Mr. Leitner's subscription began on July 31, 2006, and was cancelled on December 29, 2006.

3. I conducted an internet search of Mr. Leitner and have attached documents showing the results I have obtained. See Exhibit 1, attached hereto. As Exhibit 1 demonstrates, Mr. Leitner has a web profile that includes an employment history which indicates that Mr. Leitner works with an organization called "The Fund for Animals". These records also reveal that Mr. Leitner has served as that organization's Public Policy Coordinator as well as its Program Coordinator. *Id.*

4. I also conducted an internet search of The Fund for Animals and have attached documents showing the results I have obtained. See Exhibit 2. As Exhibit 2 demonstrates, The Fund for Animals and the Humane Society of the United States (HSUS) have joined and formed a "newly configured partnership." *Id.* The union includes the formation of an Animal Protection Litigation section and the Humane Society Legislative Fund. *Id.*



DEFENDANT'S
EXHIBIT
*B*

I declare under penalty of perjury that the foregoing is true and correct. Executed on May 4, 2007, at Washington, D.C.

Ali A. Beydoun



**Jeff Leitner**  This is Me
**Public Policy Coordinator**

**The Fund for Animals**
Silver Spring, Maryland
✉ Contact this person

---

This profile was automatically generated using 37 references found on the Internet. This information has not been verified. Learn more...

## Employment History

**Public Policy Coordinator**
The Fund for Animals
P.O. Box 11294
Jackson, WY 83002
USA

Website: www.fund.org
Phone:   (307) 859-8840
Fax:     (307) 859-8846

The Fund for Animals was founded in 1967 by prominent author and animal advocate Cleveland Amory, and for 37 years, spearheaded some of the most significant events in the history of the animal protection movement by employing hard-hitting advocacy campaigns and operating world-famous.  More

**Program Coordinator**
The Fund for Animals
P.O. Box 11294
Jackson, WY 83002
USA

Website: www.fund.org
Phone:   (307) 859-8840
Fax:     (307) 859-8846

The Fund for Animals was founded in 1967 by prominent author and animal advocate Cleveland Amory, and for 37 years, spearheaded some of the most significant events in the history of the animal protection movement by employing hard-hitting advocacy campaigns and operating world-famous.  More

## Jeff's Zoom Network

🐾 Pierre Grzybowski
   The Fund for Animals

## Profile Statistics

| | |
|---|---:|
| Times Viewed: | 1 |
| Times Forwarded: | 0 |
| Web References: | 37 |
| Quick Lists: | 0 |

## Web References                         View all 37 references.

**1. OneDayHikes.com - News**
www.onedayhikes.com/NewsRO.asp?NewsID=69 - [Cached]
Published on: 3/28/2004   Last Visited: 12/19/2006

"We are deeply troubled that Yellowstone's buffalo, the symbol of the American West, have once again been subjected to a hysteria-based slaughter," said Jeff Leitner, public policy coordinator for The Fund for Animals.

---

**2. Refuges.org - Press Releases**
www.refuges.org/media/press.cfm?pressReleaseID=7 - [Cached]
Published on: 5/22/2003   Last Visited: 10/17/2005

Jeff Leitner 301-585-2591 ext. 208 jleitner@fund.org

...

"The Fish and Wildlife Service has reported that the refuge system has a $400 million backlog of critical research, habitat restoration, maintenance, and wildlife monitoring projects, and that current refuge budgets are inadequate," said Jeff Leitner, Program Coordinator for The Fund for Animals.

...

"Conservation is clearly taking a back seat to special interests and political pressure," Leitner added.

---

**3. 10-23-2000**
www.gazettevirginian.com/archivesfolder.html/10-23 - [Cached]
Published on: 10/23/2000   Last Visited: 7/21/2006

Jeff Leitner, program coordinator with the Silver Spring, Md.-based Fund for Animals, said that the group is fighting the misinformation. The state's gun laws were also drawn into the legal controversy last week.

---

**4. "Right to hunt" bill in question**
www.wrninteractive.org/Articles/01tx12-16.htm - [Cached]
Published on: 12/16/2001   Last Visited: 10/4/2006

If you would like to help defeat HJR14, contact Jeff Leitner of The Fund for Animals at jleitner@fund.org or (301) 585-2591 ext. 316.



**DEFENDANT'S
EXHIBIT**

tabbies®

_____1_____

**5. Today's News**
www.prnewswire.com/cgi-bin/stories.pl?ACCT=104&STO -
[Cached]
Published on: 10/10/2002  Last Visited: 10/10/2002

Despite this concern, the Centennial Commission, which is
planning the centennial events, is "stacked with prominent hunting
advocates," according to Jeff Leitner, Program Coordinator for The
Fund for Animals. "The commission is planning to spend millions of
tax dollars and solicit corporate sponsorship for millions more,"
Leitner said. "Most of the events will be geared to promote sport
hunting and trapping of animals who should be given safe haven,
not used for target practice and for their fur pelts." According to a
national poll, 88% of the population agreed that wildlife and habitat
preservation should be the highest priority of the refuge system.

"The U.S. Fish and Wildlife Service and the Centennial Commission
has reached out to pro-hunting groups in its planning for the
centennial events," Leitner said, "but has made no effort to reach
out to animal protection groups that would like to see that each
refuge becomes a truly safe place for animals." The Fund for
Animals intends to educate the public to the fact that recreational
and commercial killing is not only allowed but also promoted by the
government on taxpayer-funded refuges. "The centennial events
provide a forum not for celebration, but for education about the
need to change refuge policies that harm animals," added Leitner.

