# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA
### Civil Division

|  |  |  |
|---|---|---|
| _____ ) | | |
| ) | | |
| ) | | |
| **HUMANE SOCIETY OF** ) | | |
| **THE UNITED STATES,** ) | **Case No. 07-0623 (CKK)** | |
| ) | | |
| **Plaintiff,** ) | **MOTION TO DISMISS** | |
| ) | **AMENDED COMPLAINT AND** | |
| ) | **MEMORANDUM OF POINTS** | |
| **vs.** ) | **AND AUTHORITIES IN** | |
| ) | **SUPPORT OF MOTION** | |
| **AMAZON.COM, INC., et al.,** ) | | |
| ) | **ORAL ARGUMENT** | |
| **Defendants** ) | **REQUESTED** | |
| ) | | |
| _____/ | | |

## MOTION TO DISMISS OF DOWD PUBLISHERS

Pursuant to Federal Rules of Civil Procedure (Fed. R. Civ. Pro.) 12(b)(1), (2) and (6), Defendant Dowd Publishers, in lieu of answering, hereby moves this Court to issue an Order dismissing the above-entitled action with prejudice on the grounds stated in the appended Memorandum of Points and Authorities.

_____/s/_____

ROBIN W. GROVER
DC Bar No. 366865
Law Office of Robin W. Grover
1747 Pennsylvania Avenue, N.W.
Suite 1000
Washington, D.C.  20006
Tel. No.: (202) 302-1653
Fax No.:  (703) 684-2973
Email: RGrover716@aol.com

Attorney for Defendant
Dowd Publishers

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**
**Civil Division**

| | | |
|---|---|---|
| **HUMANE SOCIETY OF** | ) | |
| **THE UNITED STATES,** | ) | **Case No. 07-0623 (CKK)** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **MEMORANDUM OF POINTS** |
| **vs.** | ) | **AND AUTHORITIES IN** |
| | ) | **SUPPORT OF MOTION** |
| **AMAZON.COM, INC., et al.,** | ) | |
| | ) | **ORAL ARGUMENT** |
| **Defendants** | ) | **REQUESTED** |
| | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**DOWD PUBLISHERS' MOTION TO DISMISS**

ROBIN W. GROVER
DC Bar No. 366865
Law Office of Robin W. Grover
1747 Pennsylvania Avenue, N.W.
Suite 1000
Washington, D.C.  20006
Tel. No.: (202) 302-1653
Fax No.:  (703) 684-2973
Email: RGrover716@aol.com

Attorney for Defendant
Dowd Publishers

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES…………………………………………………………… . ii

I.     INTRODUCTION………………………………………………………… 1

    A. EVENTS FOLLOWING INITIAL FILING OF MOTIONS TO DISMISS……1

    B.  THE ANIMAL WELFARE ACT, AS AMENDED……………………………2

    C.  ALLEGATIONS AND PRAYER FOR REVIEW OF HSUS………………… 4

    D.  GROUNDS FOR MOTION TO DISMISS………………………………… 9

II.    ARGUMENT…………………………………………………………………,10

    A. STANDARD OF REVIEW………………………………………………….. 10

    B.  PLAINTIFF CANNOT UTILIZE THE DISTRICT OF COLUMBIA'S
    CONSUMER PROTECTION ACT AS MEANS TO ENFORCE FEDERAL OR
    DISTRICT CRIMINAL STATUTES WHICH GIVE IT NO PRIVATE RIGHT OF
    ACTION…………………………………………………………………… 12

    C.  ASSUMING ARGUENDO THAT THE DISTRICT OF COLUMBIA
    CONSUMER PROTECTION ACT PROVIDES A PRIVATE RIGHT OF ACTION
    BASED ON THE AWA AS AMENDED, PLAINTIFF LACKS
    STANDING………………………………………………………………… . . 19

    D.  PLAINTIFF'S VIEW OF THE STATUTE AND THE REMEDIES
    REQUESTED, IF SUSTAINED, WOULD VIOLATE THE FIRST
    AMENDMENT RIGHTS OF DEFENDANTS…………………………………… 22

    E.  THE CURRENT CASE IS NOT RIPE FOR LITIGATION…………………… 25

    F.  PLAINTIFF'S CONSPIRACY CLAIM FAILS AS IT HAS NO PRIVATE
    RIGHT OF ACTION OR STANDING TO CHALLENGE AN ALLEGED
    CONSPIRACY TO VIOLATE A LAW IT HAS NEITHER STANDING
    NOR A PRIVATE CAUSE OF ACTION TO ENFORCE…………………… 27

III.    CONCLUSION………………………………………………………… 27.

**TABLE OF AUTHORITIES**

**Cases:**                                                                                                    **Page**

*Abu Ali v. Gonzales*, 387 F. Supp. 2d 16, 17 (D.D.C. 2005)                                                      11

*Abbott Laboratories v. Gardner*, 387 U.S. 136 (1967)                                                           25

*Abbott Laboratories v. Nutrimax Products, Inc.*, 844 F. Supp. 443 (N.D. IL 1994)                               11

*Alexander v. Sandoval*, 532 U.S. 275 (2001)                                                                    13
.
*APCC Services, Inc. v. Sprint Communications Co.*, 418 F.3d 1238 (D.C. Cir. 2005)                              13

*Corrigan v. Methodist Hospital*, 158 FRD 70 (E.D. Pa. 1994)                                                    11

*Doron Precision Systems, Inc. v. FAAC, Inc.,* 423 F. Supp. 2d 173 (E.D. Pa.1994)                                8

*Gould, Inc. v. United States*, 67 F.3d 925 (Fed. Cir. 1995)                                                    11

*International Primate Protection League v. Institute for Behavioral Research*,
799 F.2d 934 (4th Cir. 1986), *cert. denied*, 481 U.S. 1004 (1987)                                            17

*Kaempe v. Myers*, 367 F.3d 958 (D.C. Cir. 2004)                                                                 7

*Kowal v. MCI Communications Corp.*, 16 F.3d 1271 (D.C. Cir. 1994)                                              11

*Kruse v. State of Hawaii*, 857 F. Supp. 741, *aff'd,* 68 F.3d  331 (D.Hawaii 1994)                             11

*Laborers Pension Fund v. Blackmore Sewer Construction Inc.*,
298 F.3d 600 (7th Cir. 2002)                                                                                   7

*Lujan v. Defenders of Wildlife*, 504 U.S. 555(1992)                                                          20,21

*McCarty v. Madigan, 503 U.S. 140 (1992*                                                                        25

