UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

THE HUMANE SOCIETY OF THE       :
UNITED STATES                   :
                                :
            Plaintiff           :
                                :
      vs.                       :       Civil No. 07-0623 (CKK)
                                :
AMAZON.COM., INC., *ET AL.*,    :       **ORAL HEARING REQUESTED**
                                :
            Defendants          :

### REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT MARBURGER'S MOTION TO DISMISS

Barry A. Fisher #D00208
Fleishman & Fisher
1875 Century Park East suite 2130
Los Angeles, California 90067
310-557-1077
310-612-8003 – fax
bfisher557@aol.com

Ali A. Beydoun #475413
Carr Maloney, P.C.
1615 L Street, N.W.
Suite 500
Washington, D.C.  20036
202-310-5500
202-310-5555 - fax
aab@carrmaloney.com

Attorneys for Defendant
Marburger Publishing Co., Inc.

# **TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS.................................................................. i

TABLE OF AUTHORITIES.............................................................. iii

PRELIMINARY STATEMENT........................................................1

I.    MARBURGER IS NOT SUBJECT TO PERSONAL JURISDICTION
    IN THE DISTRICT........................................................... 4

II.   MARBURGER CANNOT BE BROUGHT INTO THIS LITIGATION
    UNDER A "CONSPIRACY" THEORY.................................... 8

    A.    The Amended Complaint fails to allege facts sufficient to satisfy
        personal jurisdiction under the doctrine of conspiracy jurisdiction............. 9

    B.    Marburger was not involved in a civil conspiracy with Magazine
        Express or Amazon to distribute *Gamecock* to District........................... 10
        residents

    C.    Marburger is not a part of any conspiracy and the acts of other
        Defendants do not bear upon the issue of personal jurisdiction...................12

    D.    Plaintiff's alternative request for discovery should be denied
        because all relevant facts regarding Marburger's contacts with
        the District have been presented..............................................13

III.  HSUS CANNOT STATE A CLAIM UNDER THE D.C. CONSUMER
    PROTECTION PROCEDURES ACT AND CANNOT ESTABLISH
    STANDING.....................................................................15

IV.  THE FIRST AMENDMENT BARS PLAINTIFF'S CLAIMS AGAINST
    MARBURGER..................................................................16

    A.    HSUS' claims fail because Marburger has no duty to censor
        its advertisers, certainly without knowledge that the
        advertisements are illegal......................................................16

    B.    The *Gamecock* has never been declared an illegal publication.................17

    C.    *Gamecock* is not "commercial speech" and the ads it carries do
        Not make it a catalogue of illegal animal fighting paraphernalia...............18

i

D.    Plaintiff seeks an unconstitutional prior restraint on speech.................20

E.    The ads *Gamecock* carries do not classify Marburger as a
      retailer of illegal animal fighting paraphernalia...............................20

V.    PLAINTIFF'S CONSPIRACY CLAIMS FAIL AS A MATTER OF LAW........21

# TABLE OF AUTHORITIES

**Cases**                                                                                      **Page**

*Asahi Metal Indus. Co. v. Superior Court (Cheng Shin
    Rubber Indus. Co.)*, 480 U.S. 102, 107 S. Ct. 1026
    (1987)...........................................................................................12

*Berwyn Fuel, Inc. v. Hogan*, 399 A.2d 79, 80 (D.C. 1979)...............................4

*CBS, Inc. v. Democratic Nat'l Comm.*, 412 U.S. 94, 168 n. 18, 93 S. Ct. 2080,
    219 n.18 (1973).............................................................................16

*City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 420 n.16
    (1993)...........................................................................................19

*Cohane v. Arpeja-California, Inc.*, 385 A.2d 153, 159 (D.C.), *cert.
    Denied*, 439 U.S. 980, 99 S. Ct. 567, 58 L.Ed.2d 651 (1978)............................4

*Dooley v. United Techs Corp.*, 786 F.Supp. 65 (D.D.C. 1992)...........................8

*Edmond v. U.S. Postal Serv. Gen. Counsel*, 949 F.2d 415, 428
    (D.C. Cir. 1991)............................................................................8, 9

*Envt.l Research Int'l, Inc. v. Lockwood Greene Eng'rs, Inc*,
    355 A.2d 808, 812 (D.C.1976)............................................................3, 12

*Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 428 (5th Cir. 2005)...................7

*Gibbons & Co. Inc. v. Roskamp Inst.*, 2006 WL 2506646, *2 (D.D.C. 2006)...................3

*Hasenfus v. Corporate Air Servs.*, 700 F.Supp. 58 (D.D.C. 1988)...........................9,12

*Hustler Magazine v. Falwell*, 485 U.S. 46, 50, 108 S. Ct. 876, 879 (1988).....................16

*Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945)...........................6

*Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 501-02 (1952)...................................19

*Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan*, 115 F.3d 1020, 1031
    (D.C. Cir. 1997)..............................................................................8

*Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 779-80, 104 S. Ct. 1473, 1481 (1984).........6

*Kopff v. Battaglia*, 425 F.Supp.2d 76, 80-81 (D.D.C. 2006)...............................13, 15

*Kulko v. Superior Court (Horn)*, 436 U.S. 84, 93 (1978)..................................................3

*Lapointe v. Van Note*, 2004 WL 3609346, *8 (D.D.C. 2004).........................................12

*Manual Enters., Inc. v. Day*, 370 U.S. 478, 492-493, 82 S. Ct. 1432,
    1439-1440, 8 L. Ed. 2d 639 (1962)..............................................................................17

*Mgmt. Info. Techs, Inc. v. Alyeska Pipeline Serv. Co., Inc.,* 1993 WL
    219257, *6 (D.D.C. 1993)...........................................................................................9

*Novak-Canzeri v. Al Saud,* 864 F.Supp. 203, 206 (D.D.C. 1994).................................15

*Quazzani-Chahdi v. Greensboro News & Record, Inc.*, 2005 WL 2372178,
    *4 (S.D. Tex. 2005)......................................................................................................7

*Reiman v. First Union Real Estate Equity & Mortgage Invs.,*
    614 F. Supp. 255, 257 (D.D.C. 1985)..........................................................................3

