IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
Civil Division

| | | |
|---|---|---|
| HUMANE SOCIETY OF THE UNITED STATES, | ) ) ) ) ) | Case No. 07-0623 (CKK) |
| Plaintiff, | ) ) ) ) | |
| vs. | ) ) ) ) | |
| AMAZON.COM, INC., et al., | ) ) ) | |
| Defendants | ) ) | |

DEFENDANT DOWD PUBLISHERS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

ROBIN W. GROVER
D.C. BAR NO. 366865
LAW OFFICE OF ROBIN W. GROVER
1747 PENNSYLVANIA AVE., N.W.
SUITE 1000
WASHINGTON, D.C.   20006
EMAIL: RGROVER716@AOL.COM
TEL. NO.: (202) 302-1653
ATTORNEY FOR DOWD PUBLISHERS

**TABLE OF CONTENTS:**

**I.   INTRODUCTION** ………………………………………………………..1

**II.  ARGUMENT** ……………………………………………………………..4

    **A. PLAINTIFF LACKS STANDING TO ENFORCE THE DISTRICT OF COLUMBIA'S CONSUMER PROTECTION STATUTE, AND THE INJURY COMPLAINED OF IS NOT WITHIN THE DISTRICT LAW'S ZONE OF INTEREST** ………………………………………………….. 6

    **B. NOTWITHSTANDING PLAINTIFF'S ARGUMENTS, DEFENDANT DOWD PUBLISHERS HAS FIRST AMENDMENT RIGHTS AND STATUTORY RIGHTS THAT WOULD BE VIOLATED BY THE REQUESTED REMEDY** …………………………………………………12

**III. CONCLUSION** ……………………………………………………………15

**TABLE OF AUTHORITIES**

**CASES:**

*Abbott Laboratories v. Nutrimax Products, Inc.*, 844 F. Supp. 443, 445 (N.D. Ill. 1994) ………….. 4

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984) …………….4

*International Primate Protection League v. Institute for Behavioral Research*,
    799 F.2d 934 (4th Cir. 1986), cert. denied, 481 U.S. 1004 (1987) ……………………………… 9

*Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994) ………………………….. 4

*Lujan v. Defenders of Wildlife*, 504 U.S. 554, 559, 560-61 (1992) ……………………………………12

*Mullins v. M.G.D. Graphics Systems Group*, 867 F. Supp. 1578, 1579 (N.D. Ga. 1994) ……………..4

*Nebraska Press Ass'n. v. Stuart*, 427 U.S. 539, 559 (1976) ……………………………………………13

*New York Times Co. v. United States*, 403 U.S. 713, 714 (1993) …………………………………….13, 14

*Public Citizen v. Lockheed Aircraft Corp.*, 565 F.2d 708 (D.C. Cir. 1977) …………………………..12

*Revis v. Slocomb Industries, Inc.*, 765 F. Supp. 1212, 1213 (D.Del. 1991) ………………………… ,.4

*Sierra Club v. Morton*, 405 U.S. 727 (1972) ………………………………………………………….. ..8

*United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*,
    517 U.S. 554, 556, 558 (1996)……………………………………………………………………..12

*Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.*
    425 U.S. 748, 773 (1976) …………………………………………………………………….14

*Washington Post Co. v. Keogh*, 365 F.2d 965, 968 (D.C. Cir. 1966), cert. denied,
    385 U.S. 1011 (1967) ……………………………………………………………………………... 4

*Williams v. Purdue Pharm. Co.*, 297 F. Supp. 2d 171, 177-78 (D.D.C. 2003) ……………………10, 11

**STATUTES:**

**Animal Welfare Act, 7 U.S.C. §2156(c)** ……………………………………………………………. 3

**Consumer Protection Procedures Act, D.C. Code§ 28-3904(a), (e), (f), (x),
§ 28-3905(k)(1)**………………………………………………………………………………………….passim

I.  INTRODUCTION[1]

The consolidated Memorandum of Points and Authorities in Opposition to the Motions to Dismiss (hereinafter "Plaintiff's Memo") filed by Plaintiff Humane Society of the United States ("HSUS") does not successfully confront the points made by the defendants in their Memoranda in Support of their Motions to Dismiss the First Amended Complaint.  In fact, it can most charitably be described as disingenuous.  As just one example, HSUS attempts to characterize and treat publications containing significant editorial content as though they were really catalogues disguised as magazines because they contain many advertisements.[2]