Click here

SOURCE The Fund for Animals Web Site: http://www.fund.org/



# The Fund for Animals
### we speak for those who can't

| search |

**About Us**  =  **Donate Now**  =  **In the Courts**  =  **News Room**

Home > About The Fund for Animals > A Partnership for Animals

## A Partnership for Animals



**IN THIS SECTION**

A Partnership for Animals
Annual Reports
Author: Cleveland Amory: Lifetime
Leader for Animals
Our History

**PROGRAMS**

- **Cleveland Amory
  Black Beauty Ranch**
  *Murchison, TX*

- **The Fund for Animals
  Wildlife Center**
  *Southern California*

- **Cape Wildlife Center**
  *Cape Cod, MA*

- **Rural Area Veterinary
  Services**
  *Global*

- **Rabbit Sanctuary**
  *Simpsonville, SC*

**WAYS TO GIVE**

- **Donate Now**

- **Become a Member**

- **Become a Monthly
  Sustainer**

- **Give a Gift Donation**

- **Other Ways to Give**

  FEED AN ANIMAL
  FOR FREE

In January 2005, The Fund for Animals and The Humane Society of the United States (HSUS) joined forces in an unprecedented and historic combination. This was the first time in the history of the animal protection movement that two national, high-profile organizations have united in order to advance their common mission.

The groups continue operating as independent organizations, but the new partnership has allowed for the launch of several new programs, savings in administrative costs, and more effective results for animals. The Fund for Animals carries on the legacy of Cleveland Amory with the hard-hitting programs for which it has been known for 4 decades, and with a renewed emphasis on hands-on animal care services.

**A New Approach to Advocacy**

The union of HSUS and Fund staff members has allowed for the formation of a new Campaigns department to focus on major, defining issues such as fur, sport hunting, factory farming, and malicious animal cruelty, including animal fighting. We pursue these goals with a multifaceted approach involving investigations, litigation, lobbying, communications, corporate reforms, and professional campaigning.

The union also made possible the formation of a new Animal Protection Litigation section, with eight full-time






DEFENDANT'S
EXHIBIT

2

## JOIN OUR ONLINE COMMUNITY

Receive action alerts, news, and special offers via email.

First Name

Last Name

Your Email here

Zip Code

JOIN

THE FUND FOR ANIMALS
200 West 57th Street
New York, NY 10019
888-405-FUND

In partnership with....

THE HUMANE SOCIETY

attorneys—joined by a corps of law students and pro bono attorneys—fighting in court for animal protection laws. The section is already the largest in-house animal protection litigation department in the country, serving as a training ground for the next generation of animal lawyers and law students. Our legal team is involved in more than three dozen active cases throughout the country.

And finally, the union of our two groups allowed for the formation of a third organization: the Humane Society Legislative Fund, a new 501(c)(4) political entity designed to augment our existing public policy work and allow for a more substantial investment of resources in political and lobbying activities. This new lobbying arm of our groups will enable us to expand our public policy work, enlarge our network of trained activists, and level the playing field with the industries that promote and condone cruelty to animals.

With this newly configured partnership, The HSUS, The Fund for Animals, the Humane Society Legislative Fund, and its family of organizations represent the largest and most effective animal protection force in the United States.

### A Helping Hand and a Strong Voice

The Fund for Animals continues its work as a leader in direct animal care centers providing veterinary care, rehabilitation and release efforts, and sanctuary for abused and abandoned animals throughout the United States. While The Fund and The HSUS are partners in these efforts, donations to The Fund for Animals are used specifically to support Fund programs, such as five animal care centers and a docket of animal protection litigation in which The Fund is a plaintiff.

The flagship legacy of author and Fund founder, Cleveland Amory, is the Cleveland Amory Black Beauty Ranch. This 1,300-acre refuge in Murchison, Texas, provides permanent sanctuary for more than 1,400 rescued animals. The ranch still cares for some of the original burros saved from the Grand Canyon, the dramatic helicopter rescue in the late 1970s which led to the establishment of Black Beauty Ranch, in addition to primates, exotic animals, horses, bison, prairie dogs, and many others.

The Fund for Animals' Wildlife Center in Ramona, California, provides 24-hour medical care to rehabilitate and release injured native animals. The center specializes in large predators such as coyotes, bobcats, and mountain lions, and has one of the world's largest free-flight aviaries for birds of prey who are recuperating and regaining their flight. The facility is also a safe home for some exotic animals who cannot be released to the wild.

The Fund for Animals' Rabbit Sanctuary, located in Simpsonville, South Carolina, provides, as Cleveland Amory said, "hope for the hopeless." The sanctuary is a permanent refuge for many dozen injured or displaced rabbits who were abused or discarded as "throwaway" pets.

The Cape Wildlife Center in Cape Cod, Massachusetts, provides veterinary care and rehabilitation for many species of native wildlife such as raccoons, squirrels, foxes, seabirds, and turtles. The center also runs an active wildlife veterinarian training program, where wildlife veterinarians receive on-the-job training.

The Rural Area Veterinary Services program provides much-needed medical care to animals in low-income areas, such as Indian reservations, the hill country of Appalachia, farms in South America, and even on remote islands. Skilled veterinarians operate the clinics, and are aided by veterinary students and other volunteers. Each clinic is uniquely designed to address the needs of the community by providing veterinary care for the

animals and education to prevent future disease outbreaks or injuries.

And finally, The Fund's litigation efforts apply needed pressure when other means have failed. Whether defending animals against large corporations or even the federal government, The Fund speaks for those who can't.

*posted March 22, 2006*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Email this page to friend.**

**Printer Friendly Version**

Copyright The Fund for Animals. All rights Reserved. | Privacy Policy | Contact Us