*Mullins v. M.G.D. Graphics Systems Group*, 867 F. Supp. 1578 (N.D. Ga. 1994)                                  11

*Nebraska Press Ass'n. v. Stuart*, 427 U.S. 539 (1976)                                                         23

*New York Times Co. v. United States*, 403 U.S. 713 (1973)                                                     23

*Public Citizen v. Lockheed Aircraft Corp.*, 565 F.2d 708 (D.C. Cir. 1997)     20

*Revis v. Slocomb Industries, Inc.*, 765 F. Supp. 1212 ((D.Del. 1991)     11

*Schroll v. Plunkett*, 760 F. Supp. 1385 (D. Ore. 1991), aff'd, 932 F.2d 973     11

*Sierra Club v. Morton*, 405 U.S. 727 (1972)     16, 21

*United Food and Commercial Workers Union Local 751 v. Brown Group, Inc.*,
517 U.S. 554 (1996)     21

*Virginia State Board of Pharmacy v. Virginia Consumer Citizens Council, Inc.*,
425 U.S. 748 (1976)     24

*Washington Post Co. v. Keogh*, 365 F.2d 965 (D.C. Cir. 1966),
*cert. denied*, 385 U.S. 1011     12

Williams v. Purdue Pharm. Co., 297 F. Supp.2d 171 (D.D.C. 2003)     20

**Statutes:**

7 U.S.C. § 2156(c)     passim

33 U.S.C. § 1365     13

47 U.S.C. § 230     22

D.C. Code Ann. §§ 22-1015(a)(1)     12

D.C. Code Ann. §§ 2812-312 to 318     14, 15

D.C. Code Ann. §§ 28-3904(a), (e), (f), (x), 28-3905(k)(1)     passim

iii

## I.      INTRODUCTION.

### A.      EVENTS FOLLOWING INITIAL FILING OF MOTIONS TO DISMISS.

Subsequent to the filing of motions by the various defendants in the above-entitled case to dismiss this action, three significant actions occurred.  First, Congress enacted and the President signed the Animal Fighting Prohibition Enforcement Act, which amended the Animal Welfare Act ("AWA"), 7 U.S.C. § 2156(c).  This enactment and its effect on the AWA are discussed in more detail below.

Second, plaintiff Humane Society of the United States ("HSUS") amended its complaint to allege this enactment, rendering the first motions to dismiss moot, necessitating the filing of this new motion to dismiss.  As will be seen below, the amended complaint is not saved by the new allegations.  HSUS still seeks to enforce a law it has no standing to enforce, to impose a blanket ban on publications based on what they could conceivably do, and in doing so mischaracterizes the applicable laws.

Third, and finally, the United States Postal Service rejected HSUS's petition to bar the mailing of the gamefowl related magazines named in the complaint, leading HSUS to file an action challenging the Postal Service's action.  In Dowd's prior motion, Dowd argued that this case should be dismissed because of the pending Postal Service proceeding and pointed out that HSUS's remedy in the event that the Postal Service denied its petition was an Administrative Procedures Act suit, not an attempt to enforce a federal criminal statute.

Defendant Dowd Publishers ("Dowd") now files this new Motion to Dismiss the amended complaint.  All of the arguments made in the prior motions to dismiss filed by each of

1

the defendants remain pertinent to the complaint as amended.  For ease of reference, Defendant

Dowd includes all the prior arguments herein rather than incorporating them by reference.  This

motion adds new material where appropriate to address the effects of the new allegations.  Dowd

notes briefly here that the new allegations, which could not at the time of the filing of the

amended complaint address any new actions taken by any defendant, reinforce what Dowd and

the other defendants have made clear in their prior motions; plaintiff HSUS is asking this court to

issues orders based not on what defendants have done, but what they might do.

     **B.**     **THE ANIMAL WELFARE ACT AS AMENDED**

In May, 2007, the President signed into law S. 261, known as the Animal Fighting

Prohibition Enforcement Act ("AFPEA").  The AFPEA amended the AWA by adding to the end

of Chapter 3 of title 18, United States Code the following language:

> **Sec. 49. Animal fighting prohibition**
>
> (a) Sponsoring or Exhibiting an Animal in an Animal Fighting Venture-
>
>> (1) IN GENERAL- Except as provided in paragraph (2), it shall be unlawful for any person to knowingly sponsor or exhibit an animal in an animal fighting venture, if any animal in the venture was moved in interstate or foreign commerce.
>>
>> (2) SPECIAL RULE FOR CERTAIN STATES- With respect to fighting ventures involving live birds in a State where it would not be in violation of the law, it shall be unlawful under this subsection for a person to sponsor or exhibit a bird in the fighting venture only if the person knew that any bird in the fighting venture was knowingly bought, sold, delivered, transported, or received in interstate or foreign commerce for the purpose of participation in the fighting venture.
>
> (b) Buying, Selling, Delivering, or Transporting Animals for Participation in Animal Fighting Venture- It shall be unlawful for any person to knowingly sell, buy, transport, or deliver, or receive for purposes of transportation, in interstate or foreign commerce, any dog or other animal

2

for purposes of having the dog or other animal participate in an animal fighting venture.

(c) Use of Postal Service or Other Interstate Instrumentality for Promoting Animal Fighting Venture- It shall be unlawful for any person to knowingly use the mail service of the United States Postal Service or any instrumentality of interstate commerce for commercial speech promoting an animal fighting venture except as performed outside the limits of the States of the United States.

(d) Violation of State Law- Notwithstanding subsection (c), the activities prohibited by such subsection shall be unlawful with respect to fighting ventures involving live birds only if the fight is to take place in a State where it would be in violation of the laws thereof.

(e) Sharp Instruments- It shall be unlawful for any person to knowingly sell, buy, transport, or deliver in interstate or foreign commerce a knife, a gaff, or any other sharp instrument attached, or designed or intended to be attached, to the leg of a bird for use in an animal fighting venture.

(f) Penalties- Any person who violates subsection (a), (b), (c), or (e) shall be fined under this title or imprisoned for not more than 2 years, or both, for each such violation.

(g) Definitions- For purposes of this section--

> (1) the term `animal fighting venture' means any event which involves a fight between at least two animals and is conducted for purposes of sport, wagering, or entertainment except that the term `animal fighting venture' shall not be deemed to include any activity the primary purpose of which involves the use of one or more animals in hunting another animal or animals, such as waterfowl, bird, raccoon, or fox hunting;

> (2) the term `instrumentality of interstate commerce' means any written, wire, radio, television or other form of communication in, or using a facility of, interstate commerce;

> (3) the term `State' means any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, and any territory or possession of the United States; and

(4) the term `animal' means any live bird, or any live dog or other mammal, except man.