*Richter v. Analex Corp.*, 940 F. Supp. 353 (D.D.C. 1996)..............................................3

*Rodriguez Salgado v. Les Nouvelles Esthetiques*, 218 F. Supp. 2d 203,
    212 (D.P.R.2002)..........................................................................................................7

*Rush v. Savchuk,* 444 U.S. 320, 331-32, 100 S. Ct. 571, 62 L. Ed. 2d 516
    (1980)..........................................................................................................................13

*Savage v. Bioport, Inc.*, 460 F.Supp.2d 55, 60 (D.D.C. 2006).........................................5

*Smith v. Cal,* 361 U.S. 147, 80 S. Ct. 215, 4 L. Ed. 2d 205 (1959)................................16

*United States v. Eichman*, 496 U.S. 310, 319 (1990)....................................................19

*United States v. Philip Morris, Inc.,* 116 F.Supp.2d 116, 122 (D.D.C. 2000)...........8, 15

*United States Olympic Comm. V. Am. Media, Inc.,* 156 F.Supp.2d 1200,
    1207-08 (D. Colo. 2001)............................................................................................19

*Weishapl v. Sowers*, 771 A.2d 1014, 1023 (2001).......................................................10

*World Wide Minerals, Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154,
    1168 (D.C. Cir. 2002)...................................................................................................8

*Youming Jin v. Ministry of State Sec.,* 335 F.Supp.2d 72, 79 (D.D.C. 2004).....................10

## PRELIMINARY STATEMENT

Plaintiff appears to have abandoned its claim of general jurisdiction over Marburger *per se*. It now asserts only that this Court has personal jurisdiction over Marburger based on *specific jurisdiction* and on a claimed *conspiracy* with other defendants. (Opp. at 11.) Neither of these theories has merit.

Plaintiff cannot come close to showing "specific jurisdiction" over Marburger. As Marburger has set out (Marburger Memo. at 21-23), none of the requirements of D.C. Code § 13-423 is met here. The only way in which Marburger was supposedly "transacting business" in the District at the time the action was filed was by a *single subscription taken out by one of Plaintiff's own members*. Indeed, even that subscription has since lapsed.[1] Such a solitary, unilateral action by Plaintiff's own member does not satisfy the statutory requirement, nor would it comport with due process for Marburger, a tiny, isolated, Arkansas corporation, to be dragged into litigation in a distant forum on such a flimsy basis.

The idea that the claim here—HSUS's laundry list of alleged harms to all the residents of the District (and apparently to all people everywhere)--"arises from" the "business transacted" in the District--the one subscription to Marburger's 72-year-old publication by the HSUS member--is simply absurd. As Amazon and Marburger have already pointed out, the causation chain alleged by Plaintiff is too tenuous even to state an Article III claim. It certainly cannot support the direct "arises from" causation required by the D.C. personal jurisdiction statute.

The "conspiracy" theory must also be rejected. The allegations of "Agreements"

---

[1] At the time of the filing of the Amended Complaint, *Gamecock* had one subscriber in the District. The subscription expired in June 2007 and was not renewed. There are currently no *Gamecock* subscribers in D.C.

between Marburger and the other Defendants are without substance. As stated in the declaration of Marburger's president, Marburger has no agreement at all with Amazon--or with Magazine Express for that matter. Marburger did not even know that *Gamecock* was listed on Amazon, and had never heard of Magazine Express, until it was so informed by service of the complaint in this action. That is hardly the stuff of which conspiracies are made.

Plaintiff makes inaccurate allegations of deliberate marketing efforts specifically aimed at the District and mischaracterizes Marburger's individual contacts with this forum. Thus, Plaintiff repeatedly conflates Marburger with the other Defendants and regards the group as nefarious actors in a single civil conspiracy, hoping personal jurisdiction will attach under that scenario. Plaintiff hopes that the single act of its member having sent $28 to Marburger for a one-year subscription to *Gamecock* magazine will override constitutional challenges regarding personal jurisdiction. In fact, the Amended Complaint's jurisdictional allegations are perched upon inaccurate conjecture. Such allegations are insufficient to carry Plaintiff's burden of establishing personal jurisdiction over Marburger.

At the time this action was filed, *The Gamecock* had exactly one subscriber in the District of Columbia. According to Marburger's records, Ms. Wisor's subscription began on July 31, 2006, and was due to expire in June 2007, (Griffiths Decl. ¶ 2), and so, currently, there are no subscribers in the District of Columbia. The fact that the subscription was ordered by a member of Plaintiff's organization and only lasted through the filing of the Complaint demonstrates the superficial nature of the basis of Plaintiff's jurisdictional claims over Marburger. Plaintiff cannot seriously argue that a claim of jurisdiction over a non-resident corporation can be entirely based on a single $28

subscription. Plaintiff's argument, if accepted, would open the Court's doors to any organization which could walk into any jurisdiction and for the less than the price of a tank of gas would purchase jurisdiction over a foreign corporation into this forum.

As Marburger has noted in its Motion to Dismiss, "unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction." *Kulko v. Superior Court (Horn)*, 436 U.S. 84, 93 (1978). Moreover, "a plaintiff cannot rely on its own activities, rather than those of a defendant, to establish the requisite minimal contacts for personal jurisdiction." *Envt.l Research Int'l, Inc. v. Lockwood Greene Eng'rs, Inc ,* 355 A.2d 808, 812 (D.C. 1976); *see also, e.g., Gibbons & Co. Inc. v. Roskamp Inst.*, 2006 WL 2506646, *2 (D.D.C. 2006); *Richter v. Analex Corp.*, 940 F. Supp. 353 (D.D.C. 1996); *Reiman v. First Union Real Estate Equity & Mortgage Invs.,* 614 F. Supp. 255, 257 (D.D.C. 1985).