There are many other examples of HSUS's lack of candor, even perhaps with itself. Plaintiff's Memo constantly and consistently paints all advertisements for gamefowl related events in the publications as "illegal" and all of the items and events advertised as "illegal".  It characterizes the AWA as prohibiting all commercial speech promoting or furthering *any* animal fighting venture. On page 2 of Plaintiff's Memo, plaintiff states:

> [T]he federal Animal Welfare Act . . .was recently amended to make it a felony to "knowingly use the mail service of the United States Postal Service or any instrumentality of interstate commerce for commercial speech for purposes of promoting or in any other manner furthering an animal fighting venture." . . .

---

[1] Defendant Dowd Publishing has read and concurs with the arguments made in the reply memoranda of each of the other defendants and joins in those arguments to the extent that they are not peculiar to individual defendants (e.g., Amazon's statutory immunity from liability as a distributor).  Defendant Dowd incorporates those arguments herein by reference as though fully set forth in order to reduce the burden on the resources of the court.  To avoid duplication of arguments and citations in those areas in which Dowd agrees with the other defendants, Dowd will only emphasize additional and supportive arguments.

[2] If this characterization by HSUS is true, the magazines such as *Redbook*, *Cosmopolitan*, *PC Magazine*, and a whole host of others are not truly magazines, but are thinly disguised catalogues.  If one picks up a copy of *Cosmopolitan* magazine, for example, one goes through many pages of advertisements before one even comes to the table of contents.  Anyone who picks up a metropolitan newspaper will see many hundreds of advertisements within its pages.  Advertising makes it possible to sell publications at a low price to consumers with editorial content that would not be published otherwise because the cost to consumers would make the price prohibitive to the public.  Of course, this is part of the goal of plaintiff. If it can make the cost of production of a gamefowl magazine too high by scaring off advertisers of lawful products or services, the magazines can no longer publish their editorial content.

Plaintiff's emphasis omitted.  Plaintiff neglects to mention that this prohibition on commercial speech (which clearly does not apply to the substantive/editorial content of these publications by the express language of the statute) *does not* apply to commercial speech pertaining to animal fighting ventures occurring in a state where the venture is legal.  Further, plaintiff states in the same paragraph in its Memo that it "is also a felony to buy, sell, or ship in interstate commerce the animals and weapons advertised and sold by the thousands through the publications."  This is also misleading and, defendant contends, intentionally so.

      The statute, as shown by Defendant's Dowd Publishers' Memorandum in Support of its Motion to Dismiss the First Amended Complaint, does *not* ban the buying or selling of birds in interstate commerce where the purchase and sale of the birds in interstate commerce is not for the purposes of bird fighting.  Nothing in the statute prohibits advertising of birds for fighting purposes if the birds are *not* bought, sold, or delivered in interstate commerce,[3] nor does the statute prohibit *at all* commercial speech pertaining to sharp instruments.

      HSUS must know its portrayals of the law and the lawfulness of the advertisements to be untrue.  By HSUS's own admissions in its Complaint and its websites, neither cockfighting nor all paraphernalia that can be used for cockfighting is everywhere illegal.[4]  For example, in some states, cockfighting is illegal only in some circumstances, such as where gambling is occurring (*e.g.*, Virginia) or when admission is charged (also, *e.g.*, Virginia). *Id.*  Only ten states prohibit the possession of cockfighting implements and the District of Columbia does not. *Id.*  Virtually

- 2 -

---

[3] For example, nothing in the statute would prohibit someone in Virginia from buying a bird for fighting purposes in Virginia, keeping the bird there, and fighting it there, and nothing prohibits commercial speech that promotes the fighting venture in Virginia as long as the venture as advertised would comply with Virginia law.  Nothing in the statute prohibits the advertising of sharp instruments.

every Territory of the United States permits cockfighting (*id.*), and no state or territory of the United States has an outright ban on the possession or ownership of gamefowl not possessed for the purposes of fighting the bird(s). Further, as plaintiff clearly knows, the Animal Welfare Act as amended does *not* prohibit the selling of birds or transport of birds in interstate commerce for non-fighting purposes. *Id.*