(h) Conflict With State Law- The provisions of this section do not supersede or otherwise invalidate any such State, local, or municipal

3

> legislation or ordinance relating to animal fighting ventures except in case
> of a direct and irreconcilable conflict between any requirements
> thereunder and this section or any rule, regulation, or standard hereunder.[1]

Only three provisions of the Act as Amended have even arguable application to this action: specifically, subsections (c), (d) and (e).  Subsection (c) prohibits the use of an instrumentality of interstate commerce to *knowingly* use the Postal Service or an instrumentality of interstate commerce for commercial speech promoting "an animal fighting venture except as performed outside the limits of the United States."  Subsection (d) modifies subsection (c) by saying the subsection (c) is not applicable to promotion of ventures where the specific fight would be lawful.  Subsection (d) makes it unlawful "for any person to knowingly sell, buy, transport, or deliver in interstate or foreign commerce a knife, a gaff, or any other sharp instrument attached, or designed or intended to be attached, to the leg of a bird for use in an animal fighting venture" but does not prohibit the sale, ownership, or purchase of such items *per se*.  Neither does the statute prohibit the advertising of either birds or sharp instruments. By enacting subsection (c), it is evident that Congress knows how to prohibit such advertising if it so chose.  Clearly, so long as a sale of sharp instruments occurs locally and the item is not transported nor delivered in interstate commerce, its purchase or sale is not unlawful unless the state in question bans the sale or purchase.

### C.     ALLEGATIONS AND PRAYER FOR REVIEW OF HSUS

Plaintiff HSUS, as noted in Dowd's original motion to dismiss, is an organization

4

---

[1]Plaintiff insists on characterizing this enactment, as it has the AWA before its amendment by this enactment, as outlawing animal fighting.  Even a cursory review of the language of the enactment shows this not to be true.

whose sole purpose is the promotion of animal rights and the protection of animals from what it views as cruelty, including animal fighting.  HSUS has apparently conceded the propriety of the removal of this case from the Superior Court of the District of Columbia to this Court.  The original complaint, and the complaint as amended, names several defendants.  The lead defendant, Amazon.Com, Inc. ("Amazon"), is an internet-based seller and/or distributor of products and provider of what it refers to as an on-line marketplace in which third parties can offer their own products for sale.  Additional defendants include two trade magazine publishing companies (Dowd Publishers and Marburger Publishing Co.), a subscription fulfillment company (Magazine Express), and two Doe defendants.  The complaint demanded, *inter alia*, the complete and total suppression of the magazines.

Dowd is the publisher of a periodical called *The Feathered Warrior.  Marburger* publishes *Gamecock* magazine.  *Feathered Warrior* and *Gamecock* are trade publications pertaining to the gamefowl industry.  Both magazines publish articles, discussions, and editorial commentary pertaining to a wide variety of gamefowl-related activities including, *inter alia*, animal health and safety issues, breeding and raising of birds, and legal and political concerns. Both accept advertising for gamefowl related matters.[2]  As noted in Dowd's original motion to dismiss, *Feathered Warrior* has an express policy, reprinted in every issue, of not publishing

5

---

[2]Dowd Publisher and Marburger Publishing Co. advertise in each other's magazine.  Dowd Publisher does not actively solicit subscriptions from the District of Columbia and makes no effort to advertise in the District.

material which is prohibited by the Federal Animal Welfare Act, discussed further below.[3]  This policy has not changed.  Only one subscriber to the magazines exists with the District of Columbia where this action was first filed and that person, not a named party to this action, is a member of the HSUS.[4]

The gravamen of the HSUS's Complaint, including its amended complaint, is that the magazines in every respect promote an illegal activity, animal fighting.  This includes not only advertisements, but also non-advertising speech such as articles and editorial content relating to legal, political, and social positions.  Animal fighting, HSUS alleges, is not only cruel to animals but leads to – or is accompanied by – all manner of other illegal or undesirable activities.  These activities, HSUS speculates, include gambling, drug use, murder, rape, and other heinous crimes.  HSUS also alleges that animal fighting activities present a threat of animal or human disease transmission.[5]  The illegal activity the magazines (and some videos alleged to be available through a website operated by defendant Amazon) are alleged to promote is animal fighting, including cockfighting.  However, as previously noted by Dowd in its original motion to dismiss and by HSUS's own admissions in its Complaint and its websites, neither

6

---

[3]In the interests of space, to reduce the amount of paper being filed, and for the convenience of the parties, Dowd Publishers will not duplicate exhibits and attachments filed by other defendants in the above-entitled action, but will refer to exhibits attached to Motions to Dismiss filed by other defendants where appropriate and will identify them as such.  Such exhibits are incorporated herein by reference as though appended hereto.

[4]Motion by Specially Appearing Defendant Marburger Publishing Co., Inc., for Leave Under Federal Rule of Civil Procedure 30(a)(2)(C) to Conduct Deposition of Eileen Wisor on Issues Related to Marburger's Intended Motion to Dismiss for Lack of Personal Jurisdiction, at 2; Plaintiff's Opposition to Defendant Marburger's Motion for Leave.

[5]As noted below, there are a number of activities involving gamefowl which are not illegal *anywhere*, such as breeding gamefowl as a hobby, or for show, or for non-fighting purposes.  Similarly, such

cockfighting nor all paraphernalia that can be used for cockfighting is everywhere illegal. *See* original Complaint ¶23; http://www.hsus.org/hsus_field/animal_fighting_the_final_round/ cockfighting_fact_sheet/state_ cockfighting_laws.html.[6]

For example, at the time of the filing of the Complaint, cockfighting was completely legal in New Mexico and Louisiana. New Mexico has recently passed a statute making cockfighting illegal in that State, though that statute is not yet in effect and may never go into effect. A lawsuit was filed in New Mexico earlier this month challenging the legality of the statute banning cockfighting in the State of New Mexico, In some states, cockfighting is illegal only in some circumstances, such as where gambling is occurring (*e.g.*, Virginia) or when admission is charged (also, *e.g.*, Virginia). *Id.* Only ten states prohibit the possession of cockfighting implements and the District of Columbia does not. *Id.* Virtually every Territory of the United States permits cockfighting (*id.*), and no state or territory of the United States has an outright ban on the possession or ownership of gamefowl not possessed for the purposes of fighting the bird(s). *Id.* In other words, every state in the United States and U.S. Territory permits at least some and, in some cases, *every* activity involving game fowl addressed by the magazines at issue. Even the Animal Welfare Act as amended, 7 U.S.C. § 2156(c), does not purport to make such activities illegal, but imposes certain limitations on the interstate transport of animals or other items for cockfighting purposes, *inter alia,* as described above.