Plaintiff's repeated grouping of Marburger with "associates of the animal fighting venture" is misleading, inaccurate and plainly unfair. Marburger is a magazine publisher, not a promoter of animal fighting ventures. The magazine at issue in this case, *Gamecock*, is published by Marburger in Arkansas. Simply because Marburger sells advertising space - just as the *Washington Post*, *People* magazine, and every other for profit newspaper and magazine do as part of their business - does not transform it into what HSUS calls a "catalogue." As the Postal Service has recognized, *Gamecock* is, rather, an ordinary periodical.

Moreover, the ads *Gamecock* carries do not make Marburger a retailer of illegal animal fighting paraphernalia. In an effort to cast *Gamecock* as an illegal catalogue for

animal fighting implements, Plaintiff chooses not to describe *Gamecock* as what it really is - a special interest publication about poultry, featuring editorials, news articles, and columns on chickens. Creating such a magazine is fully within Marburger's First Amendment rights.

Marburger, a non-resident corporation, is the only Defendant challenging Plaintiff's claims of personal jurisdiction. Marburger's challenge to the Plaintiff's assertion of personal jurisdiction must be considered on its own and not diluted or discounted amongst the numerous claims and various defenses presented. For purposes of personal jurisdiction, Marburger is several steps removed from the acts alleged to have taken place in the District and entirely disconnected from the harms--ranging from drug addiction to avian flu to violent crime in the District--alleged in the Amended Complaint. Any exercise of personal jurisdiction over Marburger based on the allegations in Plaintiff's First Amended Complaint (FAC) would offend traditional notions of fair play and due process.

## I.    MARBURGER IS NOT SUBJECT TO PERSONAL JURISDICTION IN THE DISTRICT

Plaintiff has not alleged facts to support a finding that Marburger has transacted business in the District of Columbia to satisfy the requirements of section 13-423(a)(1). Nor can Plaintiff possibly satisfy the requirements of section 423(b), which requires a showing by the Plaintiff that its claim for relief "arises from" the sale of the Magazine to the District subscriber. The District of Columbia courts have interpreted section 13-423(b) as a bar to claims unrelated to the acts forming the basis for personal jurisdiction. *See Berwyn Fuel, Inc. v. Hogan*, 399 A.2d 79, 80 (D.C.1979) (per curiam); *Cohane v. Arpeja-Cal., Inc.*, 385 A.2d 153, 159 (D.C.), *cert. denied*, 439 U.S. 980, 99 S. Ct. 567, 58 L. Ed. 2d 651 (1978).

Plaintiff continues to make the unsupported proposition that the delivery of

Marburger's magazine to a single D.C. resident promotes criminal ventures in the District such as bird fighting and the sale of illegal animal fighting paraphernalia. Plaintiff does not even remotely make the requisite showing of a causal relationship between its claim and the alleged jurisdictional act. Instead, the Court is asked to accept the unbelievable proposition that a single magazine subscription in the hands of a member of the Plaintiff's own organization, who happens also to be a District resident, is the starting point for the litany of harms intoned in the Amended Complaint. The papers filed by Plaintiff have failed to make any showing of causation which relates the acts forming the basis for personal jurisdiction with the Plaintiff's claims alleged in the Amended Complaint. Without this showing, specific jurisdiction over Marburger cannot be found. *See Savage v. Bioport, Inc.*, 460 F. Supp. 2d 55, 60 (D.D.C. 2006) (out-of-state defendant may be haled into a D.C. court if the "litigation results from alleged injuries that 'arise out of or relate to' those activities.") (internal citations omitted).

Plaintiff's attempts to answer Marburger's due process-based claims (which are also incorporated into the D.C. statute analysis) are based on a patchwork model of Plaintiff's own creation of supposed business relationships between Marburger, Magazine Express and Amazon. (*See* Opp. at 14-17.) Plaintiff's argument depends on false statements of fact. It asserts that "Marburger[ ] market[s] the Publication by way of the Amazon website" (Opp. at 15), that Marburger "elected to advertise, sell, and distribute the Publications on a website that proclaims itself 'Earth's biggest' retailer, . . ., Amazon.com" (Opp. at 15), that Marburger "aggressively market[s] its products through Amazon" (Opp. at 16), and the like. In making these claims, Plaintiff is oblivious to the fact that Marburger did not even know its magazine was on the Amazon site and had "no contract or other arrangement, written or oral, with

Amazon.  Marburger has never been in contact with Amazon, either in writing or orally, regarding any sales or subscriptions.  Marburger has had no input into, let alone any type of control over, the contents of anything on Amazon." (Griffiths Decl. ¶ 8.)  When this is combined with the fact that Marburger's only D.C subscription (now lapsed) when Plaintiff filed the action was solicited by one single *member of Plaintiff* (which Plaintiff tries to blow up into some kind of massive sales and mailing campaign into the District), the lack of any constitutional justification for personal jurisdiction becomes clear.    The circumstances by which Marburger publishes and distributes *The Gamecock* demonstrates beyond any dispute that its acts do not constitute the "transaction" of business in a way that satisfies traditional notions of fair play and substantial justice for a D.C. court to assume jurisdiction over it. *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945).  Unable to establish the jurisdictional requirements to bring this action against Marburger in this Court, Plaintiff's arguments regarding personal jurisdiction over Marburger fail.

In its motion, Marburger cited a series of cases, including a U.S. Supreme Court case, that discuss personal jurisdiction over magazines depending on their circulation in the forum state.  (Marburger Mem. at 16-17.)  Mentioning only one of these, HSUS asserts that it is "does not establish a hard and fast rule," and is in any event "irrelevant here because the Court has *specific* jurisdiction over Marburger." (Opp. at 14 n.5 (emphasis in the original).)