In other words, every state in the United States and U.S. Territories permits at least some and, in some cases, every activity involving game fowl addressed by the magazines at issue, including activities and products advertised in the magazines. The Animal Welfare Act ("AWA"), 7 U.S.C. § 2156(c), does not purport to make such activities or products illegal, but simply imposes certain limitations on the interstate transport of animals or other items for cockfighting purposes. It only bans advertising of fights which are illegal in the states in which they take place and places *no* ban on the advertising of what are called sharp implements, as shown in Dowd's Motion to Dismiss. Thus, HSUS's claim that all of the advertisements are unlawful because the activities and the products they advertise are unlawful is on its face invalid.

Still further, the HSUS submitted substantially identical claims[5] to the United States Postal Service ("the Service") when it filed a petition with the Service over a year ago asking it to pull the mailing permits of the two publishers to keep them from distributing their magazines. The Postal Service is tasked with interpreting the federal law pertaining to mailing of materials, preparing postal regulations, and enforcing those regulations. The Service determined that the

- 3 -

---

[4] *See , e.g*., http:\\www.hsus.org/hsus_field/animal_fighting_the_final_round/cockfighting_fact_ sheet/state_ cockfighting_laws.html.

[5]The difference between the statute as it existed when the petition was filed and now is that the ban on speech "promoting" cockfighting is narrower than that in the law before it was amended. The current law applies only to "commercial speech" and specifically makes it clear that the limitation on commercial speech does not apply to advertisements pertaining to states where the animal fighting venture is lawful.

HSUS's petition should be denied. That determination is entitled to deference under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, (S.Ct. 1984).

Defendant Dowd contends that plaintiff utterly failed to undermine that arguments made by the defendants in their respective motions to dismiss. This memorandum will not attempt to exhaustively discuss all the ways in which plaintiff has so failed. Many of the arguments have been ably made by Dowd's co-defendants and Dowd will not repeat them here but instead, as previously noted, incorporates those arguments herein as though fully set forth. Our not explicitly addressing each point argued by plaintiff is not intended to indicate agreement with any point made by plaintiff or a waiver of any argument.

II.     ARGUMENT

Plaintiff has failed to successfully meet the objections raised by defendants in their respective motions to dismiss. As noted in Dowd's Motion to Dismiss, motions to dismiss or for judgments on the pleadings should not be granted unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Revis v. Slocomb Industries, Inc.*, 765 F. Supp. 1212, 1213 (D. Del. 1991). In considering whether to dismiss an action, the Court must treat all of the nonmoving parties' *well-pleaded* allegations as true. *Abbott Laboratories v. Nutrimax Products, Inc.,* 844 F.Supp. 443, 445.D. Ill. 1994); *Mullins v. M.G.D. Graphics Systems Group*, 867 F.Supp 1578, 1579 (ND Ga. 1994). Even in the case of a Rule 12(b)(6) motion, however, the Court is not so bound by the obligation to treat allegations in the Complaint as true and to draw favorable inferences from the allegations where it is clear that such inferences cannot be reasonably drawn from the facts as alleged or where the facts are actually allegation of legal conclusions. *Kowal v. MCI Communications*

*Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). This latter consideration is particularly evident in this case where the bulk of plaintiff's allegations, though presented as factual (both in the first amended Complaint and the Memorandum in Opposition) are in reality legal conclusions, specifically, that the activities and goods advertised – and the advertisements themselves – are unlawful.