7

---

activities often involve transporting birds or bird products from place-to-place and involve no greater or lesser danger to animal or human health and safety such activities involving other domestic fowl.
[6]In the context of a Motion to dismiss, this Court may take judicial notice of websites and documents referenced in the Complaint or whose authenticity is not disputed. *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004); *Laborers' Pension Fund v. Blackmore Sewer Constr. Inc*., 298 F.3d 600, 607 (7th Cir.

What HSUS seeks in its lawsuit is the complete and total elimination of these magazines and all their content, utilizing a District of Columbia consumer protection statute (the District of Columbia Consumer Protection Procedure Act ("CPPA"), D.C. Code 28-3904(a), (e), (f), (x), 28-3905(k)(1)) as a vehicle for private enforcement.  As will be discussed in detail *infra*, not only is this D.C. statute inapplicable to this case, it is being used as a pretext to enforce a federal statute, the AWA as amended, and a District of Columbia statute neither of which provide a private right of action.  It is worth noting here that the Animal Fighting Prohibition Enforcement Act discussed above, enacted after the original complaint was filed in this case, did *not* add a private right of action to the AWA.

This is not HSUS's first attempt to use other provisions of law as a means to attack activities which it finds repugnant, but which are nevertheless lawful, for the purpose of avoiding limitations on standing or jurisdiction.  For example, at the same time it filed the current case, HSUS also filed a request for a *quo warranto* proceeding against Amazon in Washington State with the King County prosecuting attorney.  This attempt failed.  *See* Memorandum of Points and Authorities in Support of Motion to Dismiss of Amazon.Com, Inc., Background, A, H.  Likewise, approximately one year ago, HSUS petitioned the U.S. Postal Service to declare the *Feathered Warrior* and the *Gamecock* magazines unmailable, to revoke the mailing permits of the defendant publishers, and to prohibit further mailings of these magazines.  As discussed above, that petition was recently denied and plaintiff filed suit in this Court challenging the denial of that petition.

8

---

2002); *Doron Precision Systems, Inc. v. FAAC*, Inc., 423 F. Supp. 2d 173, 179 n.8 (S.D.N.Y. 2006); *see* also Fed. R. Evid. 902.  Plaintiff can certainly not deny its own website.

D.    **GROUNDS FOR MOTION TO DISMISS**

Defendant Dowd first notes that it has had the opportunity to review the motions to dismiss of other defendants in this action and concurs in the arguments made therein regarding the grounds for dismissal applicable to all defendants.  In the interests of reducing the amount of paper filed in this case and for the convenience of the Court and the parties, defendant Dowd will attempt to avoid too much duplication of those arguments and incorporate by reference those arguments applicable to, and supportive of, defendant Dowd's position as though fully set forth herein.  The grounds for dismissal of the Complaint herein are as follows:

(1)    Both this Court and the Superior Court lack subject matter jurisdiction over this matter in that, *inter alia*, the plaintiff has failed to state claims for relief.  While couched in terms of the District of Columbia's consumer protection statute, this case is not within the zone of interest protected by consumer protection statute and is, in fact, an attempt to enforce a federal criminal statute (as well as a District criminal statute) for which there are no private rights of action.  These statutes contain neither a citizen's suit provision nor does the language of either statute support a private right of action by implication or interpretation;

(2)    Even were there private rights of action involved, plaintiff has no standing to pursue such action in that it (a) has not and cannot reasonably allege that it is in fact harmed, (b) that possibility of such harm is too speculative to confer standing; (c) that such harm, if it were to occur, would not be the result of any action of defendants, but of third parties over whom defendants have no control and are not in any way condoned by, or encouraged by defendants; and (d) no remedy that the Court could give with the parties before it could prevent such harm

9

from occurring. It cannot be shown that the complete cessation of the activities by defendants alleged by plaintiff to be illegal would have any impact on the activities of third parties not before the Court in either conducting animal fights or engaging in peripheral activities at or near animal fights.

(3)     Even if the plaintiff has standing and the court jurisdiction over all parties, the interpretation offered by plaintiff of the underlying federal laws would violate the First Amendment rights of all defendants and would be constitutionally impermissible;

(4)     Similarly, even if plaintiff has standing and no other jurisdictional defect exists, the remedies requested by plaintiff would constitute an overbroad response violative of First Amendment protections;

(5)     *Assuming arguendo* that the Court has jurisdiction or the plaintiff standing, the action is not ripe because the appropriate place to raise the issues raised herein was an administrative proceeding that was pending before the Postal Service.  Now that that petition has been denied, the proper defendant whose decision plaintiff might oppose is the Postal Service, not defendants in the current case;

(6)     HSUS cannot logically or legally prevail on a conspiracy claim for which no private right of action exists.

## II.     ARGUMENT

### A.     STANDARD OF REVIEW

As a general rule, motions to dismiss or for judgments on the pleadings should not be granted unless it appears beyond a reasonable doubt that the plaintiff can prove no set of

facts in support of his claim which would entitle him to relief. *Revis v. Slocomb Industries, Inc.*, 765 F. Supp. 1212, 1213 (D. Del. 1991). Dismissal on the pleadings is proper only if the moving party is *clearly* entitled to prevail. *Kruse v. State of Hawaii*, 857 F.Supp. 741, 749, *aff'd* 68 F.3d 331 (D. Hawaii 1994). It must be apparent that there are no issues of material fact and only questions of law exist. *Corrigan v. Methodist Hospital*, 158 FRD 70, 71 (E.D. Pa. 1994).