There may be no "hard and fast rule" in this area, but the total here--one single, now lapsed, subscription--is below any possible minimum.  Moreover, the cases cited by Marburger are indeed *specific jurisdiction* cases, contrary to Plaintiff's implication. *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 779-80, 104 S. Ct. 1473,

1481 (1984)("respondent's activities in the forum may not be so substantial as to support jurisdiction over a cause of action unrelated to those activities," but are "sufficient to support jurisdiction *when the cause of action arises out of the very activity* being conducted, in part, in New Hampshire.")(footnote omitted)(emphasis added); *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 428 (5th Cir. 2005)("Plaintiff has therefore failed to show facts giving rise to this Court's exercise of *specific jurisdiction* over Defendant.")(emphasis added); *Quazzani-Chahdi v. Greensboro News & Record, Inc.*, 2005 WL 2372178, *4 (S.D. Tex. 2005)(" Plaintiff has therefore failed to show facts giving rise to this Court's exercise of *specific jurisdiction* over Defendant.")(emphasis added); *Rodriguez Salgado v. Les Nouvelles Esthetiques*, 218 F. Supp. 2d 203, 212 (D.P.R.2002) ("Having established that the second part of the test for *specific jurisdiction* is not met, we need not go into the third part of the test") (emphasis added).

Here, the contacts of Marburger with the District fall well below both the constitutional and statutory standards for the exercise of person jurisdiction. Plaintiff's reference to "several, and perhaps dozens of, shipments of the publication into the District" (Opp. at 14), blows the facts way out of proportion. Ms. Wisor's 1-year subscription consists of a "dozen" issues, but it is only one subscription and it remains one solicited by Plaintiff's own member. Nor, for example, did Marburger "market[ ] . . . the Publication by way of the Amazon website." (Opp. at 15.) As noted, Marburger was totally unaware its magazine was on the website. It took no volitional action in that regard. Nor did Marburger "repeatedly [seek] out" "transactions in the forum." (Opp. at 16.) The record shows virtually no contact with the District.

## II.     MARBURGER CANNOT BE BROUGHT INTO THIS LITIGATION UNDER A "CONSPIRACY" THEORY.

Marburger does not act jointly with the other Defendants so as to support the exercise of this Court's personal jurisdiction under "conspiracy jurisdiction." (*See* Opp. at 17.) The conclusory allegations in the Amended Complaint fail to plead conspiracy with the requisite particularity. Furthermore, there is no allegation or proof that Marburger ever contracted with Magazine Express, much less, contracted with it for the reason of distributing its magazine on Amazon to District residents. Plaintiff's claims do not meet the high standard this Circuit applies in reviewing a claim of conspiracy jurisdiction.

A plaintiff resting on the conspiracy theory of jurisdiction "must plead with particularity the conspiracy as well as the overt acts within the forum taken in furtherance of the conspiracy." *Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan*, 115 F.3d 1020, 1031 (D.C. Cir.1997) (internal quotation omitted). *See also United States v. Philip Morris Inc.*, 116 F. Supp. 2d 116, 122 (D.D.C. 2000). This Court has applied the test for conspiracy personal jurisdiction "warily" in order "to prevent a broad extension of long-arm jurisdiction . . . ." *Dooley v. United Techs. Corp.*, 786 F. Supp. 65 (D.D.C. 1992). To prevent the doctrine of conspiracy jurisdiction from permitting an end run around the due process requirement of jurisdiction, courts require parties to "plead with particularity the conspiracy as well as the overt acts within the forum taken in furtherance of the conspiracy." *Id.* (citing cases); *see also World Wide Minerals, Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154, 1168 (D.C. Cir. 2002). "We cannot allow plaintiffs to subvert the important constitutional principles of sovereignty and due process that underlie personal jurisdiction with mere 'unspecified and unsubstantiated claims....' "

*Edmond v. U.S. Postal Serv. Gen. Counsel,* 949 F.2d 415, 428 (D.C. Cir. 1991)

(Silberman, J., concurring in part and dissenting in part); *see also Hasenfus v. Corporate Air Servs.,* 700 F. Supp. 58 (D.D.C. 1988). Thus, to establish personal jurisdiction over Marburger, it is required for Plaintiff to plead (1) the existence of a conspiracy of which Marburger was a member, and (2) overt acts carried out within D.C. in furtherance of the conspiracy. Plaintiff has not alleged or established such facts. *Mgmt. Info. Techs., Inc. v. Alyeska Pipeline Serv. Co., Inc.,* 1993 WL 219257, *6 (D.D.C.1993). As a result, Plaintiff cannot properly justify its claims of personal jurisdiction over Marburger, a non-resident Defendant with insufficient contacts with the District.

### A.    *Plaintiff has not carried its burden of showing personal jurisdiction under a "conspiracy" theory.*

The Amended Complaint paints with a very broad brush a distribution network which lumps the Defendants together and discusses their conduct as if it were performed in collaboration with each other. (*See* FAC ¶¶ 83-90.) In fact, the Defendants are separate entities, working independently of each other, and in Marburger's case, without knowledge of the transactions being made by the other parties. Indeed, Marburger's only conceivable relationship to this case is through an entity not involved in the litigation.[2] Prior to this litigation, Marburger was unaware that its magazine was even listed on Amazon. (Griffiths Decl. ¶ 8.) Under this framework, no conspiracy can be found and any personal jurisdiction claim based on this loosely connected chain of transactions must fail.

---

[2] Marburger has had an informal relationship with EBSCO Industries, a magazine subscription service. (Griffiths Decl. ¶ 6.); *see also* Declaration of Susan E. Delany.

**B.**    ***Marburger was not involved in a civil conspiracy with Magazine Express or Amazon to distribute Gamecock to District residents.***

In the District of Columbia, the four elements of civil conspiracy are: (1) an agreement between two or more persons; (2) to participate in an unlawful act, or in a lawful act in an unlawful manner; and (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement (4) pursuant to, and in furtherance of, the common scheme. *Youming Jin v. Ministry of State Sec.*, 335 F. Supp. 2d 72, 79 (D.D.C. 2004) (citing *Weishapl v. Sowers,* 771 A.2d 1014, 1023 (D.C. 2001)).

The Amended Complaint seeks to build its "conspiracy" case on misstatements of fact. Plaintiff creates a fictional series of marketing agreements between Marburger and Magazine Express and Amazon. In fact, the subscription service with which Marburger deals is EBSCO. (Griffiths Decl. ¶ 6.)[3] As has been stated previously, Marburger did not enter into any agreements with Defendant Magazine Express, nor did it have any reason to believe that Defendant Magazine Express--or anyone else--was working with Amazon in an effort to distribute its magazine. (FAC ¶ 87).