Also important, as previously noted, is the principle that, while summary disposition of a case is not always a favored option, there are circumstances in which courts are encouraged to use it such as this case in which First Amendment guarantees may be compromised by lengthy and costly judicial proceedings. Such cases are particularly apt for summary review provided that legal questions are in the forefront. *See*, *e.g.*, *Washington Post Co. v. Keogh*, 365 F.2d 965, 968 (D.C. Cir. 1966), *cert. denied*, 385 U.S. 1011 (1967).[6] Certainly such is the case here. The publishers of the magazines, which are not huge and wealthy business enterprises, have as their policy the avoidance of unlawful publishing activities and the publication of magazines that discuss, among other things, the very legal and political issues that are at the heart of First Amendment principles. They have been targeted in this action by a plaintiff with far more significant resources who clearly does not want countervailing views to be expressed and who hopes to overbear the publishers' resources. Prolonged litigation in such a case may stifle First Amendment expression even if the publishers, in the end prevail. It does not, for the purposes of First Amendment analysis, change matters that the ostensible target of this action is the commercial speech also contained in the publications. This is for two reasons. First, even

- 5 -

---

[6] "In the First Amendment area, summary procedures are . . . essential. For the stake here, if harassment succeeds, is free debate. . . . The threat of being put to the defense of a suit . . . may be as chilling to the exercise of First Amendment freedoms as fear of the outcome of the lawsuit itself". *Id*.

commercial speech has some First Amendment protection. Secondly, the remedy sought by plaintiff is not the punishment of allegedly unlawful speech made in the past, but a prior restrain on, *i.e.*, the prevention of the distribution of, the magazines in question in *toto*, including the editorial and substantive content and lawful advertisements as well as allegedly unlawful advertisements.

### A. PLAINTIFF LACKS STANDING TO ENFORCE THE DISTRICT OF COLUMBIA'S CONSUMER PROTECTION STATUTE AND THE INJURY COMPLAINED OF IS NOT WITHIN THE DISTRICT LAW'S ZONE OF INTEREST

First and foremost, plaintiff expressly acknowledges that the federal Animal Welfare Act confers no private right of action on it. Nevertheless, HSUS continues to claim that it is not trying to enforce the AWA, but merely the District of Columbia's consumer protection statute, the Consumer Protection Procedure Act ("CPPA"), D.C. Code 28-3904(a), (e), (f), (x), 28-3905(k)(1)), which plaintiff insists incorporates the federal law in its provisions.

Plaintiff's arguments do not support that claim, however. Defendant Amazon.Com ("Amazon") did an admirable job in its Memorandum in Support of Motion to Dismiss and Reply Memorandum in demonstrating that the Plaintiff's broad interpretation of standing and the zone of interest of the District's statute are unsupported by judicial interpretations of the District law. Defendant Dowd Publishers will emphasize how the language of the statute itself supports the conclusions drawn by the courts that have considered the matter.

As shown in defendant Dowd Publishers' Motion and Memorandum, the District law's provisions clearly are intended to create a mechanism to protect *consumers* from deceptive trade practices undertaken by *providers of goods and services*. Plaintiff utterly failed to cite any

authority for the proposition that the District of Columbia intended to require that magazines, newspapers, television, and radio provide a first-line investigatory service to police the trade practices of persons advertising in their media.  Indeed, such a scheme would be unworkable. The closest that plaintiff could come to doing so was to cite to cases from other jurisdictions, most notably California. These other jurisdictions have interpreted statutes that are substantially different and that were enacted by different legislatures.  And these interpretations, as shown by Amazon, have been rejected by District Courts.  Even those cases did not purport to hold that media publishing advertisements were required to police the trade practices of providers of goods and services.

The statutory provisions that plaintiff relies on, both in its Complaint and in its Memorandum in Opposition, themselves support the cases cited by Amazon which hold that there must be an actual injury suffered to give rise to a claim under the CPPA and that the injury must be of the kind contemplated by the statute, *i.e.*, in the zone of interest protected by the statute.  The provisions relied on include D.C. Code § 28-3904, subsections (a), (e), (f), (x).

The provision that plaintiff most wants to rely on is subsection (x) because of its specific inclusion of the language "by operation or requirement of federal law."  Unfortunately for plaintiff, however, the language pertaining to federal law in subsection (x) clearly and unequivocally refers to federal law which either requires a *seller* of *consumer goods* (not *services*, such as entertainment) to provide warranties or constrains the manner and extent to which such warranties can be disclaimed or modified.  The very specific use of the term "seller" indicates where the concerns of the legislature were focused.  Magazines or other media carrying the advertisements are in no position to offer warranties on products or services advertised in

- 7 -

their publications.