   In considering whether to dismiss an action, the Court must treat all of the nonmoving parties' *well-pleaded* allegations as true. *Abbott Laboratories v. Nutrimax Products, Inc.,* 844 F.Supp. 443, 445.D. Ill. 1994); *Mullins v. M.G.D. Graphics Systems Group*, 867 F.Supp 1578, 1579 (ND Ga. 1994). The allegations of the non-moving parties must be viewed in the light most favorable to those parties. *Revis*, *supra*, 765 F.Supp. at 1213; *Schroll v. Plunket*, 760 F.Supp. 1385, 1387 (D. Or. 1991), *aff'd* 932 F.2d 973; *see*, e.g., *Gould, Inc. v. United States*, 67 F.3d 925, 929 (Fed. Cir.1995). However, in applying these standards, the Court must be mindful that in the case of a Rule 12(b)(1) motion, it has an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority, which includes a determination as to whether there is a defect in the plaintiff's standing. *See Abu Ali v. Gonzalez*, 387 F. Supp. 2d 16, 17 (D.D.C 2005). Even in the case of a Rule 12(b)(6) motion, the Court is not so bound by the obligation to treat allegations in the Complaint as true and to draw favorable inferences from the allegations where it is clear that such inferences cannot be reasonably drawn from the facts as alleged or where the facts are actually allegation of legal conclusions. *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

11

While summary disposition of a case is not always a favored option, there are circumstances in which courts are encouraged to use them. Some cases, particularly ones in which First Amendment guarantees may be compromised by lengthy and costly judicial proceedings, are particularly apt for summary review provided that legal questions are in the forefront. *See*, *e.g.*, *Washington Post Co. v. Keogh*, 365 F.2d 965, 968 (D.C. Cir. 1966), *cert. denied*, 385 U.S. 1011 (1967).[7] Certainly such is the case here. The publishers of the defendant magazines, which are not huge and wealthy business enterprises, have as their policy the avoidance of unlawful publishing activities and publish magazines that discuss, among other things, the very legal and political issues that are at the heart of First Amendment principles. They have been targeted in this action by a plaintiff with far more significant resources who clearly does not want countervailing views to be expressed and who hopes to overwhelm the publishers' resources. Prolonged litigation in such a case may stifle First Amendment expression even if the publishers, in the end prevail.

B.    PLAINTIFF CANNOT UTILIZE THE DISTRICT OF COLUMBIA'S CONSUMER PROTECTION ACT AS MEANS TO ENFORCE FEDERAL OR DISTRICT CRIMINAL STATUTES WHICH GIVE IT NO PRIVATE RIGHT OF ACTION.

Wisely, neither complaint filed by plaintiff HSUS expressly alleges that it is entitled to relief under AWA as it originally existed or as amended, or under the District of Columbia's own animal cruelty statute (D.C. Code Ann. § 22-1015(a)(1)). Clearly, it has no

12

---

[7]"In the First Amendment area, summary procedures are . . . essential. For the stake here, if harassment succeeds, is free debate. . . . The threat of being put to the defense of a suit . . . may be as chilling to the exercise of First Amendment freedoms as fear of the outcome of the lawsuit itself". *Id.*

ability to directly enforce such statutes. Congress may, and often does, confer authority on individuals or other entities to bring civil actions to enforce federal laws. *See*, *e.g.*, the citizens suit provisions of the Federal Water Pollution Control Act (also known as the Clean Water Act ("CWA"), 33 U.S.C. § 1365. However, absent express provisions such as that in 33 U.S.C. § 1365, or other clear indications that Congress, or – in the case of a state enactment – the state legislature, intended that a law be open to private enforcement, no such mechanism is available. This is always true, but it is particularly true of criminal statutes. *APCC Services, Inc. v. Sprint Communications Co.*, 418 F.3d 1238, 1245 (D.C. Cir. 2005) (citing *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001)). To determine whether the Act creates a private right of action, courts "interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Id*. *See* also the extensive discussion in Defendant Amazon's Memorandum of Points and Authorities in Support of Motion to Dismiss regarding the lack of a private right of action under the AWA and the District of Columbia Animal Cruelty statute, with which discussion Defendant Dowd concurs and incorporates herein by reference.

As noted, however, HSUS is sufficiently clever in its pleading not to suggest that the Federal and District statutes themselves confer a right of action on the HSUS or even, if a right of action, a personal remedy.[8] Instead, HSUS alleges that the District's consumer

13

---

[8]Even the most explicit federal provisions allowing private enforcement of statutes, such as the citizen suit provisions of the CWA cited above, or those of other environmental statutes, do not provide for a damages remedy for the plaintiffs. Instead, they merely prescribe a role in requiring the violator to comply with the law and to pay fines and penalties to the government in circumstances where the statute authorizes the agency and court to levy such fine and penalties.

protection statute provides an indirect means for HSUS to do indirectly what it cannot do directly. The federal government's right to determine which of its statutes can be enforced by private parties cannot be avoided by clever pleading. Leaving aside for the moment the question of whether the District (or a State, for that matter) *can* use its legislative power to confer a right on itself or a third party a right to enforce a *federal* statute (and this is, in itself, no small question), the question to be answered at the moment is whether it *intended* to do so. It did not.

The District of Columbia statutory provisions on which plaintiffs rely provide as follows.

D.C. Code § 28-3904, subsections (a), (e), (f), (x) provide:

It shall be a violation of this chapter, whether or not any consumer is in fact misled, deceived or damaged thereby, for any person to:

> 1. (a) represent that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have;

. . . .

> (e) misrepresent as to a material fact which has a tendency to mislead;

. . . .

> (f) fail to state a material fact if such failure tends to mislead;

. . . .

> (x) sell consumer goods in a condition or manner not consistent with that warranted by operation of sections 28:2-312 through 318 of the District of Columbia Official Code, or by operation or requirement of federal law;

D.C. Code §§ 28:2-312 to 318, referenced in subsection (x) of D.C. Code § 28-3904 pertain to the creation and disclaimer of implied and express warranties and the rules for dealing with

14

inconsistent or conflicting warranties.    Subsections 2-312 to 2-318 address respectively warranties of title (subsection 312); warranties created by descriptions forming the basis of the bargain or by express affirmations of fact or promise (subsection 313); warranties of merchantability (subsection 314); warranties of suitability for a particular purpose (subsection 315); exclusions of warranties (subsection 316); determining what happens when warranties conflict (subsection 317); and determining when warranties extend to third party beneficiaries (subsection 318).    The specific and unambiguous language of D.C. §§ 28-2-312 to 2-318 expressly regulates the relationship between sellers and buyers.    The remainder of D.C. Code § 28-3904 refers to warranties between buyer and seller that arise from operations or requirements of federal law.