With Marburger's informal arrangement with EBSCO, and the absence of any agreement with Magazine Express, Plaintiff's "conspiracy" claims can be easily spotted

_____

[3] By way of background, a company called EBSCO Industries is, according to its website, a privately held, widely diversified corporation with headquarters in Birmingham, Alabama. (*See* Delany Declaration at ¶ 5 ) It was founded in 1944 by Elton B. Stephens (hence the EBSCO acronym Elton B Stephens Company). (Id. at ¶6). EBSCO is the largest privately held company in Alabama and one of the top 200 in the nation, based on revenues and employee numbers, according to *Forbes* Magazine. (*Id.* at ¶ 8.) EBSCO includes over 30 businesses with interests as diverse as publishing of journal article databases; subscription provider for more than 300,000 journals serving more than 50,000 libraries worldwide; fishing lures (the world's largest manufacturer); steel joist and metal roof deck manufacturing ; and real estate development, among other things. (*Id.* at ¶ 9). Magazine Express, Inc. is an incorporated division of EBSCO, with its own Vice-President, General Manager and corporate history. (*Id.* at ¶ 13) Marburger, of course, was aware of none of this.

and disregarded. Moreover, Plaintiff cannot satisfy the elements to establish a civil

conspiracy. For example, while Marburger had an arrangement with EBSCO to market

its magazine (Griffiths Decl. ¶ 6), Marburger had no such agreement with Magazine

Express or Amazon as Plaintiff alleges (FAC ¶ 85). It is totally inaccurate to say, as

Plaintiff does, that Amazon's website is the "only" retailer seller of subscriptions of the

magazine. (*Id.*) In fact, Marburger did not know its magazine was listed on Amazon at

all, and only about 300 out of about 6,000 total subscriptions came in from EBSCO.

(Griffiths Decl. ¶¶ 7-8.) Marburger is not in contact with EBSCO about how it obtains

subscriptions and has no control over its activities. The two entities are entirely

independent. (*Id.* ¶ 6.)

Plaintiffs' attempt to infer a conspiracy between Marburger, Magazine Express,

and/or Amazon (*see* Opp. at 18) is without foundation. It is clear that there is no

"common scheme" among Marburger, Magazine Express and Amazon to distribute

*Gamecock* magazine to residents of the District of Columbia or anybody else.

Similarly, Plaintiff makes inaccurate claims in an effort to support its claim that

Marburger directly worked with Amazon and Magazine Express. Marburger never

"elected" to use Amazon as its "exclusive marketing and distributing agent" nor did it

"rely" upon Amazon's resources to sell its publication to District residents. (Opp. at 15.)

Prior to this litigation, Marburger had never even heard of Amazon, much less knew

Amazon was offering its only publication. (Griffiths Decl. ¶ 8.) Absent Marburger's

knowledge that its publication was being marketed or sold by Magazine Express or

Amazon, Plaintiff cannot establish that Marburger had purposefully availed itself or

conducted the minimal contacts necessary to support this forum's exercise of personal

jurisdiction over Marburger. *Asahi Metal Indus. Co. v. Superior Court (Cheng Shin Rubber Indus. Co.)*, 480 U.S. 102, 107 S. Ct. 1026 (1987) (minimum contacts must come about by an action of the defendant purposefully directed toward the forum state).

Plaintiff also refers to the transaction of business through an "agent." (Opp. at 17.) It is not clear whether Plaintiff has in mind here anything beyond its conspiracy theory, but if it does, that would not work either. There is no showing that any other defendant has any "control . . . over [Marburger's] actual performance of its functions which would be necessary for an agency relationship." *Envtl. Research Int'l, Inc. v. Lockwood Greene Eng'rs, Inc.*, 355 A.2d 808, 812 n.7 (D.C. 1976).

**C.    *Marburger is not a part of any conspiracy and the acts of other Defendants do not bear upon the issue of personal jurisdiction.***

Under the second prong of the doctrine of personal jurisdiction by conspiracy, there must be, at least, alleged acts by one co-conspirator within the jurisdiction, in furtherance of the claimed conspiracy. *Hasenfus v. Corporate Air Servs.*, 700 F. Supp. 58, 63 (D.D.C. 1988) (citations omitted). The Court need not reach this second prong if the alleged conspiracy is controverted and the record is devoid of facts that a conspiracy actually existed. *See, e.g., Lapointe v. Van Note*, 2004 WL 3609346, *8 (D.D.C.2004) (court did not have personal jurisdiction over non-resident defendant because the plaintiff's conspiracy claim was clearly challenged and the record was devoid of facts that a conspiracy actually existed) (citations omitted). Without having satisfied the elements for a conspiracy, the Plaintiff is unable to argue that any Defendant's act imposes liability upon any other Defendant. Therefore, jurisdiction over Marburger depends solely on a review of Marburger's own contacts with the District.

**D.**    ***Plaintiff's alternative request for discovery should be denied because all relevant facts regarding Marburger's contacts with the District have been presented.***

Plaintiff's fallback position is that it should be allowed to conduct discovery before a ruling on personal jurisdiction. (Opp. at 20-21.)  Discovery would not change the result.

Plaintiff suggests that if the Court finds the statements in the Amended Complaint insufficient to establish personal jurisdiction over "*all* Defendants," then discovery is appropriate. (*Id.* (emphasis added)).  Plaintiff's standard requiring this Court to consider personal jurisdiction over *all Defendants*, rather than to focus its inquiry on just Marburger's contacts with the District, is not supported by case law. *See Kopff v. Battaglia,* 425 F. Supp. 2d 76, 80 -81 (D.D.C.2006) (plaintiff bears the burden of establishing personal jurisdiction over each defendant by alleging specific facts upon which personal jurisdiction may be based); *see also Rush v. Savchuk,* 444 U.S. 320, 331-32, 100 S. Ct. 571, 62 L. Ed. 2d 516 (1980) (plaintiffs cannot aggregate factual allegations concerning multiple defendants in order to demonstrate personal jurisdiction over any individual defendant).