Thus, the only provisions of the CPPA on which plaintiff can arguably rely are subsections (a), (e) and (f). Plaintiff in its Complaint and its Memo in Opposition pins its hopes on the more general language of subsections (a), (e) and (f) which prohibit "person[s]" from representing certain things which are not true, misrepresenting other things, or failing to make representation with respect to still other things. In order to take advantage of these provisions HSUS must, and does, argue that by publishing an advertisement submitted to it, a media publisher is itself making the representation, misrepresentation, or omission in question.

A clear reading of the CPPA in it entirety demonstrates the falseness of this reasoning and this fact is amply demonstrated by the cases cited by Amazon and the other defendants herein. It is abundantly clear that the legislature intended to create a mechanism to protect consumers from providers of goods and services who engage from shady practices. It did *not* intend to require that magazines, newspapers, television, and radio provide a first-line investigatory service to police the trade practices of persons advertising in their media or to be guarantors of the good behavior of the providers of those goods and services.

Stated differently, the "zone of interest"[7] addressed by the statute is the relationship between buyers and sellers. The consumer protection statute obviously, by its terms, exists to protect buyers from scurrilous, fraudulent, and deceptive practices by sellers, the source of the

- 8 -

---

[7] The term "zone of interest" is found most often in cases dealing with standing. That is, even when a statute authorizes private causes of action, such as under the federal Administrative Procedures Act ("APA"), 5 U.S.C. § 702, *et seq.* or the AWA's citizen suit provision discussed *supra*, a person lacks standing to bring such a suit unless he or she is within the "zone of interest" intended to be protected by the statute. *See*, *e.g.*, *generally, Sierra Club v. Morton*, 405 U.S. 727 (1972). In other words, the CPPA as passed by the legislature and as interpreted by the courts, is consistent with the principles of constitutional and jurisprudential standing articulated by the Supreme Court.

advertisement and the party making the representations. Plaintiff has not provided well-pleaded factual allegations showing the type or closeness of the relationship between the publishers in question and the advertisers that it can be argued with a straight face that they are in both sellers within the meaning of the CPPA. Nothing other than bare, emotional claims have been made with no factual basis for the claims in either the Complaint or the plaintiff's Memorandum in Opposition. Indeed, the District itself in § 28-3905(k)(1) specifically limits the ability to bring suit under its provisions to actions alleging "trade practice[s] in violation of a law *of the District of Columbia*." Emphasis added. The only apparent attempt to incorporate federal law in the District Statute is to incorporate federal law *pertaining to warranty* as shown.[8]

Even if one assumes *arguendo* that the District did intend to create a private right of action in its consumer protection law which provides a path to the AWA *and* that it has the constitutional authority to override Congress's determination to limit enforcement of the AWA, the plaintiff lacks standing to bring such a suit because it cannot show a cognizable injury within the zone of interest protected by the CPPA.

A party seeking to sue under a statute must still meet the requirements of jurisprudential and constitutional standing and be within the zone of interest within the meaning of the statute at issue. *Morton*, *supra*, 405 U.S. at 740-41 and *passim*. Even under the broad language of the

- 9 -

---

[8] Dowd must point out again that, even if the District had intended to permit the use of the CPPA to enforce the AWA, this extension of authority is not available to the District. Federal decisions have held that the sole *private* remedy for violations of the AWA lies in the agency tasked with its enforcement, the Department of Agriculture. *International Primate Protection League v. Institute for Behavioral Research,* 799 F.2d 934 (4th Cir. 1986), *cert. denied*, 481 U.S. 1004 (1987).

District's Consumer Protection Act,[9] HSUS would have to show standing. *Williams v. Purdue Pharm. Co.*, 297 F. Supp. 2d 171, 177-78 (D.D.C 2003) (dismissing CPPA action for lack of standing). This it cannot do both because its claims of potential injury are speculative in the extreme and because the injuries complained of are not within the zone of interest protected by the CPPA. Defendant Dowd Publishers will discuss these only briefly here. Defendant Amazon and the others have discussed other aspects of their claims in great detail.

In its Memorandum in Opposition, plaintiff makes essentially two claims of injury. First, it claims that the advertisements (apparently those which advertise lawful products and activities as well as those it sees as unlawful) perpetuate cockfighting and therefore required HSUS to use its resources to combat cockfighting. Second, it alleges that the continuing conduct of cockfights exposes its members to the dubious behavior it claims accompanies cockfighting. The problems with these claims are several, only a few of which are discussed below.