Plaintiff essentially alleges, relying on D.C. Code § 28- 3905,[9] that advertisements and other content contained in the magazines at issue in this case are violative of these provisions of the D.C. Code and that Amazon.com, Inc. and publisher defendants are "persons" making representations or misrepresentations, or omitting facts within the meaning of the D.C. statutes at issue.  More succinctly, HSUS is claiming that Amazon.com, Dowd Publishers, and Marburger Publishing Co. are, by accepting for publication advertisements, engaged in trade practices prohibited by the statute as though they, themselves, were selling the goods or services to consumers.  This interpretation of the statute cannot be sustained.  Reading each of the above

15

---

[9]§ 28-3905, in relevant part provides: "A person, whether acting for the interests of itself, its members, or the general public, may bring an action under this chapter in the Superior Court of the District of Columbia seeking relief from the use by any person of a trade practice in violation of a law of the District of Columbia . . .".  D.C. Code § 28-3905(k)(1).

statutory provisions relied on by plaintiff in context it is abundantly clear that the legislature intended to create a mechanism to protect consumers from questionable practices by the providers and/or sellers of goods and services and to permit aggrieved persons to bring suit against such sellers and providers.  It did *not* intend to require that magazines, newspapers, television, and radio provide a first-line investigatory service to police the trade practices of persons advertising in their media.  Indeed, such a scheme would be unworkable.  No media outlet of any kind (and the magazines certainly qualify as media on their face) has the resources to investigate every claim in every advertisement offered for publication.  It is not difficult to imagine what such a rule would mean to newspapers like *The Washington Post*, *The New York Times*, or magazines on the market, among other publications, to be required to vet every advertisement and want-ad they publish, to determine if its factual representations are true or misleading or complete, or to make legal judgments about advertisement content.  The legislature could not have contemplated that media publications would act as guarantors of the accuracy and honesty of the advertisements in their pages.

Stated differently, the "zone of interest"[10] addressed by the statute is the relationship between buyers and sellers.  The consumer protection statute, by its terms, exists to protect

---

[10]The term "zone of interest" is found most often in cases dealing with standing.  That is, even when a statute authorizes private causes of action, a person lacks standing to bring such a suit unless he or she is within the "zone of interest" intended to be protected by the statute.  *See*, *e.g.*, *generally, Sierra Club v. Morton*, 405 U.S. 727 (1972).

buyers from scurrilous, fraudulent, and deceptive practices by sellers, the source of the advertisement and the party making the representations.[11]

If, then, as Defendant Dowd asserts, the District of Columbia's consumer protection statute does not cover publications which are not parties to the buyer-seller transaction, then the District statute cannot serve as a base for bringing suit against Amazon, Dowd, or Marburger. This conclusion is reinforced by federal jurisprudence which has held that the exclusive private remedy for violations of the AWA lies in the agency tasked with its enforcement, the Department of Agriculture.[12]  The Court of Appeals for the Fourth Circuit expressly held, in *International Primate Protection League v. Institute for Behavioral Research* (799 F.2d 934 (4th Cir. 1986), *cert. denied*, 481 U.S. 1004 (1987)) that Congress "intended the administrative remedy to be the exclusive remedy."  *Id*. at 940.  *See also*, Amazon's Memorandum of Points and Authorities in Support of Motion to Dismiss at pp. 12, *et seq*.  It is also impossible to see, therefore, that the District of Columbia has the authority to override Congress's determination to restrict

17

---

[11]The publisher, absent some other kind of relationship with the seller such as being a co-seller of the product (which is not, nor could not be honestly alleged in this case), is not the source of the advertisement and the representations therein.  It is not engaged in the transaction between buyer and seller and makes no representation to the reader as to the truth or falsity of the content of any advertisement.  In fact, all the publisher does is to sell space to the advertiser in which the advertiser's copy is printed.  If one is to take plaintiff's assertion to its logical conclusion, any person who told a friend or acquaintance about an advertisement he saw on television or in print media might be held liable for having "published" the advertisement when telling the friend or acquaintance about it.

[12]The plaintiff *might* be able to argue that it had a Federal APA remedy against the *agency* if it had standing under the APA to challenge an adverse agency determination and plaintiff could satisfy the requisite elements of standing in the individual case.  As is discussed below, however, the APA would allow challenge only against the agency and not the defendants herein.  Even then, its remedies would be highly restricted.

enforcement of the AWA to the Department of Agriculture, as *Primate Protection League* shows.

That the District did not intend to bring statutes such as the AWA, either in its original or amended form, within its consumer protection statute is evident from the fact that the District statute specifically incorporated a reference to federal law only with respect to those federal requirements pertaining to *warranty* availability and enforcement in § 28-3904(x).  It made no other reference to federal law.  Indeed, § 28-3905(k)(1) specifically limits the ability to bring suit under its provisions to actions alleging "trade practice[s] in violation of a law *of the District of Columbia*."  Emphasis added.  The only apparent attempt to incorporate federal law in the District Statute is to incorporate federal law *pertaining to warranty* as shown.  It would require a long and crooked path to find a connection to the AWA.

Further, the magazines deal with matters which may or may not be illegal in the District of Columbia, but which are, by HSUS's own admission, legal in other jurisdictions and also with matters which are legal everywhere in the United States What plaintiff suggests is that persons everywhere should be deprived of information as to activities which are legal elsewhere because they live in the District.  This is analogous to suggesting that organized gaming cannot publish magazines anywhere that may make it into the District because it may entice people in the District to go to places outside the District to engage in behavior of which the District

18

disapproves.[13]

The inclusion in the Amended Complaint of the amendments to the AWA do not change this result. Despite the fact that this lawsuit was extant at the time the AWA was amended, Congress made no attempt to engraft a private enforcement mechanism into the amended AWA. Plaintiffs still do not have standing or a private right of action to enforce the AWA, even by working through the District of Columbia's consumer protection laws.

> ### C. ASSUMING ARGUENDO THAT THE DISTRICT OF COLUMBIA CONSUMER PROTECTION ACT PROVIDES A PRIVATE RIGHT OF ACTION BASED ON THE AWA AS AMENDED, PLAINTIFF LACKS STANDING

Even if one assumes *arguendo* that the District did intend to create a private right of action in its consumer protection law which provides a path to the AWA *and* that it has the constitutional authority to override Congress's determination to limit enforcement of the AWA, the plaintiff lacks standing to bring such a suit.