Plaintiff's improper attempt to conflate the Defendants is illustrated by its repeated reference to actions by Dowd (Opp. at 12 n.4, 21), despite the fact that Dowd is not challenging personal jurisdiction.  Despite Plaintiff's suggested approach of aggregating contacts to establish personal jurisdiction, Plaintiff may not transfer the contacts of other Defendants with the District to Marburger in order to establish personal jurisdiction over Marburger.

Plaintiff sets out five areas in which it seeks discovery. (Opp. at 21.)  None is apposite.

First, Plaintiff says it wants to "[r]econcile Defendant's contradictory statements

regarding who has ultimate control over the substance of the website where the Publications are sold." (Opp. at 21.) As noted, Marburger had no idea its magazine was even on the Amazon site (Griffiths Decl. ¶ 8.) Marburger gives information regarding *Gamecock* only to EBSCO, and does not even know what that non-party entity does with the information. (Griffiths Decl. ¶ 6.) As a result, Marburger cannot have "control" over what eventually appears on Amazon.

Next, Plaintiff seeks to "[a]scertain Dowd's and Marburger's contacts with the forum other than the marketing, sale, and shipping of the Publications, such as the sale of the combined thirty-nine other print titles sold by the publisher Defendants." (Opp. at 21.) As noted above, Dowd is not challenging jurisdiction, so the references to it should be disregarded. As to the so-called "other print titles," Plaintiff acknowledges that, whatever they are, they are "not at issue in this lawsuit." (Opp. at 12 n.4.)

Third, Plaintiff would "[d]iscover Marburger's subscriptions and other contacts in the District prior to 2005." (Opp. at 21.) It fails to mention that the Griffiths declaration is based on a search of Marburger's subscription records *for the period records exist*, only about 3 years (Griffiths Decl. ¶¶ 9, 12.) Plaintiff here would be drilling a dry hole.

Fourth, Plaintiff wants to "[d]iscover Dowd's prior sale and shipment of the Publications into the District." (Opp. at 21.) Again, Dowd is not relevant to this motion.

Finally, Plaintiff would seek to "[r]econcile the contradiction between the Defendants' statements as to the publishers' knowledge of Amazon's role in selling their products." (Opp. at 21.) This has already been dealt with. Marburger had *no* knowledge that Amazon was selling its magazine. Amazon does not say otherwise, but states that it obtains its information on the magazines from Magazine Express. (Amazon Reply Mem.

of P. & A. n.19.)

Following the rulings of this Court, Marburger suggests that a review of the

declarations in support of Marburger's Motion to Dismiss should guide this Court in

determining the jurisdictional facts. *Kopff v. Battaglia*, 425 F. Supp. 2d 76, 81 (D.D.C.

2006) ("When considering challenges to personal jurisdiction, the Court need not treat all

of plaintiffs allegations as true" and "may receive and weigh affidavits and any other

relevant matter to assist it in determining the jurisdictional facts") (citing *United States v.*

*Philip Morris Inc.,* 116 F. Supp. 2d 116, 120 n. 4 (D.D.C.2000).) *See also Novak-*

*Canzeri v. Al Saud,* 864 F. Supp. 203, 206 (D.D.C.1994) ("[T]he Court must accept

Plaintiff's claims as true in ruling on a 12(b)(2) motion, unless they are directly

contradicted by an affidavit.").

Most of Plaintiff's perceived inconsistencies are nothing more than distortions of

the various declarations, misapplied statements of legal burdens and inaccurate

statements about Marburger's marketing agreements, or lack thereof, with the other

Defendants. Any conceivable benefit from discovery is far outweighed by the burden

and expense of obtaining it. *See generally* Fed. R. Civ. P. 26(b)(2)(C). Marburger's

Motion to Dismiss explicitly spells out its limited contacts with this forum and its

knowledge regarding the District's sole subscriber. The Court and the Plaintiff have been

provided with the information available to Marburger on this topic.

## III.    PLAINTIFF CANNOT STATE A CLAIM UNDER THE D.C. CONSUMER PROTECTION PROCEDURES ACT AND CANNOT ESTABLISH STANDING.

For the reasons stated by Amazon (Amazon Reply Mem. § I(A)), Plaintiff cannot

state a claim under the D.C. Consumer Protection Procedures Act. No claim is made

against Marburger with respect to Counts I, IV, or V.  (*See* Amazon Reply Mem. §

I(A)(3)(in part discussing Counts IV and V as they apply to Amazon).)

With respect to organizational standing, as Amazon notes, "the organizational

injury HSUS alleges is caused directly by either the people who engage in animal

fighting or inadequate law enforcement," and these "independent third part[ies] [are] not

before the court (Amazon Reply Mem. § I(C)(1).)  That set of independent actors no

more includes Marburger than it does Amazon.  Similarly, as Amazon notes, the

supposed "risks to HSUS's members of personal injury from violent crime and bird flu

associated with animal fighting" (Amazon Reply Mem. § I(C)(2)) are so remote and

speculative—indeed truly imaginary—as to permit standing with respect to no Defendant

in this case.

## IV.    THE FIRST AMENDMENT BARS PLAINTIFF'S CLAIMS AGAINST MARBURGER

### A.    *HSUS' claims fail because Marburger has no duty to censor its advertisers, certainly without knowledge that the advertisements are illegal.*

Amazon correctly notes that distributors of magazines and the like are entitled to

First Amendment protection.  Of course the magazines themselves are also fully

protected, including magazines that are "doubtless gross and repugnant in the eyes of

most." *Hustler Magazine v. Falwell*, 485 U.S. 46, 50, 108 S. Ct. 876, 879 (1988).

Marburger joins Amazon's argument on this topic (Amazon Reply Mem. § IV).

As the Court has struck down a "requirement that a bookseller examine the

contents of his shop," *CBS, Inc. v. Democratic Nat'l Comm.*, 412 U.S. 94, 168 n.18, 93 S.