First, this claim is highly speculative. Plaintiff has not alleged any statistics, studies, or facts that purport to show that the cessation of publication of these magazines nor any remedy that the court can give plaintiff will prevent third parties not before the court from conducting cockfights or any other conduct associated in fact or fantasy with cockfighting. In other words, its alleged injury lack redressability because there is little or no possibility that cessation of the distribution of the publications at issue will put an end to animal fighting.

Second, plaintiff has alleged no facts, studies, or other statistics that support the bald claim that its members will be adversely affected by the gambling, violence, or other misconduct

- 10 -

---

[9] "A person, whether acting for the interests of itself, its members, or the general public, may bring an action under this chapter . . ." D.C. Code § 28-3905.

Case 1:07-cv-00623-CKK   Document 52   Filed 09/13/2007   Page 14 of 18

it alleges invariably accompanies cockfighting. Indeed, it has not, insofar as defendant Dowd Publishers can discern, produced allegations on behalf of one actual member who has fairly alleged that he or she was personally injured by these alleged ancillary activities. This is not surprising since HSUS's membership would be highly unlikely to voluntarily attend such an event or even be caught near one. Again, the alleged injury is speculative. It also appears unseemly for the plaintiff to complain that it is spending resources fighting what it views as animal cruelty since its entire reason to be is to do just that. In any event, again it appears that there is little or no likelihood that animal fighting and its alleged accompaniments will stop just because distribution of these two publications would cease.

Third, even if the complained of injuries or threatened injuries were not so speculative, they do not fall within the zone of interest covered by the CPPA. Nothing asserted by HSUS in its Memorandum in Opposition or in its amended Complaint adequately confronts this roadblock to its standing. Amazon's comments in its motion to dismiss remain unconfronted by HSUS.

> The injuries HSUS alleges with respect to itself and its members are all harms related to animal fighting itself - not consumer deception. "The CPPA was adopted by the D.C. Council to protect local consumers from improper and fraudulent trade practices." *Williams*, 297 F. Supp. 2d at 174. The statute's "zone of interest" is clearly consumer protection from fraudulent business practices, and not harm to animals or those who care about animals, negating prudential standing with respect to those interests.

Memorandum of Points and Authorities in Support of Motion to Dismiss of Amazon.com at p. 18. Even more importantly, as already noted, the entire purpose of HSUS is the protection of animal rights and welfare, not consumer rights. This fact reveals as a sham any claim that HSUS is looking out for the rights of consumers, of its members, of itself as a consumer, or of the public in general. Standing cannot be based on such a foundation of sand. As noted in *Morton*,

- 11 -

*supra*, and in other cases (*e.g., Public Citizen v. Lockheed Aircraft Corp.*, 565 F.2d 708 (D.C.Cir. 1977); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559, 560-61 (1992)) the plaintiff has to demonstrate that the challenged acts have harmed it personally and that it would benefit from a remedy provided by the Court. It can do none of these things and the allegations of the Complaint do not do so. *United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 554, 556-58 (1996). The alleged injuries, so attenuated from any conduct alleged to have occurred by defendants, and so speculative as to causation, likelihood, or degree, can support neither prudential standing nor Article III standing. *Lujan*, *supra*, 504 U.S. at 560-61.

> B. NOTWITHSTANDING PLAINTIFF'S ARGUMENTS DEFENDANT DOWD PUBLISHERS HAS FIRST AMENDMENT RIGHTS AND STATUTORY RIGHTS THAT WOULD BE VIOLATED BY ITS REQUESTED REMEDY

While HSUS argues that it is interested in protecting District of Columbia consumers, its Complaint seeks the complete banning of the distribution of the magazines themselves, including their substantive/editorial content as well as advertisements which are or would not be banned by the AWA. Even commercial speech is entitled to some protection, although the degree of protection is less than that afforded to non-commercial speech.