Authorization of a private right of action does not automatically confer standing on any person or party having an "interest" in the area for which a private right of action was created. They must still meet the requirements of standing and be within the zone of interest under the

19

---

[13]Similarly, what HSUS is proposing is that national magazines cannot publish advertising of products or services which can be sold and purchased only in a local market (i.e., within a particular state) because the same product or service cannot lawfully be sold or purchased in some other market. For example, the principle espoused by HSUS would mean that magazines of national circulation devoted to firearms could not carry advertisements for handguns if even one state banned handguns altogether since, in their view, it might suggest to a person in that state that he or she *can* possess a handgun. Under this approach, the concept that one is presumed to know the law is meaningless.

meaning of the statute at issue.  *Morton*, *supra*,  405 U.S. at 740-41 and *passim*.  Even under the broad language of the District's Consumer Protection Act,[14] HSUS would have to show standing.  *Williams v. Purdue Pharm. Co.*, 297 F. Supp. 2d 171, 177-78 (D.D.C 2003) (dismissing CPPA action for lack of standing).  This it cannot do, despite its attempt to do so through extensive speculation and supposition.     As defendant Amazon noted,

> The injuries HSUS alleges with respect to itself and its members are all harms related to animal fighting itself - not consumer deception.  "The CPPA was adopted by the D.C. Council to protect local consumers from improper and fraudulent trade practices."  *Williams*, 297 F. Supp. 2d at 174.  The statute's "zone of interest" is clearly consumer protection from fraudulent business practices, and not harm to animals or those who care about animals, negating prudential standing with respect to those interests.

Memorandum of Points and Authorities in Support of Motion to Dismiss of Amazon.com at pp. 18.  Even more importantly, as already noted, the mission of HSUS is the protection of animal rights and welfare, not consumer rights.  This fact reveals as a sham any claim that HSUS is looking out for the rights of consumers, whether for its members, itself as a consumer, or the public in general.  Standing cannot be based on such a foundation of sand.  As noted in *Morton*, *supra*, and in other cases (*e.g., Public Citizen v. Lockheed Aircraft Corp.*, 565 F.2d 708 (D.C.Cir. 1977); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559, 560-61 (1992)) plaintiff has to establish that the challenged acts have harmed it personally and that it would benefit from a remedy provided by the Court.  It can do *none* of these things and the allegations of the Complaint do not do so.

20

---

[14]"A person, whether acting for the interests of itself, its members, or the general public, may bring an action under this chapter . . ."  D.C. Code § 28-3905.

For example, HSUS is not itself a consumer of the products advertised in the magazines and in fact, by its own admission, loathes them.  It can claim, therefore, neither *actual* harm to itself or its members, nor a potential harm since neither it, nor its members, could be tempted to purchase or obtain a product advertised in the magazines.  Similarly, even were the side-effects of the primary activity HSUS and its members loathe as alleged, they have not alleged that it or its members are being involuntarily subjected to such activities associated with animal fighting. Even if HSUS or its members were so subjected, they cannot realistically allege that any remedy sought in this action would affect the existence or prevalence of animal fighting activities and those activities it alleges accompany animal fighting ventures.  Indeed, suggesting that eliminating the magazines involved in this case would diminish the existence of such activities is beyond speculative, it is irrational.  HSUS is not injured within the meaning of the Consumer Protection Act, any injury that does exist is not traceable to defendants, and no remedy the Court could provide would change the conduct said to injure by HSUS one iota.  *United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 554, 556-58 (1996).  The alleged injuries, so attenuated from any conduct alleged to have occurred by defendants, and so speculative as to causation, likelihood, or degree, can support neither prudential standing nor Article III standing.  *Lujan*, *supra*, 504 U.S. at 560-61; *see* also, Memorandum of Points and Authorities in Support of (original) Motion to Dismiss of Amazon.com, Inc., pp. 19-24, incorporated herein by reference.

21

**D.    PLAINTIFF'S VIEW OF THE STATUTE AND THE REMEDIES REQUESTED, IF SUSTAINED, WOULD VIOLATE THE FIRST AMENDMENT RIGHTS OF DEFENDANTS.**

There can be little question that the magazines[15] are engaged in protected speech within the meaning of the First Amendment to the United States Constitution.  As already noted, the magazines publish not only advertisements, but also substantive articles and editorial content on legal, political, and public policy matters related to the game fowl industry which do not have as their purpose commercial transactions.  Instead, they call for changes in state and federal laws pertaining to gamefowl activities, inform persons regarding legal issues, and disseminate information on animal and human health and safety issues, among other things.  Even plaintiff does not attempt, at least so far, to suggest that the publication of such magazines is not speech within the meaning of the First Amendment.  Plaintiff may suggest that it is speech unworthy of protection, but cannot argue that it is not speech.  Indeed, the only reasonable inference to be drawn from the allegations regarding the HSUS member's subscription to the magazines at issue is that that member's subscription(s) were entered into as a device to invoke the court's jurisdiction under the District's Consumer Protection Act.  Certainly, the member(s) did not do so for the purposes of entering into commercial transactions with advertisers.

Aside from the issue of whether Amazon can be held liable as a distributor rather than a publisher, the question is substantial under the First Amendment as to whether the magazines can

22

---

[15]Defendant Dowd will not discuss herein the nature of the videos alleged to have been sold and their connection to the First Amendment as Dowd is not involved with videos. Moreover, Dowd agrees with Amazon that the video question is moot in that Amazon ensured that they were removed and would do so again if and when Amazon became aware they were placed on its site..  Dowd also agrees that Amazon is statutorily protected against liability under 47 U.S.C. § 230 for the reasons it provides.

be held liable for the contents of advertisements within their pages or see what is clearly non-commercial speech barred simply because the magazine also contains advertisements.

There is a strong presumption against the validity of prior restraints on speech (*Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976); *New York Times Co., v. United States*, 403 U.S. 713, 714 (1973). Whatever may be true of *commercial* speech, it is clear that what HSUS seeks from this Court is *not* simply to prohibit the publication of specifically identified advertisements which, depending on content, may involve commercial speech. This would include an advertisement by a political candidate or a public policy advocacy organization regarding game fowl legality. HSUS is instead asking this Court to ban the publication of the magazines, regardless of their content in any given issue, simply because the HSUS finds the whole concept of the content and the subject matter of the magazines abhorrent. Indeed, HSUS wants not only to eliminate future issues, it wishes to gather together and destroy all past copies of the magazines as well. In other words, plaintiff wants a total ban on pure speech that is editorial, noncommercial speech, because it views the subject as despicable. Such a prior publication ban has never been upheld, even in times of war when secret governmental information regarding the war was being published contemporaneously. *See, e.g., New York Times Co., supra*, at 730. Nothing plaintiff is concerned about even begins to approach the level of war time secrets such as troop distributions as to which prior restraints were not permitted. *Id*.