Ct. 2080, 2119 n.18 (1973)(Douglas, J., concurring)(citing *Smith v. Cal.*, 361 U.S. 147,

80 S. Ct. 215, 4 L. Ed. 2d 205 (1959)), it has disallowed a "*requirement that a magazine*

*publisher investigate his advertisers,*" *id.* (emphasis added)(citing *Manual Enters., Inc. v. Day*, 370 U.S. 478, 492-493, 82 S. Ct. 1432, 1439-1440, 8 L. Ed. 2d 639 (1962) (opinion of Harlan, J., announcing the judgment of the Court, joined by Stewart, J.)).  In both cases, the restriction "discouraged or chilled constitutionally protected rights of speech [or] press." *Id.*

In *Manual Enterprises*, Justice Harlan, citing *Smith*, a case properly relied upon by Amazon, held that magazines could not be declared non-mailable absent proof that the publishers knew that the magazines' advertisers were offering obscene matter for sale:

> Since publishers cannot practicably be expected to investigate each of their advertisers, and since the economic consequences of an order barring even a single issue of a periodical from the mails might entail heavy financial sacrifice, a magazine publisher might refrain from accepting advertisements from those whose own materials could conceivably be deemed objectionable by the Post Office Department. This would deprive such materials, which might otherwise be entitled to constitutional protection, of a legitimate and recognized avenue of access to the public.

370 U.S. at 493, 82 S. Ct. at 1440.

Amazon correctly points out that the "sale of birds and implements is *not* per se illegal."  It notes as well that the United States Postal Service has twice *rejected* HSUS's claim that *Gamecock* (as well as *Feathered Warrior*) are illegal.  Like Amazon, Marburger has no knowledge that the advertisements, much less the entirety of its own magazine, are illegal.  To impose the requirement that HSUS seeks would, as Justice Harlan recognized, place too heavy a burden on Marburger's exercise of First Amendment rights to be tolerated.

**B.**    ***The Gamecock has never been declared an illegal publication.***

Plaintiff's repeated grouping of Marburger with "associates of the animal fighting venture" is misleading, inaccurate and plainly unfair.  Marburger is a magazine publisher

and not a promoter of animal fighting ventures. The magazine at issue in this case, *Gamecock*, is published by the Marburger Publishing Company in Arkansas and protected by the First Amendment. Plaintiff has made several unsuccessful requests for the magazines to be classified as "non-mailable" to the United States Postal Service (USPS), and have twice been denied in its requests that the *Gamecock* be deemed illegal. (*See* USPS June 5, 2006 denial, Pendleton Decl. Ex. 8; USPS June 26, 2007 denial, Pendleton Decl. Ex. 9.) Therefore, Plaintiff's frequent references to *Gamecock* as "consisting predominately of criminal solicitations" and of perpetrating "on going legal violations" (Opp. at 2, 8), seem to be its own personal opinion as no judicial forum or U.S. administrative agency has ever declared the same. *Gamecock* enjoys its status as "legal" and protected under the First Amendment.

Moreover, *Gamecock* is not treated as a catalogue or a publication dedicated to advertising by the USPS. The USPS designates *Gamecock* as a periodical and accords it the periodical postage rates privileges based on its content. This is in contrast to other actual catalogues which receive different postage rates because they are designated only for advertising purposes. Therefore, Plaintiff's opinion that *Gamecock* is a catalogue is palpably untrue, and in any event, is not shared by the U.S. Postal Service.

## C. *Gamecock* is not "commercial speech" and the ads it carries do not make it a catalogue of illegal animal fighting paraphernalia.

Facing the possible dismissal of its Amended Complaint on First Amendment grounds, Plaintiff continues to characterize *Gamecock* as nothing more than a "catalogue" of criminal solicitations. (Opp. at 7). In doing so, Plaintiff dismisses the editorial and political writings of the magazine and classifies the entirety of the publication's contents as purely commercial speech with the hopes that by convincing the Court of the same, the

commercial speech designation would be "completely fatal" to any First Amendment

defense. (Opp. at 54). Regardless of Plaintiff's characterizations, *Gamecock* is a

magazine containing protected speech and Plaintiff's attempt to silence this speech

because it does not agree with it is repugnant to the bedrock principle underlying the First

Amendment. *United States v. Eichman*, 496 U.S. 310, 319 (1990).

Plaintiff's repetitive references to *Gamecock* as a catalogue filled with criminal

"solicitations of commercial transactions in animal fighting paraphernalia" is another self-

serving mischaracterization of the publication. (Opp. at 2.) Plaintiff boldly asks the Court

to ignore the editorial content and view the publication as "commercial speech proposing

illegal transactions." (Opp. at 56-57). Simply because Marburger sells advertising space to

customers desiring to place an ad in its magazine, just as other for profit publications do to

help cover publishing costs, this does not transform the *Gamecock* into a criminal catalogue

nor does it void the editorial and political content that is the very heart of the magazine. As

discussed in the Motion to Dismiss, the United States Supreme Court has recognized that

"[s]ome ordinary newspapers try to maintain a ratio of 70% advertising to 30% editorial

content," *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 420 n.16 (1993),

and so to credit the Congressman's legal viewpoint "would convert virtually all . . .

newspapers . . . and magazines into commercial speech, and call into question the

traditional protections afforded these types of publications." *See United States Olympic*

*Comm. v. Am. Media, Inc.*, 156 F. Supp. 2d 1200, 1207-08 (D. Colo. 2001). *See*

*generally Joseph Burstyn, Inc. v. Wilson,* 343 U.S. 495, 501-02 (1952) ("That books,

newspapers, and magazines are published and sold for profit does not prevent them from

being a form of expression whose liberty is safeguarded by the First Amendment."). In

its zeal to cast *Gamecock* as an illegal catalogue for animal fighting implements, Plaintiff

chooses *not* to describe *Gamecock* for what it really is--a poultry interest publication

featuring editorials, news articles, and columns on chickens. Creating such a magazine is

fully supported by Marburger's First Amendment rights.

Furthermore, for the reasons stated by Amazon with respect to suit against it

(Amazon Reply Mem. of P. & A. § V), Plaintiff's contentions that *Gamecock* is "purely

commercial speech" cannot survive scrutiny. In any event, as Amazon and Marburger

have argued, Plaintiff has not met the standards for banning even "commercial speech."