First, the statute itself permits commercial speech promoting animal fighting ventures when those ventures are lawful in the jurisdiction in which they are to be held. The remedy requested by plaintiff would prohibit an activity that Congress expressly allows. Further, it would prevent the publishers from publishing non-commercial speech by prohibiting them from wide distribution of their publications on the speculation that the publications might, in the future, contain a prohibited advertisement, something the prior restraint doctrine prohibits.

Second, the statute makes no effort to ban advertising of so-call sharp instruments, which include knives and gaffs if they are designed or intended to be used in an animal fighting venture. It only prohibits them from being bought, sold, transported, or delivered in interstate commerce. Nothing in AWA prohibits a manufacturer in a state from selling a sharp instrument to a person within the same state. Congress demonstrated that it knew how to ban advertising of such items altogether if it wished. But it chose not to do so. The remedy requested by plaintiff would prevent the providers of these items from advertising them even though Congress chose not to prohibit their advertisement and would have the same effects as discussed immediately *supra*.

Third, it is questionable whether Congress or the courts could, consistent with the First Amendment, completely bar providers of goods and/or services from any means of advertising those products or services that are lawful in some places simply because they are unlawful elsewhere. It is notable that Congress chose not to do so.

All of the foregoing is problematic for plaintiffs. What also has not been adequately addressed in its opposition is the fact that its requested remedy is a prior restraint not only on specific advertisements which have been published, but on everything in the magazines.

There is a strong presumption against the validity of prior restraints on speech (*Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976); *New York Times Co., v. United States*, 403 U.S. 713, 714 (1993)). Whatever may be true of *commercial* speech, it is clear that what HSUS is asking this Court to do is *not* simply to prohibit the publication of specifically identified advertisements which, depending on content, may or may not involve commercial speech. Instead, it is asking this Court to ban the publication of the magazines at all, regardless of their

- 13 -

content in any given issue, simply because the HSUS finds the whole concept of the content and the subject matter of the magazines abhorrent.  Indeed, HSUS wants not only to eliminate future issues, it wishes to gather together and destroy all past copies of the magazines as well.  In other words, plaintiff wants a total ban on pure speech that is editorial, noncommercial speech, because it views the subject as despicable.  Such a prior publication ban has never been upheld, even in times of war when secret governmental information regarding the war is being published.  *See, e.g., New York Times Co., supra*, at 730.  Nothing plaintiff is concerned about even begins to approach the level of war time secrets such as troop distributions as to which prior restraints were *not* permitted.  *Id*.

Further, even were the suit designed only to block the publication and distribution of advertisements, leaving the editorial and non-commercial content untouched, it could not succeed.  So-called "purely commercial speech" is also entitled to First Amendment protection, even if to a somewhat lesser degree.  The consuming public has a protected First Amendment interest in the free flow of truthful information concerning lawful activity.  *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 773 (1976).  The government may regulate such speech with regard to time, place and manner provided the restrictions are justified without reference to the content of the speech, serve a significant governmental interest, and leave open other channels of communication.  Thus, even were the HSUS prayer for relief to limit itself to the advertisements in these magazines, it has problems.  All of the matters to which they object are lawful in some, and sometimes, all States and Territories of the United States, as discussed *supra*.  Their objections are specifically based on the content of the advertisements, they can point to no significant governmental interest (their

generalized allegations about the side effects of *some* gamefowl-related activities are so speculative, as discussed, that they cannot justify standing much less the total ban they argue for). They would leave *no* other meaningful opportunities for communicating, or channels of communication, for this content. Nothing in the HSUS's Opposition refutes these points.

III.   CONCLUSION.

For the reasons stated herein, and in the Motions and Memoranda of Points and Authorities in Support thereof filed by defendant Dowd Publishers and its codefendants, defendant Dowd Publishers respectfully requests that this Court dismiss with prejudice all claims brought, or which could have been brought, by plaintiff HSUS in the above-entitled action.

Respectfully submitted this 13th day of September, 2007

_____/s/_____

ROBIN W. GROVER
DC Bar No. 366865
Law Office of Robin W. Grover
1747 Pennsylvania Avenue, N.W.
Suite 1000
Washington, D.C.  20006
Tel. No.: (202) 302-1653
Fax No.:  (703) 684-2973
Email: RGrover716@aol.com

Attorney for Defendant
Dowd Publishers