Further, even were the suit designed only to block the publication and distribution of advertisements, leaving the editorial and non-commercial content untouched, it could not succeed. So-called "purely commercial speech" is also entitled to First Amendment protection,

23

even if (for the sake of argument) to a somewhat lesser degree. The consuming public has a protected First Amendment interest in the free flow of truthful information concerning lawful activity. *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 773 (1976). The government may regulate such speech with regard to time, place and manner provided the restrictions are justified without reference to the content of the speech, serve a significant governmental interest, and leave open other channels of communication. Thus, even were the HSUS prayer for relief limited to the advertisements in these magazines, it would be very problematic. All of the matters to which HSUS objects are lawful in some, and some in all States and Territories of the United States, as discussed *supra*. HSUS' objections are specifically based on the content of the advertisements and they can point to no significant governmental interest (their generalized allegations about the side effects of *some* gamefowl related activities are so speculative, as discussed, that they cannot justify standing much less the total ban they argue for). HSUS would leave *no* other meaningful opportunities for or channels of communication for this content.

The amendments made to the AWA by the AFPEA do not change this result. The AWA as amended specifically addresses only commercial speech and that speech limitation applies only to promotions of specific animal fights which violate state law. *See* discussion *supra*, Section I(B). As already noted, Congress made the interstate sale, purchase, transport or delivery of sharp instruments illegal but *not* all sales, purchases, transports or deliveries of sharp implements illegal. Indeed, it specifically protected state laws with respect to such items against an override by the AWA amendments absent an irreconcilable conflict between them. Plaintiff

24

would override the intent of Congress by having this Court ban the entire content of the magazines at issue rather than any actual (not anticipated) commercial content which might be violative of the limited prohibitions of the AWA as amended.

### E.    THE CURRENT CASE IS NOT RIPE FOR LITIGATION.

The doctrine of "ripeness" is based on the notion that Courts should not issue premature judgments based on abstract disagreements in the context of administrative determinations. *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148 (1967).[16] Ripeness typically arises when pre-enforcement review of a statute is sought, at which point two considerations are examined, and both must be present in order for an issue to be ripe. *Id*. at 149. First, the plaintiff must show that a hardship is likely to be suffered in the absence of a judgment. *Id*. This hardship could be caused by the law as it will eventually be applied, by collateral injuries, or because compliance with the law causes the hardship and the only other choice is to break the law with the resulting consequences of being prosecuted. The second consideration is whether the issues are fit for a judicial decision. In this case, neither prerequisite for ripeness is found.

As previously discussed, plaintiff initiated an administrative process in April 2006, when it filed a petition with the Postal Service asking it to declare the magazines at issue to be nonmailable and to revoke the mailing permits for both Marburger and Dowd, the same relief it is requesting here. Although plaintiff is asking for other remedies provided for by the District's Consumer Protection Act, the heart of plaintiff's requested remedy, suppression of the

25

---

[16]Akin to this doctrine is the doctrine of exhaustion of administrative remedies which requires that before resorting to litigation, a disputed administrative determination must be resolved in the agency's process. *McCarty v. Madigan*, 503 U.S. 140, 144 (1992).

magazines, is the same in the agency proceeding as in this action.

The Postal Service has now ruled on HSUS's petition and denied it. For reasons already discussed, neither the AWA prior to the amendments worked by the AFPEA or the AWA as amended prohibit the advertising of bird fights that are lawful in the states in which they are held. Similarly, the AWA, both before and after it was amended, makes no effort to ban the advertising of sharp implements, but only prohibit their sale, purchase, transportation, or delivery in interstate commerce. Hence, purely intrastate sale and purchase are permissible within the ambit of the AWA as amended. Nevertheless, if HSUS thinks that the Postal Service improperly denied its petition, its remedy lies in a challenge to the Postal Service's determination in a properly filed Administrate Procedures Act challenge in which the defendants must be the agency and appropriate agency officials.[17] Even then, as already noted in Dowd's discussion on standing, *supra*, HSUS does not have standing to bring an APA challenge without showing harm to it from the adverse decision. This, it cannot do. All of the allegations of harm that HSUS sets out in its complaint are speculative at best. Even HSUS admits that the challenge to the Petition decision should be decided first. Dowd suggests respectfully that the challenge to the Petition is the only action it potentially has and this case should be dismissed.[18] This would certainly

26

---

[17]Dowd makes no representation at this point as to whether it will seek to intervene in the challenge HSUS has made to the Postal Service's decision to deny HSUS's petition; however, Dowd notes that it is unaware of any way in which an individual or organization can compel law enforcement activity by an agency tasked with the discretion to enforce. Even in citizen suit provisions such as the Clean Water Act provisions discussed above, the private litigant has no ability to compel the agency to enforce. The citizen suit provisions simply allow the private party to enforce if the government refuses to do so.

[18]In raising this point, Defendant Dowd is not waiving any legitimate argument it might make as an intervenor or other participation in, such an APA challenge.

conserve judicial resources.  At the time of the preparation of this Motion, Dowd is unaware of whether the Postal Service considered the new provisions of the AWA as amended.  If not, it should be remanded to the Postal Service for consideration before *either* lawsuit goes forward.  If so, the new allegations in the amended complaint in this case do not change the above argument.

>     **F.    PLAINTIFF'S CONSPIRACY CLAIM FAILS AS IT HAS NO PRIVATE CAUSE OF ACTION OR STANDING TO CHALLENGE AN ALLEGED CONSPIRACY TO VIOLATE A LAW IT HAS NEITHER STANDING NOR A PRIVATE CAUSE OF ACTION TO ENFORCE**

As demonstrated herein and in Defendant Amazon's Memorandum of Points and Authorities in Support of its Motion to Dismiss, plaintiff HSUS has neither a legislatively created private right of action to enforce either the District's criminal or consumer protection statutes nor the Federal Animal Welfare Act.  If it cannot enforce these statutes, it cannot bring an action alleging a conspiracy to violate these statutes.  HSUS has shown no authority for the proposition that it can do so.  Defendant Dowd joins completely in defendant Amazon's arguments with respect to the conspiracy claims (*see* Amazon's Memorandum of Points and Authorities in Support of Motion to Dismiss at 52-53) and sees no reason to expand still further thereon.

## III.    CONCLUSION

For the reasons stated herein, and in the Motions and Memoranda of Points and Authorities in Support thereof filed by defendant Dowd's codefendants, Defendant Dowd respectfully requests that this Court dismiss with prejudice all claims brought, or which could have been brought, by plaintiff HSUS in the above-entitled action.

27

Respectfully submitted this 18th day of July, 2007

_____/s/_____

ROBIN W. GROVER
DC Bar No. 366865
Law Office of Robin W. Grover
1747 Pennsylvania Avenue, N.W.
Suite 1000
Washington, D.C.  20006
Tel. No.: (202) 302-1653
Fax No.:  (703) 684-2973
Email: RGrover716@aol.com

Attorney for Defendant
Dowd Publishers

28