### D.    *Plaintiff seeks an unconstitutional prior restraint on speech.*

Plaintiff denies that it seeks a prior restraint of Marburger's freedom of speech

despite its request for a permanent cease and desist order against the publication of

*Gamecock*. (*See* FAC ¶ 43.) Therefore, for the reasons also stated by Amazon with

respect to prior restraints on speech (Amazon Reply Mem. of P. & A. § V), the action

should be dismissed. Plaintiff does not make even a passing attempt at the stringent

showing need to justify such a remedy.

### E.    *The ads Gamecock carries do not classify Marburger as a retailer of illegal animal fighting paraphernalia.*

The fact that *Gamecock* carries ads of items Plaintiff characterizes as "illegal" does

not make Marburger a *retailer* of illegal animal fighting paraphernalia. Plaintiff attempts to

distract this Court by weaving an unbelievable story whereby the subliminal content of

*Gamecock*'s advertisements results in Marburger "aiding and abetting" criminal activity and

animal cruelty in the District of Columbia. (Opp. at 56-60). First, the items referenced by

Plaintiff are legal, and not, *per se*, illegal. Second, even if the items were illegal to sell,

Marburger does not sell the actual items and is not a party to the commercial transactions

regarding the actual sale of the items of which Plaintiff complains. Finally, the fact that *Gamecock* prints ads does not establish that Marburger encourages or promotes the sale of these items to be used illegally as a part of a criminal venture. Therefore, and for the reasons stated by Amazon with respect to suit against it (Amazon Reply Mem. of P. & A. § IV), Plaintiff's claims that Marburger aids and abets in criminal animal fighting ventures must fail.

## V.    PLAINTIFF'S CONSPIRACY CLAIMS FAIL AS A MATTER OF LAW

For the reasons stated by Amazon, Plaintiff's claims under the federal or D.C. criminal conspiracy statutes must be dismissed. (Amazon Reply Mem. of P. & A. § VI). The statutes do not provide a private cause of action against Marburger, or anyone else, and Plaintiff has not stated a claim for conspiracy under the CPPA.

Respectfully submitted,

CARR MALONEY P.C.

/s/ Barry A. Fisher_____
Barry A. Fisher #D00208
Fleishman & Fisher
1875 Century Park East, Suite 2130
Los Angeles, California 90067
310-557-1077
310-612-8003 – fax
bfisher557@aol.com

/s/ Ali A. Beydoun_____
Ali A. Beydoun #475413
1615 L Street, N.W.
Suite 500
Washington, D.C. 20036
202-310-5500
202-310-5555 - fax
aab@carrmaloney.com
Attorney for Defendant
Marburger Publishing Co., Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served electronically, this 7th day of September, 2007 to:

Ethan Carson Eddy
Jonathan R. Lovvorn
The Humane Society of the United States
2100 L Street, N.W.
Washington, D.C. 20037

Stuart Philip Ross
Alexei M. Silverman
Ross, Dixon & Bell, LLP
2001 K Street, N.W.
Washington, D.C. 20006

Donna M. Crowe
Bradley Arant Rose & White LLP
1133 Connecticut Avenue, N.W., 12th Floor
Washington, D.C. 20036

Michael S. Denniston
Bradley Arant Rose & White LLP
1819 Fifth Avenue North
Birmingham, Alabama 35213
Constance M. Pendleton
1500 K Street, N.W., Suite 450
Washington, D.C. 20005

Dowd Publishers d/b/a
The Feathered Warrior
1812 Hwy 7-71 East
DeQueen, AR 71832

Mark Pollot, Esquire
mpollot@cableone.net

John Doe d/b/a Underground Pitbull
Breeders Association

John Doe d/b/a StreetheatDVD.com

/s/ Ali A. Beydoun
Ali A. Beydoun

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

THE HUMANE SOCIETY OF THE          :
UNITED STATES
                                   :
                                   :
        Plaintiff                  :
                                   :
    vs.                            :          Civil No. 07-0623 (CKK)
                                   :
AMAZON.COM., INC., *ET AL.*,       :
                                   :
        Defendants                 :

## DECLARATION OF SUSAN E. DELANEY

I, Susan E. Delaney, being duly sworn, hereby attest as follows:

1. My name is Susan E. Delaney.  I am over the age of eighteen and competent to render sworn testimony.

2. On September 6, 2007, I conducted an independent internet research inquiry into EBSCO Industries, Inc. ("EBSCO") and Magazine Express, Inc. ("Magazine Express").

3. My independent research focused on the history, development and status of EBSCO and Magazine Express as well as the relationship between the two companies, if any.

4. The information obtained during my research is summarized herein.

5. According to EBSCO's website, EBSCO is a privately held, widely diversified corporation with headquarters in Birmingham, Alabama.

6. The website indicates that EBSCO was founded in 1944 by Elton B. Stephens.

7.  As reported on the website, the corporate name was derived from the founder Elton B. Stephens.

8. The EBSCO website indicates that, based on revenues and employee numbers, EBSCO is the largest privately held company in Alabama and one of the top 200 privately held companies in the nation[1].

---

[1] EBSCO's website accredits this information to *Forbes Magazine*.

9. The website states that EBSCO has diversified into over 40 businesses. Some of these businesses have interests as diverse as acting as a subscription provider for more than 300,000 title listings and from more than 78,000 publishers worldwide; acting as a publisher of journal article databases. Other companies include the largest manufacturer of fishing lures; a company specializing in steel joist and metal roof deck manufacturing and; a real estate development company.

10. Magazine Express is an incorporated division of EBSCO.

11. According to information found on EBSCO's website, EBSCO acquired Magazine Express in 1995.

12. Magazine Express has its own corporate history, separate and apart from EBSCO's.

13. Magazine Express has its own Vice-President and General Manager, separate and apart from EBSCO's Board of Directors.

14. I have signed this Declaration without any coercion or pressure of any kind by EBSCO or Magazine Express and their employees, representatives, agents or attorneys.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT

Susan E. Delaney                9-7-07
Susan E. Delaney